**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH COUNTY DIVISION**

| | | |
|---|---|---|
| **ILLOOMINATE MEDIA, INC.**, *et al.* | ) | **Case No.** 19-cv-81179-RAR |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CAIR FOUNDATION**. *et al.* | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

**JOINT MOTION TO DISMISS BY DEFENDANTS**
**CAIR FOUNDATION, INC. AND CAIR FLORIDA, INC.**

Defendants CAIR Foundation ("CAIR National") and CAIR Florida, Inc. ("CAIR-FL") hereby jointly move the Court to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2)-(3). Plaintiffs fail to allege any facts by which CAIR National can be held liable for Twitter, Inc.'s decision to ban Plaintiff Laura Loomer's account; Plaintiffs further fail to allege any actionable facts against CAIR-FL at all. Further, the federal and state courts in Florida lack personal jurisdiction and venue over Plaintiffs' claims.

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................................iii

INTRODUCTION .............................................................................................................................1

PROCEDURAL BACKGROUND ....................................................................................................2

CLAIM BACKGROUND .................................................................................................................2

ARGUMENT ....................................................................................................................................3

I.      Plaintiffs' Claims are All Unactionable under CDA § 230 ....................................................4

II.     Plaintiffs' Tortious Interference Claim (Count II) Must Be Dismissed ................................5

   A.    Defendants Did Not Interfere with Loomer's Relationship with Twitter.............................6

   1.    Twitter Has the Contractual Right to Ban Loomer ..............................................................6

   2.    Twitter Has a Statutory Right to Ban Loomer .....................................................................7

   B.    Defendants Did Not Interfere with Plaintiffs' Relationship with Customers.......................8

   C.    Plaintiffs Do Not Have a Right to Speak on Twitter's Platform ..........................................9

III.    Plaintiffs Have Not Alleged Defendants Entered into an Unlawful Agreement in Restraint of Trade (Count III) ..............................................................................................................................9

   A.    Plaintiffs Have Not Alleged the Purported Unlawful Conduct Required to Comply with a Foreign Boycott ..........................................................................................................................9

   B.    Defendants Are Not Alleged to Have Entered into a Contract............................................10

   C.    Plaintiffs' Allegations are Facially Implausible ................................................................10

   D.    Plaintiffs' Comparable Claims Have Previously Been Rejected ........................................11

   E.    Plaintiffs' Claims Are Preempted by the Communications Decency Act............................11

IV.     Plaintiffs Have Not Alleged Defendants Engaged in a Civil Conspiracy (Count IV) ............11

V.      Plaintiffs Have Not Alleged Defendants Violated Florida's Unfair and Deceptive Trade Practices Act (Count V) .................................................................................................................12

   A.    There Are No Allegations Defendants Injured Any Consumers .........................................12

   B.    Defendants Cannot Be Held Liable for "Aiding and Abetting" Liability.............................14

VI.     The Amended Complaint Must Be Dismissed as to CAIR National for Lack of Personal Jurisdiction .....................................................................................................................................15

VII.    The Amended Complaint Must Be Dismissed as to CAIR-FL For Improper Venue.............16

VIII.   The Court Should Strike the Irrelevant and False Accusations that Litter Plaintiffs' Complaint 16

CONCLUSION................................................................................................................................18

## TABLE OF AUTHORITIES

### Cases

*Abele v. Sawyer*, 750 So. 2d 70, 74 (Fla. 4th DCA 1999) ........................................................... 5, 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................... 10

*Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182 n.7, (11th Cir. 1994) ...................... 11

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102-03, 1107 (9th Cir. 2009) ......................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ................................................................... 3

*Blumberg v. Steve Weiss. & Co.*, 922 So. 2d 361, 364 (Fla. 3d DCA 2006) ................................ 14

*Carafano v. Metrosplash.com., Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) .................................... 4

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) ................................................................................................................... 11

*Cohen v. Facebook, Inc.*, Case 16-cv-5157, 2017 WL 2192621, at *12 (E.D.N.Y. May 18, 2017) ............. 4

*Darnaa, LLC v. Google, Inc.*, 2016 U.S. Dist. LEXIS 152126, at *23 (N.D. Cal. Nov. 2, 2016) ............... 4

*Davis v. Bay Cty. Jail*, 155 So. 3d 1173, 1177 (Fla. 1st DCA 2014) ........................................... 10

*Directory Assistants v. SuperMedia, LLC*, 884 F. Supp. 2d 446, 452 (E.D. Va. 2012) ................. 4

*Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1018 (Fla. 2001) ......................................................... 7

*e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) ........................... 7

*Fladell v. Palm Beach County Canvassing Bd.*, 772 So. 2d 1240, 1242 (Fla. 2000) ...................... 15

*Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 41 n.4 (D.D.C. 2019) ....................... 1, 8

*Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1244 (S.D. Fla. 2012) ............................................. 16

*Golden Needles Knitting & Glove Co. v. Dynamic Mktg. Enterprises, Inc.*, 766 F. Supp. 421, 430 (W.D.N.C. 1991) ..................................................................................................................... 12

*Gollobith v. Ferrell*, 84 So. 3d 1095, 1096 (Fla. 2d DCA 2012) .................................................... 9

*Green v. YouTube*, 18-cv-203, 2019 WL 1428890, at *4 (D.N.H. Mar. 13, 2019) .......................... 8

*Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015) ....................... 7

