**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH COUNTY DIVISION**

| | |
|---|---|
| **ILLOOMINATE MEDIA, INC.**, *et al*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **CAIR FLORIDA, INC.**, *et al*, ) <br> ) <br> ) <br> Defendants. ) | **Case No. 9:19-cv-81179-RAR** |

___

### CAIR FOUNDATION'S OPPOSITION TO MOTION TO REMAND

Defendant CAIR Foundation opposes Plaintiffs' Motion to Remand (Dkt. 7).

Plaintiffs' Motion does not challenge either the amount in controversy requirement of 28 U.S.C. § 1332 or that complete diversity exists in this case but for the presence of CAIR-Florida. The only question, therefore, is whether CAIR Florida was fraudulently joined. The answer to that is yes.

This case involves one core allegation: that CAIR Foundation "instructed" Twitter to ban Laura Loomer. Putting aside whether such an allegation gives rise to any liability—it does not, *see* Dkt. 11—this is not an allegation against CAIR-Florida. Instead, the Amended Complaint alleges only speculative legal conclusions, and no actual facts, that CAIR-Florida was involved in this action. As this brief and the prior-filed Motion to Dismiss both explain, such conclusory allegations are insufficient to establish even an arguable claim against CAIR-Florida.

1

CAIR Foundation can further "pierce the pleadings" and show that Loomer has not even an unsubstantiated basis to believe there was a claim against CAIR-Florida. *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 02-cv-60703, 2002 WL 33928919, at *2 (S.D. Fla. Oct. 15, 2002). Instead, as the attached affidavits explain, Plaintiffs' belief that CAIR Foundation had anything to do with her being banned from Twitter is based on a political prank pulled by people with no connection or involvement from CAIR Foundation. Yet those people—who Loomer has admitted are the only private source of any belief in her bizarre conspiracy allegations—said not a word implicating CAIR-Florida in any wrongdoing. CAIR Foundation has confirmatory affidavits from its Communications Director and from CAIR-Florida's Executive and Communications Directors, as well as a declaration from its own Communications Director, further confirming not even the hint of involvement of CAIR-Florida in any conspiracy.

This is classic fraudulent joinder. Plaintiffs have a weak case against CAIR Foundation and seek to keep in state court. They have attempted to do so by finding an uninvolved non-diverse third party and naming it as a defendant with nothing other than speculative and conclusory allegations that the non-diverse party must somehow be involved.

## BACKGROUND

### A. Nathan Bernard and Chris Gillen Prank Laura Loomer and Get Her to Believe CAIR Had Twitter Ban Her

The whole genesis of this lawsuit started out as a prank. *See* Jared Holt, *Did the Wall Street Journal Fall for a Prank Directed at Laura Loomer?*, RIGHT WING WATCH (Jan. 15, 2019) ("Holt Article") (Appended to Exhibit A, Affidavit of Nathan

2

Bernard);[1] *see also* Bernard Affidavit at ¶¶ 4-5 (attesting to and adopting all facts described in the Holt Article as true based on Bernard's personal knowledge of the events); *id.* at ¶¶ 7-9 (authenticating all communications contained in the Article).[2] Two pranksters, Nathan Bernard and Chris Gillen, reached out to Loomer pretending to be Twitter employees and described an unbelievable conspiracy. Holt Article. Bernard and Gillen "play[ed] off [Loomer's] anti-Muslim attitudes and convince[d] her that Muslim groups were directly responsible for her suspension." *Id.* The focal point of that conspiracy was "a fabricated appointment calendar they said showed Twitter CEO Jack Dorsey's schedule, and it included a notation for a meeting with CAIR on a date just days before Loomer's suspension from the platform." *Id.*

In fairness to Loomer, she was not the only one who fell for the prank. Loomer reported what she believed was whistleblowing to the Wall Street Journal, who reported her story credulously. Kirsten Grind and John D. McKinnon, *Facebook, Twitter Turn to Right-Leaning Groups to Help Referee Political Speech*, THE WALL STREET JOURNAL (Jan. 8, 2019) (Exhibit B).[3] The Wall Street Journal's only source of "confirmation" from the story came from what Wall Street Journal reported was CAIR Foundation's executive director Zahra Billoo. *Id.* But as the Amended Complaint itself concedes, she actually works for CAIR-California, a separate entity. Amended

---

[1] Also Available at https://www.rightwingwatch.org/post/did-the-wall-street-journal-fall-for-a-prank-directed-at-laura-loomer/

[2] Because Bernard adopts the statements based on his direct involvement and personal knowledge, his assertions are not hearsay, and Loomer's own statements, as a party in this case, are also not hearsay. *See* Fed. R. Evid. 801(d)(1)(B) and (d)(2).

