# EXHIBIT "1"

**Great American Assur. Co. v. Sanchuk, LLC, Not Reported in F.Supp.2d (2012)**

KeyCite Yellow Flag - Negative Treatment
Distinguished by RSUI Indemnity Company v. Desai, M.D.Fla., April 24, 2014

2012 WL 195526
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

GREAT AMERICAN ASSURANCE
COMPANY, a foreign corporation, Plaintiff,
v.
SANCHUK, LLC, a Florida corporation, and
Chuck Elliott, a Florida citizen, Defendants.
Sanchuk, LLC, a Florida corporation, and Chuck
Elliott, a Florida citizen, Counter–Claimants,
v.
Great American Assurance Company,
a foreign corporation, and Wellington
F. Roemer Insurance Agency, Inc., a
foreign corporation, Counter–Defendants.

No. 8:10–cv–2568–T–33AEP.
|
Jan. 23, 2012.

**Attorneys and Law Firms**

Eric A. Hiller, John Joseph Cavo, Sina Bahadoran, Christine Renella Prieto, Hinshaw & Culbertson, LLP, Miami, FL, for Plaintiff/Counter-Defendants.

Daniel P. Mitchell, Barr, Murman & Tonelli, PA, Tampa, FL, Kenneth Charles Podor, The Podor Law Firm, LLC, Solon, OH, for Defendants/Counter-Claimants.

Lawrence Phillip Ingram, Robert Stines, Phelps Dunbar, LLP, Tampa, FL, for Counter-Defendants.

### ORDER

VIRGINIA M. HERNANDEZ COVINGTON, District Judge.

*1 This matter comes before the Court pursuant to Defendant Great American Assurance Company's Motion to Strike and Renewed Motion to Dismiss Sanchuk's Counterclaim (Doc. # 32), filed on July 19, 2011. Counter-claimants Sanchuk, LLC and Chuck Elliott filed a response in opposition (Doc. # 33) on July 25, 2011, and Great American filed a Reply (Doc. # 38) on August 22, 2011. For the reasons that follow, the Court grants Great American's Motion in part and denies it in part.

Also before the Court is Counter-defendant Wellington F. Roemer Insurance Agency's Motion to Dismiss Amended Counterclaim (Doc. # 24), filed on July 5, 2011. Sanchuk and Elliott filed a response in opposition to that motion (Doc. # 30) on July 15, 2011. For the reasons that follow, the Court grants Roemer's Motion.

**I.** *Background and Procedural History*

This suit arises from a trucking accident that occurred on August 17, 2010. (Doc. # 1 at ¶ 9). Elliott, the operator of the truck, was injured in the accident and sought uninsured motorist (UM) coverage under a policy issued by Great American to Sanchuk. (*Id.* at ¶ 11). Great American asserts that there is no coverage under the policy because of a Trucking or Business Use exclusion. (*Id.* at ¶¶ 16–18). Great American filed a one-count complaint on November 16, 2010, seeking a declaratory judgment that it is not obligated to provide Elliott with UM coverage. (*Id.* at ¶ 14).

Sanchuk and Elliott filed a Counterclaim (Doc. # 9) on April 18, 2011. They assert that Elliott told Kim Kastel, an employee of Roemer, that Elliott operated the truck exclusively for business purposes. (*Id.* at ¶ 10). Nevertheless, Kastel advised Elliott to purchase UM coverage on the vehicle. (*Id.* at ¶ 10). Based upon that advice, Elliott purchased the coverage, which was not only worthless to him but kept him from seeking other UM coverage. (*Id* . at ¶ 13). The Counterclaim asserts four counts against Great American: reformation of the policy (Count I), promissory estoppel (Count II), oral contract (Count III) and UM benefits (Count IV). The Counterclaim also asserts negligent failure to procure insurance coverage against Roemer (Count V). Sanchuk and Elliott moved to join Roemer in this action on April 18, 2011 (Doc. # 10), and the court granted that motion on May 12, 2011 (Doc. # 15).

Great American filed a motion to dismiss the Counterclaim on May 23, 2011. (Doc. # 16). Pursuant to Local Rule 3.01(b),

Case 9:19-cv-81179-RAR   Document 14-2   Entered on FLSD Docket 09/26/2019   Page 3 of 19

American Assur. Co. v. Sanchuk, LLC, Not Reported in F.Supp.2d (2012)

Sanchuk and Elliott's response to the motion was due on June 6, 2011. On June 7, 2011, Great American advised the Court that Sanchuk and Elliott had not timely responded to the motion (Doc. # 18). This Court entered an Order granting that motion to dismiss (Doc. # 20) on June 13, 2011.

Sanchuk and Elliott filed an Amended Counterclaim (Doc. # 22) on June 23, 2011, asserting the same five claims as in the original Counterclaim and adding a claim for attorneys' fees against Great American (Count VI). Before this Court are Roemer's Motion to Dismiss the Amended Counterclaim (Doc. # 24)[1] and Great American's Motion to Strike and Renewed Motion to Dismiss (Doc. # 32).

## II. *Legal Standard*

*2 A motion to strike is governed by Federal Rule of Civil Procedure 12(f), which provides that upon motion by a party or upon the court's initiative, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). However, a motion to strike is a drastic remedy disfavored by the courts. *Thompson v. Kindred Nursing Ctrs. E., LLC,* 211 F.Supp.2d 1345, 1348 (M.D.Fla.2002). Generally, "a court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.,* 881 F.Supp. 574, 576 (M.D.Fla.1995).

A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint. *Whitney Info. Network, Inc. v. Gagnon,* 353 F.Supp.2d 1208, 1212 (M.D.Fla.2005). On a motion to dismiss, this Court accepts as true all the allegations in the counterclaim and construes them in the light most favorable to the counter-claimant. *Jackson v. Bellsouth Telecomms.,* 372 F.3d 1250, 1262 (11th Cir.2004). Further, this Court favors the counter-claimant with all reasonable inferences counterclaim. *Stephens v. Dep't of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir.1990) ("On a motion to dismiss, the facts stated in [the counterclaim] and all reasonable inferences therefrom are taken as true.").

In *Bell Atl. Corp v. Twombly,* the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a [counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). A plausible claim for relief must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

## III. *Analysis*

In its Motion to Dismiss, Great American argues that Sanchuk and Elliott's Amended Counterclaim should be stricken because it was previously dismissed with prejudice by this Court. (Doc. # 32 at 4). Great American further asserts that the Amended Counterclaim should be dismissed based upon the doctrines of *res judicata* and collateral estoppel, and because Sanchuk and Elliott failed to seek leave of court before re-filing. (*Id.* at 5, 7). In addition, Great American reasserts the arguments set forth in its prior motion to dismiss the original Counterclaim.[2]

*3 Roemer argues in its Motion to Dismiss that Sanchuk and Elliott are barred from asserting a claim against Roemer while simultaneously asserting a claim against Great American. (Doc. # 24 at ¶ 6).

