# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**ILLOOMINATE MEDIA, INC. and
LAURA LOOMER**

      *Plaintiffs*,

   v.

**CAIR FLORIDA, INC.,** *et al.*,

    *Defendant*.

**Civil Action: 9:19-cv-81179-RAR**

---

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

MANDELBAUM SALSBURG, PC
*Attorneys for Plaintiffs*

Steven W. Teppler, Esq.
Florida Bar Number 14787
11891 US Highway One, Suite 100
North Palm Beach, FL 33408
Office: (646) 946 5659
Email: steppler@lawfirm.ms

Ronald D. Coleman (pro hac vice admission pending)
Lauren X. Topelsohn (pro hac vice admission pending)

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................i

TABLE OF AUTHORITIES .......................................................................................ii

PRELIMINARY STATEMENT ................................................................................. 1

POINT ONE        CAIR NATIONAL IS SUBJECT TO THE COURT'S JURISDICTION ........ 2

1) CAIR National is Subject to the Court's Specific Jurisdiction ................. 2

2) Jurisdiction Over CAIR National Comports with Due Process ................. 4

A. Prong One: "Arising Out of" or Relatedness ....................................... 5

B. Prong Two: Purposeful Availment ......................................................... 6

C. Prong Three: "Fair Play and Substantial Justice" ................................ 6

POINT TWO       THE COMMUNICATIONS DECENCY ACT DOES NOT IMMUNIZE CAIR
                NATIONAL FOR ITS TORTIOUS AND ILLEGAL CONDUCT ................. 9

POINT THREE     DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A
                CLAIM FOR RELIEF MUST BE DENIED.................................................. 10

1) Testimonial Affidavits are Not Properly Considered on a
   12(b)(6) Motion. ...................................................................................... 11

2) The Bernard Affidavit and Hooper Declaration are Both Inappropriate
   Submissions on a Motion to Dismiss and Contain Inadmissible
   Hearsay. .................................................................................................. 14

3) Even if The Court Were to Consider Evidence Outside the Pleadings
   at This Stage, a Conversion to Summary Judgment with Notice would Be
   Mandatory. .............................................................................................. 17

POINT FOUR      THE ALLEGATIONS OF THE COMPLAINT AGAINST CAIR
                NATIONAL STATE CAUSES OF ACTION FOR WHICH RELIEF CAN
                BE GRANTED .......................................................................................... 18

POINT FIVE      CAIR NATIONAL'S MOTION TO STRIKE SHOULD BE DENIED......... 19

CONCLUSION................................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014)....................................... 17

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)............................................ 9

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ................................................................................. 10

*Assa Realty, LLC v. Sol. Grp. Corp.*, 2018 WL 318475, at *3 (S.D. Fla. Jan. 5, 2018)............... 10

*Boudin v. Residential Essentials, LLC*, No. CIV.A.07 0018 WS C, 2007 WL 2023466, at *2
    (S.D. Ala. July 10, 2007)........................................................................................................... 12

*Bracewell v. Nicholson Air Servs., Inc*., 748 F.2d 1499, 1504 (11th Cir.1984) ............................ 2

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 474-75 (1985) ...................................... 4

*Calder v. Jones*, 465 U.S. 783, 104 (1984).................................................................................... 5

*Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015) ....................... 2

*Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) .......................................................... 12

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) 5

*Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir.1987) ......................................................... 11

*e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1273 (M.D. Fla. 2016)......... 9

*Exhibit Icons, LLC v. XP Cos*., 609 F.Supp.2d 1282, 1300 (S.D.Fla.2009) ................................ 19

*Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir.1984)..................................................................... 17

*Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010).................................................................... 5

*Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)...................................... 10

*Helicopteros Nacionales v. Hall*, 466 U.S. at 414 ....................................................................... 5

*Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002)......................................................... 12, 17

*Kenny v. Seminole Wind Rest. of Bainbridge, LLC*, No. 7:14-CV-97 HL, 2014 WL 7358337, at
    *2 (M.D. Ga. Dec. 23, 2014)..................................................................................................... 11

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ..................................................... 11

*Lewis v. Asplundh Tree Expert Co.*, 305 F. App'x 623, 627 (11th Cir. 2008) ............................ 11

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352–53 (11th Cir. 2013)............. passim

*Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990)................................................................. 2

*McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).................................................. 10

*Mendez v. VJI, Inc.*, No. 12-81230-CIV, 2013 WL 12146467 (S.D. Fla. July 7, 2013) .............. 13

*Nemerovsky v. Revenue Recovery Corp.*, No. 2:14-CV-607-FTM, 2015 WL 4138871 at *2 (M.D.
    Fla. July 8, 2015)....................................................................................................................... 12

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry*, LLC, 2010 WL 5393265, at *1 (S.D.Fla.
    Dec.21, 2010) ............................................................................................................................ 19

*Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1216 (11th Cir.1999)............................................... 3, 4

*Posner v. Essex Ins. Co*., 178 F.3d 1209, 1221 (11th Cir. 1999)................................................. 6

*Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir.1985) .................................... 17

