**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH COUNTY DIVISION**

| | | |
|---|---|---|
| **ILLOOMINATE MEDIA, INC.**, *et al*, | ) | |
| | ) | **Case No. 9:19-cv-81179-RAR** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CAIR FOUNDATION, INC.,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CAIR NATIONAL'S REPLY IN SUPPORT OF MOTION TO DISMISS

CAIR Foundation, Inc. ("CAIR National")[1] replies in support of its Motion to Dismiss. Dkt. 11. As explained in CAIR National's Motion to Dismiss the entirety of Plaintiffs' Complaint is that Plaintiffs seek to hold CAIR National liable for Twitter's decision to ban Laura Loomer.

Twitter was entirely within its rights to ban Loomer. This right is enshrined in Section 230 of the Communications Decency Act and is also specifically asserted by Twitter's contractual Terms of Service. Because Twitter cannot have any liability for banning Loomer, CAIR National cannot have any liability had, as alleged, it instructed Twitter to do so.

CAIR National waives its personal jurisdiction argument and now consents to personal jurisdiction.

### I.      The Communications Decency Act Bars Plaintiffs' Complaint

Plaintiffs' "Point II" argues that the "Communications Decency Act" does not apply for two reasons: CAIR National is not a "service provider or user," and Plaintiffs' claims were not based on "content" posted that CAIR National "provided." Dkt. 24 at 9-10.

---

[1] The Motion to Dismiss (Dkt. 11) was filed jointly by CAIR National and CAIR-Florida.  CAIR-Florida has since been dismissed. Dkt. 19.

But Section 230 applies to "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2)(A). So this Court has already held that Twitter is immune for the suspension of a Twitter account. *Mezey v. Twitter, Inc.*, No. 1:18-CV-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018); *see generally* Motion to Dismiss (Dkt. 11) at 4-5.

And if Twitter is immune for suspending Loomer's Twitter account, then CAIR National cannot be held liable, either. After all, each and every one of Plaintiffs' claims is premised on the concept that Twitter violated Plaintiffs' rights by suspending Loomer. *See* Amended Complaint (Dkt. 1-2) at Count I (Breach of Contract against Twitter only); Count II (Tortious Interference with Advantageous Business Relationship); Count III (Unlawful Agreement between Twitter, CAIR National, and Qatar); Count IV (Civil Conspiracy); Count V (Unfair Trade Practices); *see generally* MTD (Dkt. 11).[2]

## II.     Plaintiffs Fail to State a Claim for Tortious Interference

The Tortious Interference claim separately fails for the reasons explained in CAIR National's Motion to Dismiss. Dkt. 11 at 5-9. As that Motion explained, Plaintiffs claim must fail because (1) Plaintiffs cannot establish that Twitter acted unjustifiably in banning Loomer, both because of Section 230 and because Plaintiffs failed to provide sufficient allegations of what contractual right of Loomer's Twitter breached, Dkt. 11 at 6-8; (2) Plaintiffs cannot establish that CAIR National did anything to interfere with Plaintiffs' relationship with their customers for the same reason, Dkt. 11 at 9; (3) Plaintiffs cannot show that CAIR National was aware of any Loomer-fan relationship or that CAIR National intentionally interfered with that relationship, Dkt. 11 at 8, and (4) Loomer has no right to speak on Twitter's platform, Dkt. 11 at 9.

---

[2] By Plaintiffs' own concession, the only count remaining is Count II. Dkt. 24 at 18-19

Plaintiffs recite the elements of tortious interference with prospective economic advantage or business relationship—which include the requirements of "knowledge of the relationship on the part of the defendant" and "an intentional and unjustified interference with the relationship by the defendant." Dkt. 24 at 18-19. But Plaintiffs neither respond to any of CAIR National's arguments or even explain which business relationship Plaintiffs are complaining was interfered with. *Id.*; *see also* Dkt. 11 at 6 and 8 (CAIR National explaining that it was unsure whether Plaintiffs were alleging an interference with Plaintiffs' business relationship with Twitter or interference with Plaintiffs' business relationships with their customers). So, even if Section 230 did not independently defeat Plaintiffs' claims, Plaintiffs have not alleged—and cannot possibly in good faith allege—sufficient facts to support the elements of their one remaining claim.

## III.    The Court Should Strike Portions of the Complaint

CAIR National also moved to strike allegations "regarding CAIR National's supposed support of terrorism and fictional relationships to Hamas, the Muslim Brotherhood, and Qatar." Dkt. 11 at 17 (citing AC, Dkt. 1-2, at ¶¶ 64-77 and 90-91, 93, 95, 97-100, and 177), as well as every instance of the defamatory and irrelevant phrase "CAIR/Hamas" sprinkled throughout Plaintiffs' Amended Complaint, Dkt. 11 at 17. Plaintiffs (Dkt. 24 at 19) oppose this relief without explanation, other than providing a block quote from *Rothchild v. Crane Co.*, 14-cv-80271, 2014 WL 3809185, at *1–2 (S.D. Fla. Aug. 1, 2014). *Rothchild* holds that motions to strike "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* (citing *Seibel v. Society Lease, Inc.*, 969 F. Supp. 713, 715 (M.D. Fla. 1997)).

