Case 9:19-cv-81179-RAR   Document 50   Entered on FLSD Docket 02/11/2021   Page 1 of 14
USCA11 Case: 19-14741   Date Filed: 02/11/2021   (1 of 2)

Feb 11, 2021

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 11, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 19-14741-GG
Case Style: Illoominate Media, Inc., et al v. Cair Florida, Inc., et al
District Court Docket No: 9:19-cv-81179-RAR

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

UNITED STATES COURT OF APPEALS
For the Eleventh Circuit

_____

No. 19-14741

_____

District Court Docket No.
9:19-cv-81179-RAR

ILLOOMINATE MEDIA, INC.,
LAURA LOOMER,
A Florida Individual,

                                      Plaintiffs - Appellants,

versus

CAIR FLORIDA, INC.,
A Florida Corporation,
CAIR FOUNDATION,
A Distirct of Columbia Corparation,

                                      Defendants - Appellees,

TWITTER INC.,
A Delaware Corporation,
JOHN DOES 1-5,

                                      Defendants.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: December 29, 2020
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14741
Non-Argument Calendar
_____

D.C. Docket No. 9:19-cv-81179-RAR

ILLOOMINATE MEDIA, INC.,
LAURA LOOMER,
A Florida Individual,

                                                      Plaintiffs-Appellants,

versus

CAIR FLORIDA, INC.,
A Florida Corporation,
CAIR FOUNDATION,
A District of Columbia Corporation,
TWITTER INC.,
A Delaware Corporation,
JOHN DOES 1-5,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 29, 2020)

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

I.

Twitter banned Laura Loomer, a self-described political activist and journalist, from using its platform in 2018.  It claimed that one of her tweets violated its Terms of Service; Loomer tells a different story.  She thinks that CAIR Foundation, a self-described Muslim civil rights group, conspired with Twitter and CAIR-Florida, one of CAIR Foundation's independent chapters, to ban her account.  According to Loomer, the trio targeted her because they disagree with her political views.

Loomer and her company, Illoominate Media, sued CAIR Foundation, CAIR-Florida, John Does 1-5, and Twitter in Florida state court for violations of state law—though they never served Twitter or the John Does and eventually dismissed Twitter from the case.  Most of their claims center on CAIR Foundation's actions; they think that CAIR Foundation and Twitter have a "special relationship" such that Twitter gives CAIR Foundation a "role in deciding what ideas and voices Twitter will silence."  According to the plaintiffs, CAIR-Foundation "acted in concert" with CAIR-Florida to instruct Twitter to ban

Loomer's account. Their amended complaint references CAIR-Florida only a handful of times.

CAIR Foundation removed the case to federal court on the basis of diversity jurisdiction. Though it acknowledged that CAIR-Florida posed a barrier to complete diversity because it was a citizen of the same state as the plaintiffs, it argued that CAIR-Florida was fraudulently joined to defeat diversity jurisdiction and should not be considered when determining the court's jurisdiction.

The district court agreed. It found that there was no possibility that the plaintiffs could prove a cause of action against CAIR-Florida—Loomer and Illoominate did not explain how CAIR-Florida conspired with CAIR Foundation or how it was involved in triggering Twitter's ban. The district court accordingly denied the plaintiffs' motion to remand and dismissed CAIR-Florida from the case.

It then dismissed the plaintiffs' one remaining claim—tortious interference with a business relationship. It found that the plaintiffs could not identify a protected business relationship that CAIR Foundation interfered with and, regardless, Twitter's decision to ban Loomer was protected under Section 230 of the Communications Decency Act. If Twitter could not be held liable for banning Loomer's account, neither could CAIR Foundation.

Loomer and Illoominate appeal the district court's denial of their motion to remand and dismissal of their tortious interference claim. We affirm on both

fronts—the plaintiffs fraudulently joined CAIR-Florida in order to defeat diversity jurisdiction, and they failed to show a business relationship protected under Florida law to make out a claim for tortious interference against CAIR Foundation.

## II.

The existence of federal subject matter jurisdiction is a question of law that we review de novo. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). A civil case filed in state court may be removed by the defendant to federal court if the case could have originally been brought in federal court based on diversity of citizenship. 28 U.S.C. § 1441(a). The parties must be completely diverse; each plaintiff must be diverse from each defendant. *Triggs*, 154 F.3d at 1287. An action removed based on diversity jurisdiction "must be remanded to state court if there is not complete diversity between the parties, or one of the defendants is a citizen of the state in which the suit is filed." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (citation omitted).