*Hinkle v. Cirrus Design Corp.*, No. 18-10404, 2019 U.S. App. LEXIS 15340, at *4 (11th Cir. May 23, 2019) ................................................................................................................... 14

*Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1104 (N.D. Cal. 2011) ..................... 8

*Hospital Corp. of America v. Florida Medical Center, Inc.*, 710 So.2d 573, 575 (Fla. 4th DCA 1998) ............ 6

*Hucke v. Kubra Data Transfer Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015) ........................... 12, 14

*In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 693 (Bankr. M.D. Fla. 2010) ................................. 11

*Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1374 (S.D. Fla. 2010) ....................... 12

*Levitt v. Yelp! Inc.*, 10-cv-1321, 2011 WL 13153230, at *9 (N.D. Cal. Mar. 22, 2011) ........................... 8

*McGoey v. State*, 736 So. 2d 31, 34 (Fla. 3d DCA 1999) ................................................................. 9

*Medytox Sols., Inc. v. Investorshub.com, Inc.*, 152 So. 3d 727, 730 (Fla. 4th DCA 2014) ................................ 7

*Mezey v. Twitter, Inc.*, 2018 U.S. Dist. LEXIS 121775, at *2-3 (S.D. Fla. 2018) .......................................... 4

*Myers v. Hodges*, 53 Fla. 197, 209, 44 So. 357, 361 (1907) ............................................................ 16

*One Call Prop. Servs. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015) ............................... 15

*Prescott v. Alejo*, 09-cv-791, 2010 WL 1248289, at *1 (M.D. Fla. Mar. 25, 2010) ................................. 16

*Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997) ............................................................. 11

*Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008) ........................ 13

*Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1323 (M.D. Fla. 2015) .................. 7, 13

*Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1368-69 (S.D. Fla. 2003) ............................................... 14

*S.E.C. v. Lauer*, 03-cv-80612, 2007 WL 1393917, at *2 (S.D. Fla. Apr. 30, 2007) ................................. 16

*Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) .................. 12, 14

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015) ...................... 4

*Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 791-92 (Fla. 2d DCA 2005) ..6

*State v. De Anza Corp.*, 416 So. 2d 1173, 1175 (Fla. 5th DCA 1982) ............................................... 11

*U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc.*, 861 So. 2d 74, 76 (Fla. 4th DCA 2003) .................. 15

*W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999) ......10

*Wallack v. Worldwide Mach. Sales*, 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003) .................................... 14

*Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) .......................................... 3

*Zeran v. America Online*, 129 F.3d 327, 330 (4th Cir. 1997) ....................................................... 4

**Statues & Rules**

47 U.S.C. § 230 ................................................................................................................ 1, 3, 4, 7

Fed. R. Civ. P. 4(e) ...................................................................................................... 14

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 3

Fed. R. Civ. P. 11(b)(1)......................................................................................................16

Fed. R. Civ. P. 11(b)(4)......................................................................................................16

Fed. R. Civ. P. 12.........................................................................................................i, 15

Fla. Stat. § 48.193(1).........................................................................................................14

Fla. Stat. § 501.204(1).......................................................................................................12

Fla. Stat. § 542.43(1)(a)...................................................................................................8, 9

Florida Rule of Professional Conduct 4-3.1......................................................................17

## INTRODUCTION

Plaintiffs' Complaint is entirely premised on Twitter Inc.'s decision to deactivate Laura Loomer's account. Twitter's decision is not actionable under any legal theory. Twitter enjoys absolute immunity for its moderation decisions under the Communications Decency Act ("CDA"), 47 U.S.C. § 230. Plaintiffs are well-familiar with this immunity: earlier this year they lost a different case where Twitter raised the defense. *See Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 41 n.4 (D.D.C. 2019) (dismissing case on non-§ 230 grounds). Plaintiffs already voluntarily dismissed Twitter as a Defendant. All that remains is Plaintiffs' desperate speculation that Twitter may have banned Loomer's account because CAIR Foundation, Inc. asked Twitter to do so.

Plaintiffs only allege three relevant facts against Defendant CAIR Foundation, Inc. First, Plaintiffs allege that CAIR National "is a regular participant in the process by which Twitter decides which content and users to censor or ban from its platform." *See* Amended Complaint (Compl.), Dkt. 1-2 at ¶ 181. Second, Plaintiffs allege Twitter follows CAIR National's instructions. *Id.* at ¶ 183. And third, Plaintiffs allege that when CAIR National "transmitted its instructions to Twitter that Ms. Loomer be banned from the platform, Twitter complied." *Id.* at ¶ 184. That is it. These speculated facts are conclusory, lack specificity, and are outright false. But even assuming their truth, they are not actionable. Twitter has an absolute right to ban Loomer. And CAIR National has the right to encourage that ban.

As to Defendant CAIR Florida, Inc., Plaintiffs allege no facts at all. Plaintiffs' define "CAIR" upfront to collectively refer to both CAIR National and CAIR-FL. Compl. ¶ 9. But CAIR National and CAIR-FL are separate legal entities, and as the rest of the Complaint makes clear, Plaintiffs' allegations are aimed at CAIR National. *See, e.g.,* Compl. ¶¶ 59, 104. No particularized claims regarding CAIR-FL's actions exists. *See* Compl. ¶¶ 105, 106, 110, 186. Even if CAIR National and CAIR-FL did work together, the same flaws CAIR National identifies also bar

Plaintiffs' claims against CAIR-FL. Plaintiffs only named CAIR-FL in this action as a transparent attempt to secure their preferred jurisdiction and venue. *See* Defendant CAIR Foundation, Inc.'s Notice of Removal, Dkt. 1-0. Plaintiffs' action must be dismissed.