[3] CAIR Foundation is not citing the Wall Street Journal article for the truthfulness of its contents (after all, the contents are all a lie). *See* Fed. R. Evid. 801(c)(2).

3

Complaint at ¶ 171. (Although not relevant to this motion, Billoo merely "confirm[ed]" she used the Report a Tweet function to report one of Loomer's Islamophobic tweets. *See* Holt Article.)

The pranksters blamed CAIR for Loomer's banning, but not CAIR-Florida. They never involved CAIR-Florida (or any other chapter of CAIR) as being part of the conspiracy. Bernard Affidavit at ¶ 11. And, as the Holt Article goes on to further explain, Loomer admitted that she had no other grounds for believing this wild conspiracy story other than the prankster. *See* Holt Article ("Q: Was the CAIR story in the WSJ you or did they just get a comment from you? I hope it was you, I don't want someone else to beat us to this story. I mainly just want to be sure there's not another leaker inside twitter trying to go around me.  A: I don't think there's another leak.  CAIR admitted it too."); *see also* Bernard Affidavit at ¶ 10.

So Loomer has no factual basis to believe CAIR-Florida did anything.

### B. CAIR-Florida Had Nothing to Do with This Supposed Scheme

CAIR-Florida's lack of involvement with these shenanigans is further confirmed by additional affidavits. CAIR's Executive Director, Hassan Shibly, and Communications Director, Wilfredo Ruiz, had not discussed Loomer with CAIR Foundation or with Twitter prior to the filing of this case. *See* Affidavit of Hassan Shibly (Exhibit C) at ¶¶ 5 and 9; Affidavit of Wilfredo Ruiz (Exhibit D) at ¶¶ 6 and 9. Nor do they have knowledge of any other CAIR-Florida employee doing so. Shibly Affidavit at ¶¶ 7 and 10; Ruiz Affidavit at ¶¶ 7 and 10. And nobody would have the authority to discuss taking any action against a public figure such as Loomer on

4

CAIR-Florida's behalf without their permission. Shibly Affidavit at ¶ 8; Ruiz Affidavit at ¶ 8. Further, to play it safe, CAIR-Florida has canvassed its employees to see if anyone had discussed Loomer with anyone at CAIR Foundation or Twitter prior to the filing of this lawsuit. Shibly Affidavit at ¶¶ 7 and 10; Ruiz Affidavit at ¶¶ 7 and 10. As expected, any accusations of conspiracy lack any connection to reality.

In a declaration,[4] Communications Director, Ibrahim Hooper confirms the lack of CAIR-Florida involvement. Affidavit of Ibrahim Hooper (Exhibit E) ¶ 2. As Hooper's affidavit indicates, anyone trying to "act in concert" with CAIR Foundation to communicate with a media website such as Twitter would have to go through him. *Id.* ¶¶ 3-6. Of course, since the allegations are based on a fictitious prank, no such communications occurred from anyone. *Id.* ¶ 7. That, of course, includes CAIR-Florida. *Id.* ¶ 6.

In any event, Plaintiffs themselves concede they have no factual basis for believing in CAIR-Florida's involvement in their own motion. Rather than point to any reason for believing that CAIR-Florida had anything to do with Twitter banning Loomer, Plaintiffs admit they have nothing but speculation. *See* Dkt. 7 at 3 ("Plaintiffs are not yet privy to the communications between CAIR Foundation and CAIR-Florida.").

---

[4] Hooper was unable to reach a notary in time but will file an affidavit next week if the Court requests confirming his statements. *See* Hooper Declaration ¶ 9.