### A. *Motion to Strike*

Case 9:19-cv-81179-RAR   Document 14-2   Entered on FLSD Docket 09/26/2019   Page 4 of 19

Great American Assur. Co. v. Sanchuk, LLC, Not Reported in F.Supp.2d (2012)

This Court dismissed Counts I–IV of Sanchuk and Elliott's original Counterclaim because they failed to timely respond to Great American's motion to dismiss. (Doc. # 20). Great American presumes that the dismissal was pursuant to Federal Rule of Civil Procedure 41(b) and asserts that, absent any statement to the contrary, the dismissal operates as an adjudication upon the merits, as provided by that rule.

Rule 41(b) authorizes a district court, "on defendant's motion, to dismiss an action for failure to prosecute or to obey a court order or federal rule." Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir.1985). However, Great American did not move this Court for dismissal pursuant to Rule 41(b), and this Court's Order makes no reference to its inherent power to dismiss under that rule.

Instead, Great American advised the Court that Sanchuk and Elliott did not timely respond to the motion (Doc. # 18) citing Local Rule 3.01(b), which sets a fourteen-day time limit for responses to motions. The Court's Order cites Local Rule 3.01(b), not Rule 41(b), and notes only that failure to respond to a motion creates an assumption that the motion is unopposed. *Freshwater v. Shiver*, No. 6:05–cv–758–ORL–19DAB, 2005 WL 2077306, at *2 (M.D.Fla. Aug.29, 2005).[3]

A district court may dismiss a case when a party, represented by counsel, fails to respond to a motion to dismiss. *Magluta v. Samples*, 162 F.3d 662, 664–65 (11th Cir.1998). At the same time, "there is a strong policy of determining cases on their merits" in the Eleventh Circuit. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir.2003). The Court hesitates to dismiss a case with prejudice based upon a technicality, particularly when there has been no pattern of delay. The Court clarifies that its Order dismissed the original Counterclaim without prejudice, and therefore denies the Motion to Strike.

### B. *Res Judicata and Collateral Estoppel*

Based upon the foregoing analysis, the Court finds that its Order dismissed the original Counterclaim without prejudice, and did not operate as an adjudication on the merits. The Court therefore denies Great American's Motion to Dismiss based upon the doctrines of *res judicata* and collateral estoppel.

### C. *Failure to Seek Leave to File Amended Counterclaim*

Sanchuk and Elliott filed their Amended Counterclaim without seeking leave of Court after the Court had dismissed the original Counterclaim. The Eleventh Circuit has held that a "plaintiff does not have a right to amend as a matter of course after dismissal of the complaint." *Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO*, 724 F.2d 1552 (11th Cir.1984). However, "dismissal itself does not automatically terminate the action unless the court holds either that no amendment is possible or that the dismissal of the complaint also constitutes dismissal of the action." *Id.* The Court's Order dismissing the original Counterclaim did not so hold.

*4 Furthermore, a court should freely give leave to amend when justice so requires. Fed.R.Civ.P. 15. The Eleventh Circuit has cautioned that "[a] district court's discretion to dismiss a complaint without leave to amend is severely restricted .... Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir.2001) (internal quotations and citations omitted).

The Supreme Court has enumerated the following factors that a district judge may use to deny leave to amend: undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Court finds these factors absent in this case. In the interests of justice, and at this stage of the proceedings, the Court denies Great American's Motion to Dismiss on the basis of Sanchuk and Elliot's failure to seek leave to amend.

### C. *Failure to State a Claim*

The remainder of Great American's Motion seeks dismissal of Counts I through IV of the Amended Complaint as a matter of law.

#### 1. *Agency Relationship*

Case 9:19-cv-81179-RAR   Document 14-2   Entered on FLSD Docket 09/26/2019   Page 5 of 19

Great American Assur. Co. v. Sanchuk, LLC, Not Reported in F.Supp.2d (2012)

Great American argues that Counts I through III of the Amended Counterclaim fail to sufficiently allege an agency relationship between Great American and Roemer. Under Florida law, the elements of an actual agency relationship are: "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Goldschmidt v. Holman,* 571 So.2d 422, 424 n. 5 (Fla.1990). Great American asserts that Sanchuk and Elliott fail to allege any of these elements or establish the existence of an agency relationship with any degree of specificity. (Doc. # 32 at 9).

Sanchuk and Elliott note that the Amended Counterclaim adds allegations that Roemer employee Kim Kastel provided an application for insurance on Great American letterhead listing Roemer as the "agent" for Great American. (Doc. # 22 at ¶ 5). She provided no additional applications for any other insurance company, and the insurance certificate issued to Sanchuk lists her as the authorized agent of Great American. (*Id.* at ¶ 6). Sanchuk and Elliott assert that Kastel, on behalf of Roemer, acted with apparent authority as an agent for Great American, and Sanchuk and Elliott reasonably believed that she was Great American's agent. (*Id.* at ¶¶ 7–8).

Section 626.342(2) of the Florida Statutes states in pertinent part:

> Any insurer ... who furnishes ... supplies ... to any agent or prospective agent not licensed to represent the insurer and who accepts from or writes any insurance business for such agent or agency shall be subject to civil liability to any insured of such insurer to the same extent and in the same manner as if the agent or prospective agent had been appointed, licensed or authorized by the insurer ro such agent to act in its or his behalf.
>
> *5 Such "supplies" include "blank forms, applications, stationery and other supplies to be used in soliciting,

negotiating, or effecting contracts of insurance." Fla. Stat. § 626.342(1).

The Florida Supreme Court has held that Section 626.342(2) "makes the insurer liable to the insured in the same way that it would be liable had it expressly appointed the broker as its agent." *Almerico v. RLI Ins. Co.,* 716 So.2d 774, 781 (Fla.1998). Moreover, "unless the insured is specifically put on notice to the contrary ... the insurance company is bound under section 626.342(2) by the actions of its statutory agent." *Id.* at 782.

Accepting the allegations in the Amended Counterclaim as true, the Court finds that Sanchuk and Elliott have adequately alleged an agency relationship under to Fla. Stat. § 626.342(2) and *Almerico*. The Court therefore denies the Motion to Dismiss on the basis of failure to allege an agency relationship between Great American and Roemer.

**2. Parol Evidence Rule**

Great American argues that the parol evidence rule bars Count III for breach of oral contract. Great American asserts that any alleged oral agreement between Elliott and Kastel cannot be enforced given that a written contract of insurance was issued. (Doc. # 32 at 10).

Under Florida law, "evidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract. This rule applies when the parties intend that a written contract incorporate their final and complete agreement." *Johnson Enters. of Jacksonville v. FPL Group,* 162 F.3d 1290, 1309 (11th Cir.1998). This rule is substantive, so it is applied by federal courts sitting in diversity. *Id.* at 1309 n. 47.