*Regions Bank v. Commonwealth Land Title Ins. Co*., No. 11–23257–CIV–RNS, 2012 WL
    5410609, at *2 (S.D.Fla. Nov.6, 2012) ..................................................................................... 19

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997)......... 8

*Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) ....... 9

4821-2649-9499, v. 2

*Rothchild v. Crane Co.*, No. 14-80271-CIV, 2014 WL 3809185, at *1–2 (S.D. Fla. Aug. 1, 2014) .............................................................................................................................................. 19

*Seibel v. Society Lease, Inc.*, 969 F.Supp. 713, 715 (M.D.Fla.1997) ............................................ 19

*Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1225 (S.D. Fla. 2013) ...................................... 12

*Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) ............................... 10

*Sutherland v. SATO Glob. Sols., Inc.*, No. 17-CV-61596-WPD, 2018 WL 3109627, at *6 (S.D. Fla. Apr. 10, 2018) .......................................................................................................................... 6

*Todd v. Ocwen Loan Servicing, LLC*, No. 17-CV-60454, 2017 WL 1650622, at *3 (S.D. Fla. May 2, 2017) ............................................................................................................................... 12

*U.S. Bank Nat'l Ass'n v. Alliant Energy Res., Inc.*, 2009 WL 1850813, at *3 (W.D.Wis. June 26, 2009).......................................................................................................................................... 19

*United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) ......................................... 2

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018), *cert. denied sub nom* ... 4, 5

*Waite v. Union Carbide Corp.*, __ U.S. __ 139 S. Ct. 1384, 203 L. Ed. 2d 611 (2019) ............... 4

*Zanakis v. Scanreco, Inc.*, No. 18-CV-21813-UU, 2019 WL 2211872, at *5 (S.D. Fla. Feb. 6, 2019).......................................................................................................................................... 6

## Statutes

Florida Statute §48.193(1)(a)(2) ............................................................................................... 2, 3

Florida Statute §48.193(1)(b)......................................................................................................... 3

47 U.S.C. §230(c)(1)....................................................................................................................... 1

## Rules

Rule 12(b)(1)................................................................................................................................. 10

Rule 12(b)(6)............................................................................................................. 10, 13, 17, 18

Rule12(d) ...................................................................................................................................... 17

Rule 12(f) ...................................................................................................................................... 19

4821-2649-9499, v. 2

## <u>PRELIMINARY STATEMENT</u>

Plaintiffs Illoominate Media, Inc. and Laura Loomer (together "**Plaintiffs**") respectfully submit this opposition to the motion of defendant CAIR Foundation ("**CAIR National**")[1] to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2)-(3).

With respect to CAIR National, Plaintiffs assert claims for tortious interference with business relationships (Count II), unlawful agreement in restraint of trade (Count III), civil conspiracy (Count IV) and for violation of Florida's Deceptive and Unfair Trade Practices Act (Count V) (collectively the "**Tort Claims**").  CAIR National now demands, at this incipient stage that Plaintiffs' Tort Claims be dismissed in their entirety for failure to state a claim for relief. As discussed <u>infra</u>, in support of its demand, CAIR National baselessly attempts to leverage the cloak of immunity it claims that Twitter, Inc. ("**Twitter**") has under the Communications Decency Act, 47 U.S.C. §230(c)(1) (the "**CDA**"). CAIR National, however, *is not* Twitter -- nor is CAIR National's co-conspirator, CAIR Florida, Inc. ("**CAIR FL**").  Any immunity that Twitter may have thus does not insulate CAIR National from liability for Plaintiffs' sufficiently plead Tort Claims. Likewise, CAIR National's submission of unsubstantiated factual assertions of matters outside the four corners of the Complaint is equally unavailing.

The Court is already familiar with the facts of this case and the extensive briefing and submissions of both named Defendants; Plaintiffs will not rehearse them again. Given the present lineup of parties, the sole remaining count of the Complaint is the one sounding in

---

[1]The present motion was originally filed jointly by CAIR National and CAIR Florida, Inc. (<u>See</u>, ECF 11]. Thereafter, by Order dated October 22, 2019 [ECF 19] this Court denied Plaintiffs' motion to remand this action to state court and, in doing so, dismissed Plaintiffs' claims against the latter defendant.

tortious interference. This one is, however, so threatening to Defendant CAIR National that it has resorted to the unusual and improper tack of submitting factual affidavits on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  These affidavits are not only inappropriate on a motion to dismiss for a failure to state a claim. They are packed with inadmissible hearsay, mutually inconsistent and are premised on the Court accepting sworn testimony in which a witness admits repeatedly lying and misrepresenting himself for political purposes.  Moreover, they all point to an inescapable observation:  That the one person at CAIR National whose conduct is the key disputed fact at issue, CAIR Executive Director Zahra Billoo, has remained silent and left it to others to "testify" about what she did and said.

A Rule 12(b)(6) motion is not the place to decide disputed facts, and Defendants' submissions have, if anything, made it clear that they could never be decided on the present record, if at all, on a motion.  The remainder of the motion, as explained below, fares no better; its personal jurisdiction argument, in particular, is utterly unavailing given the applicable standard and facts of record.  For these reasons the Court should deny Defendant's motions to dismiss and for other relief and proceed with the pretrial process by which the acute questions raised by Defendants' own submissions can be resolved openly, fairly and justly.