CAIR National's supposed support of terrorism and fictional relationships to Hamas, the Muslim Brotherhood, and Qatar have no possible relation to Plaintiffs' claim for tortious interference (or to any of their other, now conceded claims, for that matter). And the prejudice caused by Plaintiffs' irrelevant and false allegations is self-evident. The widespread false association among the alt-right

between CAIR National and its chapters and terrorism or terrorist organizations directly injures CAIR National's mission "to enhance understanding of Islam, protect civil rights, promote justice, and empower American Muslims."[3]  It also provides a significant security threat against both CAIR National and independent CAIR local chapters.[4]

### IV.      CAIR National Does not Rely on Affidavits in Support of Dismissal

Plaintiffs spend several pages of its Opposition arguing that the affidavits that CAIR National attached to its Opposition to the Motion to Remand are inappropriate. Dkt. 24 at 10-17. But CAIR National has not and is not seeking to use these affidavits in support of its Motion. They are irrelevant.[5]

Similarly, Plaintiffs suggest the use of affidavits in opposing the Motion to Remand somehow turns CAIR National's Motion to Dismiss into a Motion for Summary Judgment. Dkt. 24 at 17-18. The only reason this Court might have to convert CAIR National's Motion to Dismiss into a Motion for Summary Judgment is if the Court decides that Plaintiffs' remaining tortious interference claim turns on whether Twitter had a contractual right to ban Loomer, *see* MTD (Dkt. 11) at 6-7, and that Plaintiffs' failure to attach the contract does not defeat that claim, *id.* at 7. In that case, rather than waste the parties' and the Courts' time through needless discovery and additional briefing, the Court can merely go review the Contract, *see* https://twitter.com/en/tos, discover that Twitter expressly preserves the right to ban Loomer, see Terms of Service § 4, Ending These Terms ("We may suspend or terminate your account or cease providing you with all or part of the Services at any time for any

---

[3] *See* https://www.cair.com/about_us.

[4] *See* https://www.cair.com/cair_la_condemns_bomb_threat_made_targeting_its_office (bomb threat).

[5] Plaintiffs, for some reason, make a major deal that there was no affidavit in the Motion to Remand Opposition as to CAIR-San Francisco Bay Area Executive Director Zahra Billoo.  Dkt. 24 at 15-16. Billoo is not an executive of CAIR National.  Rather, she is an employee of CAIR-California, an entity distinct from CAIR National (and CAIR-Florida).  No affidavit was submitted on her behalf because (a) it would have been of marginal relevance to opposing the Motion to Remand, and (b) Billoo was travelling out of the country at the time and could not be reached during the time CAIR National briefed the Motion to Remand opposition.  If, for some reason, the Court requests an affidavit about the events in question from Billoo, CAIR National will provide one to the Court.

or no reason…."), and determine that as a result, there can be no tortious interference based on the banning, *see* MTD (Dkt. 11) at 7.

**V.      CAIR National Waives Its Personal Jurisdiction Defense**

As CAIR National explained in its Motion to Dismiss, it was to this point not subject to personal jurisdiction in Florida. *See* Dkt. 11 at 16-17; *see also id.* at 17 (improper venue). Although CAIR National continues to believe this is true, *see* Fla. Stat. Ann. § 48.193(1)(a)(6)(A)-(B); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (causing economic injury to a plaintiff in Florida is insufficient to establish jurisdiction); *Leon v. Cont'l AG,* 301 F. Supp. 3d 1203, 1216 (S.D. Fla. 2017); *D.W. Mercer, Inc. v. Valley Fresh Produce, Inc.*, 146 F. Supp. 2d 1274, 1278 (M.D. Fla. 2001), CAIR National has now decided to voluntarily submit to this Court's jurisdiction.

CAIR National's previous objection to personal jurisdiction was a concern of being hailed improperly into Florida state court. Now that the Court has denied the Motion to Remand, CAIR National finds it more efficient to resolve this case once and for all rather than be forced to begin defending this action from square one in the United States District Court for the District of Columbia. As a result, CAIR National waives its personal jurisdiction defense.

**CONCLUSION**

The Court should grant CAIR National's Motion to Dismiss (Dkt. 11).

November 6, 2019

LENA F. MASRI (DC: 1000019)*
GADEIR I. ABBAS (VA: 81161)^
JUSTIN SADOWSKY (DC: 977642)*
DANETTE ZAGHARI-MASK (FL: 789771)
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420
jsadowsky@cair.com

*Pro hac vice*
^ *Pro hac vice; licensed in Virginia, not D.C. Practice limited to federal matters*

*Attorneys for CAIR National*