But there's a catch—if the plaintiff fraudulently joins a non-diverse defendant to defeat complete diversity, then that non-diverse defendant is not considered for purposes of the court's jurisdiction. *Triggs,* 154 F.3d at 1287. To establish fraudulent joinder, the removing party must prove either that "there is no possibility that the plaintiff can prove a cause of action against" the non-diverse defendant, or that "there is outright fraud in the plaintiff's pleading of jurisdictional

4

facts." *Id.* Courts must evaluate factual allegations in the light most favorable to the plaintiff when considering fraudulent joinder. *Stillwell*, 663 F.3d at 1333.

Turning to the facts of this case, the parties do not dispute that the district court only had diversity jurisdiction over the removed case if CAIR-Florida was fraudulently joined. The first question for us, therefore, is whether there was any possibility that the plaintiffs could prove a cause of action against CAIR-Florida for conspiring to ban Loomer's account. *Triggs*, 154 F.3d at 1287.

For starters, Loomer and Illoominate offer nothing beyond vague speculation to indicate that CAIR-Florida was involved in the alleged conspiracy or acted tortiously to interfere with Loomer and Illoominate's business relationships. Though their amended complaint is rife with accusations, references to CAIR-Florida are few and far between. And none explain how CAIR-Florida instructed CAIR Foundation or Twitter to ban Loomer's account. For example, the plaintiffs claim that CAIR-Florida prevented Loomer from attending a criminal trial in 2018—but they don't bring causes of action based on that incident. Their case is about the ban of Loomer's Twitter account. And a run-in with CAIR-Florida outside a courthouse does not show that CAIR-Florida conspired with CAIR Foundation and Twitter to ban Loomer's account.

The plaintiffs also allege that Loomer is a "thorn in the side" of CAIR-Florida, and that CAIR-Florida "acted in concert" with CAIR Foundation and

Twitter to ban her account. But those allegations are speculative, and, without more, conclusory. Whether an individual acted in concert with another is a *legal conclusion*; the plaintiffs needed to also provide *factual allegations* to show that it was possible to make out their claims. That link is missing here—Loomer and Illoominate admit they cannot provide any facts showing that CAIR-Florida was involved in the ban of Loomer's account, and instead offer only speculation. Simply put, they give us no reason to think that a court would find CAIR-Florida liable for any of the wrongful acts they allege. *Id.*

The plaintiffs think the district court applied the wrong standard, but that's just not so. The district court properly applied our test from *Triggs v. John Crump Toyota, Inc.* and considered whether the plaintiffs made out an arguable claim against CAIR-Florida. *Id.* And contrary to what the plaintiffs might think, none of the allegations from their amended complaint support an inference that CAIR-Florida acted in concert with CAIR Foundation and Twitter to ban Loomer's account.

The defendants, for their part, provided several sworn statements to buttress their claims that CAIR-Florida was fraudulently joined. In one, Nathan Bernard explained that this story originated as a prank. According to Bernard, he and Chris Gillen decided to convince Loomer that CAIR Foundation was the reason Twitter banned her account. Bernard stated that CAIR-Florida was not involved in their

scheme and that they never mentioned CAIR-Florida to Loomer during the entirety of the prank. Other affidavits state that, prior to this lawsuit, no one at CAIR-Florida had spoken with CAIR Foundation about Laura Loomer or Illoominate Media and no one from CAIR-Florida had contacted Twitter about banning her account.

The plaintiffs don't dispute these affidavits. They instead fault the district court for considering the affidavits at all. But we have already held that the process for resolving a claim of fraudulent joinder is similar to the one used for a motion for summary judgment—a court can consider the plaintiff's pleadings *and* any affidavits or transcripts submitted by the parties when determining if a party was fraudulently joined. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). And where the plaintiffs do not dispute the defendant's affidavits, there is no question of fact for the court to resolve in the plaintiffs' favor. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). We have no reason to question these undisputed statements that CAIR-Florida was not involved in this case.

Taking a different tack, the plaintiffs claim that any affidavits the district court considers must be submitted with the notice of removal. But that too is wrong; no rule requires a district court to consider only those affidavits filed with the notice of removal. In fact, it is error for a court to resolve the question of fraudulent joinder "by refusing to consider the defendants' submissions." *Id.*

7

Plaintiffs also seem to think that even if the district court was correct to find fraudulent joinder, it could not dismiss the claims against CAIR-Florida with prejudice because it lacked subject matter jurisdiction to make a decision on the merits. But that argument was not raised below and is forfeited on appeal. *Mills v. Singletary*, 63 F.3d 999, 1008 n.11 (11th Cir. 1995). In any event, the district court's order did not require it to have jurisdiction over CAIR-Florida; this was a procedural dismissal designed to prevent the plaintiffs from again bringing claims against CAIR-Florida in this case. *See Kent v. Sutker*, 40 So. 2d 145, 147 (Fla. 1949) (an adjudication on technical grounds, where the merits do not come into question, is limited to the point actually decided).