## PROCEDURAL BACKGROUND

Plaintiffs Laura Loomer and Illooiminate Media, Inc. filed the operative Complaint in this action on May 3, 2019 in state court. *See* Compl., Dkt. 1-2. Plaintiffs did not serve Defendant CAIR Foundation ("CAIR National") until July 23, 2019. *See Illooiminate Media Inc., et. al., v. CAIR Florida, Inc., et. al.,* Case No. 50-2019-CA-005121-XXXX-MB, Filing No. 93102572 (15th Jud. Circ., FL). Three weeks earlier, Plaintiffs had voluntarily dismissed Defendant Twitter, Inc. from the action. *See id.,* Filing No. 92078763.

Based on the Complaint's fraudulent joinder of CAIR-FL, CAIR National timely removed the action to this Court on the basis of diversity subject-matter jurisdiction. *See* Dkt. 1 (Aug. 22, 2019). The next day, Plaintiffs filed a motion to remand. *See* Dkt. 7. CAIR National's opposition to remand is due on September 13. In parallel, and pursuant to the rules of this Court, CAIR National and CAIR-FL move to dismiss.[1]

## CLAIM BACKGROUND

Plaintiffs filed this action because Twitter banned Plaintiff Laura Loomer from its social media platform. *See* Compl. ¶ 2. Plaintiffs allege that CAIR National instructed Twitter to ban Loomer. *See* Compl. ¶¶ 181-184. Plaintiffs do not allege any details as to who at CAIR National transmitted, or who at Twitter received, that "instruction." Nor do Plaintiffs allege any details as to the date, time, circumstances, or methods of communication. Plaintiffs reference CAIR-FL only for

---

[1] Defendants CAIR National and CAIR-FL are separate entities. They file this motion together only due to this Court's procedures requiring "Multiple Plaintiffs or Defendants shall file joint motions with co-parties unless there are clear conflicts of position." *See* https://www.flsd.uscourts.gov/sites/flsd/files/JudgeRodolfoRuiz-PoliciesandProcedures.pdf.

general background allegations plus legal conclusions that CAIR-FL acted in concert with Twitter related to banning Loomer.  Compl. ¶¶ 10, 59, 204, 225, 228.

Based on those allegations, Plaintiffs assert four state law causes of action against CAIR National and CAIR-FL: tortious interference with an advantageous business relation (Count II), unlawful restraint of trade (Count III), civil conspiracy (Count IV), and unfair trade practices (Count V).  Plaintiffs' breach of contract claim (Count I) died when they dismissed Twitter.

Other than these generalized allegations of conspiracy by CAIR National to get Loomer banned, Plaintiffs spend much of their Complaint alleging that "CAIR is Hamas," is part of the Muslim Brotherhood, supports terrorism, and other frivolous accusations.  Compl. ¶¶ 64-77 and 90-91, 93, 95, 97-100, and 177. Throughout the Complaint, Plaintiffs regularly conflate distinct entities, ascribing, for example, the actions of CAIR-NY, CAIR-San Francisco, and other individuals as somehow related to CAIR National and Plaintiffs' suit.  These allegations are both false and entirely irrelevant.

## ARGUMENT

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Complaints must not be based on speculation and "legal conclusion[s] couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009).  Plaintiffs' Complaint reeks of Islamophobia masquerading as formulaic recitations of state law elements, and therefore must be dismissed.

## I.      PLAINTIFFS' CLAIMS ARE ALL UNACTIONABLE UNDER CDA § 230

In 1996, Congress passed the Communications Decency Act ("CDA"), which establishes that it is the "policy of the United States" to "promote the continued development of the Internet and other interactive computer services and other interactive media" and to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(1)-(2).  Pursuant to that policy, the CDA provides legal immunity to providers of interactive online service for content created by others:  "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

As the Ninth Circuit has explained, "Congress made a policy choice . . . not  to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Carafano v. Metrosplash.com., Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (quoting *Zeran v. America Online*, 129 F.3d 327, 330 (4th Cir. 1997)). The CDA enables internet companies like Twitter to moderate the content on their platforms by insulating them from liability for their moderation decisions. *See* 47 U.S.C. § 230(c)(2)(A).  "[J]udicial decisions in the area consistently stress that decisions as to whether existing content should be removed from a website fall within the[ir] editorial prerogative." *Cohen v. Facebook, Inc.*, Case 16-cv-5157, 2017 WL 2192621, at *12 (E.D.N.Y. May 18, 2017).

The CDA expressly preempts inconsistent state law, entirely insulating internet providers from liability on state-law claims. 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."). All state law claims premised on treating an internet provider as the publisher or speaker of third-party content on its platform are categorically barred. *See generally, e.g., Barnes v. Yahoo!, Inc.*, 570 F.3d 1096,

4

1102-03, 1107 (9th Cir. 2009); *Darnaa, LLC v. Google, Inc.*, 2016 U.S. Dist. LEXIS 152126, at *23 (N.D. Cal. Nov. 2, 2016); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015); *Directory Assistants v. SuperMedia, LLC*, 884 F. Supp. 2d 446, 452 (E.D. Va. 2012).