5

### C. Plaintiffs' Amended Complaint against CAIR-Florida Contains only Speculative Legal Conclusions

The only time CAIR-Florida is even discussed in Plaintiffs' Amended Complaint's factual allegations (that is, other than the description of the Parties and the listing of Counts that refers to Defendants collectively) are as follows:

> Para. 9: Rather than being the result of a [Terms of Service] violation, Ms. Loomer's ban from Twitter was, upon information and belief, proximately caused by defendants CAIR Florida, organization [sic] the Federal Bureau of Investigation has identified as the U.S. "face" of the Mideast terrorist group Hamas, and CAIR National (collectively, "CAIR" or "CAIR / Hamas").

> Para. 59: Notwithstanding the foregoing, in late November of 2018, Twitter permanently banned Ms. Loomer from Twitter per the instruction of defendant CAIR, and on information and belief, in concert with defendant CAIR Florida, using her tweet about Rep. Omar as a pretext.

> Para. 104: CAIR/Hamas has chapters thought the U.S., including South Florida, where defendant CAIR Florida is based.

> Paragraph 105: Because of her reporting activism on issues relating to terrorism and the State of Israel, Ms. Loomer, a resident of Palm Beach County, has been a thorn in the side of CAIR National, and of CAIR Florida in particular.

> Para. 106: For example, in March of 2018 CAIR Florida prevented Ms. Loomer from attending, as a journalist, observer or otherwise, the trial of Noor Salman, who was accused of assisting her husband, Pulse Nightclub Omar Mateen, with planning and executing mass murder in the name of ISIS.

> Para: 110, That same month, Ms. Loomer again incurred the wrath of CAIR Florida because of her support of Hallandale Beach Commissioner Anabelle Lima-Taub in her opposition to another Muslim elected to Congress, Michigan Rep. Rashida Tlaib.

> Para.: 186: Rather, Ms. Loomer was banned, on information and belief, above all because Twitter and CAIR, and on information and belief Qatar, targeted her because of her past run-ins with CAIR Florida and because her strident criticism of CAIR's "favorite daughters"….

6

Paragraph 9 attempts to conflate CAIR Foundation and CAIR-Florida, two separate entities. The rest of the Complaint makes clear that the Complaint means CAIR Foundation when it says "CAIR" or the defamatory slur "CAIR/Hamas," and "CAIR Florida" when the Complaint means CAIR-Florida. Paragraph 9 also avers "upon information and belief" a legal conclusion of causation but provides no facts in support of that conclusion.

Paragraphs 106 states that CAIR-Florida banned Loomer from attending the trial of Noor Salman. Ignoring that the Complaint does not explain how CAIR-Florida could possibly do that, there are no causes of action based on that supposed ban. Rather, the case is entirely about Twitter's ban of Loomer. Paragraphs 104-105 and 110 suggest that CAIR-Florida did not like Loomer or Loomer's Islamophobia (illustrated by Loomer throughout her Amended Complaint), which may very well be true, but does not allege CAIR Florida of doing anything. Paragraph 186 suggests that CAIR Foundation may have "targeted" Loomer because Loomer had "run-ins" with CAIR Florida but again does not suggest that CAIR Florida did anything.

That leaves Paragraph 59. Paragraph 59 alleges that CAIR Foundation (not CAIR-Florida) instructed Twitter to ban Loomer. This is not an allegation against CAIR-Florida. It then alleges, "on information and belief," that CAIR acted "in concert with defendant CAIR Florida." This is a legal conclusion.

In contrast, there are extensive allegations against actions taken against Loomer by other CAIR chapters and individuals who are employed by those chapters. Paragraph 126 accuses the Michigan CAIR chapter of hosting a Muslim Imam.

7

Paragraphs 171-72 attack CAIR's San-Francisco Bay executive director (part of an entity known as CAIR-California) for her criticism of Israel. Paragraph 190 accuses the director of litigation of the CAIR New York chapter for attacking Loomer on Twitter. Paragraph 191 does the same to the director of outreach for the CAIR New York chapter. But Loomer brings no causes of action against CAIR-Michigan, CAIR-California, or CAIR-New York.

## STANDARD OF REVIEW

The test for determining whether or not a defendant has been fraudulently joined is whether "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983)); *see, e.g., Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979) ("If there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendants under the facts alleged, then the claim is deemed fraudulent and lack of diversity will not prevent removal."). In order to make this determination, a court must "pierc[e] the pleadings," *Keating v. Shell Chem. Co.*, 610 F.2d 328, 331 (5th Cir. 1980), which requires them to look at the actual factual basis for alleging claims against a particular defendant, *Dodd v. Fawcett Publications,* Inc., 329 F.2d 82, 85 (10th Cir. 1964), *cited by Keating*; *see also Charest v. Olin Corp.*, 542 F. Supp. 771, 775 (N.D. Ala. 1982) ("a district court must evaluate all factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff") (citing *Keating*).