"Florida courts recognize an 'inducement' exception to the parol evidence rule whereby parol evidence is admissible to establish a contemporaneous oral agreement which induced the execution of a written contract, though it may vary, change, or reform the instrument." *Id.* at 1309–10 (internal quotations and citations omitted). In other words, parol evidence may be admitted to determine the true consideration of an agreement, which is different from but not inconsistent with the consideration expressed in a written contract. *See*

Case 9:19-cv-81179-RAR   Document 14-2   Entered on FLSD Docket 09/26/2019   Page 6 of 19

Great American Assur. Co. v. Sanchuk, LLC, Not Reported in F.Supp.2d (2012)

*McComb v. Hygeia Coca–Cola Bottling Works,* 137 Fla. 260, 267–68, 188 So. 219 (Fla.1939); *Mallard v. Ewing,* 121 Fla. 654, 663, 164 So. 674 (Fla.1936). However, "the inducement exception does not apply where the alleged oral agreement relates to the identical subject matter embodied in the written agreement and directly contradicts an express provision of the written agreement." *Ungerleider v. Gordon,* 214 F.3d 1279, 1282 (11th Cir.2000) (internal quotations and citations omitted).

The Amended Counterclaim asserts that Sanchuk and Elliott had an oral agreement with Kastel for a policy providing UM coverage during business use of the vehicle. (Doc. # 22 at ¶ 29). This alleged oral agreement directly relates to and contradicts the terms of the written contract of insurance, which excludes UM coverage during business use. Thus, the inducement exception to the parol evidence rule does not apply. The Court therefore finds that Sanchuk and Elliott cannot sustain their claim for oral contract. Great American's Motion to Dismiss is granted as to Count III of the Amended Counterclaim.

### 3. Promissory Estoppel

*6 Great American argues that Count II of the Amended Counterclaim must be dismissed because estoppel cannot be used to create insurance coverage that never existed. (Doc. # 32 at 12). "The general rule is that estoppel may not be invoked to enlarge or extend the coverage specific in an insurance contract." *Solar Time Ltd. v. XL Specialty Ins. Co.,* 142 F. App'x 430, 433–34 (11th Cir.2005) (internal quotations and citations omitted). However, the Florida Supreme Court has held that "the form of equitable estoppel known as promissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice." *Crown Life Ins. Co. v. McBride,* 517 So.2d 660, 662 (Fla.1987). "Such injustice may be found where the promisor reasonably should have expected that his affirmative representations would induce the promisee into action or forbearance substantial in nature, and where the promisee shows that such reliance thereon was to his detriment." *Id.*

Great American argues that, despite the promissory estoppel label, Count II simply invokes estoppel to enlarge or extend coverage. (Doc. # 32 at 15). However, Sanchuk and Elliott assert that Kastel represented that UM coverage would apply during business use of the vehicle. (Doc. # 22 at ¶ 17). As a result, Elliott purchased a policy that was worthless to him, and refrained from obtaining other UM coverage that would cover him for losses during business use of the vehicle. (*Id.* at ¶ 18–19). Based upon the foregoing analysis, and at this stage of the proceedings, the Court finds Sanchuk and Elliott have sufficiently alleged a claim for promissory estoppel. The Court therefore denies Great American's Motion as to Count II.

### 4. Contract Reformation

Great American asserts that Sanchuk and Elliott cannot sustain a claim for contract reformation because they have not established that Roemer was Great American's agent. As stated above, this Court finds that such an agency relationship has been sufficiently alleged. Great American further argues that the Amended Complaint fails to state a claim for reformation due to unilateral mistake, which must show that the mistake was coupled with inequitable conduct.

"To state a cause of action for reformation of a contract, the complaint must allege that, as a result of a mutual mistake or a unilateral mistake by one party coupled with the inequitable conduct of the other party, the insurance contract fails to express the agreement of the parties." *Romo v. Amedex Ins. Co.,* 930 So.2d 643, 649 (Fla. 3d DCA 2006). Such a claim must ultimately be proven "by evidence sufficient to overcome a presumption arising from the policy that it correctly expressed the intention of the parties." *Samet v. Prudential Ins. Co. of Am.,* 294 So.2d 35, 36 (Fla. 3d DCA 1974).

The Court finds that Sanchuk and Elliott have pled allegations of mutual mistake or unilateral mistake and inequitable conduct sufficient to withstand a motion to dismiss. See *Romo,* 930 So.2d at 650. The Court therefore denies Great American's Motion as to Count I.

### 5. UM Benefits

*7 Count IV of the Amended Complaint, for UM benefits, alleges that Elliott sustained injuries as a result of the accident that occurred on August 17, 2010. (Doc. # 22 at ¶ 35). Great

Case 9:19-cv-81179-RAR   Document 14-2   Entered on FLSD Docket 09/26/2019   Page 7 of 19

Great American Assur. Co. v. Sanchuk, LLC, Not Reported in F.Supp.2d (2012)

American argues that UM benefits are excluded by the plain language of the policy. (Doc. # 32 at 17). Sanchuk and Elliott state that UM benefits are the relief sought under the theories asserted in the other claims. To that extent, the Court declines to dismiss Count IV.

### D. Roemer's Motion to Dismiss

Count V of the Amended Complaint alleges negligent failure to procure insurance coverage against Roemer. Roemer argues that this cause of action has not accrued and is thus premature. (Doc. # 24 at 4).

In *Blumberg v. USAA Casualty Insurance Co.,* the court found that a negligence cause of action against an insurance agent accrues at the conclusion of a related or underlying proceeding. 790 So.2d 1061, 1065 (Fla.2001).

> If a negligence ... action is filed prior to [that] time ... the defense can move for an abatement or stay of the claim. The moving party will have the burden of demonstrating that the related or underlying judicial proceeding will determine whether damages were incurred which are causally related to the alleged negligence ....

*Id.* However, when premature filing of an action cannot be cured by the passing of time—that is, when the claim is dependent upon the outcome of a separate action—dismissal without prejudice is preferred. *Shuck v. Bank of Am.,* 862 So.2d 20, 24–25 (Fla. 2d DCA 2003).

Courts within the Eleventh Circuit have largely followed the reasoning of *Blumberg* and *Shuck. See e.g. Sperling v. Banner Life Ins. Co.,* No. 10–22289–CIV, 2010 WL 4063743 (S.D.Fla. Oct.14, 2010) (finding that an action against an insurance agent for negligence accrues "when the insurance company prevails in the underlying action"); *Looney v. Protective Life Ins. Co.,* No. 8:07–cv–1020–T–17TBM, 2007 WL 2669190 (M.D.Fla. Sept.6, 2007) (holding that a plaintiff cannot make a claim for an agent's negligence while simultaneously claiming policy coverage); *Landmark Am. Ins. Co. v. Moulton Props.,* No. 3:05cv401/LAC, 2006 WL 2038554 (N.D.Fla. July 19, 2006) (dismissing third-party complaint against insurance broker). An exception is the Southern District of Florida in *Great Lakes Reinsurance (UK) PLC v. Roca,* No. 07–23322–CIV, 2009 WL 200257 (S.D.Fla.2009).

Sanchuk and Elliott rely heavily on *Roca* and attempt to distinguish the large body of cases supporting *Blumberg.* However, the *Roca* court devotes just one paragraph to the question of the ripeness of claims against the insurance brokers with no analysis of *Blumberg.* The Court finds the large body of case law supportive of *Blumberg* more persuasive. The Court therefore grants Roemer's Motion to Dismiss. Per *Shuck,* Count V of the Amended Complaint is dismissed without prejudice.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

*8 (1) Great American Assurance Company's Motion to Strike and Renewed Motion to Dismiss Sanchuk's Counterclaim (Doc. # 32) is granted in part and denied in part.