**POINT ONE**

**<u>CAIR NATIONAL IS SUBJECT TO THE COURT'S JURISDICTION</u>**[2]

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state

---

[2]In the event any doubt remains concerning the Court's jurisdiction over CAIR Florida, Plaintiffs respectfully request an evidentiary hearing concerning the question in accordance with the Court's discretion. *See, e.g., Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990); and *Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1504 (11th Cir.1984).

2

long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015), *quoting, United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Here, both requirements are satisfied.  A defendant may be subject to personal jurisdiction under Florida's long-arm statute in either by way of specific personal jurisdiction or general jurisdiction. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015). Plaintiffs submit that Court has at least specific personal jurisdiction with respect to CAIR National. As set forth below, the factual record readily supports Plaintiffs' contention.

1)      <u>**CAIR National is Subject to the Court's Specific Jurisdiction**</u>

A defendant may also be subject to personal jurisdiction under Florida's long-arm statute based on specific jurisdiction. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015).  That is defined as "jurisdiction over suits that arise out of or relate to [that] defendant's contacts with Florida," *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1352–53 (11th Cir. 2013), Florida Statute §48.193(1)(a)(2).

Section 48.193(1)(a)(2) is sometimes referred to the "tortious act provision" of Florida's long-arm statute.  *See, e.g., Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013). That Section provides that a nonresident defendant is subject to personal jurisdiction in Florida "for any cause of action arising from" having "[c]omit[ed] a tortious act within [Florida]." Fla. Stat. §48.193(1)(a)(2).  The Statute does not, however, require that the defendant be present in Florida at the time of the tortious act, only that it resulted in injury in Florida. *See, e.g., Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) and *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1353 (11th Cir. 2013).  In *Lovelady*, a "nationally-known entertainer" sued her former personal manager in the Middle District of Florida for trademark infringement.

*Id*. at 1282-83. Plaintiff alleged that the defendant had wrongfully posted her trademark-protected name and photo on his website to "promote" himself "as a personal manager for music artists." *Id*. at 1282. Although defendant's website was "accessible to the public in Florida," the defendant moved to dismiss on the ground of a lack of personal jurisdiction because he lived and created his website in Tennessee and had never actually come to Florida. *Id.* at 1282–83.

The court granted defendant's motion, *id*. at 1283, but the Eleventh Circuit reversed, holding that "on a motion to dismiss … [the] allegations in the complaint [were] sufficient" to establish personal jurisdiction in Florida over defendant under the 'tortious acts' provision in § 48.193, because "the alleged infringement on the website caused injury in Florida."[3] *Id*. at 1283-84, *citing*, *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1216 (11th Cir.1999) (Florida law permits personal jurisdiction over nonresident defendant alleged to have committed a tort causing injury in Florida). The Eleventh Circuit reaffirmed its *Lovelady* analysis in *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1353 (11th Cir. 2013), observing that under *Lovelady*, a nonresident defendant is deemed to have committed "a tortious act within" for purposes of Florida's longarm statute when he commits an act outside the state alleged to have caused injury within Florida. *Id*. at 1353, *citing*, *Lovelady* at 1283.

2)        **Jurisdiction Over CAIR National Comports with Due Process**

"Whether specific or general, the exercise of personal jurisdiction over a defendant must comport with due process. The touchstone of this analysis is whether the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend

---

[3]*Lovelady* involved a prior version of the Florida long-arm statute. In 2013, the Florida legislature amended the statute and moved the tortious acts provision, previously codified at §48.193(1)(b) to §48.193(1)(a)(2). The amendment did not alter the provision's language or change its substance in any way. *Louis Vuitton* at n.7.

traditional notions of fair play and substantial justice.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018), *cert. denied sub nom. Waite v. Union Carbide Corp.*, __ U.S. __ 139 S. Ct. 1384, 203 L. Ed. 2d 611 (2019).  To determine whether the exercise of specific jurisdiction affords due process, the 11th Circuit applies a three-part test:

> …(1) whether the Plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (sale of counterfeit goods in Florida through website was a tortious act within the State subjecting defendant to personal jurisdiction there under Florida's long-arm statute), *citing, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 474-75 (1985) (among others).  *Cited in, Waite v. All Acquisition Corp.,* 901 F.3d 1307, 1313 (11th Cir. 2018), *cert. denied sub nom.*, 139 S. Ct. 1384, 203 L. Ed. 2d 611, 2019 WL 400831 (2019).  "The Plaintiff bears the burden of establishing the first two prongs, and if the Plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Louis Vuitton*, at 1355, *quoting, Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) (additional quote marks omitted).

### A.  Prong One: "Arising Out of" or Relatedness

"[A] fundamental element of the specific jurisdiction calculus is that Plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton*, at 1355, *quoting, Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (additional internal quotation omitted)).  The "inquiry must focus on the direct causal relationship between

the defendant, the forum, and the litigation." *Id*. at 1356, *quoting, Fraser*, 594 F.3d at 850

(internal quotation marks omitted) (*quoting, Helicopteros*, 466 U.S. at 414).