To sum up, Plaintiffs offered nothing beyond vague speculation that CAIR-Florida was involved in the plan to ban Loomer from Twitter and did not rebut CAIR Foundation's contentions of fraudulent joinder. Because there is no possibility that the plaintiffs could prove a cause of action against CAIR-Florida, its joinder was fraudulent.

III.

We review dismissal for failure to state a claim on which relief can be granted de novo. *Blevins v. Aksut*, 849 F.3d 1016, 1018–19 (11th Cir. 2017). A complaint must contain a short and plain statement of the facts showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2).

To state a claim under Florida law for tortious interference with a business relationship, the plaintiff must demonstrate 1) the existence of a business relationship under which the plaintiff has legal rights; 2) knowledge of that relationship by the defendant; 3) an intentional and unjustified interference with the relationship; and 4) damage to the plaintiff as a result. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).

As for the first prong, a plaintiff may bring a cause of action alleging interference with present or prospective customers, but no cause of action exists for interference with a relationship to the community at large. *Id.* at 815. There must be "an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered" to make out this claim. *Id.*; *see also Ferguson Transp., Inc. v. North American Van Lines, Inc.*, 687 So. 2d 821, 822 (Fla. 1996).

Loomer and Illoominate think that CAIR Foundation interfered with two business relationships: Loomer's relationship with her Twitter followers and Loomer's relationship with Twitter itself. But, for reasons described below, neither relationship is protected by a tortious interference cause of action.

To begin, Loomer's relationship with her Twitter followers is a relationship with the public at large. The plaintiffs don't allege that CAIR Foundation interfered with specific agreements with identifiable customers or donors; instead,

9

they allege that it interfered with Loomer's relationship with the general Twitter community. But no matter how economically beneficial that relationship might be, no cause of action exists for interference with Loomer's relationship with the general public. *Ethan Allen*, 647 So. 2d at 815.

And the plaintiffs' claim that CAIR Foundation interfered with Loomer's relationship with Twitter gets them no further. In order to show that CAIR Foundation's supposed instruction to ban Loomer constituted tortious interference with a business relationship, the plaintiffs needed to show that Loomer had "existing or prospective legal or contractual rights" in the use of her Twitter account. *Id.* at 814 (quoting *Register v. Pierce*, 530 So. 2d 990, 993 (Fla. Dist. Ct. App. 1988)). But the plaintiffs' amended complaint is devoid of allegations suggesting that Loomer had legal or contractual rights in her Twitter account. In fact, Twitter's Terms of Service, which the plaintiffs do not dispute, allow Twitter to ban Loomer from its platform for any reason at all. So even if CAIR Foundation instructed Twitter to ban her account, it did not tortiously interfere with a business relationship because Loomer did not have legal or contractual rights in the continued use of her account. *Id.*

Loomer and Illoominate argue to no avail that under California law—which governs Twitter's Terms of Service—contracts must be "mutual" to be enforceable, and it would not be "mutual" for Twitter to have the right to cancel

Loomer's account at will. But just because a contract is terminable at will does not mean it is not "mutual." *See Consolidated Theaters, Inc. v. Theatrical Stage Emp. Union, Local 16*, 447 P.2d 325, 336 (Cal. 1968). And either way, our response to this argument won't change the fact that the plaintiffs failed to allege an interference with actual legal or contractual rights—which they were required to do to make out this claim. *Ethan Allen*, 647 So. 2d at 814.

Because Loomer and Illoominate failed to show interference with business relationships protected by Florida law, the district court was correct to dismiss their tortious interference claim. And because they could not make out this claim, we need not consider whether it was preempted by Section 230 of the Communications Decency Act.

### IV.

That brings us to the plaintiffs' final argument. They say that even if all this is true, the district court erred in not giving them leave to amend their complaint. But giving leave to amend would have been futile—neither the fraudulent joinder of CAIR-Florida nor the lack of a protectable business relationship could be cured. *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004). Plaintiffs already admitted that they do not know of any underlying facts that would make CAIR-Florida liable for Twitter's ban of Loomer's account. And no amendment can change the nature of Loomer's relationship with Twitter or with

her followers. The district court did not need to grant leave to amend where such leave would be futile. *Id.*

In sum, the district court had jurisdiction to hear this case, and it correctly found that the plaintiffs had no claim for tortious interference with a business relationship under Florida law. Accordingly, the judgment of the district court is **AFFIRMED.**