As recently summarized by this Court: "The CDA bars a plaintiff's claim when (1) defendant is a provider or user of an interactive computer service; (2) the relevant content contains information provided by another information content provider; and (3) the complaint seeks to hold defendant liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Mezey v. Twitter, Inc.*, 2018 U.S. Dist. LEXIS 121775, at *2-3 (S.D. Fla. 2018). Applying that analysis, the Court recognized that Twitter's decisions to remove content and accounts were entirely immune from liability. *Id.*

Plaintiffs seek a run around from Twitter's CDA immunity by dismissing Twitter as a defendant and then alleging that Defendants CAIR National and CAIR-FL should somehow be held responsible for Twitter's moderation decision. This theory is unworkable. Because every claim against CAIR National and CAIR-FL is premised on Twitter's action in deactivating Plaintiff Loomer's account, the Amended Complaint fails as a matter of law. Every count in this action must be dismissed.

## II.    PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM (COUNT II) MUST BE DISMISSED

Plaintiffs first cause of action against Defendants is a claim for tortious interference with an advantageous business relationship. Count II. "A cause of action for tortious interference with an advantageous business relationship requires the following four elements: (1) the existence of a business relationship under which the plaintiff has legal rights, (2) knowledge of the relationship by the defendant, (3) an intentional and unjustified interference with the relationship by the defendant, and (4) damages to the plaintiff as a result of the breach of the relationship." *Abele v. Sawyer*, 750 So. 2d 70, 74 (Fla. 4th DCA 1999).

The only allegation relevant to this case against Defendants is that CAIR National supposedly instructed Twitter to terminate Loomer's account. *See* Compl. ¶¶ 181, 183-84. There are no supportable allegations or facts regarding CAIR-FL in this count. This is not tortious interference.

### A. Defendants Did Not Interfere with Loomer's Relationship with Twitter

#### 1. Twitter Has the Contractual Right to Ban Loomer

In order to show that Defendants' non-specific "instruction" to ban Loomer constitutes improper/unjustified conduct that interfered with Loomer's relationship with Twitter, Plaintiffs must show that Defendants' interference was with Plaintiffs' legal rights under their contract with Twitter. *See* Exhibit A, Twitter Terms of Service, Compl. ¶ 197-99. *Abele*, 750 So. 2d at 74. According to the Amended Complaint, Twitter breached its contract with Loomer by banning her. Compl. ¶¶ 196-200. To the extent Plaintiffs are alleging tortious interference based on the breach of that agreement, *see* Compl. ¶ 203 ("Defendants were aware of the importance of Twitter to plaintiffs' economic expectancies and relationships to Ms. Loomer and Illoominate"), Plaintiffs must establish the breach. But Plaintiffs do not attach the Contract, but do expressly cite to the Terms and therefore are incorporated by reference. So Plaintiffs provide no explanation as to what term or clause of the contract Twitter supposedly breached.

Had Plaintiffs attached Twitter's Terms of Services, Plaintiffs' claims would fall apart. *See* Exhibit A, Twitter Terms of Service, https://twitter.com/en/tos. These Terms form the Contract with Loomer and other users, *see* Compl. ¶¶ 197-99. The plain language of the Terms of Service gives the right to Twitter to ban Loomer for any reason or for no reason at all. *See* Terms of Service § 4, Ending These Terms ("We may suspend or terminate your account or cease providing you with all or part of the Services at any time for any or no reason….").

Plaintiffs do not allege breach of any specific contractual term, but only that Twitter breached "the covenant of good faith and fair dealing implied as a matter of law in the Terms of Service" by "banning her account." Compl. ¶ 199. Again, the lack of asserting the language in the contract governing Twitter's right to ban Loomer is fatal.  This is because, under Florida law, the "duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Hospital Corp. of America v. Florida Medical Center, Inc.*, 710 So.2d 573, 575 (Fla. 4th DCA 1998). Again, had Plaintiffs attached the Terms of Service, it would only further show how their contract claim is fatally flawed. The alleged breach is inconsistent with the express terms of the Terms of Service. There can be no implied duty contrary to the express terms.  *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 791-92 (Fla. 2d DCA 2005).  Without the breach of contract (including any breach of good faith and fair dealing), Defendants could have done nothing "unjustified" to interfere with that contract had it "instructed" that banning.

2. <u>Twitter Has a Statutory Right to Ban Loomer</u>

In any event, as stated earlier, Section 230 of the Communications Decency Act entirely insulates service providers such as Twitter from any liability under state law. 47 U.S.C. § 230(e)(3); *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1018 (Fla. 2001); *Medytox Sols., Inc. v. Investorshub.com, Inc.*, 152 So. 3d 727, 730 (Fla. 4th DCA 2014); *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1323 (M.D. Fla. 2015).

The only potential reason Section 230(c) would not apply is because Plaintiffs allege Twitter somehow acted in 'bad faith."  Compl. ¶ 199.  But alleging "bad faith" by use of magic words is not enough.  *See, e.g., Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015) (affirming dismissal of complaint that with conclusory allegations of "bad faith").  Section 230(c)

protects any action against a service provider where the service provider in "good faith … considers" the material to be "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2)(A).  Plaintiffs' complaint makes it clear Twitter does, in fact, believe that Loomer's tweets were objectionable, if only because Twitter believes criticism against Islam to be objectionable.  Compl. ¶¶ 164-69. As Plaintiffs' Amended Complaint asserts, Twitter supposedly has a "commitment" to "partial Sharia compliance." Compl. ¶ 132.  That compliance would lead to Twitter believing (in good faith) that Loomer's Islamophobic tweets were objectionable. *See Id.*  Indeed, Loomer makes clear that Twitter's alleged support for Islam, *id.* at ¶¶ 137, 185, along with the "objectionable" nature of Loomer's criticisms Congresswomen Tlaib and Omar, *id.* at ¶ 186, were the reasons Twitter banned Loomer.