# ARGUMENT

## I. Plaintiffs Have no Factual Basis for Alleging Claims Against CAIR-Florida

### A. Acting in Concert Is a Legal Conclusion, not a Factual Basis

As the Background above and Defendants' Joint Motion to Dismiss explains in detail, the only allegations against CAIR-Florida that would give rise to CAIR-FL's potential liability in this case is that CAIR-Florida allegedly "acted in concert" in support of the general allegation in this case. That general allegation is that CAIR Foundation instructed Twitter to ban Laura Loomer and Twitter complied.

The "acted in concert" allegation is meaningless, a speculative legal claim devoid of a single ounce of factual support. *Wright v. Portfolio Recovery Affiliates*, 09-cv-612, 2011 WL 1226115, at *4 (D. Del. Mar. 30, 2011) ("Acting in concert is a legal conclusion. The conspiracy claims in the proposed second amended complaint are deficient as they are legal conclusions the defendants were "acting in concert and conspiracy" without supporting facts.")

Plaintiffs claim that "acted in concert" is a factual allegation sufficient to support their case against CAIR-Florida. Dkt. 7 at 3. As *Wright* explains, this is wrong. Plaintiffs cite only *Gerhart v. Pennsylvania*, 09-cv-1145, 2009 WL 2581715, at *6 (E.D. Pa. Aug. 13, 2009) in support. Dkt. 7 at 3. But as the language from *Gerhart* Plaintiffs themselves quote shows, *Gerhart*—if anything—says just the opposite. 2009 WL 2581715, at *6 ("the 'mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy' the pleadings requirements of a conspiracy claim") (quoting *Loftus v. SEPTA*, 843 F. Supp. 981, 987 (E.D. Pa. 1994)).

So, for instance, whether an individual act in concert with another through conscience parallelism is a legal question. *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1300 (11th Cir. 2003). So is whether there must be an express or implicit agreement. *McPeters v. LexisNexis*, 11-cv-2056, 2013 WL 12320078, at *2 (S.D. Tex. May 1, 2013). Acting in concert is ultimately a conclusion determined by looking at what sort of interactions two or more parties have had.

Here, apart from the legal conclusion that CAIR-FL is somehow liable for CAIR Foundation's alleged acts, there are no factual allegations explaining why. We do not know who at CAIR-Florida "acted in concert." We do not know if they did so by phone call, by email, or by personal conversation, or even by tweeting to the general public, by using Twitter's reporting function. We do not know if there was an agreement, and, if so, what its contents were, or whether it was express or implied. We thus do not know what the basis for alleging someone was acting on behalf of CAIR-Florida instead of in one's personal capacity. We do not know the individuals that CAIR-Florida was "acting in concert" with, to evaluate whether those persons were acting on behalf of CAIR Foundation. The Complaint does not even assert whether CAIR-Florida was supposedly acting in concert with CAIR Foundation or Twitter, although the Motion to Remand suggests that it is CAIR Foundation. *See* Dkt. 7 at 3 ("Plaintiffs are not yet privy to the communications between CAIR Foundation and CAIR Florida"); *id.* at 5 ("the allegation is that two related entities (CAIR Foundation and CAIR Florida), with a common antagonist—plaintiff Laura Loomer—acted in concert").

Because there are no factual allegations against CAIR-Florida, only legal conclusions, a finding of fraudulent joinder is appropriate. *Vieira v. Citigroup, Inc.*, 12-cv-1636, 2012 WL 6194350, at *2 (N.D. Ga. Dec. 12, 2012). Here, like in *Viera*, "the complaint is almost completely devoid of substantive allegations against" the non-diverse defendant. *Id.* Here, like there, Plaintiffs' only factual allegations against the non-diverse defendant are "conclusory" and "insufficient to establish a colorable claim" *Id.* As *Viera* explained in summing up another case, a defendant is "fraudulently joined when plaintiff's allegations against the defendant were only 'vague, non-specific allegations' that all defendants were acting in concert." *Id.* (citing *RDT Living Trust v. CitiMortgage, Inc.*, 10-cv-3784, slip op. at 5 (N.D. Ga. Mar. 29, 2011)).