(2) Count III of the Amended Counterclaim is dismissed with prejudice. Great American's Motion is otherwise denied.

(3) Counter-defendant Wellington F. Roemer Insurance Agency, Inc .'s Motion to Dismiss Amended Counterclaim (Doc. # 24) is granted. Count V of the Amended Counterclaim is dismissed without prejudice.

**DONE** and **ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 195526

Footnotes

Great American Assur. Co. v. Sanchuk, LLC, Not Reported in F.Supp.2d (2012)

1   Roemer filed a motion to dismiss the original Counterclaim (Doc. # 21) on June 13, 2011, and Sanchuk and Elliott filed a response in opposition (Doc. # 23) on June 23, 2011. The Court denied that motion as moot on August 30, 2011 (Doc. # 41).

2   Great American's Motion also asserts, in a footnote, that the "counterclaim creates confusion by improperly incorporating prior factual allegations into each successive count." (Doc. # 32 at 2 n. 2). Such a counterclaim may be dismissed as a shotgun pleading. *Whitney Info. Networks,* 353 F.Supp.2d at 1211. However, the Court is not inclined to dismiss the Amended Counterclaim on this basis. A shotgun pleading is one in which "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir.1996). Given the nature of the claims and the limited set of facts at issue, the Court finds the Counterclaim to be sufficiently clear.

3   Had the Court dismissed the case pursuant to Rule 41(b), it would have been without prejudice. "[A] dismissal with prejudice is an extreme sanction that may be properly imposed *only* when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." *Dinardo v. Palm Beach County Cir. Ct. Judge,* 199 F. App'x 731, 735 (11th Cir.2006) (internal quotations and citations omitted) (emphasis in original); *Goforth,* 766 F.2d at 1535 (dismissal with prejudice is considered a "sanction of last resort"). The extreme circumstances necessary for dismissal with prejudice under Rule 41(b) are not present in this case.

**End of Document**                                © 2019 Thomson Reuters. No c a m to or g na U.S. Government Works.

**Landis v. North American Co., 299 U.S. 248 (1936)**
57 S.Ct. 163, 81 L.Ed. 153

KeyCite Yellow Flag - Negative Treatment
Not Followed on State Law Grounds Couri v. Korn, Ill.App. 3 Dist., September 25, 1990

57 S.Ct. 163
Supreme Court of the United States.

LANDIS et al.
v.
NORTH AMERICAN CO.
SAME
v.
AMERICAN WATER WORKS
& ELECTRIC CO., Inc.

Nos. 221 and 222.
|
Argued Nov. 9, 1936.
|
Decided Dec. 7, 1936.

**Synopsis**
On Writs of Certiorari to the United States Court of Appeals for the District of Columbia.

Two suits by the North American Company, and by the American Water Works & Electric Company, Incorporated, against James M. Landis and others. To review a judgment of the United States Court of Appeals for the District of Columbia (85 F.(2d) 398), reversing an order of the District Court for the District of Columbia, staying proceedings, James M. Landis and others bring certiorari.

In each suit, decree of the Court of Appeals reversed, and order of the District Court vacated and cause remanded to the District Court, with directions.

**West Headnotes (7)**

[1] **Action**
 Another Action Pending
Parties to two causes need not be same and issues need not be identical to empower court to stay proceedings in one suit to abide proceedings in the other.

263 Cases that cite this headnote

[2] **Action**
 Stay of Proceedings
Power to stay proceedings is incidental to power inherent in every court to control disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants.

4930 Cases that cite this headnote

[3] **Action**
 Another Action Pending
Litigant seeking stay of proceedings in one suit to abide proceedings in another must make out clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else, and only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

1490 Cases that cite this headnote

[4] **Action**
 Nature and subject matter of actions in general
In suits to enjoin enforcement of Public Utility Holding Company Act of 1935, court had power to grant stay to abide proceedings instituted in another district to test constitutionality of such act. Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq.

519 Cases that cite this headnote

[5] **Action**
 Nature and subject matter of actions in general
Staying suits to enjoin enforcement of alleged unconstitutional Public Utility Holding

Company Act of 1935 until after decision by District Court in suit in another district to test constitutionality of act, and until determination by United States Supreme Court of any appeal therefrom, constituted abuse of discretion. Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79, et seq.

218 Cases that cite this headnote

[6] **Federal Courts**
  Particular cases

Supreme Court, determining that District Court abused its discretion in staying suits to enjoin enforcement of alleged unconstitutional Public Utility Holding Company Act of 1935 until determination of suit instituted in another district to test constitutionality of act and until Supreme Court's determination of any appeal therefrom, would not determine whether a stay to continue until decision by District Court and then ending automatically would be moderate, in view of fact that following stay order, facts in test case had been settled by stipulation, briefs had been prepared, and case had been argued on merits justifying expectation of decision within reasonable time, but would remand case to District Court for reappraisal of facts and new exercise of discretion. Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq.

163 Cases that cite this headnote

[7] **Federal Courts**
  Jurisdiction, powers, and authority in general

United States Supreme Court is a court of review and limits exercise of its jurisdiction in accordance with its function.

13 Cases that cite this headnote

**Attorneys and Law Firms**

**163** Messrs. Homer S. *249 Cummings, Atty. Gen., Stanley F. Reed, Sol. Gen., of Washington, D.C., and Robert H. Jackson, Asst. Atty. Gen., for petitioners.

Mr. John C. Higgins, of New York City, for respondent.

**Opinion**

Mr. Justice CARDOZO delivered the opinion of the Court.

The controversy hinges upon the power of a court to stay proceedings in one suit until the decision of another, and upon the propriety of using such a power in a given situation.

Respondents, nonregistered holding companies, brought suit in the District Court **164 for the District of Columbia to enjoin enforcement of the Public Utility Holding Company Act of 1935 (chapter 687, 49 Stat. 803 (15 U.S.C.A. s 79 et seq.)) on the ground that the Act in its entirety is unconstitutional and void. The complaint in No. 221 (the suit by the North American Company) was filed November 26, 1935; the complaint in No. 222 (the suit by the American Water Works & Electric Company) was filed the next day. By concession the two plaintiffs are holding companies within the meaning of the Act, and must register thereunder if the Act is valid as to them. One plaintiff, the North American Company, is at the apex of a pyramid which includes subsidiary holding companies as well as *250 subsidiary operating companies, these last being engaged as public utilities in supplying gas and electricity to consumers in different states. The other plaintiff, American Water Works & Electric Company, is at the apex of another pyramid including like subsidiaries. The defendants in both suits (petitioners in this court) are the members of the Securities and Exchange Commission, the Attorney General of the United States, and the Postmaster General.