Here the allegations are, as set forth above, that CAIR National had the power to procure,

and did procure, the banning of Plaintiff Laura Loomer from Twitter as a result of her repeated

online challenges to its favorite politicians, particularly U.S. Representative Ilhan Omar.

(Complaint ¶¶ 181 – 195), causing a cascading series of bans from other platforms that were not

only foreseeable but affirmatively urged by executives of CAIR National and its affiliates (*id*. ¶¶

187-195) and the resulting damages suffered by both Plaintiffs.

### B.  Prong Two:  Purposeful Availment

In intentional tort cases, as here, "there are two applicable tests for determining whether

purposeful availment occurred," one of which is "the 'effects test,' which the Supreme Court

articulated in *Calder v. Jones*, 465 U.S. 783, 104 (1984)." *Louis Vuitton,* at 1356. "Under the

'effects test,' a nonresident defendant's single tortious act can establish purposeful availment,

without regard to whether the defendant had any other contacts with the forum state." *Id., citing*,

*Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008).

> This occurs when the tort: "(1) [was] intentional; (2) [was] aimed at the forum
> state; and (3) caused harm that the defendant should have anticipated would be
> suffered in the forum state."

*Id*., *quoting*, *Lovelady*, at 1285-86.  As discussed above, in *Lovelady*, the Court held that

defendant's use of the Florida Plaintiff's trademark protected name and picture on a website

accessible in Florida "satisfied the *Calder* 'effects test' for personal jurisdiction – the

commission of an intentional tort aimed at a specific individual in the forum whose effects were

suffered in the forum." *Lovelady*, at 1288.  Due process was satisfied because the Plaintiff was a

Florida resident and the defendant directed his intentional actions towards the Plaintiff in the

forum state.  *Id.*  The requirement is thus  met when a Plaintiff alleged both "but-for" causality of the injury because of the defendant's conduct, and that the injury also be a "foreseeable consequence" of the Defendant's contacts with the forum state.  *Zanakis v. Scanreco, Inc.*, No. 18-CV-21813-UU, 2019 WL 2211872, at *5 (S.D. Fla. Feb. 6, 2019).  Again, it can hardly be disputed that this is exactly what the Complaint alleges here.

### C.  Prong Three: "Fair Play and Substantial Justice"

The exercise of personal jurisdiction CAIR Florida in Florida also comports with fair play and substantial justice. As this Court explained in *Sutherland v. SATO Glob. Sols., Inc.*, No. 17-CV-61596-WPD, 2018 WL 3109627, at *6 (S.D. Fla. Apr. 10, 2018):

> The Eleventh Circuit has outlined factors to consider: "the burden on [defendants] of defending the suit in Florida; Florida's interest in adjudicating the suit; [plaintiff's] interest in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interests of the states in furthering shared substantive policies. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1221 (11th Cir. 1999). Defendants would not be substantially burdened if forced to defend this action in Florida, as they have had regular contact with [their] Florida-based [affiliate], and "modern methods of transportation and communication" mitigates the burden of litigating in Florida. *Posner*, 178 F.3d at 1221 (11th Cir. 1999). There is no evidence that litigating in Florida would negatively affect the interests of the states in furthering shared substantive policies, or that another forum would better promote the efficient use of judicial resources. Florida has an interest in litigating this action, as the alleged harm to Plaintiff has been felt in Florida.

The same applies here.  It is not disputed that both Plaintiffs are based in Florida, and that the Complaint alleges harm based on CAIR National's conduct.  These provide a direct causal relationship between CAIR National and this District sufficient to satisfy this first requirement. *See, Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013).

Moreover, the relationship between CAIR National and its affiliate CAIR Florida is at least as close as that found sufficient in *Sutherland*. As set forth in the Affirmation of Ronald D. Coleman ("Coleman Aff."), CAIR National cagily describes CAIR Florida and its other local

affiliates alternately as "offices" of CAIR National and as "chapters" of CAIR National. Notwithstanding their formally separate legal identities, the extent of their separateness is a serious fact question.  For one thing, as detailed in the Coleman Aff., the CAIR National and CAIR Florida websites have linked and most respects do link seamlessly to each other with respect to functions such as soliciting funds for CAIR National via pages linked to on CAIR Florida's website; a popup on the CAIR National home page that urges browsers to "Find your local CAIR office" with links to its local locations, including CAIR Florida; sharing email domain names; soliciting applications for employment at CAIR Florida on CAIR National's website; and cross-linking and "retweeting" of each other's social media posts, either directly or via the personal, identified accounts of key personnel.  *See also*, Hooper Declaration at ¶4.

CAIR National has submitted no proof of its finances or other limitations on its ability to make use of what the Eleventh Circuit in *Posner* called "modern methods of transportation and communication" that suggest it would be burdened by litigating in the jurisdiction where its conduct caused the harm complained of, i.e., Florida. It is because of that injury, of course, that Florida, like every state, has a strong interest in protecting its citizens.  And Plaintiffs have an undeniable interest in litigating the case in their chosen forum.  As the Eleventh Circuit explained in *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997):

> [I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. As we [have] observed . . . [m]odern means of communication and transportation have lessened the burden of defending a lawsuit in a distant forum. The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will make litigation 'so gravely difficult and inconvenient' that he unfairly is at a severe disadvantage in comparison to his opponent.