Yes, Loomer alleges that she is subject to a double-standard, but this is of no moment. An allegation of disparate treatment is not sufficient to allege bad faith. *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008).  Instead, Plaintiffs must allege Defendants had a reason for targeting Loomer *not* related to Loomer's Islamophobic content.  *See Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1104 (N.D. Cal. 2011).  And that non-content reason must be plausible and not speculative. *Levitt v. Yelp! Inc.*, 10-cv-1321, 2011 WL 13153230, at *9 (N.D. Cal. Mar. 22, 2011); *see also Holomaxx*, 783 F. Supp. 2d at 1105.  Loomer's own allegations make clear that Twitter's banishment and any encouraging action by Defendants were expressly on the basis of Loomer's content.

### B.    Defendants Did Not Interfere with Plaintiffs' Relationship with Customers

Alternatively, Plaintiffs' Amended Complaint may be alleging interference between Loomer's relationship with her own "fans and readers" and "donors" and other large groups of unidentified non-parties.  Compl. ¶ 205.  But Plaintiffs have not shown that either CAIR National or CAIR-FL was aware of any Loomer-fan relationship or that CAIR intentionally interfered with that

relationship.  And, for the reasons explained in Sections A(1)-(2), above, because Twitter had an absolute right to ban Loomer, Plaintiffs cannot allege anything improper with either Twitter banning Loomer or Defendants "instructing" Twitter to do so.  *Abele*, 750 So. 2d at 74.  And again, Plaintiffs allege no details regarding who, how, or when such an "instruction" occurred.

### C.       Plaintiffs Do Not Have a Right to Speak on Twitter's Platform

Plaintiffs' claim, at heart, is that Loomer has a right to a platform on Twitter. *See* Compl. ¶¶ 60, 181, 184, 187, 215, 224.  She does not. There is no First Amendment right to use another's private property as a forum for one's speech. *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40-41 (D.D.C. 2019); *Green v. YouTube*, 18-cv-203, 2019 WL 1428890, at *4 (D.N.H. Mar. 13, 2019), *report and recommendation adopted*, 2019 WL 1428311 (Mar. 29, 2019). And Loomer has no contractual rights against Twitter either.  *See* Section A(1), above. Plaintiffs' tortious interference claims should be dismissed.

### III.     PLAINTIFFS HAVE NOT ALLEGED DEFENDANTS ENTERED INTO AN UNLAWFUL AGREEMENT IN RESTRAINT OF TRADE (COUNT III)

Plaintiffs next allege that Defendants entered into an unlawful agreement in restraint of trade. Count III. The basis of their allegation is that an agreement not to do business with Loomer is that Fla. Stat. § 542.43(1)(a) makes it unlawful to "enter into any contract …. [w]hich requires such person to discriminate against" another "on the basis of a person's lawful business associations, in order to comply with, further, or support a foreign boycott or embargo imposed by a nation other than the United States." *See* Compl. ¶ 211.

### A. Plaintiffs Have Not Alleged the Purported Unlawful Conduct Required to Comply with a Foreign Boycott

Despite making a hopeful reference to Loomer's activism being a threat to the "Boycott, Divestment, Sanctions ('BDS') Movement," Compl at ¶ 212, Plaintiffs do not allege CAIR National, CAIR FL, or Twitter took any action "on the basis of a person's lawful business associations" as

required to "comply with" a boycott of Israel.  Plaintiffs do not allege Loomer is Israeli, lives in Israel, is a citizen of Israel, or has any "business associations" which would subject her to being brought within a boycott of Israel, or, indeed any other kind of boycott. Instead, Plaintiffs simply allege Loomer is being targeted for her Islamophobic activism, which, as preposterous as those allegations are, would not fall under Florida Stat. § 542.43 even if true.

### B.  Defendants Are Not Alleged to Have Entered into a Contract

Plaintiffs do not allege that either CAIR National or CAIR-FL entered into any "contract," as required by Fla. Stat. § 542.43(1)(a). For there to be a contract, CAIR must agree to do something. An agreement, after all, is a "mutual" exchange of promises.  *McGoey v. State*, 736 So. 2d 31, 34 (Fla. 3d DCA. 1999); *see also Gollobith v. Ferrell,* 84 So. 3d 1095, 1096 (Fla. 2d DCA 2012) (no contract formed without providing future consideration in return).  And Defendants are not alleged to have promised anything to Twitter, nor to each other.

### C.  Plaintiffs' Allegations are Facially Implausible

Plaintiffs' scant factual allegations are not even plausible. The only reason Plaintiffs give in the Amended Complaint for Twitter being at CAIR National's beck and call is that Saudi Prince Alwaleed Bin Talal Bin Abdulazis Alsaud has invested $300 million in Twitter. Dkt. 1-2, Compl. at ¶ 135.  But Saudi Arabia and Qatar are not allies.  Rather, Saudi Arabia is a regional rival of Qatar who has been blockading Qarati ports and airspace since June 2017. Claiming that Twitter would do anything because CAIR National is an agent of Qatar and Twitter has a Saudi royal investor is islamophobia.