### B. Plaintiffs' Cases Do not Support Remand

Plaintiff (Dkt. 7 at 3-4) relies primarily on three cases in support of remand—only one of which is a fraudulent joinder case—and none of which support remand given the facts here.

*Gerhart*, 2009 WL 2581715, a 12(b)(6) case, only supports a finding of fraudulent joinder here. In *Gerhart*, the Court found sufficient allegation of a "conspiratorial agreement" because "Plaintiffs have sketched out the persons responsible-along with the conduct, approximate timing, and motive of the conspiracy-sufficient for the Court to reasonably infer the existence of a conspiratorial agreement." *Id.* at *6. But here, there are no allegations of the persons responsible, the conduct, or the approximate timing, and only some hopeful speculation about any

11

motive. Plaintiffs do not say which CAIR-Florida employee acted in collaboration, who at CAIR Foundation or Twitter that individual collaborated with, or when this supposed collaboration occurred. As Plaintiffs concede, all they allege is motive. Dkt. 7 at 3 ("These allegations demonstrate motive (not necessarily conduct)"). And the supposed motivation is just basically a claim that CAIR-Florida dislikes Loomer because she's an Islamophobic bigot. *See* Dkt. 7 at 5 (describing Loomer as a "common antagonist"). Compare this to the allegations in *Gerhart*, where there are specific allegations that specific individual defendants drove to Plaintiffs' home and demanded they vacate the home. 2009 WL 2581715 at *6. Here, as further shown above, there is no allegation that anyone at CAIR-Florida did anything. The only allegation of relevance was that CAIR-Florida was "acting in concert," whatever that means.

*Dickieson v. DER Travel Serv., Inc.*, 149 F. Supp. 2d 1011, 1015 (N.D. Ill. 2001), is irrelevant. In that case, the issue was not whether Plaintiff was merely asserting legal conclusions without any factual basis in the hope of defeating diversity jurisdiction. Instead, in a claim preclusion case, Plaintiffs alleged that there were insufficient allegations that the two defendants were in fact separate entities, a necessary condition of a conspiracy claim. To the extent Defendants were also alleging the lack of any facts about a conspiracy, *id.*, the Court does not appear to address that claim at all. In any event, that case—employing the standards for a "motion for judgment on the pleadings"—predates *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

*Ronald Lane, Inc. v. Antero Res. Appalachian Corp.*, 10-cv-137, 2011 WL 3102116, at *7 (N.D.W. Va. July 25, 2011), is similarly irrelevant. Although that case involved fraudulent joinder claims, the question there was whether diversity jurisdiction was destroyed once Plaintiffs discovered that an entity was a successor in interest to a prior defendant. Unlike here, "[n]othing in this case suggests that the plaintiffs named RLS Consulting as a defendant to avoid the federal forum." *Id.* at *6. Instead, the new allegations were about the successor-in-interest allegations, and these were enough. *Id.* Defendants later claimed fraudulent joinder on a Rule 12(b)(6) standard, and the Court rejected that claim, noting the sufficiency of the allegations against the predecessor. an all, the case involved primarily a dispute over an oil and gas pipeline contract, *id.* at *1. The predecessor was no random bystander, but the company who replaced the plaintiff on the oil project. *Id*. This case is quite different.

Here, there are no relevant factual allegations against CAIR-Florida, just a speculative legal conclusion. Likewise here, Plaintiffs' lack of good faith is manifest. Even in their Motion to Remand, Plaintiffs do not put forth a single reason to believe in the supposed conspiracy they allege, and merely assert a right to undergo a fishing expedition. Dkt. 7 at 3. *See also* § III(B), below (explaining why parties are not allowed to engage in baseless speculation of some wrongdoing with the mere hope of finding that wrongdoing in discovery) (citing cases).

II. **Any Factual Basis Presented by the Amended Complaint Does not State any Claims against CAIR-Florida**

Plaintiffs argue implicitly (by relying on motion-to-dismiss cases, albeit either pre-*Twombly* or easily distinguishable cases) that whether fraudulent joinder exists

13

depends on whether or not Plaintiffs have stated a claim against CAIR-Florida. Dkt. 7 at 3-4 (relying on *Gerhart* and *Dickieson*). To the extent it is relevant, Plaintiffs have not.