On November 26, 1935, the Commission filed a bill of complaint in the District Court of the United States for the Southern District of New York to compel other holding companies, members of a different public utility system, to register with the Commission in accordance with the statute. At the beginning, the defendants were the Electric Bond & Share Company, the parent holding company, and five intermediate holding company subsidiaries. Sixteen

other holding company subsidiaries were later added as defendants with the Government's consent. All the twenty-two defendants, parties to that suit, appeared and answered the complaint. All joined in a cross-bill contesting the validity of the Act and praying a decree restraining its enforcement. To give opportunity for full relief, the present petitioners appeared as cross-defendants, answering the cross-bill and opposing an injunction.

On December 7, 1935, the Attorney General filed a notice of motion in behalf of the petitioners for a stay of proceedings in Nos. 221 and 222, pending at that time in the District of Columbia. The petitioners had not yet submitted their answer to the bills, but their position as supporters of the statute in its application to respondents was made abundantly apparent. By the notice of motion it was shown that other suits to restrain the enforcement of the Act had been filed by other plaintiffs in the District of Columbia, and many more in other districts. The Government professed its anxiety to secure an early *251 determination of its rights, and to that end pledged itself to proceed with all due diligence to prosecute the suit which it had chosen as a test. There were representations that the trial of a multitude of suits would have a tendency 'to clog the courts, overtax the facilities of the Government, and make against that orderly and economical disposition of the controversy that is the Government's aim.' Accordingly the court was asked to stay proceedings in the suits at bar 'until the validity of said Act has been determined by the Supreme Court of the United States' in the Electric Bond & Share case, 'or until that case is otherwise terminated.' To that motion the plaintiffs filed an answer on December 12, 1935, contesting the power of the court to grant the requested stay, asserting that the questions to be passed upon in their suits were not identical with the questions presented in the test one, pointing out that the Act even if valid as applied to some companies, might be invalid as applied to others, and dwelling upon the loss that they were suffering day by day while the menace of the Act obstructed their business and cast a cloud on its legality.

Upon the argument of the motion the Attorney General and the Securities and Exchange Commission announced that until the validity of the Act had been determined by this court in a civil suit which would be diligently prosecuted, neither the Attorney General nor the Commission would seek to enforce the criminal penalties of the Act, and that even after such determination they would not seek to exact penalties for earlier offenses. Written notice to that effect was given to all prosecuting officers. At the same time the Postmaster General announced that even if he had authority, he would not exclude any company from using the mails because of any violation of the Act pending the judicial determination of its validity by this court. Also, the Commission issued **165 a regulation permitting a holding company, when registering, *252 to reserve any legal or constitutional right and to stipulate that its registration should be void and of no effect in the event that such a reservation should be adjudged invalid or ineffective. Finally, the Attorney General offered to submit to a temporary injunction restraining the enforcement of the Act until the Electric Bond & Share case should be determined by this court. On the other side, the plaintiffs offered to consolidate their cases and thus dispose of them as one. They also offered, as we were informed upon the argument, to select a group of suits, not more than three or four, to be tried at the same time, with the understanding that any others would then be held in abeyance. These offers were rejected, and the Government stood upon its motion.

How many suits for like relief were pending in the same and other districts was the subject of oral representations when the motion was submitted. By consent, however, an affidavit by the Attorney General was afterwards supplied with a stipulation of counsel supplementary thereto. The affidavit and stipulation were accepted by the Court, and give precision to representations that would otherwise be vague. From the affidavit it appeared that, in addition to the suits at bar, forty-seven suits had been brought in thirteen districts, five of them, afterwards reduced to four, in the District of Columbia, the others elsewhere. From the stipulation it appeared, however, that none of the cases in other districts would be heard or determined on the merits. The bills were to be dismissed or process was to be quashed in so far as relief was demanded against any officials who are parties to the present suits, and this for the reason that as to all such defendants the venue was improper. In a few suits there were to be decrees pro confesso against local officials who had been instructed by the Attorney General not to offer a defense. The number of pending suits was thus reduced to those in the District of Columbia, though there *253 was a possibility, more or less uncertain, that there would be a renewal in that district of the suits begun elsewhere and discontinued or dismissed. Along with the affidavit and stipulation the Government submitted a copy of the complaint and the cross-bill in the suit against the Bond & Share Company.

Landis v. North American Co., 299 U.S. 248 (1936)
57 S.Ct. 163, 81 L.Ed. 153

Upon this showing the District Judge reached the conclusion that the motion should be granted, stating his reasons in an opinion. 'A decision,' he said, 'by the Supreme Court in the Electric Bond and Share case, even if it should not dispose of all the questions involved, would certainly narrow the issues in the pending cases and assist in the determination of the questions of law involved.' However, the granting of the motion would be conditioned upon diligent and active prosecution of the Government's suit. An order was made on January 9, 1936, staying all proceedings upon the terms and conditions stated in the opinion. From that order the Court of Appeals for the District of Columbia allowed a special appeal, which was heard in April, 1936 (four judges sitting), and decided in June. There were three opinions: An opinion by Mr. Justice Van Orsdel, concurred in by the Chief Justice; a separate opinion by Mr. Justice Groner; and a dissenting opinion by Mr. Justice Stephens. 85 F. (2d) 398, 400. The first opinion states the question before the court to be whether or not the District Court had 'abused its discretionary power in the control of its docket.' Standing alone, this statement would seem to concede that there was power, the inquiry being merely whether the power had been discreetly exercised. The concession, if made, was speedily withdrawn. A few sentences later we are told that the power is confined to cases where the issues and the parties are the same. The separate opinion of Groner, J., treats the subject with greater flexibility. He suggests that after joinder of issue there may be a postponement of the trial if the court *254 in the control of its own docket shall find that course expedient. He couples this with a statement that a stay so indefinite as the one before him would be too broad in any case. None the less, much latitude of judgment would have been left to the trial judge if the standards of that opinion had been adopted as a guide. But plainly they were not. The order of the Court of Appeals in each of the two suits reverses the stay order and remands the cause 'for further proceedings not inconsistent with the opinion of this court.' Evidently the trial judge was expected to **166 conform to doctrine expounded for his instruction in the course of an opinion, yet he would have difficulty in knowing which opinion to select. He might believe that comity or deference constrained him to submit to the opinion approved by two members of the reviewing court, since none had been accepted by the vote of a majority. At the very least there was a likelihood, and indeed almost a certainty, of confusion and embarrassment. In such circumstances the call is plain for a decision that will mark with greater clearness the bounds of power and discretion. We granted certiorari that this result might be attained.