*Id*. at 947–48 (internal citations and quotes omitted). Absent any showing of inconvenience, unfairness or unforseeability by CAIR National, it clearly has not met that burden here.

**POINT TWO**

**THE COMMUNICATIONS DECENCY ACT DOES NOT IMMUNIZE CAIR NATIONAL FOR ITS TORTIOUS AND ILLEGAL CONDUCT**

CAIR National demands that "[e]very count in this action must be dismissed" and is based on some calculated (non-existent) scheme. (Moving Brief at 5).  Specifically, CAIR National claim that Plaintiffs "seek a run around from Twitter's CDA immunity by dismissing Twitter as a defendant and then alleging" that CAIR National (and CAIR-FL) should be "responsible for Twitter's moderation decision." *Id*.  CAIR National's factual and legal theories are equally baseless.

As an initial matter, Plaintiffs' dismissal of Twitter was without prejudice and, axiomatically, unrelated to the CDA.  (See, Stipulation, Exhibit C to Coleman Aff.).  Further, whatever immunity Twitter may have under the "safe harbor provisions" is irrelevant to the claims against CAIR, which do not derive from Plaintiffs' claims against Twitter and which were never adjudicated on the merits anyway.

To invoke immunity, the provision CAIR National cites requires that "(1) defendant be a service provider or user of an interactive computer service; (2) the cause of action treats a defendant as a publisher or speaker of information; and (3) a different information content provider provided the information." *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) (internal quote omitted). "The purpose of the CDA is to establish 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1273 (M.D. Fla. 2016), *quoting*, *Almeida v. Amazon.com,*

9

*Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006). With respect to CAIR National, Plaintiffs' tort claims at CAIR National are not based on its conduct as a "service provider or user" or "a publisher or speaker of information" nor are they based on "content" posted on that CAIR National was the "provided." *Roca Labs* at 1319.

Finally, even if CAIR National were to wriggle its way under whatever immunity cloak it ascribes to Twitter, "[t]he CDA statutory immunity is an affirmative defense which Plaintiff is not required to negate in its Complaint." *e-ventures Worldwide, LLC* at 1273 (M.D. Fla. 2016). In short, Twitter's defense under the CDA – if it has any – has no bearing on the viability of Plaintiffs' claims against CAIR National.

### POINT THREE

### DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF MUST BE DENIED

Defendant's demand that the Court dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) should be denied for two fundamental reasons:  (1) Plaintiffs allege sufficient plausible facts to state cognizable claims against CAIR National;  and (2) CAIR National's one-sided evidentiary offerings in the form of ex parte affidavits violate core requirement of the very Rule under which the motion has been brought:  that a motion on the pleadings must be based solely on the pleadings.

The standards for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) are well known. "On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (internal cite omitted). *In accord, Assa Realty, LLC v. Sol. Grp. Corp.*, 2018 WL 318475, at *3 (S.D. Fla. Jan. 5, 2018).  In deciding such a motion, the court must accept well-pled facts as true and construe the complaint in the light favorable to the Plaintiff.  *See, Ashcroft*

*v. Iqbal,* 556 U.S. 662, 678 (2009). Moreover, the Court must limit its consideration to the pleadings and exhibits attached thereto. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)

The procedural history of this case in before this Court warrants mentioning that the standard under Rule 12(b)(1), which governs a motion to dismiss for lack of subject matter jurisdiction (and regarding which the Court has already ruled in connection with Plaintiff's remand motion), is substantially more generous to the movant than Rule 12(b)(6)'s standard. While a motion under Rule 12(b)(1) places the burden of establishing jurisdiction on the non-movant, *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002), a movant under Rule 12(b)(6) bears the burden of demonstrating the complaint should be dismissed. Moreover, on a 12(b)(1) motion, "a court is free to consider extrinsic evidence such as testimony and affidavits and may . . . proceed as it never could under Rule 12(b)(6)." *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (internal citations and quotations omitted). Considering the extent to which Defendant's motion is premised on asking the Court to adopt "he said" instead of "she said" as grounds for dismissal, this factor is almost entirely dispositive here.

**(1)**     **<u>Testimonial affidavits are not properly considered on a 12(b)(6) motion</u>**

There can be no more straightforward application, on a motion under Rule 12(b)(6), of the black-letter prohibition on consideration of factual submissions extraneous to the pleadings than what the Court is faced with here: testimonial affidavits simply denying the allegations of the complaint or, even better, merely "explaining them away" as merely the result of a silly prank.

If evidence of this nature is ever appropriate – and in the absence of cross-examination, corroboration or proper authentication of much contained in these affidavits, it probably never is – it is on a motion for summary judgment, not a motion on the pleadings. "It is clearly the law in

this circuit that whenever a district judge converts a 12(b)(6) motion to dismiss into one for summary judgment by considering matters outside the pleadings the judge must give all parties ten days' notice that he is so converting the motion." *Donaldson v. Clark,* 819 F.2d 1551, 1555 (11th Cir.1987), quoted in *Lewis v. Asplundh Tree Expert Co.*, 305 F. App'x 623, 627 (11th Cir. 2008). *See*, e.g., *Kenny v. Seminole Wind Rest. of Bainbridge, LLC*, No. 7:14-CV-97 HL, 2014 WL 7358337, at *2 (M.D. Ga. Dec. 23, 2014). "Bryant has filed an affidavit in support of his denial that he was Plaintiff's employer . . . the Court declines to consider Bryant's affidavit. If he wishes the Court to examine the evidence contained in the affidavit, he may, of course, file a motion for summary judgment").