Plaintiffs provide no specific allegations of a conspiracy between Twitter, CAIR National, CAIR-FL and Qatar, and Plaintiffs' general allegations of such a conspiracy are implausible. These allegations need not be accepted as true. *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999).   The conclusory allegations of a legal conspiracy are

insufficient to show the factual predicate for the actual existence of a conspiracy. *Davis v. Bay Cty. Jail*, 155 So. 3d 1173, 1177 (Fla. 1st DCA 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). They are certainly not enough to show a conspiracy to ban Loomer because of Qatar's purported commitment to a boycott of Israel.

Plaintiffs' conspiracy is based entirely on threadbare allegations that Twitter is subservient to a Saudi Arabian investor, and thus Qatar, Saudi Arabia's enemy, presumably because both are majority-Muslim countries. The Court should reject this Islamophobia disguising itself as some sort of logical association.

### D.  Plaintiffs' Comparable Claims Have Previously Been Rejected

Faced with a similar restraint of trade claim by Plaintiff Loomer against Twitter and other technology companies earlier this year, the District Court for the District of Columbia wholesale rejected it. The Court there recognized that Plaintiff Loomers' repeated allegations about "conspiracy" or "illegal agreements" were nothing more than conclusory statements devoid of facts. *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 37 (D.D.C. 2019). Both there and here, Plaintiffs fail to plead enough specific factual paper to even suggest that an agreement between Twitter and Defendants has ever been made. *See id.*

### E.  Plaintiffs' Claims Are Preempted by the Communications Decency Act

For the same reasons Plaintiffs' tort claims are preempted by the Communications Decency Act, *see* § II(A)(2), above, Plaintiffs' restraint of trade claims are also preempted.

## IV.   PLAINTIFFS HAVE NOT ALLEGED DEFENDANTS ENGAGED IN A CIVIL CONSPIRACY (COUNT IV)

Plaintiffs' civil conspiracy claims (Count IV) must fail for much the same reason as its restraint of trade claim. *See Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997) (showing elements).

Plaintiffs cannot show an agreement for the same reason explained in Section IV, above. Plaintiffs do not allege any facts which constitute unlawful conduct. Defendants' supposed instruction to Twitter to ban Loomer is neither an agreement nor illegal in any way.  And Section 230 of the Communications Decency Act provides Twitter with an absolute right to ban Loomer in any event.  Her banning thus cannot give rise to liability.

## V.      PLAINTIFFS HAVE NOT ALLEGED DEFENDANTS VIOLATED FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (COUNT V)

### A.  There Are No Allegations Defendants Injured Any Consumers

Loomer alleges a consumer protection claim.  Count V. But there is no harm alleged against any "consumers."  Although the Florida unfair trade laws no longer only allow a consumer to bring a cause of action, any party who does bring an unfair trade practice claim must establish an injury to consumers.  *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015). And here, there are no injuries to consumers alleged.

Similarly, the FDUTPA only applies to consumer transactions. *State v. De Anza Corp.*, 416 So. 2d 1173, 1175 (Fla. 5th DCA 1982); *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 693 (Bankr. M.D. Fla. 2010) ("the FDUTPA has no application to entities complaining of tortious conduct which is not the result of a consumer transaction"); *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182 n.7 (11th Cir. 1994); *Golden Needles Knitting & Glove Co. v. Dynamic Mktg. Enterprises, Inc.*, 766 F. Supp. 421, 430 (W.D.N.C. 1991) (interpreting Florida law).   Loomer and Illoominati are, by their own allegations, not acting as consumers. Compl. ¶¶ 60, 202-03, 205, 215. And there is no allegation that CAIR was taking any acting "in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1); *see also id.* at § 501.203(8) (defining trade or commerce as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever

situated"); *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1374 (S.D. Fla. 2010) (sending a demand letter does not constitute "trade or commerce").

Plaintiffs may claim that Loomer's and Illoominati's consumers were somehow injured by their ability to hear what Loomer has to say. *But see* Section III(C), above (Plaintiffs do not have any right to a platform). Regardless of whether that is sufficient to raise a claim against Twitter if the claim was otherwise plausible (which, as explained below in Section B, it is not), it would not be enough to raise a claim against Defendants. Plaintiffs' customers are not Defendants' customers, even indirectly.

Finally, even if Loomer could bring a claim for an unfair trade practice, she does not actually allege any unfair trade practice. Again, the only relevant allegation Loomer makes against Defendants is that CAIR National "instructed" Twitter to ban Loomer. That "instruction" allegation is entirely conclusory and lacks and factual specificity. But as described above, even if such an instruction occurred, Twitter had an absolute right to do so. So there is nothing deceptive or unfair about CAIR "instructing" Twitter to do so. *See Hucke v. Kubra Data Transfer Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015) (explaining that FDUTPA claims are generally based on a violation of another law that proscribes trade practices). It is instead conduct absolutely protected by the First Amendment. *See* § II(A)(3), above; *see also Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) ("unfair practice" is one that "offends established public policy" and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"). And even if Defendants' request was otherwise unfair under the FDUTPA, such a claim would be preempted by the Consumer Decency Act. *See* § II(A)(2), above; *Roca Labs*, 140 F. Supp. at 1323 (Communications Decency Act applies to FDUTPA claims).