Under Rule 12, Plaintiffs' allegations fall far short of sufficiency. *See* Dkt. 11. "'[F]ormulaic recitations' of a conspiracy standard" are "insufficient." *ADA v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010) (citing *Twombly* and *Iqbal*). This includes the use of the language "acted in concert." *Clear Marine Ventures, Ltd. v. Brunswick Corp.*, 08-cv-22418, 2009 WL 10667096, at *3 (S.D. Fla. Oct. 8, 2009); *see also Patterson v. Orlando-Orange Cty.*, 18-cv-950, 2019 WL 2090269, at *1 (M.D. Fla. Apr. 16, 2019), *report and recommendation adopted*, 2019 WL 2085067 (M.D. Fla. May 13, 2019); *Wright*, 2011 WL 1226115, at *4.

Plaintiffs may believe in a conspiracy that is out to get them, but they have not put forth anything close to suggesting facts that plausibly establish one. *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 37 (D.D.C. 2019) (showing that Loomer and Freedom Watch's allegations of a conspiracy by Google, Facebook, Twitter, and Apple to suppress them was devoid of any factual allegations sufficient to overcome a motion to dismiss, despite "repeatedly" alleging "conclusor[ily]" that "the Platforms have engaged in a conspiracy or illegal agreement"). And so these conclusory allegations of a conspiracy, devoid of any factual allegations supporting the contours of the conspiracy, are insufficient to avoid fraudulent joinder. *See Vieira*, 2012 WL 6194350, at *2 (citing *RDT Living Trust*).

For these reasons and for the reasons explained in Defendants' Joint Motion to Dismiss shows, there are no plausible claims alleged against CAIR-Florida. Remand is inappropriate for this reason as well.

### III. Piercing the Pleadings Further Shows that CAIR-Florida Was Added in Bad Faith to Defeat Diversity Jurisdiction

#### A. CAIR Foundation May Attach Affidavits

Plaintiffs claim that affidavits for determining fraudulent joinder must be submitted with the notice of removal. Dkt. 7 at 7. This is wrong. As *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005) makes clear, "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties.*" *Id.* at 1322 (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) (emphasis original)). The process is similar to that used in summary judgment. *Id.* There is simply no rule limiting those affidavits to what was filed at the time of the Notice of Removal. *See Crowe v. Coleman*, 113 F.3d 1536, 1541 (11th Cir. 1997) (court may rely on post-notice of removal affidavits filed in a motion for summary judgment in federal court before the court ruled on a pending motion for remand).

Yes, the Plaintiffs found one case, *Roberson v. American Gen. Life and Acc. Ins. Co.*, 607 F. Supp.2d 1248 (N.D. Ala. 2009), which mistakenly found to the contrary. The *Roberson* court was mistaken for the reasons explained above. *See FFP, LLC v. Blue Cross Blue Shield of N. Carolina*, 08-cv-61482, 2009 WL 10699884, at *2 n.1 (S.D. Fla. Aug. 4, 2009) (explaining *Roberson's* error). As *Roberson* is incompatible

with *Crowe* and *Legg*, it should be ignored. *Id.* At most, *Roberson* does not apply in cases alleging a theory of "actual or outright fraud," i.e., "a sham claim against a non-diverse defendant for the purpose of frustrating any removal opportunity by a diverse defendant." *Roberson*, 607 F. Supp. 2d at 1252 (distinguishing such a situation as no such allegation existed in that case).

### B. The Shibly, Ruiz, and Hooper Affidavits Confirm the Lack of any Factual Basis

Plaintiffs appear to miss the point of the attached Shibly, Ruiz, and Hooper affidavits (Hooper's is technically a declaration). The point is not merely to deny the allegations. There is, after all, nothing to deny as it relates to CAIR-Florida, because no facts were alleged. The point of the affidavits was to show that there is nothing out there that could possibly be construed as supporting Plaintiffs' meritless legal conclusions. The problem was not inartful pleading, because there is no there, there. Plaintiffs are simply speculating that CAIR-Florida must have something to do with this dispute.