[1] [2] [3] Viewing the problem as one of power, and of power only, we find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical. Indeed, counsel for the respondents, if we understand his argument aright, is at one with us in that regard, whatever may have been his attitude at the hearing in the courts below. Apart, however, from any concession, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must *255 weigh competing interests and maintain an even balance. Kansas City Southern R. Co. v. United States, 282 U.S. 760, 763, 51 S.Ct. 304, 305, 306, 75 L.Ed. 684; Enelow v. New York Life Ins. Co., 293 U.S. 379, 382, 55 S.Ct. 310, 311, 79 L.Ed. 440. True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. Considerations such as these, however, are counsels of moderation rather than limitations upon power. There are indeed opinions, though none of them in this court, that give color to a stricter rule. Impressed with the likelihood or danger of abuse, some courts have stated broadly that, irrespective of particular conditions, there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger. Dolbeer v. Stout, 139 N.Y. 486, 489, 34 N.E. 1102; Rosenberg v. Slotchin, 181 App.Div. 137, 138, 168 N.Y.S. 101; cf. Wadleigh v. Veazie, Fed.Cas.No.17,031; Checker Cab Mfg. Co. v. Checker Taxi Co. (D.C.) 26 F.(2d) 752; Jefferson Standard Life Ins. Co. v. Keeton (C.C.A.) 292 F. 53. Such a formula, as we view it, is too mechanical and narrow. Kansas City Southern R. Co. v. United States, supra; Friedman v. Harrington (C.C.) 56 F. 860; Amos v. Chadwick, L.R. 9 Ch.Div. 459; L.R. 4 Ch.Div. 869, 872. All the cases advancing it could have been adequately disposed of on the ground that discretion was abused by a stay of indefinite

Landis v. North American Co., 299 U.S. 248 (1936)
57 S.Ct. 163, 81 L.Ed. 153

duration in the absence of a pressing need. If they stand for more than this, we are unwilling to accept them. Occasions may arise when it would be 'a scandal to the administration of justice' in the phrase of Jessel, M.R. (Amos v. Chadwick, L.R. 9 Ch.Div. 459, 462), if power to coordinate the business of the court efficiently and sensibly were lacking altogether.

*256 [4] We must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions. Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted. In these Holding Company Act cases great issues are involved, great in their complexity, great in their significance. On the facts there will be need for the minute investigation of intercorporate relations, linked in a web of baffling intricacy. On the law there will be novel problems of far-reaching importance to the parties and the public. An application for a stay in suits so weighty and unusual will not always fit within the mould appropriate to an application for such relief in a suit upon a bill of goods. True, a decision in the cause then pending in New York may not settle every question of fact and law in suits by other companies, but in all likelihood it will settle many and simplify them all. Even so, the burden of making out the **167 justice and wisdom of a departure from the beaten track lay heavily on the petitioners, suppliants for relief, and discretion was abused if the stay was not kept within the bounds of moderation.

[5] We are satisfied that the limits of a fair discretion are exceeded in so far as the stay is to continue in effect after the decision by the District Court in the suit against the Bond & Share Company, and until the determination by this court of any appeal therefrom. Already the proceedings in the District Court have continued more than a year. With the possibility of an intermediate appeal to the Circuit Court of Appeals, a second year or even more may go by before this court will be able to pass upon the Act. Whether the stay would have been proper if more narrowly confined will be considered later on. For the moment we fix the uttermost limit as the date of the first *257 decision in the suit selected as a test, laying to one side the question whether it should even go so far. How the District Court in New York will decide the issues in that case is not to be predicted now. The Act may be held valid altogether, or valid in parts and invalid in others, or void in its entirety. Whatever the decision, the respondents are to be stayed by the terms of the challenged order until this court has had its say. They are not even at liberty, in case of an adjudication of partial invalidity, to bring themselves within the class adjudged to be exempt, though their membership in such a class may be uncertain or contested. Relief so drastic and unusual overpasses the limits of any reasonable need, at least upon the showing made when the motion was submitted.

We think the answer is inadequate that in the contingencies suggested the respondents will be at liberty to move to vacate the stay, and will prevail upon that motion if they can satisfy the court that its restraints are then oppressive. To drive them to that course is to make them shoulder a burden that should be carried by the Government. The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description. When once those limits have been reached, the fetters should fall off. To put the thought in other words, an order which is to continue by its terms for an immoderate stretch of time is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done. Disapproval of the very terms that have already been approved as reasonable is at best a doubtful outcome of an application for revision. If a second stay is necessary during the course of an appeal, the petitioners must bear the burden, when that stage shall have arrived, of making obvious the need. Enough for present purposes that they have not done so yet.

*258 [6] [7] From the stay in its operation during the course of an appeal, we pass to the stay in its operation while the test suit is undetermined. That aspect of the order is subject to separate considerations and calls for separate treatment. The Government contends that a stay thus limited in duration is not unreasonably long, and that the respondents have been sufficiently protected against substantial loss or prejudice. The respondents deny that this is so, and insist that loss or prejudice, substantial in degree, is possible and even probable. We do not find it necessary to determine whether a stay to continue until the decision by the District Judge, and then ending automatically, would be moderate or excessive if viewed as of the time when the order differently conditioned was placed upon the files. Almost a year has gone by since the entry of that order, and in the intervening months many things have happened. All the parties have united in bringing these happenings to our notice and in inviting us to consider

**Landis v. North American Co., 299 U.S. 248 (1936)**
57 S.Ct. 163, 81 L.Ed. 153

them. In the suit against the Bond & Share Company the facts have now been settled by stipulation; the briefs have been prepared; the case has been argued on the merits; and a decision may be expected within a reasonable time. With these happenings disclosed a decision by this court, if directed to the fairness of the stay order as of the date of its entry and if based upon a record made up substantially a year ago, would have little relation to present day realities. 'This court is a court of review and limits the exercise of its jurisdiction in accordance with its function.' AEro Mayflower Transit Co. v. Georgia Public Service Commission, 295 U.S. 285, 294, 55 S.Ct. 709, 713, 79 L.Ed. 1439. To bring about a fitting correspondence **168 between rulings and realities, there must be a new appraisal of the facts by the court whose function it is to exercise discretion, and an appraisal in the light of the situation existing and developed at the time of the rehearing. Patterson v. Alabama, 294 U.S. 600, 607, 55 S.Ct. 575, 578, 79 L.Ed. 1082; *259 Watts, Watts & Co. v. Unione Austriaca, 248 U.S. 9, 21, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323. Benefit and hardship will be set off, the one against the other, and upon an ascertainment of the balance discretionary judgment will be exercised anew.

In each suit, the decree of the Court of Appeals is reversed, the order of the District Court vacated, and the cause remanded to the District Court to determine the motion for a stay in accordance with the principles laid down in this opinion.

Reversed.

Mr. Justice McREYNOLDS concurs in the result.

Mr. Justice STONE took no part in the consideration or decision of this case.

**All Citations**

299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153

**End of Document**  © 2019 Thomson Reuters. No c a m to or g na U.S. Government Works.

McDonald v. U.S., Not Reported in F.Supp.2d (2013)
2013 WL 3901871

2013 WL 3901871
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Jacksonville Division.

Edwin McDONALD, Petitioner,
v.
UNITED STATES of America, Respondent.

No. 3:13–cv–168–J–37MCR.
|
July 29, 2013.

**Attorneys and Law Firms**

Edwin McDonald, Coleman, FL, pro se.

Julie Hackenberry Savell, U.S. Attorney's Office, Jacksonville, FL, for Respondent.

## ORDER

ROY B. DALTON, JR., District Judge.