While *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002), recognized an exception to the general rule where evidence submitted with a motion to dismiss is central to the Plaintiff's claim, that exception only applies to consideration of proof based on a **document** of undisputed authenticity. In other words, every "well-pled factual allegation must be taken as true except in the rare circumstance where it is contradicted by undisputed **documentary** evidence." *Nemerovsky v. Revenue Recovery Corp.*, No. 2:14-CV-607-FTM, 2015 WL 4138871 at *2 (M.D. Fla. July 8, 2015) (emphasis added), *citing*, *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).  The exception to extraneous evidence enunciated in *Horsley* does not apply to a testimonial (as opposed to authenticating) affidavit, much less one from an interested or friendly party, merely denying the allegations of the complaint. *Applebaum v. Citibank, N.A.*, No. 1:12-CV-20080-UU, 2012 WL 12882921, at *2 (S.D. Fla. May 4, 2012).

*Horsley*, then, only goes so far as requiring a Plaintiff to come forward with evidence to rebut the plain import of objective documentary proof, readily authenticated, relating to legal or commercial processes or transactions. "In this context 'undisputed' means that the authenticity of

the document is not challenged." *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1225 (S.D. Fla. 2013). "An assertion set forth in testimony is not 'undisputed' simply because not contradicted by the Plaintiff in his briefs; since this matter is before the Court on motion to dismiss for failure to state a claim, the Plaintiff was not required to challenge [defendant's] assertion on pain of dismissal." *Boudin v. Residential Essentials, LLC*, No. CIV.A.07 0018 WS C, 2007 WL 2023466, at *2 (S.D. Ala. July 10, 2007). *Compare*, *Todd v. Ocwen Loan Servicing, LLC*, No. 17-CV-60454, 2017 WL 1650622, at *3 (S.D. Fla. May 2, 2017) ("Plaintiff does not actually go as far as challenging the Acknowledgment Letter's authenticity," referring the Plaintiff's failure to come forward with a bona fide ground for challenging the authenticity of a document).

It could not be otherwise without negating the entire role of pretrial discovery, without which every lawsuit would become a battle of affidavits. Besides making the carefully articulated procedures and standards for summary judgment redundant, such an approach would turn notice pleading entirely on its head. As this Court explained in *Mendez v. VJI, Inc.*, No. 12-81230-CIV, 2013 WL 12146467 (S.D. Fla. July 7, 2013):

> [Defendant] Breedlove's argument for dismissal is premised entirely on his affidavit contradicting the allegations of Plaintiffs' complaint. . . . Of course, this argument misses the point: the Court will not consider Breedlove's affidavit at the motion to dismiss stage because, at this stage, the Court takes the allegation of Plaintiffs' complaint as true. . . .
>
> Breedlove [also] argues that any discovery in this case is futile because the facts in his affidavit are true. Of course, this argument misses the same point: the facts in the affidavit are irrelevant at the motion-to-dismiss stage of the litigation— Plaintiffs shall have the opportunity to discover for themselves whether the facts in Breedlove's affidavit are true.

*Id*. at *2 (including n. 3). As the Court recognized, mere denials, even under oath, never rise to the level of "undisputed" testimony to overcome Rule 12(b)(6)'s presumption that the allegations

of a pleading are true and to come forward with evidence to support her own allegations at the pleadings stage.

**(2)     The Bernard Affidavit and Hooper Declaration Are Both Inappropriate Submissions on A Motion to Dismiss and Contain Inadmissible Hearsay.**

If mere denials of a complaint's allegations, under oath or otherwise, cannot result in the dismissal of a complaint – and there is little more certain in the annals of federal procedure than the proposition that they cannot – Defendant's suggestion that Court rely on the Bernard Affidavit to do so (ECF No. 12-1) boggles the mind. This document recounts a fantastic tale dreamt up by Defendants to explain away the plain import of a *Wall Street Journal* article (ECF No. 12-2) that **directly supports** Plaintiffs' key allegations regarding CAIR National, instead claiming that "CAIR Foundation's involvement was something [Bernard and] Chris Gillen made up[, and] CAIR Foundation had no actual involvement with Twitter as far as I know. . . . To be clear, the story is true, CAIR Foundation's involvement is fictitious." (*Id.* at ¶¶4-5.)

The audacity of this filing represents brass of the highest order. Bernard, of course, is not a party to this action. His testimony has nonetheless been introduced into the proceedings to present, not a **denial** of the facts as actually perceived and experienced first-hand by the Plaintiffs, but to **take credit** for them himself as a wacky stunt. Its purpose is to extract CAIR National from the untenable position of calling *Wall Street Journal* reporters – whose article, Defendant implicitly acknowledges, is both a key premise of the claims in this action as well as devastating proof of them – liars, or at least incompetent.