If Plaintiffs' unfair trade practices claim can proceed merely because they do not like a particular action that Defendants, separate nonprofit entities, purportedly took, and label that

conduct immoral, unethical, oppressive, or unscrupulous, then any claim brought by anyone against any other entity for violation of the Florida Deceptive and Unfair Trade Practices Act must survive a motion to dismiss.  The legislature could not have intended such floodgates to open.

### B.  Defendants Cannot Be Held Liable for "Aiding and Abetting" Liability

Plaintiffs allege that Twitter violated the unfair trade practices law, and that "CAIR and CAIR Florida have acted in concert with or otherwise proximately caused or induced or Twitter to cause the foregoing harm." Compl. ¶ 228.  So, Plaintiffs apparently argue, even if Defendants have not violated the FDUPTA, Twitter has, and Defendants can be held liable for Twitter's violation. There is no aiding-and-abetting liability described in the FDUPTA.  And, in any event, Plainitffs' allegations against Twitter do not rise to a violation of the FDUPTA.

The only conduct that Plaintiffs allege Twitter committed is "fraudulently and in bad faith induc[ing] Ms. Loomer to enter into the Twitter TOS" and then banning her. Compl. ¶¶ 221-224. This is the same conduct that was supposedly a breach of contract. Compl. ¶¶ 196-199.

The breaching of a contract in and of itself is not "unfair" under the FDUTPA. *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008). And to the extent Plaintiffs allege that Twitter acted improperly by inducing Loomer to enter into the Twitter TOS based on representations at variance with their terms, Plaintiffs' claims must again fail because they fail to allege contractual language that would vary from what Twitter actually did. And again, had Plaintiffs attached the contract, it would have shown that Twitter reserved the right to ban Loomer for any reason or none at all, *see* § II(A)(1), above.  Any expectation by Loomer in maintaining her account is thus "at variance with the written documents" and thus "not reasonable as a matter of law." *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1368-69 (S.D. Fla. 2003).

In addition, as explained in detail above, Twitter had an absolute right under Section 230 of the Communications Decency Act to ban Loomer.  *See* § II(A)(2), above. So banning Loomer

cannot be "unfair" under the FDUTPA at all.  *Samuels*, 782 So. 2d at 499; *Hucke*, 160 F. Supp. 3d at 1328.

## VI.   THE AMENDED COMPLAINT MUST BE DISMISSED AS TO CAIR NATIONAL FOR LACK OF PERSONAL JURISDICTION

CAIR National, a District of Columbia nonprofit headquartered in the District of Columbia, is not subject to personal jurisdiction in Florida under Fla. Stat. § 48.193.  CAIR National does not operate or conduct any business in Florida, nor does it have an office in Florida.  Rather, a separate entity, CAIR-FL, operates in Florida.  To the limited extent CAIR National has some limited connections with Florida, those neither give rise to Plaintiffs' state law causes of action nor constitute general personal jurisdiction.  *See, e.g., Wallack v. Worldwide Mach. Sales*, 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003).

Nor is CAIR National subject to specific jurisdiction in Florida.  *See* Fed. R. Civ. P. 4(e).  Under the specific jurisdiction section of the Florida long-arm statute, a Defendant must have committed one or more of nine specific and enumerated Florida-connected acts related to the claims asserted. *See* Fla. Stat. § 48.193(1); *Hinkle v. Cirrus Design Corp.*, No. 18-10404, 2019 U.S. App. LEXIS 15340, at *4 (11th Cir. May 23, 2019).  The Complaint only alleges that CAIR National has committed acts in Florida, without the requisite specificity. "[I]t is not [] enough that the actions of a defendant committed outside of Florida ultimately have consequences in Florida." *Blumberg v. Steve Weiss. & Co.*, 922 So. 2d 361, 364 (Fla. 3d DCA 2006). *Accord Hinkle*, 2019 U.S. App. LEXIS 15340 at *9. Further, "General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation."

Plaintiffs do not allege that CAIR National committed a tortious act within its state.  All CAIR National is alleged to have done is instructed Twitter (a California company) to ban Loomer from its website. Although Plaintiffs allege that CAIR National caused them injuries, and Plaintiffs are Florida citizens, Plaintiffs do not allege CAIR National injured them while soliciting any services

or activities in Florida, or based on any products, materials "processed, serviced, or manufactured by" CAIR National.  There is no personal jurisdiction over CAIR National under Florida's longarm statute.

## VII.  THE AMENDED COMPLAINT MUST BE DISMISSED AS TO CAIR-FL FOR IMPROPER VENUE

Plaintiffs expressly reference Twitters' Terms of Service in their Complaint, thus incorporating them by reference.  *E.g. One Call Prop. Servs. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015); *U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc.*, 861 So. 2d 74, 76 (Fla. 4th DCA 2003). Twitter's actual, incorporated Terms take precedence over inconsistent pleadings in the complaint. *Fladell v. Palm Beach County Canvassing Bd.*, 772 So. 2d 1240, 1242 (Fla. 2000) ("If an exhibit negates the cause of action asserted, the document attached as an exhibit controls).  Those Twitter Terms of Service clearly state: "All disputes related to these Terms of the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum."  *See* Exhibit A.  Since Plaintiffs' entire case relates to Twitters' Terms, this is not the correct venue.  Plaintiffs' voluntary dismissal of Twitter from this matter does not relieve Plaintiff of the force of this contractual provision.