In light of both the specific denials of CAIR-Florida's involvement and the lack of any specific factual allegations to the contrary, Plaintiffs are not entitled to a remand. *Simmerman v. Ace Bayou Corp.*, 14-cv-382, 2014 WL 6633129, at *3 (E.D. Ky. Nov. 21, 2014) (Court may "pierce the pleadings" when the factual allegations was "nothing beyond … speculation" and the non-diverse defendant denied any "personal[] involve[ment]").

Plaintiffs complain that they should not be required to show any factual basis for its conspiracy assertions until after discovery, since that information is solely

16

available by discovery. Dkt. 7 at 3 and 5-6. But this is not the law. The law does not require a plaintiff in a lawsuit to have marshalled all of its evidence prior to discovery, but it does not permit them to file baseless litigation "on information and belief" with the mere hope that discovery might turn up some basis for wrongdoing, either. *Verfuerth v. Orion Energy Sys., Inc.*, 65 F. Supp. 3d 640, 647 (E.D. Wis. 2014) (citing *Twombly*); *see also MAGicAll, Inc. v. Advanced Energy Indus., Inc.*, 17-cv-02582, 2018 WL 3619720, at *9 (D. Colo. July 30, 2018) ("One may not involve a company, foreign or domestic, in expensive and time consuming federal court litigation because he thinks that the defendant might have done something wrong and hopes to find something in discovery that will show it.").[5] And so, in the face of affidavits by CAIR-Florida and CAIR Foundation denying wrongdoing, Plaintiffs cannot rely on the mere fact that it is "possible that" CAIR-Florida "was somehow involved in the facts alleged." *Sellers v. Bolttech Mannings, Inc.*, 13-cv-0098, 2013 WL 2635564, at *5 (S.D. Ala. June 11, 2013). Instead, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor and when the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." *Id.* at *6 (quoting *Legg*, 428 F.3d at 1323 (11th Cir. 2005) (cleaned up)).

---

[5] Plaintiffs misunderstand the point CAIR Foundation was making by pointing out the reference was made "on information and belief." Dkt. 7 at 3. CAIR Foundation's point was not that such pleading was impermissibly generally but that her Amended Complaint uses the phrase as a sort of tell to divide facts into those Plaintiffs actually have some basis of believing and those Plaintiffs are making up out of whole cloth.

### C. The Bernard Affidavit Confirms Loomer Has no Reason to Join CAIR-Florida Except to Defeat Diversity

As explained more in the Background section, above, Loomer's entire factual basis for bringing this case is based on a prank. *See* Bernard Affidavit (Ex. A), including adopted Holt Article. As Bernard's affidavit confirms, this is the sole basis for Loomer believing that CAIR Foundation had anything to do with her being banned from Twitter. *Id.* at ¶ 10. And yet, the pranksters never suggested CAIR-Florida's involvement. *Id.* at ¶ 11.

The point is not to litigate the merits of this bizarre case. The point is that the conclusory speculation that CAIR-Florida had something to do with this is not based on Plaintiffs even irrationally believing it to be true. It is solely based on Plaintiffs' desire to defeat diversity jurisdiction. This is fraudulent joinder.

\*     \*     \*

Plaintiffs would understandably like to see the end of the fraudulent joinder rule. And so they, in effect, propose its termination. Plaintiffs suggest both that the bare recitation of the legal standard for conspiracy is sufficient to defeat a fraudulent joinder claim *and* that the Court cannot look beyond the pleadings to determine if there is any reasonable belief, or even any belief at all, for the allegations against the non-diverse defendant to be true. If so, then all one needs to do to avoid 28 U.S.C. § 1332 is a local bystander and magic words. After all, that is all that Plaintiffs provide against CAIR-Florida here.

## CONCLUSION

The Court should deny Plaintiffs' Motion to Remand.


September 6, 2019                         CAIR LEGAL DEFENSE FUND

/s/ YASIR BILLOO
Yasir Billoo
Florida Bar No.: 718351
INTERNATIONAL LAW PARTNERS LLP
2122 Hollywood Blvd.
Hollywood, FL 33020
Phone: (954) 374-7722
Fax: (954) 212-0170
ybilloo@ilp.law
zkhanani@ilp.law

LENA F. MASRI (DC: 1000019)*
JUSTIN SADOWSKY (DC: 977642)*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420
jsadowsky@cair.com

*Pro hac vice motion forthcoming*