*1 This cause is before the Court on the following:

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1), filed February 14, 2013;[1] and

2. United States' Motion to File Response One Day Out of Time and Response in Opposition to Defendant's *Pro Se* Motion Pursuant to 28 U.S.C. § 2255 (Doc. 6), filed June 18, 2013;[2] and

3. Petioner's Motion for Extension of Time (Cr.Doc. 30), filed July 11, 2013.[3]

## BACKGROUND

On November 3, 2011, Petitioner pled guilty to one count of conspiracy to distribute cocaine in the amount of five kilograms or more. (Cr.Doc. 12.) On February 28, 2012, Petitioner was sentenced to 168 months of imprisonment. (Cr.Doc. 23.)

On February 14, 2013, Petitioner filed a habeas petition under 28 U.S.C. § 2255. (Doc. 1.) Petitioner argues that he had ineffective assistance of counsel, resulting in a higher than warranted sentence, based on three grounds: (1) that counsel did not ask about his lack of representation in a 1998 conviction and argue accordingly that this conviction should not count against him (*id.* at 14–15); (2) that counsel did not argue for mitigation based on Petitioner's minimal or minor role in the conspiracy (*id.* at 15–16); and (3) that counsel did not recognize that Petitioner's two prior convictions should be counted as one in tabulating his criminal history score (*id.* at 16–17).

The Government argues in opposition that (1) Petitioner waived his right to counsel in the 1998 case by signing beneath a statement to that effect on the judgment (Doc. 6, p. 8); (2) counsel presented as mitigating factors Petitioner's self-surrender and his inability to receive a substantial assistance reduction, due to his "limited" role (*id.* at 8–9); and (3) the U.S. Sentencing Guidelines require that these prior convictions be treated separately for the purposes of calculating the sentence (*id.* at 9–10).

## STANDARDS

A court "shall ... grant a prompt hearing" on a prisoner's motion to vacate a sentence, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "A federal habeas corpus petitioner is entitled to an evidentiary hearing if he alleges facts which, if proven, would entitle him to relief." *Futch v. Dugger,* 874 F.2d 1483, 1485 (11th Cir.1989).

To determine whether a petitioner is entitled to relief from the ineffective assistance of counsel, the petitioner must demonstrate that: (1) counsel's performance was objectively unreasonable; and (2) the petitioner was prejudiced by the deficient performance. *Strickland v. Washington,* 466 U.S. 668, 688, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner must "rebut the strong presumption of effectiveness" of counsel by refuting the possibility that "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir.1995)

(quoting *White v. Singletary,* 972 F.2d 1218, 1220 (11th Cir.1992)) (internal quotation marks omitted). Proof of prejudice requires a showing of "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

## DISCUSSION

*2 The only argument that warrants discussion is Petitioner's claim to a minimal or minor role adjustment.[4] (*See* Doc. 1, p. 15–16.) A criminal defendant may be credited with a minimal or minor role adjustment according to the following guidelines:

> Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels. (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

U.S. Sentencing Guidelines Manual § 3B1.2 (2011). A minimal participant is "plainly among the least culpable of those involved in the conduct of a group." *Id.* § 3B1.2 cmt. n. 4. Indicators of a minimal role include "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others ...." *Id.* A minor participant "is less culpable than most other participants, but [the participant's] role could not be described as minimal." *Id.* § 3B1.2 cmt. n. 5. To apply these guidelines, the Court "must measure the defendant's role against [his] relevant conduct, that is, the conduct for which [he] has been held accountable under U.S.S.G. § 1 B1.3 1 B1.3." *United States v. Keen,* 676 F.3d 981, 997 (11th Cir.) (quoting *United States v. Rodriguez De Varon,* 175 F.3d 930, 934 (11th Cir.1999) (en banc)) (internal quotation marks omitted), *cert. denied,* 133 S.Ct. 573 (2012). The Court "may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." *Id.* (quoting *Rodriguez De Varon,* 175 F.3d at 934) (internal quotation marks omitted). Yet, relatively less culpability is not equivalent to a minor role. *See Rodriguez De Varon,* 175 F.3d at 941. There may be "conspiracies ... in which there are no minor participants" because each conspirator played a significant role. *United States v. Zaccardi,* 924 F.2d 201, 203 (11th Cir.1991). Although the Court need not "make any specific subsidiary factual findings" to support its minor role determination, factors to consider in a drug courier case include the amount of drugs transported and their fair market value. *Rodriguez De Varon,* 175 F.3d at 939, 945.

Petitioner transported sixteen kilograms of cocaine from Texas to Florida on each of three trips. (Cr.Doc. 12, p. 18.) The drug transactions in this case indicate that the street value of forty-eight kilograms of cocaine is at least $1.44 million. (*See id.* at 17–18.) The quantity and market value of these drugs are significant on their own terms as well as relative to the total amount of drugs transported during the conspiracy. (*See id.*; Presentence Investigation Report.)

Under the *Strickland* test, 466 U.S. at 688, counsel was objectively reasonable not to argue that Petitioner's role was minimal or minor. Petitioner does not qualify for a minimal role adjustment because he is not "plainly among the least culpable" in this conspiracy. *See* U.S.S.G. § 3B1.2 cmt. n. 4. Rather, Petitioner was a significant but-for cause of the importation of a large quantity of drugs into Florida. (Cr.Doc. 26, p. 11, 17); *see also United States v. McDonald,* 497 F. App'x 907, 911 (11th Cir.2012) (deferring to district court determination that fraud conspirator was "conduit" for the crime and thus did not qualify for role adjustment). Furthermore, because Petitioner confirmed the expansive conspiracy described in the factual basis (Cr.Doc. 12, p. 14), and admitted that he had "agree[d] to try to accomplish a shared and unlawful plan to distribute cocaine" (Cr.Doc. 28, p. 35), he cannot claim that he was unaware "of the scope and structure of the enterprise and of the activities of others," U.S.S .G. § 3B1.2 cmt. n. 4.

*3 Petitioner also does not qualify for a minor role adjustment because he is not less culpable than *most* co-conspirators. *See id.* § 3B1.2 cmt. n. 5. Co-conspirators who appear equally or less culpable include those who

transported the same or smaller amounts of drugs or the equivalent cash, as well as the Jacksonville-based buyer and Florida distributors. (*See* Cr. Doc. 12, p. 17–26.) Therefore, Petitioner does not offer sufficient evidence to rebut the "strong presumption of effectiveness" of counsel. *See Waters, 46 F.3d at 1512*. To the contrary, counsel may have made a strategic decision to accept responsibility in order to argue credibly for the low end of the guideline range. (*See* Cr. Doc. 26, p. 13–15.)

Petitioner also fails to prove that he suffered prejudice as a result of counsel's decision. *See Strickland, 466 U.S. at 693*. The Court took notice that Petitioner transported a large quantity of drugs with high market value. (*See* Cr. Doc. 26, p. 17–18). The Court also knew of Petitioner's role in comparison to that of his coconspirators. (*See* Cr. Doc. 26, p. 5–11; Cr. Doc. 28, p. 22–35.) The sentencing decision focused on the quantity of drugs and their market value, which are acceptable bases for sentencing a drug courier. *See Rodriguez De Varon, 175 F.3d at 945*. Furthermore, relatively less culpability does not necessarily indicate a minor role. *See McDonald, 497 F. App'x at 911*. Thus, there is no "reasonable probability" that counsel's advocacy would have altered the outcome. *See Strickland, 466 U.S. at 694*.