Bernard, besides not being a party, has never been deposed in this action. The claims in his affidavit are both mainly uncorroborated and have been completely untested by the traditional tools of pretrial disclosure. Bernard purports to "adopt" an attached blog article as his "personal statement," of which he claims "full personal knowledge of all the facts" contained

14

therein. (*Id*. at ¶ 4.)  Bernard did not write the article, however; someone named Jared Holt did. While it does quote Bernard at length, it also quotes many other people whose testimony would be critical to the claims here, including not only CAIR Executive Director Zahra Billoo, who the Holt article quotes as saying she "tried to clarify to the *Wall Street Journal* that CAIR's role in Loomer's suspension was limited to utilizing the platform's built-in reporting features . . . However, that information was not conveyed in their story." (ECF 12-1 at 19.)

It is not only extraordinary that Bernard claims to authenticate statements by others "not present in court" – most obviously, Holt, Gillen, and Billoo as well as the Wall Street Journal reporters who supposedly claimed to have understood but ignored Billoo's "clarifications" (making those supposed acknowledgments double hearsay by the time Bernard swears to them). It is not only stunning that, on a motion to dismiss for failure to state a claim, a party would submit a testimonial affidavit from a third party which confirms the core allegations of the complaint with respect to the main claim of tortious interference but attempts to explain it away with an alternative narrative.  And it not only chilling that Defendants saw fit to rely on the testimony of an affiant who describes his own **deceptive**, **fraudulent conduct**, notwithstanding that he seems to view what, if true, would be an undeniably cruel and vicious act as a harmless, amusing, "prank."  All these things are true enough – but they, and the Declaration of Ibrahim Hooper (ECF No. 12-5) – all distract from the obvious question:  **Where is the testimony of Zahra Billoo?**

Zahra Billoo – whose role is so central to the article "adopted by" Bernard; who is quoted by Holt, who supposedly spoke to her, which Bernard did not do; who also, it is undisputed, spoke to the *Wall Street Journal* about the very acts that are at the center of this lawsuit – would, on summary judgment, be the one person whose testimony in depositions and in affidavits would

15

decide whether this is a case that is going to trial or not. Zahra Billoo would be the subject of extensive, and likely contradictory, testimony from deponents Holt, Bernard, Gillen, the reporters who wrote the article, as well as Hooper (whose Declaration also essentially calls the *Journal* reporters liars) and whatever other "pranksters" were in on Bernard and Gillen's merry romp, as well as representatives of Twitter who were interviewed for the *Journal* article. And at the trial to follow the Court's likely recognition that summary judgment was inappropriate given such hotly disputed material facts, Billoo would inevitably be the star witness for both sides.

And… **Zahra Billoo is a CAIR executive**. Getting her signature on an affidavit should have been simple, natural and efficient. Its absence is already the dog that did not bark in this case.

The Ibrahim Cooper declaration (ECF No. 12-5) requires hardly any comment. Obviously, it is also in an inappropriate submission at this stage of the litigation. But far from resolving factual questions, it raises far more. For one thing, Hooper testifies that "no communications with Twitter on behalf of CAIR Foundation would be possible" (an extraordinary assertion of institutional omniscience) without his "knowledge and approval." (*Id.* at ¶ 4.) Yet Bernard testifies that Zahra Billoo did communicate with Twitter, albeit only via supposedly "normal" channels. Nowhere does Cooper say that he so much as asked Zahra Billoo if she, perhaps, swerved out of her lane to "communicate" with Twitter as the *Wall Street Journal* suggests she did. Moreover, Cooper testifies that not only did he have full control over all possible communications between Twitter and CAIR Foundation, but that even "[i]f anyone at CAIR-Florida were to reach out to CAIR Foundation about having CAIR Foundation request Twitter to do anything . . . that request would go through me." (*Id.* at ¶ 6.) This assertion is hard to square with the sworn testimony of CAIR Florida's Hassan Shibly (ECF No. 12-3) that any

16

such request would go through **him**, Shibly, other than Wilfredo Ruiz of CAIR Florida. (*Id.* at ¶ 8). Shibly does not mention the all-knowing Hooper of CAIR National at all or acknowledge Hooper's claim of authority over communications by CAIR Florida (a claim that is hard to square with both Defendants' position that the two organizations are utterly independent). Of course, Shibly's claim to have "canvassed all employees at CAIR Florida" and that they all agree with him is rank hearsay.

Still and all it is Zahra Billoo – the person in the best position to say, under oath, what she said to the *Wall Street Journal*; to testify to what she did or did not say to Twitter; to tell a jury, in admissible form, what Nathan Bernard swears she said to Jared Holt – who should be heard. It is the truth of **her** alternative narrative, as recounted by Jared Holt and sworn to by Nathan Bernard, that should, in fact, be evaluated from her own mouth. And that should happen in the context of all the admissible evidence, of her prior statements in depositions and in after live cross-examination, that CAIR National admits are central to this case. That role cannot be offloaded to Nathan Bernard or Ibrahim Cooper under any circumstances – and they certainly have nothing to say on the subject in the context of a Rule 12(b)(6) motion to dismiss.