Defendant CAIR-FL requests that all counts be dismissed as they all directly rely on the Twitter Terms of Use.

## VIII.  THE COURT SHOULD STRIKE THE IRRELEVANT AND FALSE ACCUSATIONS THAT LITTER PLAINTIFFS' COMPLAINT

Under Federal Rule of Civil Procedure 12(f)(2), the Court may strike "redundant, immaterial, impertinent, or scandalous matter" from any pleading at any time.  Allegations should be stricken when they "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court."  *S.E.C. v. Lauer*, 03-cv-80612, 2007

WL 1393917, at *2 (S.D. Fla. Apr. 30, 2007) (quoting 2 Moore's Federal Practice § 12.37[3] at 12-97). Allegations that are "prejudicial or completely irrelevant" qualify.  *Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1244 (S.D. Fla. 2012) (citation omitted).

As explained in the background section, the only relevant allegations about CAIR National are that CAIR National is a regular participant in the process by which Twitter decides which content and users to censor or ban from its platform," Compl. at ¶ 181, that Twitter follows instructions from CAIR National, *id.* at ¶ 183, and so when CAIR National "transmitted its instructions to Twitter that Ms. Loomer be banned from the platform, Twitter complied," *id.* at ¶ 184.  Of course, Plaintiffs never allege when, how, or to whom such instructions occurred.

The rest of the allegations, regarding CAIR National's supposed support of terrorism and fictional relationships to Hamas, the Muslim Brotherhood, and Qatar should all be stricken.  *Id.* ¶¶ 64-77 and 90-91, 93, 95, 97-100, and 177. So should every instance of the defamatory and irrelevant phrase "CAIR/Hamas."

These are not allegations related to the Complaint.  They are just acts of political defamation, hiding behind the thin veneer of immunity for statements made in judicial proceedings.  *Myers v. Hodges*, 53 Fla. 197, 209, 44 So. 357, 361 (1907).[2]  They are as devoid of basis and wholly unrelated to the legal claims, and instead are designed solely to harass or injure.   They are thus sanctionable under Federal Rule of Civil Procedure 11.  *See* Fed. R. Civ. P. 11(b)(1) (pleading may not be "presented for any improper purpose, such as to harass"); Fed. R. Civ. P. 11(b)(4) (attorney must, after a reasonable inquiry, believe that "the factual contentions have evidentiary support"); *Prescott v. Alejo*, 09-cv-791, 2010 WL 1248289, at *1 (M.D. Fla. Mar. 25, 2010) ("Rule 11 requires district courts to impose appropriate sanctions, after notice and a reasonable opportunity to respond where an attorney or party submits a pleading to the court that: (1) is not well-grounded in fact and therefore

---

[2]  Defamatory and irrelevant are not covered by the judicial proceedings privilege. *Myers*, 53 Fla. at 209.

has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose") (citation omitted). It also constitutes misconduct on behalf of Plaintiffs' attorneys. *See* Florida Rule of Professional Conduct 4-3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous").

While Defendants do not seek sanctions under Rule 11(c)(2) at this time, these harassing, irrelevant accusations should be stricken.

## CONCLUSION

Plaintiffs' Amended Complaint against Defendants CAIR Foundation and CAIR Florida, Inc. must be dismissed with prejudice.

Dated:   August 29, 2018

By: */s/ Darren Spielman*
Darren Spielman (FL Bar 010868)
Dspielman@ComplexIP.com
Kain Spielman, P.A.
900 S.E. 3rd Ave. Suite 205
Ft. Lauderdale, FL
Tel: (954) 768-9002; Fax: (954) 768-0158

*Attorneys for Defendant CAIR-FL*

INTERNATIONAL LAW PARTNERS LLP
YASIR BILLOO (FL: 718351)
2122 Hollywood Blvd.
Hollywood, FL 33020
Phone: (954) 374-7722
Fax: (954) 212-0170
ybilloo@ilp.law
zkhanani@ilp.law

CAIR LEGAL DEFENSE FUND
LEFA F. MASRI (DC: 1000019)*
JUSTIN M. SADOWSKY (DC: 977642)*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420
ldf@cair.com

*Pro hac vice motions forthcoming*

18

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on August 29, 2019 a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel in the below Service List by email and via transmission of Notices of Electronic Filing generated by CM/ECF.

Steven W. Teppler
MANDELBAUM SALSBURG PC
11891 US Highway One, Suite 100
North Palm Beach, FL 33408
202-253-5670
steppler@lawfirm.ms

Ronald D. Coleman (Pro Hac Vice)
MANDELBAUM SALSBURG PC
1270 Avenue of the Americas
Suite 1808
New York, NY 10020
212-776-1834
rcoleman@lawfirm.ms

Lauren X. Topelsohn
MANDELBAUM SALSBURG PC
3 Becker Farm Road
Roseland, NJ 07068
ltopelsohn@lawfirm.ms

YASIR BILLOO (FL: 718351)
INTERNATIONAL LAW PARTNERS LLP
2122 Hollywood Blvd.
Hollywood, FL 33020
Phone: (954) 374-7722
Fax: (954) 212-0170
ybilloo@ilp.law
zkhanani@ilp.law
CAIR LEGAL DEFENSE FUND

LEFA F. MASRI (DC: 1000019)*
JUSTIN SADOWSKY (DC: 977642)*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420
ldf@cair.com
*Pro hac vice motions forthcoming