## CONCLUSION

Petitioner does not qualify under 28 U.S.C. § 2255(b) for a hearing on the ineffective assistance of counsel.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1), is **DENIED.**

2. Petitioner's Motion for Extension of Time (Cr.Doc. 30), is **DENIED.**

3. The Clerk is **DIRECTED** to close the case.

**DONE AND ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 3901871

## Footnotes

1. The Petitioner's criminal sentence was imposed by the undersigned in Case No. 3:11–cr–274–J–37MCR. "Cr. Doc." refers to the criminal docket, while "Doc." refers to the docket in this action.
2. The Court accepts the Government's late response because there is no showing of prejudice to Petitioner and because Petitioner did oppose the Government's motion.
3. The Court construes this pleading as a motion for leave to file a reply to the Government's response. Local Rule 3.01(c) prohibits the filing of replies. While parties may ask for leave to file a reply, they must show good cause. Petitioner has not shown good cause for filing a reply in this case and, after reviewing both this action and Petitioner's criminal action, the Court discerns no reason to grant leave.
4. Petitioner's other claims are without merit. Petitioner waived his right to counsel in the 1998 case. (Doc. 6–1.) His two prior sentences count separately in criminal history scoring because they "were imposed for offenses that were separated by an intervening arrest." U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) (2011); (*see also* Presentence Investigation Report).

End of Document                                          © 2019 Thomson Reuters. No c a m to or g na U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.                3

2011 WL 2729145
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Fort Myers Division.

Robert E. TARDIF, Jr., as
Trustee for Jason Yerk, Plaintiff,
v.
PEOPLE FOR the ETHICAL TREATMENT
OF ANIMALS, a Virginia not-
for-profit corporation, Defendant.

No. 2:09–cv–537–FtM–29SPC.
|
July 13, 2011.

**Attorneys and Law Firms**

Jose Font, Evan A. Zuckerman, Vernis & Bowling of Broward, PA, Hollywood, FL, for Plaintiff.

Philip Jay Hirschkop, Hirschkop & Associates, P.C., Alexandria, VA, Robert David Hall, Jr., Shannon Lee Kelly, Ford & Harrison, LLP, Tampa, FL, for Defendant.

### ORDER

SHERI POLSTER CHAPPELL, United States Magistrate Judge.

\*1 This matter comes before the Court on the Plaintiff, Robert E. Tardiff, Jr. as Trustee for Jason Yerk's Motion for Leave to File a Response In Excess of Twenty Pages (Doc. # 147) filed on July 5, 2011. The Defendant filed its Response in Opposition (Doc. # 148) on July 6, 2011. The Plaintiff also filed a Motion for Leave to File a Reply (Doc. # 149) on July 8, 2011. The Defendant filed a Response in Opposition (Doc. # 150) on July 11, 2011. The Motions are now ripe for the Court's review.

The Plaintiff moves the Court to supplement his Response to the Defendant's Motion for Summary Judgment with an additional ten (10) pages. The Plaintiff states that the Defendant's Motion for Summary Judgment is complex and he needs the additional pages to fully respond. The Defendant objects to the supplement arguing that the Plaintiff misused the pages allowed under the Rules by filing "a largely non-responsive prolix recitation of facts encompassing about 17 to 20 pages." The Defendant further objects arguing that the Plaintiff filed his motion for leave at 11:53pm on the day his response was due, July 5, 2011. The Plaintiff argues that he attempted to contact the Defendant in compliance with M.D. Fla. Local Rule 3.01(g), four (4) days before the response was due, but the Defendant did not reply until the day the response was to be filed. The Defendant states that it replied on the next business day after the July 4, 2011 holiday weekend. The Plaintiff attempted to confer on Friday, July 1, 2011, but was unable to reach the Defense Counsel. The Defense Counsel replied on July 5, 2011, the next business day after the holiday and also the day the response was due to be filed.

While the Plaintiff attempted to contact the Defendant, a mere attempt to confer does not comply with the Local Rules. The Local Rule reads in pertinent part:

> [b]efore filing any motion in a civil case, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action, the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement (1) certifying that the moving counsel has conferred with opposing counsel and (2) stating whether counsel agree on the resolution of the motion. *A certification to the effect that opposing counsel was unavailable for a conference before filing a motion is insufficient to satisfy the parties' obligation to confer. The moving party retains the duty to contact opposing counsel expeditiously after filing and to supplement the motion promptly*

*with a statement certifying whether or to what extent the parties have resolved the issue(s) presented in the motion.*

M.D. Fla. Local Rule 3.01(g) (emphasis added). The Court notes the Plaintiff does seem to be struggling in his efforts to comply with the Court's Local Rules. Although, the Plaintiff did make an effort to file a proper Motion for Leave to Enlarge the Page Limit. However, the Plaintiff failed to present good cause to grant the Motion on the merits. The Motion is therefore, due to be denied. The Plaintiff also filed a Motion for Leave to File a Reply Brief.

\*2 The Plaintiff moves the Court for leave to file a fifteen (15) page reply. The Defendant objects to the Motion arguing the Plaintiff filed a twenty-four (24) page Motion for Partial Summary Judgment, without the proper citation to legal authority and now seeks to supplement legal authority in that Motion with a reply brief. Thus, the Defendant argues that the Plaintiff is attempting in reality to file a thirty-nine (39) page Motion for Summary Judgment.

Under the Local Rules of the Middle District of Florida, "No party shall file any reply or further memorandum directed to the motion or response ... unless the Court grants leave." M.D. Fla. Local Rule 3.01(c). A motion requesting leave to file ... a reply or further memorandum shall not exceed three (3) pages, shall specify the length of the proposed filing, and shall not include, as an attachment or otherwise, the proposed motion response, reply, or other paper." *Torrence v. Pfizer, Inc.,* 2007 WL 788368 \*1 (M.D.Fla. March 14, 2007) (citing M.D. Fla. Local Rule 3.01(d)). The purpose of a reply brief is to rebut any new law or facts contained in the oppositions response to a request for relief before the Court.

The Plaintiff states that his reply brief would allow him to cite the appropriate portions of the record which undisputedly rebut the putative factual disputes set forth by the Defendant in its response to the Plaintiff's Motion for Summary Judgment. The Plaintiff does not allege that there is a new matter of law or fact argued in the Defendant's Response, but merely a dispute as to what those facts mean in this case. In essence he wants to argue his position on the facts presented by the Defendant. As such, the Plaintiff's Motion fails to rise to the level required by the Local Rules to file a reply brief and the Motion is due to be denied.

Accordingly, it is now

**ORDERED:**

(1) The Plaintiff, Robert E. Tardiff, Jr. as Trustee for Jason Yerk's Motion for Leave to File a Response In Excess of Twenty Pages (Doc. # 147) is **DENIED.**

(2) The Plaintiff, Robert E. Tardiff, Jr. as Trustee for Jason Yerk's Motion for Leave to File a Reply (Doc. # 149) is **DENIED.**

**DONE AND ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2729145

End of Document    © 2019 Thomson Reuters. No c a m to or g na U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.    2