**(3)      Even if the Court Were to Consider Evidence Outside the Pleadings at This Stage, A Conversion to Summary Judgment with Notice Would Be Mandatory.**

Where one or more parties present evidence outside the pleadings on a motion to dismiss under Rule 12(b)(6), and if the court decides to consider that evidence, the motion must be "converted into a summary judgment motion necessitating all the procedural safeguards of Rule 56," including notice to the parties. *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir.1984); *see also*, Fed. R. Civ. P. 12 (d).[4] "The purpose of this requirement is to make certain that the parties are

---

[4]"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.

aware of the conversion and have an opportunity to present documents and arguments for and against the granting of summary judgment." *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir.1985).  "Critically, such a conversion requires notice to the parties and an opportunity for mutual discovery." *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014), *citing*, *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002). In any event, such a conversion is patently inappropriate here because of the extent of the factual gap between the parties.

**POINT FOUR**

**THE ALLEGATIONS OF THE COMPLAINT AGAINST CAIR NATIONAL STATE
CAUSES OF ACTION FOR WHICH RELIEF CAN BE GRANTED**

Having said the foregoing, the earlier stipulation between Plaintiffs and Twitter dismissing the latter from the case without prejudice has changed the contours of the original claims, rendering Plaintiffs' contract and Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**") causes of action, which were based on Twitter's conduct, irrelevant under the case's current procedural posture.  Moreover, the dismissal of CAIR Florida has left no other defendant in this case for CAIR National to conspire with.  Nonetheless, as set forth below, the remaining claim against CAIR National – for tortious interference – is readily cognizable.  If it were not, Defendants would not have resorted to the preposterous fable pushed by Jared Holt by way of the Bernard Affidavit.

To state a claim for tortious interference with prospective economic advantage or business relationship, a Plaintiff must show: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part

---

All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

of the defendant; (3) an intentional and unjustified interference with the relationship by the

defendant; and (4) damage to the Plaintiff as a result of the breach of the relationship." GolTV,

Inc. v. Fox Sports Latin Am., Ltd., 2018 WL 1393790 at \*21 (S.D. Fla. Jan. 26, 2018) (denying

motion to dismiss), *quoting*, *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla.

1985); *see also G.M. Brod & Co. Inc., v. U.S. Home Corp.*, 759 F.2d 1526, 1534 (11th Cir. 1985)

(explaining elements of tortious interference under Florida law), as set forth in the Complaint at

¶187-195.

## POINT FIVE

### <u>CAIR NATIONAL'S MOTION TO STRIKE SHOULD BE DENIED</u>

It is ironic that, after submitting a raft of plainly inappropriate submissions in support of

its motion to dismiss, CAIR National moves for a preliminary resolution of controversial

assertions in the lawsuit by way of a motion to strike.  This is a complete waste of everyone's

time.  As this Court recently explained:

> Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any
> redundant, immaterial, impertinent, or scandalous matter." A motion to strike,
> however, is disfavored. As noted in *Regions Bank v. Commonwealth Land Title
> Ins. Co.*, No. 11–23257–CIV–RNS, 2012 WL 5410609, at \*2 (S.D.Fla. Nov.6,
> 2012), "courts consider striking a pleading to be a 'drastic remedy to be resorted
> to only when required for the purposes of justice.'" *Exhibit Icons, LLC v. XP
> Cos.*, 609 F.Supp.2d 1282, 1300 (S.D.Fla.2009) (Marra, J.). Motions to strike are
> generally viewed with disfavor, see *Pandora Jewelers 1995, Inc. v. Pandora
> Jewelry*, LLC, 2010 WL 5393265, at \*1 (S.D.Fla. Dec.21, 2010) (Cooke, J.), in
> part because they "waste time by requiring judges to engage in busy work and
> judicial editing without addressing the merits of a party's claim," *see U.S. Bank
> Nat'l Ass'n v. Alliant Energy Res., Inc.*, 2009 WL 1850813, at \*3 (W.D.Wis. June
> 26, 2009) (Crabb, J.). "Motions to strike," therefore "will usually be denied unless
> the allegations have no possible relation to the controversy and may cause
> prejudice to one of the parties." *See Seibel v. Society Lease, Inc.*, 969 F.Supp. 713,
> 715 (M.D.Fla.1997) (Kovachevich, J.).

*Rothchild v. Crane Co.*, No. 14-80271-CIV, 2014 WL 3809185, at \*1–2 (S.D. Fla. Aug. 1,

2014). Enough has been said on this frivolous topic.

## CONCLUSION

For the forgoing reasons, Plaintiff's motion should be dismissed in its entirety.

Dated: October 31, 2019

MANDELBAUM SALSBURG, PC
*Attorneys for Plaintiffs*

Steven W. Teppler, Esq.
Florida Bar Number 14787
11891 US Highway One, Suite 100
North Palm Beach, FL 33408
Office: (646) 946 5659
Email: steppler@lawfirm.ms

Ronald D. Coleman (pro hac vice admission pending)
Lauren X. Topelsohn (pro hac vice admission pending)

20