# EXHIBIT 2

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.:  50-2023-CA-010810-XXXX-MB


LAURA LOOMER, et al.,

    Plaintiffs,

vs.

RONALD COLEMAN, et al.,

    Defendants.

_____/


VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

CRAIG YOUNG


Taken on Behalf of the Plaintiffs via Videoconference


DATE TAKEN:      Wednesday, August 21, 2024
TIME:           10:01 a.m. to 11:10 a.m.


Held remotely via videoconference


Examination of the witness taken before:
Gail Hmielewski, Court Stenographer

Daughters Reporting, Inc.
101 Northeast 3rd Avenue
Suite 1500
Fort Lauderdale, Florida  33301

```
 1    APPEARANCES VIA VIDEOCONFERENCE:
 2    Appearing for the Plaintiffs:
 3         LARRY E. KLAYMAN, ESQUIRE
           KLAYMAN LAW GROUP, P.A.
 4         7050 West Palmetto Park Road
           Boca Raton, Florida  33433
 5         561-558-5336
           leklayman@gmail.com
 6
      Appearing for Defendants Ronald Coleman and
 7    Mandelbaum Barrett P.C.:
 8         BLAKE S. SANDO, ESQUIRE
           SEBASTIAN A. AGUIRRE, ESQUIRE
 9         COLE, SCOTT & KISSANE, P.A.
           9150 S. Dadeland Blvd., Suite 1400
10         Miami, Florida 33256
           305-350-5365  Phone
11         305-373-2294  Fax
           blake.sando@csklegal.com
12         sebastian.aguirre@csklegal.com
13    Appearing for Defendant Dhillon Law Group Inc.:
14         BRETT R. BLOCH, ESQUIRE
           SHENDELL & POLLOCK, P.L.
15         2700 N. Military Trail, Suite 150
           Boca Raton, Florida  33431
16         561-241-2323  Phone
           561-241-2330  Fax
17         brett@shendellpollack.com
18    Appearing for Defendant/Deponent Craig William Young:
19         CRAIG W. YOUNG, ESQUIRE, PRO SE
           CWY LEGAL & CONSULTING, LLC
20         2500 Quantum Lakes Drive, Suite 100
           Boynton Beach, Florida  33426
21         561-568-1000
           craig@cwylegal.com
22
      ALSO PRESENT:
23
           Laura Loomer, Plaintiff
24         Cheryl Burstein, Esquire
           Asher Anderson, Legal Assistant
25         Jeff Abrams, Videographer
```

1                        I N D E X

2
                                                        Page
3

4      TESTIMONY OF CRAIG YOUNG

5      Direct Examination by Mr. Klayman:              6

6      Certificate of Oath:                            64

7      Certificate of Reporter:                        65

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    E X H I B I T S

 2

 3               PLAINTIFFS' EXHIBIT

 4
      Number              Description            Page
 5

 6      1      Notice of Taking Deposition Duces Tecum    7

 7      2      Defendant, Craig William Young's,          7
               Responses and Objections to the
 8             Plaintiffs' Third Request for Production
               to the Defendant
 9
        3      Notice of Filing Stipulation and          16
10             Proposed Order

11      4      Affidavit of Craig W. Young, Esq.         24

12      5      Legal Retainer Agreement                  35

13      6      Email From Craig Young to Larry Klayman    44
               Dated 8/20/2024
14
        7      Verified Amended Complaint                46
15

16

17

18

19

20

21

22

23

24

25
```

1        Videotaped videoconference deposition of CRAIG

2    YOUNG, taken remotely before Gail Hmielewski, Notary

3    Public in and for the State of Florida at large, in the

4    above cause.

5             THE VIDEOGRAPHER:  Good morning, we are now on

6         the record.  This begins video one in the

7         deposition of Craig Young in the matter of Laura

8         Loomer and Illoominate Media LLC v. Ronald Coleman,

9         Dhillon Law Group Inc., Mandelbaum Barrett P.C.,

10        and Craig William Young, Defendants, in the Court

11        of the 15th Judicial Circuit in and for Palm Beach

12        County, Florida, Case No.

13        50-2023-CA-010810-XXXX-MB.

14             Today's date is August 21st, 2024 and the time

15        is 10:01 a.m.  This deposition is being taken via

16        Zoom at the request of counsel for the plaintiff,

17        Larry Klayman, Esquire.  The videographer is Jeff

18        Abrams and the court reporter is Gail Hmielewski on

19        behalf of Daughters Reporting.

20             Will counsel and all parties present state

21        their appearances and whom they represent?

22             MR. KLAYMAN:  Larry Klayman on behalf of Laura

23        Loomer and Illoominate Media, Plaintiffs.

24             MR. YOUNG:  Craig William Young, Defendant,

25        Pro Se.

1          MR. SANDO:  Good morning, Blake Sando and

2     Sebastian Aguirre on behalf of Ron Coleman and the

3     Mandelbaum firm.

4          MR. BLOCH:  Brett Bloch, Shendell & Pollack,

5     on behalf of the Dhillon Law Group.

6          MS. BURSTEIN:  Cheryl Burstein, Mandelbaum

7     Barrett.  I am not representing Mandelbaum Barrett,

8     I'm a party.

9          THE VIDEOGRAPHER:  Thank you.  Will the court

10     reporter please swear in the witness?

11          THE COURT REPORTER:  Yes.  Raise your right

12     hand, please.  Do you solemnly swear or affirm that

13     the testimony you're about to give in this case

14     will be the truth, the whole truth, and nothing but

15     the truth?

16          MR. YOUNG:  I swear.

17          THE COURT REPORTER:  Thank you.  You can lower

18     your hand.

19                    DIRECT EXAMINATION

20  BY MR. KLAYMAN:

21     Q.   Please state your name.

22     A.   Before we start, Mr. Klayman, I just want to

23  make it clear that we agreed to two hours for this

24  deposition and it will end at noon, and my name is Craig

25  Young, C-r-a-i-g Y-o-u-n-g.

1      Q.   Your statement that it's going to be limited to

2   two hours is not likely to occur, given the fact that

3   you're refusing to produce documents and otherwise comply

4   with other rules and procedures of this court, so when we

5   do move the court, we will ask them to open this

6   deposition to complete it once we receive the required

7   documents.  We can proceed.

8           I'm going to ask the court reporter to mark, and

9   my assistant, Mr. Anderson, will put it up on the screen,

10   a notice of deposition for you to appear here today dated

11   August - to appear on August 21st, 2024.  It was served on

12   or about August 15th.

13           MR. KLAYMAN:  Mr. Anderson, put that up on the

14       screen.

15           (Plaintiffs' Exhibit No. 1 was marked for

16       identification.)

17   BY MR. KLAYMAN:

18       Q.   Have you seen that before, Mr. Young?

19       A.   Yes.

20       Q.   You are here pursuant to this notice of

21   deposition duces tecum?

22       A.   Yes.

23       Q.   And that notice of deposition duces tecum asked

24   you to produce certain documents, did it not?

25       A.   Yes.

1       Q.   And you have not produced any of those

2   documents?

3       A.   No.  I have a valid objection of relevance.

4       Q.   We'll let the court decide that.  And you

5   previously had been served with a request for production

6   of documents, correct?

7       A.   Correct.

8       Q.   I'll ask that Mr. Anderson put that up on the

9   screen and that that be made your Exhibit No. 2.

10          (Plaintiffs' Exhibit No. 2 was marked for

11          identification.)

12  BY MR. KLAYMAN:

13      Q.   Is that the request for production of documents

14  and your response?  The title of it is Defendant, Craig

15  William Young's, Responses and Objections to the

16  Plaintiff's Third Request for Production to the Defendant.

17      A.   That is just my response, that is not your

18  request.

19      Q.   Well, you state my request in there, correct?

20      A.   Correct.

21      Q.   Any and all documents that refer or relate in

22  any way to an alleged settlement by you - by and between

23  you; CAIR Florida, Inc.; and CAIR Foundation, okay, that

24  is what I requested on behalf of the plaintiffs in terms

25  of your producing documents, correct?

1          A.    Correct.

2          Q.    And you responded, and I'm going to read it into

3    the record:

4                "Response:  Objection is made on the grounds

5          of relevance and the availability of less intrusive

6          means.  The settlement communication in question is

7          not pertinent to any of the claims articulated in

8          ... Plaintiff's Amended Complaint.  Furthermore,

9          this communication is confidential and intended

10         solely for the purpose of facilitating a settlement

11         between the parties, rendering it irrelevant to the

12         present action.  Additionally, the Defendant

13         objects on the basis that the Plaintiff has access

14         to less intrusive methods for obtaining the

15         agreement, specifically through CAIR, with which

16         the Plaintiff has an existing contractual

17         relationship as stipulated in their settlement

18         agreement with CAIR."

19               Now, number one, you purport to have

20   negotiated a settlement in this case with the parties,

21   the CAIR parties, correct, K-A-I-R, correct?

22         A.    Correct.

23         Q.    You - CAIR is not a party in this lawsuit, is it

24   not, the one you're here on today, Loomer v. Coleman,

25   et al.?

```
 1        A.    Is that a question?

 2        Q.    Yes.

 3        A.    They have a contractual right to your

 4   settlement in this matter, but they are not a party.

 5        Q.    Correct.  So what is your legal basis for

 6   negotiating a settlement with a nonparty?

 7        A.    They have a - they have a contract between

 8   CAIR and your clients to actually settle this case.

 9   They have veto power, they have full authority over any

10   offer of judgment, and they have substantial control

11   over settlement in this malpractice lawsuit.

12        Q.    So you're making your own legal conclusions as

13   to what the settlement agreement between plaintiffs and

14   CAIR entailed, correct?

15        A.    No, that's written down in the actual

16   settlement agreement that Ms. Laura Loomer signed and

17   that you showed at the last motion hearing that we had.

18        Q.    So you're putting yourself in the position of a

19   judge in a court of law in determining what that

20   settlement agreement between plaintiffs and CAIR entails?

21        A.    No.

22        Q.    You negotiated this settlement agreement, this

23   proposed settlement agreement, behind the back of

24   Ms. Loomer and Illoominate Media, did you not?  You did

25   not inform them that you were negotiating a settlement
```

1   that you hope to have enforced with CAIR, correct?

2        A.   CAIR has ultimate settlement authority in this

3   matter via the settlement agreement that your client

4   signed.  As such, I negotiated with the entity that has

5   settlement control in this malpractice action.

6        Q.   The question is you did not inform either

7   Ms. Loomer, Illoominate Media, or me that you were doing

8   that, correct?

9        A.   Correct.  I was not required to.

10       Q.   You previously represented Ms. Loomer, correct?

11       A.   Correct, for about a month-and-a-half.

12       Q.   And Illoominate Media, correct?

13       A.   Correct.

14       Q.   Right.  You were her attorney and Illoominate

15   Media's attorney, correct?

16       A.   I was acting as local counsel for Ron Coleman

17   in the underlying action of this malpractice suit.

18       Q.   But your duties enure to the clients, correct?

19   Your duties and responsibility under the Florida Rules of

20   Professional Conduct relate to the clients, which are

21   Laura Loomer and Illoominate Media, correct?

22       A.   They are no longer my client and they lost

23   that privilege whenever they sued me.

24       Q.   So you owe them no duty at all ethically or

25   legally?

1  A. There is no ethical rule being broken here and

2 I owe no duty to them.

3  Q. In fact, in this proposed settlement, and we'll

4 get to it, you actually want me, on behalf of Ms. Loomer

5 and Illoominate Media, to sign off that she cannot file a

6 bar complaint against you, correct?

7  A. Correct. That was negotiated at arm's length.

8  Q. Did you check with the Florida Bar before you

9 put that into this proposed settlement agreement with

10 CAIR?

11  A. I did not, but it's a contractual agreement

12 and at that point there's no illegality to it. It is

13 negotiated at arm's length, there's consideration, and

14 she is actually being represented by you, who can review

15 that document.

16  Q. So you took it upon yourself to decide what the

17 Florida Rules of Professional Responsibility require?

18  A. No.

19  Q. You didn't consult with the Florida Rules of

20 Professional Responsibility, did you, before entering into

21 this proposed settlement agreement, did you?

22  A. No, there's no ethical rule being broken here.

23  Q. You're going to decide for the Florida Bar to

24 that effect, is that right?

25  A. You have yet to show any sort of ethical rules

13

1    that have been broken even though it has been asked of

2    you, so at this point you have nothing to show as far as

3    any ethical issue.  If the Florida Bar has one, they

4    could bring one, but until then there is no issue under

5    the ethical rules.

6         Q.    You're aware that that practice is strictly

7    prohibited in the bars of 50 states in this country?

8         A.    You have yet to show that.

9         Q.    So just to be clear, you never communicated with

10   the Florida Bar, because they'll give advice as to whether

11   this was legal and ethical or not?

12        A.    Correct.

13        Q.    Now I'm going to show you --  Well, let's back

14   up a little bit.  What documents, if any, did you bring to

15   this deposition?

16        A.    None, I --  None.  I had a relevance objection

17   that I filed with the court twice now that you have not

18   responded to.

19        Q.    Since you are claiming that this is irrelevant

20   and has nothing to do with this case, why are you then

21   trying to settle this case with CAIR?

22        A.    Settlement just makes the most sense.  It

23   makes no sense to actually take this out any further

24   than it has to or to delay anything.  I prefer to settle

25   if a settlement could be reached.

1      Q.   So you're saying you're secretly engaging in

2   settlement discussions with CAIR behind the backs of

3   Ms. Loomer, Illoominate Media and me as her counsel, as

4   totally irrelevant to the lawsuit that you're here on

5   today?  Is that what you're saying?

6      A.   Object to form, and also I don't believe --  I

7   believe the documents are irrelevant.  They have no

8   relation to your cause of action in your amended

9   verified complaint.

10      Q.   We had a discussion, did we not, and in addition

11   the request asks for any and all documents that refer or

12   relate in any way to an alleged settlement.  You did have

13   emails that went back and forth to CAIR's counsel, Remy

14   Green, and others that represent CAIR, did you not, with

15   regard to this proposed settlement?

16      A.   Yes.

17      Q.   You have not produced them, correct?

18      A.   No, and I will not absent a court order.

19      Q.   And you're claiming a privilege, that these are

20   privileged communications?

21      A.   I'm claiming that they're not relevant.

22   They're not relevant to your claims of action in your

23   amended verified complaint.

24      Q.   So you're not claiming that they're privileged?

25      A.   No.

1       Q.   I ask that they be produced.  Were there text

2   messages that went to and from CAIR's attorneys?

3       A.   No.

4       Q.   How many emails, approximately, went to and from

5   CAIR's attorneys with regard to the proposed settlement?

6       A.   I couldn't state with specificity.

7       Q.   Roughly speaking.

8       A.   Ten.

9       Q.   More than ten?

10      A.   Ten to twelve, I would say would be a fair

11   estimate.

12      Q.   You have reviewed your files or your computer

13   and determined that there was 12?

14      A.   Well, like I said, I cannot speak with

15   specificity.  I have not reviewed how many emails I

16   have.  I just know that they are not relevant to your -

17   any claims in your amended verified complaint.

18      Q.   Now, you said that you've seen the settlement

19   agreement that was reached between Ms. Loomer, Illoominate

20   Media, and the CAIR defendants, correct?

21      A.   Yes.  You showed it at our last motion for

22   protective order hearing.

23      Q.   What hearing are you referring to?

24      A.   My motion for protective order whenever you

25   actually tried to depose me a couple weeks ago, maybe.

```
 1        Q.    Okay.  Let's turn to the actual settlement

 2   agreement that was agreed to between Ms. Loomer,

 3   Illoominate Media, and the CAIR defendants, and I'll ask

 4   that Mr. Asher Anderson put it up on the screen and turn

 5   to Paragraph 3 on Page 3.

 6             (Plaintiff's Exhibit No. 3 was marked for

 7             identification.)

 8   BY MR. KLAYMAN:

 9        Q.    I'm going to read it:

10             "Coleman Resolution.  Plaintiffs shall, upon

11             any recovery in Coleman, become immediately liable

12             for the Full Amount Due (with credit for all

13             payments Plaintiff has made under paragraph one to

14             that date) as follows:

15             "a.   Information.  Plaintiffs shall keep CAIR,

16             by and through CAIR's undersigned counsel, up to

17             date and informed about any settlement discussions,

18             proceedings, and the like in Coleman; and

19             Plaintiffs shall give CAIR reasonable notice before

20             any settlement.  Failure to provide (any) such

21             reasonable updates shall be a substantive breach

22             of" the agreement.

23             Now, since neither I nor Ms. Loomer nor

24   Illoominate Media knew what you were doing behind our

25   backs, we were prevented from complying with Section A
```

1   in keeping CAIR up-to-date, correct?

2       A.   With regards to that specified period,

3   however, when we tried to settle earlier, Mr. Klayman,

4   you did not keep CAIR up-to-date --

5       Q.   Well, we never --

6       A.   -- you therefore breached 3(a).

7       Q.   We never reached a settlement, did we, we never

8   agreed to any settlement?

9       A.   You actually never even brought it over to

10  CAIR to even have them review or to discuss.

11      Q.   That's right, because I rejected it, but I'm not

12  testifying.

13      A.   You're not allowed to reject it.

14      Q.   Ms. Loomer rejected it and so did Illoominate

15  Media, but the point I'm making is that you did this

16  secretly behind the backs of Ms. Loomer and Illoominate

17  Media and prevented them from complying with Section A of

18  Paragraph 3 of the settlement agreement with the CAIR

19  defendants, correct?

20      A.   I believe you were already in breach of

21  Section 3(a) based on our previous settlement

22  discussions, as I did make an offer and you did not

23  bring that to CAIR; but with regards to the latest

24  settlement that I spoke to with CAIR, perhaps you did

25  not breach Section 3(a), but that would be up for a

1    court to decide and not for myself.

2        Q.   Now let's go to Section B:

3            "Veto Power and Settlement Authority.  CAIR

4        shall have final sign off power on; veto power

5        over; and substantive control of Plaintiffs'

6        authority to settle Coleman, including through any

7        offer of judgment.  Plaintiffs may not settle

8        Coleman without CAIR's written consent, and failure

9        to obtain such consent is a substantive breach of

10        this Settlement."

11            Now, you're a lawyer, correct?

12        A.   Correct.

13        Q.   When were you admitted to the Florida Bar?

14        A.   2016.

15        Q.   Okay, so you've been a lawyer for almost eight

16    years, correct?

17        A.   I've been a lawyer longer.  I was admitted

18    in --

19        Q.   Oh, excuse me.

20        A.   -- in 2013.

21        Q.   Right.  That's why I'm a lawyer, I'm not good at

22    math, okay?  So you've been a lawyer for quite a good

23    period of time.

24        A.   Correct.

25        Q.   Now, this provision, based upon the plain

 1    language of the provision, gives the CAIR defendants only

 2    a veto power over any settlement.  It does not give them

 3    the power to settle it themselves, the CAIR defendants.

 4         A.    Disagree, Mr. Coleman.  I actually work in

 5    corporate law --

 6         Q.    My name is not Coleman.

 7         A.    Oh, you are correct, Mr. Klayman.  Excuse me -

 8    Coleman, Klayman - I apologize, Mr. Klayman.

 9              You're incorrect, Mr. Klayman.  I handle

10    corporate contracts.  I've reviewed hundreds, if not

11    thousands, of contracts and I've written contracts,

12    redlined, reviewed, and let's see.

13              I'm sorry, Asher, can you stop scrolling,

14    please?  You set a line through there somehow on the

15    screen.  And can you make it a little bit smaller,

16    Mr. Anderson?  Thank you, that's better.  Perfect.

17              So Section 3(b), it gives the CAIR

18    defendants actually three bargained-for - bargained-for

19    powers, as it will.  First is final sign-off power on,

20    meaning final sign off power on any sort of settlement

21    that you may receive; veto power over, veto any

22    settlement that you may receive if it's not good enough

23    to cover their fees, most likely; and then three,

24    substantive control of plaintiffs' authority to settle

25    Coleman, including through any offer of judgment.

1          This substantive is a big word in contract

2     law, meaning the majority or almost a hundred percent

3     control of plaintiffs' authority to settle Coleman.  It

4     actually gives them the power to reach out and to create

5     settlements in this malpractice action.  You've signed

6     away three rights here.  On a bargained-for exchange I

7     believe you took the monetary award owed to CAIR from

8     124,000 down to 73,500, so that's your bargained-for

9     exchange right there.

10     Q.    How can a nonparty, such as the CAIR defendants,

11     decide to settle a separate lawsuit for legal malpractice

12     against you and Ron Coleman and the law firms that are

13     involved in this case?  How can they do that ethically?

14     A.    Through this contract.  It breaks no ethical

15     rules.  You could contract for anything as long as there

16     is not an illegal purpose, and an illegal purpose could

17     be sexual acts, it could be criminal acts such as the

18     death of someone, killing someone, something of that

19     nature.  It must abide by the statute of frauds, and,

20     yeah, and it's written down.

21          So at this point this is an actual contract

22     between Loomer and CAIR and they have substantial

23     authority to settle this matter contractually.  Laura

24     bargained that away.

25     Q.    Are you saying that the use of the phrase veto

1   power has no significance in this section?

2       A.   I'm saying it's actually one point of that

3   section.   There are three points - final sign-off power

4   on, veto power over, and substantive control of

5   plaintiffs' authority to settle Coleman.

6       Q.   And you decided to interpret this provision

7   without ever talking to either me as the attorney for the

8   plaintiffs or Ms. Loomer, correct?

9       A.   There was no need to.   After reviewing it, it

10  was clear that CAIR had substantive control over the

11  authority to settle this matter, not Laura Loomer.

12      Q.   You're aware that any amount of money that was

13  not subject to your proposed settlement, that Ms. Loomer

14  would still be liable for, as well as Illoominate Media,

15  correct?

16      A.   Yes, she would still owe under this agreement

17  up to 73,500.

18      Q.   So in your view, you have no continuing duty

19  with regard to Ms. Loomer; you can do, in effect, whatever

20  you want.

21      A.   Within the bounds of the rules.   She has lost

22  all that privilege when she actually sued me, including

23  attorney-client privilege.

24      Q.   So once she sues you, you are absolved of any

25  ethical responsibility?

1      A.   As long as -- If you can point to an ethical

2   rule, then I'm still subject to the Florida Bar rules of

3   ethics, however, there's no ethical rule with regards to

4   this contract.

5      Q.   Okay, so you're making a determination on behalf

6   of the Florida Bar?

7      A.   I'm making a determination on the fact of this

8   contract, not on --

9      Q.   As a matter of prudence and care, would it have

10  not been prudent for you to consult with the Florida Bar

11  before you undertook negotiated settlement behind the

12  backs of the plaintiffs?

13     A.   This is a valid contract, it has nothing to do

14  with the ethics or the Florida rules of ethics.  This is

15  a valid contract and thus gives CAIR substantive control

16  of plaintiffs' authority to settle Coleman, as is shown

17  in 3(b).

18     Q.   Isn't it true that the substantive control deals

19  with the fact -- Or strike that.

20          Isn't it true that any substantive control

21  that's set forth in Paragraph B is exercised through the

22  veto power, which is part of Subpart B of the settlement

23  agreement between Loomer, Illoominate Media, and the CAIR

24  defendants?

25     A.   No, the veto power is separate from

1    substantive control.  Veto power refers to if Ms. Loomer

2    were to receive a settlement, and if you were to

3    actually communicate with CAIR regarding that settlement

4    and it wasn't good enough to cover, possibly, CAIR's

5    fees - I'm assuming that - then they could actually veto

6    that settlement and tell you not to accept it.

7           That is separate from substantive control of

8    plaintiffs' authority to settle Coleman.  That's shown

9    through the semicolon and the separate "and", allowing

10   for three different bargained-for exchanges.

11       Q.   Your agreement, as proposed with the CAIR

12   defendants, does not cover the fees that were ordered to

13   be owed to the CAIR defendants from Ms. Loomer and

14   Illoominate Media, correct?

15       A.   Not all 73,500, no.

16       Q.   And you don't think that Ms. Loomer has any say,

17   on behalf of herself and Illoominate Media, in approving

18   the very small amount that you propose to pay to the CAIR

19   defendants?

20       A.   No.  CAIR has final sign-off power, veto

21   power, and substantive control.  Any sort of settlement

22   that is either communicated to you or to them must go to

23   them for either the final sign-off to veto or to just

24   have control and to take over the negotiations.

25       Q.   So based upon your own actions, you get to

1   decide how much Loomer will continue to owe, and

2   Illoominate Media, the CAIR defendants?

3       A.   No, I have control over what I can offer as a

4   settlement.

5       Q.   Now, as part of this proposed settlement, you

6   signed an affidavit, did you not?

7       A.   I did.

8           MR. KLAYMAN:  And I'll ask that Mr. Anderson

9       put that up on the screen.

10          (Plaintiffs' Exhibit No. 4 was marked for

11      identification.)

12   BY MR. KLAYMAN:

13      Q.   And turning to Page 3, is that your signature?

14      A.   Correct.

15      Q.   And this affidavit was signed under oath?

16      A.   Yes.

17      Q.   And you will submit that everything in this

18   affidavit is true and correct to the best of your personal

19   knowledge and belief?

20      A.   Yes.

21      Q.   When did you become a lawyer on behalf of

22   Ms. Loomer and Illoominate Media?

23      A.   That would have been June 29th, 2021.

24      Q.   On becoming counsel for Ms. Loomer and

25   Illoominate Media, you were required to review the file,

1    correct, to understand what had gone on up to that point

2    in time?

3         A.   Yes.  I requested the file from Mr. Coleman

4    and I reviewed the file in its entirety.

5         Q.   And you thoroughly reviewed it, correct?

6         A.   Correct.

7         Q.   In reviewing that file, you came to the

8    conclusion that the lawsuit that was filed on behalf of

9    Ms. Loomer and Illoominate Media was non-meritorious,

10   correct?

11        A.   No.

12             MR. SANDO:  Object to form.

13   BY MR. KLAYMAN:

14        Q.   Did you come to the opposite conclusion, that it

15   was meritorious?

16        A.   Object to form, but I believe that.

17             MR. SANDO:  Object to form, too.

18             THE WITNESS:  It seemed meritorious to me, but

19        that - all the decisions back then happened prior

20        to June 29th, so I was not around for those

21        decisions or for that judgment.

22   BY MR. KLAYMAN:

23        Q.   Now, from that point forward that you became

24   counsel, you've had a duty to advise Ms. Loomer as to

25   whether any actions that were taken or not taken were

1    meritorious and justified, correct?

2         MR. SANDO:  Object to form.

3         A.   I'll also object to form.  And, no, I told

4    Ms. Loomer that - where she was in the case, why the

5    case was dismissed, and where we were as far as actually

6    having to respond to the motion for attorney's fees.

7    BY MR. KLAYMAN:

8         Q.   But as co-counsel with Mr. Coleman and his law

9    firms, you had a duty to advise her as to the efficacy and

10   merits of any action that was taken from that point

11   forward, correct?

12        MR. SANDO:  Object to form.

13        A.   Object to form, and from when I came on, yes,

14   I told her that the law was against her, that she was

15   going to have to actually pay something, and that it was

16   really going to be an uphill battle.  However, her

17   stance was the fact that she did not want to pay

18   anything to CAIR, that she saw CAIR as a terrorist

19   organization and paying them would be akin to actually

20   funding terrorism.  Where she came to that conclusion, I

21   don't know.

22   BY MR. KLAYMAN:

23        Q.   Have you ever researched the history of CAIR?

24        A.   No, that was not what I needed to do to

25   actually adequately respond to a motion for attorney's

1   fees.  They're a valid Florida entity and that's what I

2   needed to know.

3        Q.   So you have no knowledge as to CAIR's history at

4   all?

5        A.   No.

6        Q.   You are aware that CAIR was named as an

7   unindicted co-conspirator in a criminal case in Dallas,

8   Texas against the Holy Land Foundation, correct?

9        A.   I am not aware.

10        MR. SANDO:  Object to form.

11   BY MR. KLAYMAN:

12        Q.   You are aware that CAIR was linked to acting in

13   a capacity of sending financial aid to Hamas, correct?

14        MR. SANDO:  Object to form.

15        A.   Object to form, and, no, I'm not aware.

16   BY MR. KLAYMAN:

17        Q.   You've done no research since?

18        MR. SANDO:  Form.

19        A.   Object to form, and no.  CAIR is a valid

20   Florida entity.

21   BY MR. KLAYMAN:

22        Q.   Well, Ms. Loomer made a rather strong statement.

23   Don't you think you had an obligation to check it out?

24        MR. SANDO:  Form.

25        A.   Object to form, and, no, it had no bearing on

1  what I had to do with regards to filing an opposition

2  for a motion for attorney's fees.  Any sort of argument

3  regarding CAIR being linked to any sort of terrorist

4  organization or funding terrorism is not a meritorious

5  argument.

6  BY MR. KLAYMAN:

7      Q.    Before you went behind Ms. Loomer's back and

8  tried to negotiate a settlement, it didn't concern you

9  that the monies that you would be agreeing to pay would go

10  to an organization that was named as an unindicted

11  co-conspirator in a terrorism trial in Dallas, Texas for

12  having aided Hamas?

13         MR. SANDO:  Object to form.

14     A.    Object to form, and also, the money would be

15  going to a valid state entity.

16  BY MR. KLAYMAN:

17     Q.    And you have no concern where that money could

18  possibly go after you - it was paid to CAIR?

19     A.    Object to form, and once again, it would be

20  paid to a valid state entity.

21     Q.    You are aware that CAIR, excuse me, that Hamas

22  attacked Israel on October 7th and killed nearly 2,000

23  people, including beheaded - beheading children, raping

24  women and taking hostages and otherwise killing people?

25         MR. SANDO:  Object to form.

1      A.    Object to form.  Yes, I am aware of what's

2   going on in Gaza somewhat, with Israel.

3   BY MR. KLAYMAN:

4      Q.    So it didn't concern you that you were agreeing

5   to pay money over to CAIR?

6      A.    Object to form.

7           MR. SANDO:  Form.

8           THE WITNESS:  No, I am paying to a valid

9      Florida state entity.

10  BY MR. KLAYMAN:

11     Q.    And you have no legal obligation to pay any

12  money to CAIR, do you?

13          MR. SANDO:  Form.

14     A.    Object to form.  With regards to the

15  settlement, if we reached a different deal, then it

16  would be a different deal, but we reached the deal that

17  we did and if the contract goes through and is valid,

18  then I would be paying CAIR $5,000, which would go

19  towards Loomer's fees owed to CAIR.

20  BY MR. KLAYMAN:

21     Q.    Quite apart from your being sued for

22  malpractice, you have no financial obligation to pay CAIR

23  anything?

24     A.    Object to form and, no, I'd have, outside of

25  this lawsuit, no reason to pay CAIR anything.

30

1    BY MR. KLAYMAN:

2         Q.    Turning to your affidavit, Paragraph 8, "I

3    requested the file from Ron Coleman and I reviewed the

4    matter," you thoroughly reviewed the case, correct, at

5    that time?

6         A.    Yes.

7         Q.    Paragraph 11, I'm going to read it:

8              I should note that -- "I should also note

9         that, as described by the Circuit, it was before I

10        was retained that 'Illoominate's counsel declined

11        to follow local rules of the district court

12        instructing that the recipient of a motion for

13        costs and attorney's fees, within 14 days, 'shall

14        describe with reasonable particularity each time

15        entry or nontaxable expense to which it objects,

16        both as to issues of entitlement and as to amount,

17        and shall provide supporting legal authority.'"

18        Illoominate Media, Inc. v. Cair Florida, Inc.,

19        2022, U.S. App. LEXIS 27435, at 10(11th Cir

20        Sep. 30, 2022), quoting S.D. Fla. R. 7.3(a).  Thus,

21        at that stage, arguments about the amount of fees

22        were waived."

23              That's an accurate statement, is it not?

24        A.    It is.  The rules stated that you have 14 days

25    to actually discuss that.  That did not happen.

```
 1   However, there was no order from the court stating that

 2   this was waived and we actually believed that, given the

 3   instructions from Ms. Loomer as to how she wanted to

 4   invalidate the offer of judgment, due to the fact that

 5   she did not want to pay CAIR as she viewed them as a

 6   terrorist organization, which she repeated multiple

 7   times, in my judgment the best argument we could put

 8   forward was to invalid the offer of judgment by claiming

 9   that there was nonmonetary equitable relief stated in

10   the complaint.

11   BY MR. KLAYMAN:

12       Q.   Having reviewed the file, you became aware that

13   Mr. Coleman and his law firms never took any action to

14   pursue equitable relief in terms of the case?

15           MR. SANDO:   Object to form.

16       A.   Object to form, and that happened prior to my

17   joining.

18   BY MR. KLAYMAN:

19       Q.   But in reviewing the file, you were able to

20   determine that Mr. Coleman and his law firms didn't take

21   any action to further the claims of Ms. Loomer and

22   Illoominate Media for equitable relief?

23           MR. SANDO:   Object to form.

24       A.   Object to form.

25           MR. BLOCH:   And join as to Dhillon.
```

1    BY MR. KLAYMAN:

2         Q.   Respond, please.

3         A.   Yes, also --  Repeat that one more time,

4    Mr. Klayman.

5         Q.   In reviewing the file, you were able to

6    ascertain that Mr. Coleman and his law firm took no action

7    to further - to litigate the prayer for injunctive relief

8    in the complaint?

9              MR. SANDO:  The same objection.

10        A.   Object to form.  Also, while there was no

11   action, there was also no order from the court stating

12   that it could not be done.  In my judgment, it was not a

13   good argument to make with regards to what Ms. Loomer

14   wanted and the arguments that we wanted to make to

15   actually invalid the offer of judgment as a whole.

16   BY MR. KLAYMAN:

17        Q.   Now, as you entered the case, you would have had

18   the ability to pursue the injunctive relief on behalf of

19   Ms. Loomer and Illoominate Media, correct?

20        A.   Object to form, and when I joined it was

21   solely an attorney fees matter.

22        Q.   Now, you also understood the rules as set forth

23   in Paragraph 11.  You did not file a motion, along with

24   Mr. Coleman and his law firm, that specified specific

25   objections to line entries for the claim for attorney's

```
 1   fees and costs by the CAIR defendants, correct?

 2        A.   Object to form.  We didn't --  In my judgment,

 3   it was going to go against the main argument that we

 4   wanted to make that would invalidate the offer of

 5   judgment as a whole, as that was what Ms. Loomer had

 6   requested, because she continued to say that CAIR was a

 7   terrorist organization.

 8        Q.   What does that have to do --  Well, strike that.

 9             That has nothing to do with objecting to line

10   items of the attorney's fees requested award, correct?

11             MR. SANDO:  Object to form.

12        A.   Object to form.  In my judgment, that was not

13   an argument that was going to actually help us with what

14   we wanted to do.  Ms. Loomer wanted the fees gone and so

15   in order to do that, the best argument we could make,

16   after consulting and reviewing and doing our research,

17   was to invalidate the offer of a judgment as a whole by

18   claiming that the complaint had set forth a request for

19   nonmonetary and equitable relief.

20   BY MR. KLAYMAN:

21        Q.   In fact, nothing prevented you from making both

22   arguments, correct?  You could have made both.

23             MR. SANDO:  Object to form.

24        A.   Object to form.  It would have weakened our

25   primary argument.
```

```
 1   BY MR. KLAYMAN:

 2        Q.   How does that weaken your primary argument?

 3             MR. SANDO:  Form.

 4        A.   Object to form.  It would weaken by showing

 5   that there would be some sort of fees owed to CAIR.  The

 6   hard stance and the bigger picture that we took, which

 7   was a clean, clear, simple argument, is that the offer

 8   of a judgment as a whole was invalid due to the

 9   complaint requesting equitable relief.

10   BY MR. KLAYMAN:

11        Q.   Lawyers frequently argue in the alternative, do

12   they not?

13        A.   Object to form, and lawyers can if that's

14   their judgment.

15        Q.   And you never informed Ms. Loomer and

16   Illoominate Media that in fact you were making a decision,

17   along with Mr. Coleman, only to raise one argument,

18   whereas you had two that you could have made.

19        A.   Object to form.  She was aware of every

20   argument that we were making.

21        Q.   Do you have anything in writing to that effect?

22        A.   Object to form.  I believe that was in a phone

23   call between myself and Ms. Loomer and Mr. Coleman.

24        Q.   But you're not sure, you believe that it was?

25        A.   I'm not sure of the timeline, but I believe
```

```
 1   there was a call, yes.

 2        Q.   I'll show you what I'll ask the court reporter

 3   to mark as Exhibit - is it 4?

 4             MR. SANDO:   The affidavit is four, I have.

 5             MR. KLAYMAN:   The affidavit is four and we'll

 6        get back to the affidavit.

 7             (Plaintiffs' Exhibit No. 5 was marked for

 8        identification.)

 9   BY MR. KLAYMAN:

10        Q.   Five, this --  Exhibit 5 is the legal retainer

11   agreement that you signed with Ms. Loomer, correct?

12        A.   Is it going to be shown on the screen?

13        Q.   Yes.

14        A.   That would be it, yes, to act as local counsel

15   to Illoominate Media and Laura Loomer's attorney,

16   Ronald D. Coleman.

17        Q.   Paragraph 2, the second paragraph, "Attorney

18   shall provide those legal services reasonably required to

19   represent Client, and shall take reasonable steps to keep

20   Client informed of progress and to respond to Client's

21   inquiries," that was your duty as set forth in the legal

22   retainer agreement, correct?

23        A.   Yes, and that was fulfilled.

24        Q.   And in furtherance of this legal representation

25   agreement, you were paid due consideration by Ms. Loomer
```

```
 1   and Illoominate Media, correct?

 2       A.   Yes, in the amount of $5,000.

 3       Q.   Paragraph 14 of your affidavit, going back to

 4   Exhibit 4, "My understanding of my role was ... I would

 5   essentially be checking materials drafted by Ron for

 6   general compliance with local rules and practice," is that

 7   an accurate statement?

 8       A.   That is an accurate statement, and we also

 9   actually consulted with each other frequently to put

10   forth the motion that we did.

11       Q.   Now, Mr. Coleman is not licensed in the State of

12   Florida, correct?

13       A.   Correct.

14       Q.   Based on your knowledge, he doesn't generally

15   practice in Florida, correct?

16       A.   I don't know where he generally practices.  I

17   know for that case he was practicing in Florida, and he

18   is I believe a New Jersey licensed attorney.

19       Q.   And you never asked him about how much

20   experience he had in Florida legal practice in the law,

21   correct?

22       A.   As regards to Florida, no, but I did ask him

23   as to this matter and he said he had plenty of

24   experience.

25       Q.   You had a duty and responsibility, did you not,
```

 1    to not just check Ron for general compliance with local

 2    rules and practice, but to also affirmatively and

 3    independently advise Ms. Loomer as to whether the actions

 4    taken were ethically and legally appropriate, correct?

 5           MR. SANDO:  Object to form.

 6       A.   Object to form.

 7           MR. BLOCH:  Join.

 8    BY MR. KLAYMAN:

 9       Q.   You can respond.

10       A.   Yes.  We did have that discussion, we all were

11    on the same page with what we wanted to do with the

12    motion and how we wanted to proceed.

13       Q.   Your role was not just to rubber stamp what

14    Ron Coleman sent to you, correct?

15       A.   My role was to review and we had a game plan

16    that we set forth and that was actually accomplished and

17    we actually ended up with a 20 percent reduction in

18    attorney's fees.

19       Q.   So you're saying the amount of attorney's fees

20    that Ms. Loomer was ordered to pay was reasonable?  Is

21    that what you're saying?

22           MR. SANDO:  Object to form.

23       A.   Object to form.  The court found them

24    reasonable.

25    BY MR. KLAYMAN:

```
1        Q.   I asked you, do you believe that they're

2   reasonable?

3             MR. SANDO:  Form.

4        A.   Object to form, and I really can't speculate

5   on that.

6   BY MR. KLAYMAN:

7        Q.   Well, you looked at the motion for attorney's

8   fees, did you not?  You did review it, did you not?

9        A.   Yes, I did.

10        Q.   And you never made any argument on behalf of

11   Ms. Loomer or Illoominate Media that those fees were

12   unreasonable and inflated, did you?

13             MR. SANDO:  Object to form.

14        A.   Object to form.  I believe in Section 2, I'd

15   have to go back and look, but I believe we didn't make a

16   reference to it, however, the main goal was to

17   invalidate the offer of judgment.  We were all on the

18   same page with that.  That is what we put forth.

19             In my judgment that was the best argument we

20   can make to actually obtain what Ms. Loomer wanted,

21   given that she did not want to pay CAIR, given her

22   thought that they were a terrorist organization.

23   BY MR. KLAYMAN:

24        Q.   So neither you nor Mr. Coleman and Coleman's law

25   firm and your law firm ever challenged the $144,931.87
```

```
 1    plus interest which CAIR was demanding in attorney's fees?

 2              MR. SANDO:  Object to form.

 3         A.    Object to form, and we challenged the --

 4              MR. BLOCH:  Join.

 5         A.    -- offer of judgment as a whole.

 6    BY MR. KLAYMAN:

 7         Q.    You never challenged the amount?

 8         A.    I believe we did the second one.

 9              MR. SANDO:  Object to form.

10    BY MR. KLAYMAN:

11         Q.    That's a lot of money, isn't it?

12         A.    Object to form, and to me, yes.

13         Q.    And that's a lot of money for someone who was

14    offered one dollar in an offer of judgment, correct, in

15    particular?

16              MR. SANDO:  Form.

17         A.    Object to form and she was offered one dollar

18    after it was shown that there was actually - Laura

19    Loomer fell for a prank and that CAIR was actually not

20    involved in any of the allegations that she set forth.

21    She fell for a prank.

22    BY MR. KLAYMAN:

23         Q.    So Mr. Coleman fell for a prank, too, correct?

24              MR. SANDO:  Form.

25         A.    Object to form.  I have no idea if he fell for
```

1    the prank or not.

2    BY MR. KLAYMAN:

3        Q.   You filed a lawsuit he fell for the prank, is

4    that what you're saying?

5            MR. SANDO:   Form.

6        A.   Object to form.  I do not know if he fell for

7    a prank.  That was prior to my time and I have no idea

8    what his thought process or what their discussions were

9    as to that.

10   BY MR. KLAYMAN:

11       Q.   But you reviewed the file, as you just

12   testified, the entire file?

13       A.   Object to form.  Yes, I did, but that does not

14   include their thoughts.

15       Q.   And you came to no conclusion as to whether

16   Mr. Coleman filed a frivolous lawsuit, correct?

17           MR. SANDO:   Object to form.

18       A.   Object to form.  That was all done prior to my

19   joining the case, whether it was frivolous or not.  I

20   believe Mr. Coleman would file a meritorious lawsuit.

21   BY MR. KLAYMAN:

22       Q.   Paragraph 22 of your affidavit, "Likewise, it is

23   my view that it is well below the general standard of

24   practice to fail to alert a client of the existence of -

25   to say nothing of the consequences of - an offer of

```
 1    judgment.  I was not involved in that stage, and my view

 2    was that I did everything I could to rescue a client from

 3    the consequences of that failure."  Do you stand by that

 4    statement?

 5            MR. SANDO:  Object to form.

 6       A.   Object to form.  Yes, that is a true

 7    statement.  If that did happen, and that's a big if,

 8    then that would fall below the general standard of CAIR.

 9    BY MR. KLAYMAN:

10       Q.   Well, you reviewed the file and --

11            MR. SANDO:  Object to form.

12    BY MR. KLAYMAN:

13       Q.   -- you were involved, correct?

14       A.   You'll have to repeat that.

15       Q.   You reviewed the file, correct, and you had

16    conversations with Mr. Coleman, correct?

17       A.   Object to form, and, yes, I reviewed the file

18    and, yes, we did have conversations.

19       Q.   So what you're saying here is that Mr. Coleman

20    did not follow the general standard of care to alert

21    Ms. Loomer and Illoominate Media of the existence of an

22    offer of judgment; that's what you're saying, correct?

23            MR. SANDO:  Object to form.

24       A.   Object to form.  No, I'm not stating that

25    Ron Coleman did that.  I'm stating simply that it would
```

```
 1    fall below the general standard of care, however, in my

 2    initial conversation with Mr. Coleman and Ms. Loomer, I

 3    did ask about it.  She said that she rejected it because

 4    she was - she believed CAIR was scared about what she

 5    could actually produce at discovery and that she was -

 6    they were just trying to get rid of her to avoid any

 7    sort of embarrassment due to the fact that she believes

 8    they were a terrorist organization and she had some sort

 9    of smoking gun to suggest as such.

10    BY MR. KLAYMAN:

11        Q.   If that was your view, why did you put

12    Paragraph 22 in this affidavit?

13        A.   Because - object to form - because it would

14    actually fall below the standard of care.

15        Q.   So you were hoping that Ms. Loomer and

16    Illoominate Media would accept your proposed settlement by

17    offering up testimony in the form of this affidavit, sworn

18    testimony, that Mr. Coleman and his law firm had committed

19    malpractice?

20            MR. SANDO:  Object to form.

21        A.   Object to form, and I never said that

22    Mr. Coleman or any of the other defendants committed

23    malpractice.

24    BY MR. KLAYMAN:

25        Q.   So to try to save your own skin, you were
```

1  willing to throw Mr. Coleman and his law firm overboard.

2      A.   Object to form, and, no, I'm not throwing

3  anyone overboard.  It is my general view that not

4  alerting a client would fall below the general standard

5  of care.  However, in my discussion with Ms. Loomer, it

6  was already - it was told to me that she had rejected

7  that offer of judgment.

8      Q.   If in fact what you testified is true, you would

9  not have written Paragraph 22 into your affidavit?

10         MR. SANDO:  Form.

11     A.   Object to form.  It is true and it still would

12 have the same statement because it is still below the

13 general standard of care if that were to happen, but it

14 did not happen.

15 BY MR. KLAYMAN:

16     Q.   So this was a sweetener that you put in the

17 affidavit to try and induce a proposed settlement with

18 CAIR, correct?

19         MR. SANDO:  Form.

20     A.   Object to form.  It is not a sweetener, it is

21 just my general view that not alerting the client would

22 fall below the general standard of care.

23 BY MR. KLAYMAN:

24     Q.   And would be unethical, correct?

25         MR. SANDO:  Object to form.

```
 1        A.    Object to form.  I'm not sure about the

 2   ethical rule on that, but client communication is

 3   important, so keeping a client informed as to that would

 4   be important.

 5   BY MR. KLAYMAN:

 6        Q.    Do you take CLE courses on professional ethics

 7   to keep your license in Florida?

 8        A.    Object to form, and, yes, as we are required

 9   to do so.

10        Q.    So therefore you know that part of the ethical

11   considerations is to keep a client fully informed?

12        A.    Object to form, and yes.

13        Q.    I'll ask that we attach as Exhibit 6 an email

14   that you sent to me yesterday evening, August 20, 2024.

15   Mr. Anderson could put that up on the screen.

16            (Plaintiffs' Exhibit No. 6 was marked for

17         identification.)

18   BY MR. KLAYMAN:

19        Q.    "Mr. Klayman, you stated you have the document

20   already but want the emails, texts and notes."

21            What I told you was I have your proposed

22   settlement already, correct, not your emails, texts, and

23   notes.

24        A.    That's what's stated in the first sentence.

25   You said you have the settlement document, but you
```

1   wanted the emails, texts, and notes.

2       Q.   Then you state, "I stand by my relevance

3   objection previously filed with the court and there is no

4   privilege so I will not be filing a privilege log.  You

5   can take it up (with) your request on a UMC hearing.  I

6   will not be producing any documents tomorrow."

7           Now, you are claiming, or you claimed previously

8   but you obviously stated otherwise earlier in this

9   deposition, that you felt you had a privilege to discuss

10  settlement confidentially with the CAIR defendants.

11      A.   I did not state that I had a privilege, I

12  state that they had the contractual right.

13      Q.   And so you'll stand by your testimony earlier

14  today that you're not claiming any privilege on your

15  communications with CAIR or a work product doctrine?

16      A.   Objection to form, and, no, there is no

17  privilege.  However, it is not relevant to your cause of

18  action in your amended verified complaint.

19      Q.   And no work product claimed?

20      A.   And no work product, but once again, it is not

21  relevant to any admissible evidence that you may be able

22  to find given your verified amended complaint.

23      Q.   Is it your testimony that as of today you owe no

24  duty of care to Ms. Loomer and Illoominate Media --

25      A.   Object to form.

1     Q.   -- as their prior attorney?

2     A.   She lost that whenever she actually sued me.

3  There is no attorney-client privilege and no longer any

4  duty.

5     Q.   You're saying essentially that once a claim for

6  malpractice is brought against you and your firm, you have

7  no longer any duty of any sort, legal or ethical, towards

8  Ms. Loomer and Illoominate Media?

9     A.   Object to form.  I am bound by the rules of

10  ethics, of which I am following, and there is no other

11  duty to Ms. Loomer due to her filing this malpractice

12  case and actually contracting away her settlement

13  authority.

14     Q.   So you're saying you owe her no duties at all of

15  any sort?

16     A.   Object to form.  No.

17     Q.   That's what you're saying, the answer is yes?

18     A.   Object to form.  Correct, I owe no duty to her

19  anymore.

20     Q.   You are aware that --  Let's turn now to the

21  verified amended complaint, Paragraph 25.  I'll ask that

22  be marked as Exhibit 7 to your deposition.

23          (Plaintiffs' Exhibit No. 7 was marked for

24          identification.)

25  BY MR. KLAYMAN:

1    Q.    Paragraph 25:

2          "Judge Ruiz found that Defendants Coleman and

3          Mandelbaum had 'fraudulently' joined CAIR Florida

4          as a party, despite having no basis in law or fact.

5          It then turned out that Defendants Coleman and

6          Mandelbaum, as pled herein, did this willfully and

7          intentionally because they provided zero evidence

8          to rebut CAIR's ... arguments that it was joined

9          fraudulently.  Thus, on October 22nd ... Judge Ruiz

10         entered an order denying remand and dismissing all

11         claims against CAIR Florida for lack of

12         jurisdiction."

13         When you came into the case as Ms. Loomer and

14   Illoominate Media's counsel, you were able to see

15   exactly what Paragraph 25 sets forth, that CAIR Florida

16   had been joined fraudulently, correct?

17    A.    That happened prior to my joining.

18    Q.    But you agree that it was joined fraudulently?

19         MR. SANDO:  Object to form.

20    A.    Object to form.  I'd have to go back and look

21   and see exactly what the court said.

22   BY MR. KLAYMAN:

23    Q.    I'm asking you for your own independent

24   judgment, given your having reviewed the entire file when

25   you became counsel.

1           MR. SANDO:  Object to form.

2      A.    Object to form, and, while I did review the

3   entire file when I became counsel, I do not recall this

4   specifically.

5   BY MR. KLAYMAN:

6      Q.    So you're claiming you didn't do a very thorough

7   review, is that it?

8           MR. SANDO:  Form.

9      A.    Object to form.  At the time I did.  It has

10  now been a couple years since then and I do not recall

11  this specifically.

12  BY MR. KLAYMAN:

13     Q.    Paragraph 27:

14          "During the entire period of representation,

15          Defendants Coleman and Mandelbaum never once

16          followed up on, litigated, or took any action

17          whatsoever to obtain the injunctive and equitable

18          relief that Plaintiffs desired."

19          That's an accurate statement, is it not, based

20  on your review of the file when you became counsel?

21          MR. SANDO:  Object to form.

22     A.    Object to form.  The file shows that Twitter

23  was not served.

24  BY MR. KLAYMAN:

25     Q.    Paragraph 27 deals with whether any action was

```
 1   taken for injunctive and equitable relief.  You were able
 2   to determine when you became counsel that no action was
 3   taken by Defendants Coleman and Mandelbaum with regard to
 4   pursuing injunctive and equitable relief on behalf of
 5   Ms. Loomer and Illoominate Media, correct?
 6           MR. SANDO:  Object to form.
 7       A.   Object to form.  What the docket showed was
 8   that Twitter was not served.
 9   BY MR. KLAYMAN:
10       Q.   And that no injunctive relief had been furthered
11   in the case, correct?
12           MR. SANDO:  Form.
13       A.   Object to form.  I believe that would have to
14   be done with Twitter as a party.
15   BY MR. KLAYMAN:
16       Q.   Paragraph 29 of the amended complaint:
17           "Thus, had Defendants Coleman and Mandelbaum
18           actually (1) served Twitter with the CAIR suit, and
19           (2) pursued injunctive and equitable relief that
20           Plaintiffs desired, then Plaintiffs would not have
21           been subjected to having to pay attorneys fees to
22           CAIR and CAIR Florida."
23           That is an accurate statement in Paragraph 29,
24   correct, based upon your review of the file and your
25   experience as an attorney?
```

```
 1            MR. SANDO:  Object to form.

 2       A.    Object to form, and, no, I do not believe so.

 3  I believe it was her rejection of the offer of judgment

 4  that subjected her to having to pay attorney's fees.

 5  Whether Mr. Coleman made a judgment on Twitter and

 6  serving Twitter, that was prior to my joining the case.

 7  BY MR. KLAYMAN:

 8       Q.    Well, you joined the case and you were asked to

 9  analyze what had occurred up to that point in time,

10  correct?

11            MR. SANDO:  Form.

12       A.    Object to form.  I reviewed the case file, I

13  reviewed the docket, and I had spoken with them.  She

14  rejected the offer - settlement offer of judgment and

15  that is what resulted in her having to pay attorney's

16  fees.

17  BY MR. KLAYMAN:

18       Q.    But you just previously testified that if in

19  fact injunctive relief had been furthered in the case,

20  that that was your argument, that attorney's fees were not

21  due?

22            MR. SANDO:  Form, misstates his testimony.

23  BY MR. KLAYMAN:

24       Q.    You can respond.

25       A.    Object to form.  The same objection as
```

1    Mr. Sando, that does misstate my testimony.

2        Q.   Well, you said your primary argument or your

3    only argument was that, on equitable relief, that that

4    nullified having to pay attorney's fees, right?

5            MR. SANDO:  Same objection.

6        A.   Same objection.  What I testified was that it

7    was brought up in the complaint and that is what we used

8    to actually make our argument to get Ms. Loomer out of

9    the fees, as she requested.

10   BY MR. KLAYMAN:

11       Q.   But the argument would be even stronger if in

12   fact any effort had been made to pursue equitable relief

13   by Mr. Coleman and Mandelbaum?

14           MR. SANDO:  Form.

15       A.   Object to form.  That would be up to the

16   court.  It was made - it was mentioned in the complaint

17   and that is what we put forth.

18   BY MR. KLAYMAN:

19       Q.   Based upon your review of the file when you

20   became counsel, you became aware that no effort was made

21   by Coleman or Mandelbaum to pursue equitable relief,

22   correct?

23           MR. SANDO:  Object to form.

24       A.   Object to form.  I don't know about the

25   effort, all I know is that the docket shows Twitter was

1    not served.

2    BY MR. KLAYMAN:

3        Q.    Do you see anything in the file to show that

4    they were pursuing objective relief?

5            MR. SANDO:  Form.

6        A.    Object to form.  In the complaint they were

7    pursuing equitable relief.

8    BY MR. KLAYMAN:

9        Q.    And that's it?

10           MR. SANDO:  Form.

11       A.    Object to form.  In the complaint, they were

12   pursuing equitable relief.

13   BY MR. KLAYMAN:

14       Q.    Answer the question, Mr. Young.

15       A.    I did.

16       Q.    When you reviewed the file, did you find any

17   evidence that Coleman and Mandelbaum had actually pursued

18   equitable relief?

19           MR. SANDO:  Object to form.

20       A.    Object to form, already answered.  He put that

21   in the complaint and that was him looking to get

22   equitable relief from Twitter.

23   BY MR. KLAYMAN:

24       Q.    And that was it?

25       A.    Object to form.  That is what happened.

53

```
 1        Q.   Nothing more?

 2             MR. SANDO:  Form.

 3        A.   Object to form.  Correct.  I have nothing more

 4   to add, and that was before my time.

 5   BY MR. KLAYMAN:

 6        Q.   Paragraph 34, "Despite this reminder, Defendants

 7   Coleman and Dhillon failed to provide any objection

 8   pursuant to S.D. Fla. R. 7.3(a)," that's an accurate

 9   statement, correct?

10             MR. SANDO:  Form.

11        A.   Form.  Which one are you looking at,

12   Mr. Klayman?

13        Q.   Paragraph 33.

14        A.   Thirty-three, excuse me.  Object to form.  I

15   believe this was prior to my joining the case.  I do not

16   know what judgment they made or why they made any

17   judgment.

18        Q.   So based upon your review of the file, you were

19   able to ascertain that that's a correct statement in

20   Paragraph 33, correct?

21        A.   Object to form.  There was no objection.

22        Q.   Paragraph 34:

23             "Had Defendants Coleman and Dhillon complied

24        with S.D. Fla. R. 7.3(a), Plaintiffs would not have

25        been subjected to having to pay attorney's fees to
```

```
 1         CAIR and CAIR Florida, or at a minimum, the amount

 2         of fees ordered would have been significantly

 3         lower."

 4              That is also a true statement in the

 5    complaint, correct?

 6              MR. SANDO:  Object to form.

 7         A.   Object to form, and, no, I did not believe so.

 8    In my judgment, we thought that would go against our

 9    argument and what Ms. Loomer actually wanted in

10    invalidating the offer of judgment as a whole and would

11    have actually weakened our argument.  I also do not

12    believe that it would have been significantly lower.

13    The court did actually go through the reasoning and we

14    were actually able to successfully obtain a 20 percent

15    reduction in attorney's fees.

16    BY MR. KLAYMAN:

17         Q.   Well, Ms. Loomer and Illoominate Media were

18    ultimately hit with 140,000 plus in attorney's fees.  If

19    you increase that by 20 percent, that's significantly more

20    than even 144,000 plus, correct?

21              MR. SANDO:  Object to form.

22         A.   Object to form, and once again you got the

23    math wrong.  CAIR was looking for 150 - I believe

24    153,000.  We had it reduced by 20 percent, down to

25    124,000.  That 20 percent in any sort of financial
```

```
 1    aspect is significant.

 2    BY MR. KLAYMAN:

 3        Q.   So it was a good deal that you were able to get

 4    for her, huh, a hundred and --

 5             MR. SANDO:  Form.

 6        A.   Object to form.

 7    BY MR. KLAYMAN:

 8        Q.   You did a great job, didn't you?

 9        A.   Object to form.  We were successful in

10    lowering the amount of attorney's fees by 20 percent.

11    We believe we were successful.

12        Q.   That was the judge that ordered that, not an

13    argument that you made for 20 percent, correct?

14             MR. SANDO:  Object to form.

15        A.   Object to form.  If it wasn't for our argument

16    or me coming in, there would have been no argument, and

17    we were successful in obtaining a 20 percent reduction.

18    BY MR. KLAYMAN:

19        Q.   In fact, neither you nor Coleman nor his law

20    firm ever made that argument to reduce the fees, correct?

21        A.   Object to form.  Once again, we believe that

22    it would actually, in my judgment, not help our case and

23    would not help what Ms. Loomer had requested us to do,

24    which was to invalidate the offer of judgment as a

25    whole.
```

```
1        Q.    Paragraph 39:

2              "Thus, it should come as no surprise that,

3        after the litany of egregious errors put in front

4        of the Court by Defendants Coleman, Dhillon, and

5        Young, on August 4, 2021, including referring to

6        Illoominate Media as (a) corporation instead of a

7        limited liability company, Magistrate Reinhart

8        issued an order granting in part and denying in

9        part CAIR and CAIR Florida's Joint Motion for

10       Attorneys Fees, and awarded CAIR and CAIR Florida a

11       total of $124,423.37 in fees and costs."

12             That's an accurate statement, correct?

13             MR. SANDO:  Object to form.

14       A.    Object to form.  No.  There were no egregious

15  errors.  In my judgment, we put forth the actual

16  arguments that Ms. Loomer requested of us to actually

17  invalidate the offer of a judgment as a whole.

18  BY MR. KLAYMAN:

19       Q.    So you reviewed the pleading that is referred to

20  in Paragraph 39 before it was filed, correct?

21       A.    Object to form, and, yes, I reviewed our

22  pleading before we filed it.

23       Q.    And you are aware that that pleading was

24  inaccurate in that it described Illoominate Media as a

25  corporation rather than a limited liability company?
```

```
 1              MR. SANDO:  Form.

 2         A.   Object to form.  If there was a typo, then

 3    there was a typo.

 4    BY MR. KLAYMAN:

 5         Q.   Well, that's not a typo, that's a different form

 6    of corporate form, is it not?  A corporation and a limited

 7    liability company are two different entities, correct?

 8              MR. SANDO:  Form.

 9         A.   Object to form.  There is a difference in a

10    corporation versus a limited liability company, however,

11    I don't believe that had anything to do with any sort of

12    decision or any issue whatsoever.

13    BY MR. KLAYMAN:

14         Q.   But you just testified falsely.  That's not a

15    typo, correct?

16              MR. SANDO:  Object to form.

17         A.   Object to form.  It would still be a typo.

18    BY MR. KLAYMAN:

19         Q.   In your opinion, if you just make a mistake, or

20    don't do your job, then it's just a typo?

21              MR. SANDO:  Object to form.

22         A.   Object to form.  A simple mistake like that is

23    not --

24    BY MR. KLAYMAN:

25         Q.   It shows a lack of care, does it not?  It shows
```

```
 1    that, no pun intended, it shows a lack of care,

 2    professional care, that that error was in there?

 3        A.   Object to form.  A simple error, that does not

 4    actually affect anything.  There was no lack of care.

 5        Q.   Paragraph 37 of the complaint, "Defendant Young,

 6    upon entering an appearance in the CAIR Suit, should have

 7    reviewed the case and provided Plaintiffs with an accurate

 8    and competent assessment of the merits of the CAIR Suit."

 9            In fact, that is what you were retained to do,

10    was it not?

11        A.   Object to form.  I was retained to act as

12    local counsel to assist Mr. Coleman in filing the

13    response for a motion for attorney's fees.

14        Q.   But you were also required, as a matter of your

15    agreement with Ms. Loomer and also as a matter of your

16    ethical responsibilities when you came into the case, to

17    give her an accurate and competent assessment of the

18    merits of the CAIR suit, correct?

19        A.   Object to form.  I reviewed the matter and I

20    gave her an opinion as to where we were, why we were

21    doing what we were doing, and what we needed to do.

22        Q.   So you gave her an accurate and competent

23    assessment of the merits of the CAIR suit?

24            MR. SANDO:  Object to form.

25        A.   Object to form.  I reviewed the case in its
```

```
1    entirely and I discussed what had happened - the case

2    was dismissed by motion, that there was an offer of

3    judgment that she told me she rejected, and then now we

4    were dealing with the attorney's fees matter.

5    BY MR. KLAYMAN:

6         Q.   Well, you didn't answer my question.  The

7    question is you did give her an accurate and competent

8    assessment of the merits of the CAIR suit when you came

9    into the case, correct?  That was your duty --

10             MR. SANDO:  Object to form.

11   BY MR. KLAYMAN:

12        Q.   -- as counsel.

13        A.   Object to form.  We didn't actually discuss

14   the merits of the CAIR suit.  We looked at it, they had

15   filed it, they were happy with it.  I was not there for

16   the judgment, that predates when I was - when I joined.

17             What I needed to do and I had an ethical duty

18   to do is to actually discuss the case with her, with her

19   attorney, who had been her attorney the entire time,

20   discuss what our plan was and what we had to do with

21   regards to responding to the motion for attorney's fees

22   filed by the CAIR defendants.

23   BY MR. KLAYMAN:

24        Q.   Paragraph 43, "Indeed, had Plaintiffs known

25   that there was no real substantive basis for their
```

1    claims against CAIR, CAIR Florida, and Twitter,

2    Plaintiffs would never have agreed to initiate this

3    lawsuit in the first place."

4            That's an accurate statement, based upon your

5    review of the file, is it not?

6        A.   Object to form.  That predates me and I have

7    no idea what was discussed at the beginning of the

8    lawsuit.

9        Q.   The next line, "Had Plaintiff's known that CAIR

10   was open to settling the lawsuit, Plaintiffs also would

11   have been agreeable, but Defendants failed to reply

12   adequately," that's an accurate statement, is it not?

13           MR. SANDO:  Object to form.

14       A.   Object to form.  I do not believe so because

15   she told me that she had rejected the offer of

16   settlement.

17   BY MR. KLAYMAN:

18       Q.   In fact, Ms. Loomer communicated with you

19   exactly what is set forth in Paragraph 43, did she not?

20           MR. SANDO:  Object to form.

21       A.   Object to form.  She told me that she had

22   rejected the offer of judgment, she believed CAIR was

23   scared about what she was actually going to produce via

24   discovery and that they were a terrorist organization.

25   BY MR. KLAYMAN:

```
 1        Q.    I'm going to leave this deposition open subject

 2   to our motion to compel and for sanctions, and so you're

 3   fortunate, okay?  So I'm taking one less hour at this

 4   point than I would otherwise need to because I need the

 5   documents to complete this deposition, and it may go

 6   beyond that.

 7             So are you available in the next two weeks for a

 8   UMC hearing?

 9        A.    File your motion to compel, get on the court's

10   website, see what their schedule looks like, and we'll

11   come to a determination on timing.

12        Q.    You're not going on vacation in the next two

13   weeks?

14        A.    No, I have no plans for a vacation in the next

15   two weeks.

16             MR. KLAYMAN:  All right.  The deposition is,

17        at this point, left open and we'll continue it

18        subject to our motion to compel and for sanctions.

19             Thank you, Mr. Young.

20             MR. SANDO:  Asher, we would request the

21        exhibits to be furnished to all counsel that were

22        marked here today, okay?  One through seven, I

23        believe.

24             MR. KLAYMAN:  That's fine.

25             MR. YOUNG:  And, Gail, I would actually like
```

```
1        to make an order of this deposition transcript as

2        well.

3              MR. SANDO:  I didn't order the transcript, I

4        just asked for the exhibits.

5              MR. YOUNG:  I know you did.

6              THE VIDEOGRAPHER:  Is everybody ready to go

7        off the record?

8              MR. KLAYMAN:  We're off the record.

9              MR. BLOCH:  Is anybody ordering?  Is

10       Mr. Klayman ordering the transcript?

11             MR. KLAYMAN:  Yeah, we're going to order it,

12       too.  We'll take a copy off of what Mr. Young just

13       ordered.

14             THE VIDEOGRAPHER:  The time is 11:10 a.m.  We

15       are off the video record.

16             MR. BLOCH:  And this is Brett Bloch.  I'll

17       take a copy --

18             (Recording stopped.)

19             MR. BLOCH:  This is Brett Bloch.  I'll take a

20       copy of the transcript.

21             THE COURT REPORTER:  Mr. Klayman, is it

22       regular delivery?

23             MR. KLAYMAN:  Three days.

24             THE COURT REPORTER:  Mr. Young, do you read or

25       waive?
```

```
 1              MR. YOUNG:   I'll waive the reading.

 2              (The reading of the deposition transcript was

 3         waived.)

 4              (The deposition adjourned at 11:10 a.m.)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    CERTIFICATE OF OATH

 2

 3    THE STATE OF FLORIDA

 4    COUNTY OF ST. LUCIE

 5

 6

 7            I, the undersigned authority, certify that

 8    the witness, CRAIG YOUNG, appeared before me remotely

 9    via videoconference on the 21st day of August, 2024, and

10    was duly sworn.

11

12    Signed this 26th day of August, 2024

13

14

15

16

17

18

19

20
                    Gail Hmielewski
21            Gail Hmielewski, Stenographer
              Notary Public - State of Florida
22            My Commission No.: HH406786
              Expires:  June 5, 2027
23

24

25
```

```
 1                    CERTIFICATE OF REPORTER

 2    STATE OF FLORIDA

 3    COUNTY OF ST. LUCIE

 4

 5              I, GAIL HMIELEWSKI, Court Stenographer,

 6    HEREBY CERTIFY that I was authorized to and did

 7    stenographically remotely report the videoconference of

 8    the foregoing deposition of CRAIG YOUNG; that a review

 9    of the transcript was not requested; and that the

10    foregoing transcript, Pages 1 through 63, inclusive, is

11    a true and complete record of my stenographic notes.

12              I FURTHER CERTIFY that I am not a

13    relative, employee, attorney, or counsel of any of the

14    parties, nor am I a relative or employee of any of the

15    parties' attorney or counsel connected with the action,

16    nor am I financially interested in the action.

17              Dated this 26th day of August, 2024.

18

19

20

21    _____
      GAIL HMIELEWSKI, Court Stenographer

22

23

24

25
```

**A**

**a.m** 1:17,17 5:15
  62:14 63:4
**abide** 20:19
**ability** 32:18
**able** 31:19 32:5
  45:21 47:14
  49:1 53:19
  54:14 55:3
**Abrams** 2:25
  5:18
**absent** 14:18
**absolved** 21:24
**accept** 23:6
  42:16
**access** 9:13
**accomplished**
  37:16
**accurate** 30:23
  36:7,8 48:19
  49:23 53:8
  56:12 58:7,17
  58:22 59:7
  60:4,12
**act** 35:14 58:11
**acting** 11:16
  27:12
**action** 9:12 11:5
  11:17 14:8,22
  20:5 26:10
  31:13,21 32:6
  32:11 45:18
  48:16,25 49:2
  65:15,16
**actions** 23:25
  25:25 37:3
**acts** 20:17,17
**actual** 10:15
  16:1 20:21
  56:15
**add** 53:4
**addition** 14:10
**Additionally**
  9:12
**adequately**
  26:25 60:12

**adjourned** 63:4
**admissible** 45:21
**admitted** 18:13
  18:17
**advice** 13:10
**advise** 25:24
  26:9 37:3
**affect** 58:4
**affidavit** 4:11
  24:6,15,18
  30:2 35:4,5,6
  36:3 40:22
  42:12,17 43:9
  43:17
**affirm** 6:12
**affirmatively**
  37:2
**ago** 15:25
**agree** 47:18
**agreeable** 60:11
**agreed** 6:23 16:2
  17:8 60:2
**agreeing** 28:9
  29:4
**agreement** 4:12
  9:15,18 10:13
  10:16,20,22,23
  11:3 12:9,11
  12:21 15:19
  16:2,22 17:18
  21:16 22:23
  23:11 35:11,22
  35:25 58:15
**Aguirre** 2:8 6:2
**aid** 27:13
**aided** 28:12
**akin** 26:19
**al** 1:4,7 9:25
**alert** 40:24
  41:20
**alerting** 43:4,21
**allegations**
  39:20
**alleged** 8:22
  14:12
**allowed** 17:13
**allowing** 23:9

**alternative**
  34:11
**amended** 4:14
  9:8 14:8,23
  15:17 45:18,22
  46:21 49:16
**amount** 16:12
  21:12 23:18
  30:16,21 36:2
  37:19 39:7
  54:1 55:10
**analyze** 50:9
**Anderson** 2:24
  7:9,13 8:8 16:4
  19:16 24:8
  44:15
**answer** 46:17
  52:14 59:6
**answered** 52:20
**anybody** 62:9
**anymore** 46:19
**apart** 29:21
**apologize** 19:8
**App** 30:19
**appear** 7:10,11
**appearance** 58:6
**appearances** 2:1
  5:21
**appeared** 64:8
**Appearing** 2:2,6
  2:13,18
**appropriate**
  37:4
**approving** 23:17
**approximately**
  15:4
**argue** 34:11
**argument** 28:2,5
  31:7 32:13
  33:3,13,15,25
  34:2,7,17,20
  38:10,19 50:20
  51:2,3,8,11
  54:9,11 55:13
  55:15,16,20
**arguments**
  30:21 32:14

  33:22 47:8
  56:16
**arm's** 12:7,13
**articulated** 9:7
**ascertain** 32:6
  53:19
**Asher** 2:24 16:4
  19:13 61:20
**asked** 7:23 13:1
  36:19 38:1
  50:8 62:4
**asking** 47:23
**asks** 14:11
**aspect** 55:1
**assessment** 58:8
  58:17,23 59:8
**assist** 58:12
**assistant** 2:24
  7:9
**assuming** 23:5
**attach** 44:13
**attacked** 28:22
**attorney** 11:14
  11:15 21:7
  32:21 35:15,17
  36:18 46:1
  49:25 59:19,19
  65:13,15
**attorney's** 26:6
  26:25 28:2
  30:13 32:25
  33:10 37:18,19
  38:7 39:1 50:4
  50:15,20 51:4
  53:25 54:15,18
  55:10 58:13
  59:4,21
**attorney-client**
  21:23 46:3
**attorneys** 15:2,5
  49:21 56:10
**August** 1:16
  5:14 7:11,11
  7:12 44:14
  56:5 64:9,12
  65:17
**authority** 10:9

  11:2 18:3,6
  19:24 20:3,23
  21:5,11 22:16
  23:8 46:13
  64:7
**authority.'**
  30:17
**authorized** 65:6
**availability** 9:5
**available** 61:7
**Avenue** 1:24
**avoid** 42:6
**award** 20:7
  33:10
**awarded** 56:10
**aware** 13:6
  21:12 27:6,9
  27:12,15 28:21
  29:1 31:12
  34:19 46:20
  51:20 56:23

**B**

**B** 4:1 18:2 22:21
  22:22
**back** 10:23
  13:13 14:13
  25:19 28:7
  35:6 36:3
  38:15 47:20
**backs** 14:2 16:25
  17:16 22:12
**bar** 12:6,8,23
  13:3,10 18:13
  22:2,6,10
**bargained** 20:24
**bargained-for**
  19:18,18 20:6
  20:8 23:10
**Barrett** 2:7 5:9
  6:7,7
**bars** 13:7
**based** 17:21
  18:25 23:25
  36:14 48:19
  49:24 51:19
  53:18 60:4

basis 9:13 10:5
47:4 59:25
battle 26:16
Beach 1:1 2:20
5:11
bearing 27:25
becoming 24:24
beginning 60:7
begins 5:6
behalf 1:14 5:19
5:22 6:2,5 8:24
12:4 22:5
23:17 24:21
25:8 32:18
38:10 49:4
beheaded 28:23
beheading 28:23
belief 24:19
believe 14:6,7
17:20 20:7
25:16 34:22,24
34:25 36:18
38:1,14,15
39:8 40:20
49:13 50:2,3
53:15 54:7,12
54:23 55:11,21
57:11 60:14
61:23
believed 31:2
42:4 60:22
believes 42:7
best 24:18 31:7
33:15 38:19
better 19:16
beyond 61:6
big 20:1 41:7
bigger 34:6
bit 13:14 19:15
Blake 2:8 6:1
blake.sando@...
2:11
Bloch 2:14 6:4,4
31:25 37:7
39:4 62:9,16
62:16,19,19
Blvd 2:9

Boca 2:4,15
bound 46:9
bounds 21:21
Boynton 2:20
breach 16:21
17:20,25 18:9
breached 17:6
breaks 20:14
Brett 2:14 6:4
62:16,19
brett@shende...
2:17
bring 13:4,14
17:23
broken 12:1,22
13:1
brought 17:9
46:6 51:7
Burstein 2:24
6:6,6
_____
C
C-r-a-i-g 6:25
Cair 8:23,23
9:15,18,21,23
10:8,14,20
11:1,2 12:10
13:21 14:2,14
15:20 16:3,15
16:19 17:1,4
17:10,18,23,24
18:3 19:1,3,17
20:7,10,22
21:10 22:15,23
23:3,11,13,18
23:20 24:2
26:18,18,23
27:6,12,19
28:3,18,21
29:5,12,18,19
29:22,25 30:18
31:5 33:1,6
34:5 38:21
39:1,19 41:8
42:4 43:18
45:10,15 47:3
47:11,15 49:18

49:22,22 54:1
54:1,23 56:9,9
56:10,10 58:6
58:8,18,23
59:8,14,22
60:1,1,9,22
CAIR's 14:13
15:2,5 16:16
18:8 23:4 27:3
47:8
call 34:23 35:1
capacity 27:13
care 22:9 41:20
42:1,14 43:5
43:13,22 45:24
57:25 58:1,2,4
case 1:2 5:12
6:13 9:20 10:8
13:20,21 20:13
26:4,5 27:7
30:4 31:14
32:17 36:17
40:19 46:12
47:13 49:11
50:6,8,12,19
53:15 55:22
58:7,16,25
59:1,9,18
cause 5:4 14:8
45:17
certain 7:24
Certificate 3:6,7
64:1 65:1
certify 64:7 65:6
65:12
challenged
38:25 39:3,7
check 12:8 27:23
37:1
checking 36:5
Cheryl 2:24 6:6
children 28:23
Cir 30:19
Circuit 1:1,1
5:11 30:9
claim 32:25 46:5
claimed 45:7,19

claiming 13:19
14:19,21,24
31:8 33:18
45:7,14 48:6
claims 9:7 14:22
15:17 31:21
47:11 60:1
CLE 44:6
clean 34:7
clear 6:23 13:9
21:10 34:7
client 11:3,22
35:19,20 40:24
41:2 43:4,21
44:2,3,11
Client's 35:20
clients 10:8
11:18,20
co-conspirator
27:7 28:11
co-counsel 26:8
COLE 2:9
Coleman 1:7 2:6
5:8 6:2 9:24
11:16 16:10,11
16:18 18:6,8
19:4,6,8,25
20:3,12 21:5
22:16 23:8
25:3 26:8 30:3
31:13,20 32:6
32:24 34:17,23
35:16 36:11
37:14 38:24
39:23 40:16,20
41:16,19,25
42:2,18,22
43:1 47:2,5
48:15 49:3,17
50:5 51:13,21
52:17 53:7,23
55:19 56:4
58:12
Coleman's 38:24
come 25:14 56:2
61:11
coming 55:16

Commission
64:22
committed
42:18,22
communicate
23:3
communicated
13:9 23:22
60:18
communication
9:6,9 44:2
communicatio...
14:20 45:15
company 56:7
56:25 57:7,10
compel 61:2,9
61:18
competent 58:8
58:17,22 59:7
complaint 4:14
9:8 12:6 14:9
14:23 15:17
31:10 32:8
33:18 34:9
45:18,22 46:21
49:16 51:7,16
52:6,11,21
54:5 58:5
complete 7:6
61:5 65:11
compliance 36:6
37:1
complied 53:23
comply 7:3
complying 16:25
17:17
computer 15:12
concern 28:8,17
29:4
conclusion 25:8
25:14 26:20
40:15
conclusions
10:12
Conduct 11:20
confidential 9:9
confidentially

45:10
connected 65:15
consent 18:8,9
consequences
  40:25 41:3
consideration
  12:13 35:25
considerations
  44:11
consult 12:19
  22:10
consulted 36:9
consulting 2:19
  33:16
continue 24:1
  61:17
continued 33:6
continuing
  21:18
contract 10:7
  20:1,14,15,21
  22:4,8,13,15
  29:17
contracting
  46:12
contracts 19:10
  19:11,11
contractual 9:16
  10:3 12:11
  45:12
contractually
  20:23
control 10:10
  11:5 18:5
  19:24 20:3
  21:4,10 22:15
  22:18,20 23:1
  23:7,21,24
  24:3
conversation
  42:2
conversations
  41:16,18
copy 62:12,17
  62:20
corporate 19:5
  19:10 57:6

corporation
  56:6,25 57:6
  57:10
correct 8:6,7,19
  8:20,25 9:1,21
  9:21,22 10:5
  10:14 11:1,8,9
  11:10,11,12,13
  11:15,18,21
  12:6,7 13:12
  14:17 15:20
  17:1,19 18:11
  18:12,16,24
  19:7 21:8,15
  23:14 24:14,18
  25:1,5,6,10
  26:1,11 27:8
  27:13 30:4
  32:19 33:1,10
  33:22 35:11,22
  36:1,12,13,15
  36:21 37:4,14
  39:14,23 40:16
  41:13,15,16,22
  43:18,24 44:22
  46:18 47:16
  49:5,11,24
  50:10 51:22
  53:3,9,19,20
  54:5,20 55:13
  55:20 56:12,20
  57:7,15 58:18
  59:9
costs 30:13 33:1
  56:11
counsel 5:16,20
  11:16 14:3,13
  16:16 24:24
  25:24 30:10
  35:14 47:14,25
  48:3,20 49:2
  51:20 58:12
  59:12 61:21
  65:13,15
country 13:7
County 1:1 5:12
  64:4 65:3

couple 15:25
  48:10
courses 44:6
court 1:1,22
  5:10,18 6:9,11
  6:17 7:4,5,8
  8:4 10:19
  13:17 14:18
  18:1 30:11
  31:1 32:11
  35:2 37:23
  45:3 47:21
  51:16 54:13
  56:4 62:21,24
  65:5,21
court's 61:9
cover 19:23 23:4
  23:12
Craig 1:12 2:18
  2:19 3:4 4:7,11
  4:13 5:1,7,10
  5:24 6:24 8:14
  64:8 65:8
craig@cwyleg...
  2:21
create 20:4
credit 16:12
criminal 20:17
  27:7
CWY 2:19

───────── D ─────────

D 3:1 35:16
Dadeland 2:9
Dallas 27:7
  28:11
date 1:16 5:14
  16:14,17
dated 4:13 7:10
  65:17
Daughters 1:23
  5:19
day 64:9,12
  65:17
days 30:13,24
  62:23
deal 29:15,16,16

55:3
dealing 59:4
deals 22:18
  48:25
death 20:18
decide 8:4 12:16
  12:23 18:1
  20:11 24:1
decided 21:6
decision 34:16
  57:12
decisions 25:19
  25:21
declined 30:10
Defendant 2:13
  4:7,8 5:24 8:14
  8:16 9:12 58:5
Defendant/De...
  2:18
defendants 1:8
  2:6 5:10 15:20
  16:3 17:19
  19:1,3,18
  20:10 22:24
  23:12,13,19
  24:2 33:1
  42:22 45:10
  47:2,5 48:15
  49:3,17 53:6
  53:23 56:4
  59:22 60:11
delay 13:24
delivery 62:22
demanding 39:1
denying 47:10
  56:8
depose 15:25
deposition 1:11
  4:6 5:1,7,15
  6:24 7:6,10,21
  7:23 13:15
  45:9 46:22
  61:1,5,16 62:1
  63:2,4 65:8
describe 30:14
described 30:9
  56:24

Description 4:4
desired 48:18
  49:20
despite 47:4
  53:6
determination
  22:5,7 61:11
determine 31:20
  49:2
determined
  15:13
determining
  10:19
Dhillon 2:13 5:9
  6:5 31:25 53:7
  53:23 56:4
difference 57:9
different 23:10
  29:15,16 57:5
  57:7
Direct 3:5 6:19
Disagree 19:4
discovery 42:5
  60:24
discuss 17:10
  30:25 45:9
  59:13,18,20
discussed 59:1
  60:7
discussion 14:10
  37:10 43:5
discussions 14:2
  16:17 17:22
  40:8
dismissed 26:5
  59:2
dismissing 47:10
district 30:11
docket 49:7
  50:13 51:25
doctrine 45:15
document 12:15
  44:19,25
documents 7:3,7
  7:24 8:2,6,13
  8:21,25 13:14
  14:7,11 45:6

· 61:5
**doing** 11:7 16:24
  33:16 58:21,21
**dollar** 39:14,17
**drafted** 36:5
**Drive** 2:20
**duces** 4:6 7:21
  7:23
**due** 16:12 31:4
  34:8 35:25
  42:7 46:11
  50:21
**duly** 64:10
**duties** 11:18,19
  46:14
**duty** 11:24 12:2
  21:18 25:24
  26:9 35:21
  36:25 45:24
  46:4,7,11,18
  59:9,17

**E**
**E** 2:3 3:1 4:1
**earlier** 17:3 45:8
  45:13
**effect** 12:24
  21:19 34:21
**efficacy** 26:9
**effort** 51:12,20
  51:25
**egregious** 56:3
  56:14
**eight** 18:15
**either** 11:6 21:7
  23:22,23
**email** 4:13 44:13
**emails** 14:13
  15:4,15 44:20
  44:22 45:1
**embarrassment**
  42:7
**employee** 65:13
  65:14
**ended** 37:17
**enforced** 11:1
**engaging** 14:1

**entailed** 10:14
**entails** 10:20
**entered** 32:17
  47:10
**entering** 12:20
  58:6
**entire** 40:12
  47:24 48:3,14
  59:19
**entirety** 25:4
  59:1
**entities** 57:7
**entitlement**
  30:16
**entity** 11:4 27:1
  27:20 28:15,20
  29:9
**entries** 32:25
**entry** 30:15
**enure** 11:18
**equitable** 31:9
  31:14,22 33:19
  34:9 48:17
  49:1,4,19 51:3
  51:12,21 52:7
  52:12,18,22
**error** 58:2,3
**errors** 56:3,15
**Esq** 4:11
**Esquire** 2:3,8,8
  2:14,19,24
  5:17
**essentially** 36:5
  46:5
**estimate** 15:11
**et** 1:4,7 9:25
**ethical** 12:1,22
  12:25 13:3,5
  13:11 20:14
  21:25 22:1,3
  44:2,10 46:7
  58:16 59:17
**ethically** 11:24
  20:13 37:4
**ethics** 22:3,14,14
  44:6 46:10
**evening** 44:14

**everybody** 62:6
**evidence** 45:21
  47:7 52:17
**exactly** 47:15,21
  60:19
**Examination**
  1:22 3:5 6:19
**exchange** 20:6,9
**exchanges** 23:10
**excuse** 18:19
  19:7 28:21
  53:14
**exercised** 22:21
**Exhibit** 4:3 7:15
  8:9,10 16:6
  24:10 35:3,7
  35:10 36:4
  44:13,16 46:22
  46:23
**exhibits** 61:21
  62:4
**existence** 40:24
  41:21
**existing** 9:16
**expense** 30:15
**experience**
  36:20,24 49:25
**Expires** 64:22

**F**
**facilitating** 9:10
**fact** 7:2 12:3
  22:7,19 26:17
  31:4 33:21
  34:16 42:7
  43:8 47:4
  50:19 51:12
  55:19 58:9
  60:18
**fail** 40:24
**failed** 53:7 60:11
**failure** 16:20
  18:8 41:3
**fair** 15:10
**fall** 41:8 42:1,14
  43:4,22
**falsely** 57:14

**far** 13:2 26:5
**Fax** 2:11,16
**fees** 19:23 23:5
  23:12 26:6
  27:1 28:2
  29:19 30:13,21
  32:21 33:1,10
  33:14 34:5
  37:18,19 38:8
  38:11 39:1
  49:21 50:4,16
  50:20 51:4,9
  53:25 54:2,15
  54:18 55:10,20
  56:10,11 58:13
  59:4,21
**fell** 39:19,21,23
  39:25 40:3,6
**felt** 45:9
**FIFTEENTH**
  1:1
**file** 12:5 24:25
  25:3,4,7 30:3
  31:12,19 32:5
  32:23 40:11,12
  40:20 41:10,15
  41:17 47:24
  48:3,20,22
  49:24 50:12
  51:19 52:3,16
  53:18 60:5
  61:9
**filed** 13:17 25:8
  40:3,16 45:3
  56:20,22 59:15
  59:22
**files** 15:12
**filing** 4:9 28:1
  45:4 46:11
  58:12
**final** 18:4 19:19
  19:20 21:3
  23:20,23
**financial** 27:13
  29:22 54:25
**financially** 65:16
**find** 45:22 52:16

**fine** 61:24
**firm** 6:3 32:6,24
  38:25,25 42:18
  43:1 46:6
  55:20
**firms** 20:12 26:9
  31:13,20
**first** 19:19 44:24
  60:3
**Five** 35:10
**Fla** 30:20 53:8
  53:24
**Florida** 1:1,25
  2:4,10,15,20
  5:3,12 8:23
  11:19 12:8,17
  12:19,23 13:3
  13:10 18:13
  22:2,6,10,14
  27:1,20 29:9
  30:18 36:12,15
  36:17,20,22
  44:7 47:3,11
  47:15 49:22
  54:1 56:10
  60:1 64:3,21
  65:2
**Florida's** 56:9
**follow** 30:11
  41:20
**followed** 48:16
**following** 46:10
**follows** 16:14
**foregoing** 65:8
  65:10
**form** 14:6 25:12
  25:16,17 26:2
  26:3,12,13
  27:10,14,15,18
  27:19,24,25
  28:13,14,19,25
  29:1,6,7,13,14
  29:24 31:15,16
  31:23,24 32:10
  32:20 33:2,11
  33:12,23,24
  34:3,4,13,19

34:22 37:5,6
37:22,23 38:3
38:4,13,14
39:2,3,9,12,16
39:17,24,25
40:5,6,13,17
40:18 41:5,6
41:11,17,23,24
42:13,17,20,21
43:2,10,11,19
43:20,25 44:1
44:8,12 45:16
45:25 46:9,16
46:18 47:19,20
48:1,2,8,9,21
48:22 49:6,7
49:12,13 50:1
50:2,11,12,22
50:25 51:14,15
51:23,24 52:5
52:6,10,11,19
52:20,25 53:2
53:3,10,11,14
53:21 54:3
54:21,22 55:5
55:6,9,14,15
55:21 56:13,14
56:21 57:1,2,5
57:6,8,9,16,17
57:21,22 58:3
58:11,19,24,25
59:10,13 60:6
60:13,14,20,21
Fort 1:25
forth 14:13
   22:21 32:22
   33:18 35:21
   36:10 37:16
   38:18 39:20
   47:15 51:17
   56:15 60:19
fortunate 61:3
forward 25:23
   26:11 31:8
found 37:23
   47:2
Foundation 8:23

27:8
four 35:4,5
frauds 20:19
fraudulently
   47:9,16,18
fraudulently'
   47:3
frequently 34:11
   36:9
frivolous 40:16
   40:19
front 56:3
fulfilled 35:23
full 10:9 16:12
fully 44:11
funding 26:20
   28:4
furnished 61:21
further 13:23
   31:21 32:7
   65:12
furtherance
   35:24
furthered 49:10
   50:19
Furthermore
   9:8
――――――
G
Gail 1:22 5:2,18
   61:25 64:21
   65:5,21
game 37:15
Gaza 29:2
general 36:6
   37:1 40:23
   41:8,20 42:1
   43:3,4,13,21
   43:22
generally 36:14
   36:16
give 6:13 13:10
   16:19 19:2
   58:17 59:7
given 7:2 31:2
   38:21,21 45:22
   47:24

gives 19:1,17
   20:4 22:15
go 18:2 23:22
   28:9,18 29:18
   33:3 38:15
   47:20 54:8,13
   61:5 62:6
goal 38:16
goes 29:17
going 7:1,8 9:2
   12:23 13:13
   16:9 26:15,16
   28:15 29:2
   30:7 33:3,13
   35:12 36:3
   60:23 61:1,12
   62:11
good 5:5 6:1
   18:21,22 19:22
   23:4 32:13
   55:3
granting 56:8
great 55:8
Green 14:14
grounds 9:4
Group 2:3,13
   5:9 6:5
gun 42:9
――――――
H
H 4:1
Hamas 27:13
   28:12,21
hand 6:12,18
handle 19:9
happen 30:25
   41:7 43:13,14
happened 25:19
   31:16 47:17
   52:25 59:1
happy 59:15
hard 34:6
hearing 10:17
   15:22,23 45:5
   61:8
Held 1:19
help 33:13 55:22

55:23
HH406786
   64:22
history 26:23
   27:3
hit 54:18
Hmielewski 1:22
   5:2,18 64:21
   65:5,21
Holy 27:8
hope 11:1
hoping 42:15
hostages 28:24
hour 61:3
hours 6:23 7:2
huh 55:4
hundred 20:2
   55:4
hundreds 19:10
――――――
I
idea 39:25 40:7
   60:7
identification
   7:16 8:11 16:7
   24:11 35:8
   44:17 46:24
illegal 20:16,16
illegality 12:12
Illoominate 5:8
   5:23 10:24
   11:7,12,14,21
   12:5 14:3
   15:19 16:3,24
   17:14,16 21:14
   22:23 23:14,17
   24:2,22,25
   25:9 30:18
   31:22 32:19
   34:16 35:15
   36:1 38:11
   41:21 42:16
   45:24 46:8
   47:14 49:5
   54:17 56:6,24
Illoominate's
   30:10

immediately
   16:11
important 44:3
   44:4
inaccurate
   56:24
include 40:14
including 18:6
   19:25 21:22
   28:23 56:5
inclusive 65:10
incorrect 19:9
increase 54:19
independent
   47:23
independently
   37:3
induce 43:17
inflated 38:12
inform 10:25
   11:6
Information
   16:15
informed 16:17
   34:15 35:20
   44:3,11
initial 42:2
initiate 60:2
injunctive 32:7
   32:18 48:17
   49:1,4,10,19
   50:19
inquiries 35:21
instructing
   30:12
instructions
   31:3
intended 9:9
   58:1
intentionally
   47:7
interest 39:1
interested 65:16
interpret 21:6
intrusive 9:5,14
invalid 31:8
   32:15 34:8

**invalidate** 31:4
  33:4,17 38:17
  55:24 56:17
**invalidating**
  54:10
**involved** 20:13
  39:20 41:1,13
**irrelevant** 9:11
  13:19 14:4,7
**Israel** 28:22 29:2
**issue** 13:3,4
  57:12
**issued** 56:8
**issues** 30:16
**items** 33:10

———————— **J** ————————
**Jeff** 2:25 5:17
**Jersey** 36:18
**job** 55:8 57:20
**join** 31:25 37:7
  39:4
**joined** 32:20
  47:3,8,16,18
  50:8 59:16
**joining** 31:17
  40:19 47:17
  50:6 53:15
**Joint** 56:9
**judge** 10:19 47:2
  47:9 55:12
**judgment** 10:10
  18:7 19:25
  25:21 31:4,7,8
  32:12,15 33:2
  33:5,12,17
  34:8,14 38:17
  38:19 39:5,14
  41:1,22 43:7
  47:24 50:3,5
  50:14 53:16,17
  54:8,10 55:22
  55:24 56:15,17
  59:3,16 60:22
**Judicial** 1:1 5:11
**June** 24:23
  25:20 64:22

**jurisdiction**
  47:12
**justified** 26:1

———————— **K** ————————
**K-A-I-R** 9:21
**keep** 16:15 17:4
  35:19 44:7,11
**keeping** 17:1
  44:3
**killed** 28:22
**killing** 20:18
  28:24
**KISSANE** 2:9
**Klayman** 2:3,3
  3:5 4:13 5:17
  5:22,22 6:20
  6:22 7:13,17
  8:12 16:8 17:3
  19:7,8,8,9 24:8
  24:12 25:13,22
  26:7,22 27:11
  27:16,21 28:6
  28:16 29:3,10
  29:20 30:1
  31:11,18 32:1
  32:4,16 33:20
  34:1,10 35:5,9
  37:8,25 38:6
  38:23 39:6,10
  39:22 40:2,10
  40:21 41:9,12
  42:10,24 43:15
  43:23 44:5,18
  44:19 46:25
  47:22 48:5,12
  48:24 49:9,15
  50:7,17,23
  51:10,18 52:2
  52:8,13,23
  53:5,12 54:16
  55:2,7,18
  56:18 57:4,13
  57:18,24 59:5
  59:11,23 60:17
  60:25 61:16,24
  62:8,10,11,21

  62:23
**knew** 16:24
**know** 15:16
  26:21 27:2
  36:16,17 40:6
  44:10 51:24,25
  53:16 62:5
**knowledge**
  24:19 27:3
  36:14
**known** 59:24
  60:9

———————— **L** ————————
**lack** 47:11 57:25
  58:1,4
**Lakes** 2:20
**Land** 27:8
**language** 19:1
**large** 5:3
**Larry** 2:3 4:13
  5:17,22
**latest** 17:23
**Lauderdale** 1:25
**Laura** 1:4 2:23
  5:7,22 10:16
  11:21 20:23
  21:11 35:15
  39:18
**law** 2:3,13 5:9
  6:5 10:19 19:5
  20:2,12 26:8
  26:14 31:13,20
  32:6,24 36:20
  38:24,25 42:18
  43:1 47:4
  55:19
**lawsuit** 9:23
  10:11 14:4
  20:11 25:8
  29:25 40:3,16
  40:20 60:3,8
  60:10
**lawyer** 18:11,15
  18:17,21,22
  24:21
**lawyers** 34:11

  34:13
**leave** 61:1
**left** 61:17
**legal** 2:19,24
  4:12 10:5,12
  13:11 20:11
  29:11 30:17
  35:10,18,21,24
  36:20 46:7
**legally** 11:25
  37:4
**leklayman@g...**
  2:5
**length** 12:7,13
**let's** 13:13 16:1
  18:2 19:12
  46:20
**LEXIS** 30:19
**liability** 56:7,25
  57:7,10
**liable** 16:11
  21:14
**license** 44:7
**licensed** 36:11
  36:18
**Likewise** 40:22
**limited** 7:1 56:7
  56:25 57:6,10
**line** 19:14 32:25
  33:9 60:9
**linked** 27:12
  28:3
**litany** 56:3
**litigate** 32:7
**litigated** 48:16
**little** 13:14 19:15
**LLC** 2:19 5:8
**local** 11:16
  30:11 35:14
  36:6 37:1
  58:12
**log** 45:4
**long** 20:15 22:1
**longer** 11:22
  18:17 46:3,7
**look** 38:15 47:20
**looked** 38:7

  34:13
**looking** 52:21
  53:11 54:23
**looks** 61:10
**Loomer** 1:4 2:23
  5:8,23 9:24
  10:16,24 11:7
  11:10,21 12:4
  14:3 15:19
  16:2,23 17:14
  17:16 20:22
  21:8,11,13,19
  22:23 23:1,13
  23:16 24:1,22
  24:24 25:9,24
  26:4 27:22
  31:3,21 32:13
  32:19 33:5,14
  34:15,23 35:11
  35:25 37:3,20
  38:11,20 39:19
  41:21 42:2,15
  43:5 45:24
  46:8,11 47:13
  49:5 51:8 54:9
  54:17 55:23
  56:16 58:15
  60:18
**Loomer's** 28:7
  29:19 35:15
**lost** 11:22 21:21
  46:2
**lot** 39:11,13
**lower** 6:17 54:3
  54:12
**lowering** 55:10
**LUCIE** 64:4
  65:3

———————— **M** ————————
**Magistrate** 56:7
**main** 33:3 38:16
**majority** 20:2
**making** 10:12
  17:15 22:5,7
  33:21 34:16,20
**malpractice**

10:11 11:5,17
20:5,11 29:22
42:19,23 46:6
46:11
**Mandelbaum**
2:7 5:9 6:3,6,7
47:3,6 48:15
49:3,17 51:13
51:21 52:17
**mark** 7:8 35:3
**marked** 7:15
8:10 16:6
24:10 35:7
44:16 46:22,23
61:22
**materials** 36:5
**math** 18:22
54:23
**matter** 5:7 10:4
11:3 20:23
21:11 22:9
30:4 32:21
36:23 58:14,15
58:19 59:4
**meaning** 19:20
20:2
**means** 9:6
**Media** 5:8,23
10:24 11:7,12
11:21 12:5
14:3 15:20
16:3,24 17:15
17:17 21:14
22:23 23:14,17
24:2,22,25
25:9 30:18
31:22 32:19
34:16 35:15
36:1 38:11
41:21 42:16
45:24 46:8
49:5 54:17
56:6,24
**Media's** 11:15
47:1
**mentioned**
51:16

**meritorious**
25:15,18 26:1
28:4 40:20
**merits** 26:10
58:8,18,23
59:8,14
**messages** 15:2
**methods** 9:14
**Miami** 2:10
**Military** 2:15
**minimum** 54:1
**misstate** 51:1
**misstates** 50:22
**mistake** 57:19
57:22
**monetary** 20:7
**money** 21:12
28:14,17 29:5
29:12 39:11,13
**monies** 28:9
**month-and-a-...**
11:11
**morning** 5:5 6:1
**motion** 10:11
15:21,24 26:6
26:25 28:2
30:12 32:23
36:10 37:12
38:7 56:9
58:13 59:2,21
61:2,9,18
**move** 7:5
**multiple** 31:6

——————
**N**
——————
N 2:15 3:1
**name** 6:21,24
19:6
**named** 27:6
28:10
**nature** 20:19
**nearly** 28:22
**need** 21:9 61:4,4
**needed** 26:24
27:2 58:21
59:17
**negotiate** 28:8

**negotiated** 9:20
10:22 11:4
12:7,13 22:11
**negotiating** 10:6
10:25
**negotiations**
23:24
**neither** 16:23
38:24 55:19
**never** 13:9 17:5
17:7,7,9 31:13
34:15 36:19
38:10 39:7
42:21 48:15
60:2
**New** 36:18
**non-meritorious**
25:9
**nonmonetary**
31:9 33:19
**nonparty** 10:6
20:10
**nontaxable**
30:15
**noon** 6:24
**Northeast** 1:24
**Notary** 5:2
64:21
**note** 30:8,8
**notes** 44:20,23
45:1 65:11
**notice** 4:6,9 7:10
7:20,23 16:19
**nullified** 51:4
**number** 4:4 9:19

——————
**O**
——————
**oath** 3:6 24:15
64:1
**object** 14:6
25:12,16,17
26:2,3,12,13
27:10,14,15,19
27:25 28:13,14
28:19,25 29:1
29:6,14,24
31:15,16,23,24

32:10,20 33:2
33:11,12,23,24
34:4,13,19,22
37:5,6,22,23
38:4,13,14
39:2,3,9,12,17
39:25 40:6,13
40:17,18 41:5
41:6,11,17,23
41:24 42:13,20
42:21 43:2,11
43:20,25 44:1
44:8,12 45:25
46:9,16,18
47:19,20 48:1
48:2,9,21,22
49:6,7,13 50:1
50:2,12,25
51:15,23,24
52:6,11,19,20
52:25 53:3,14
53:21 54:6,7
54:21,22 55:6
55:9,14,15,21
56:13,14,21
57:2,9,16,17
57:21,22 58:3
58:11,19,24,25
59:10,13 60:6
60:13,14,20,21
**objecting** 33:9
**objection** 8:3
9:4 13:16 32:9
45:3,16 50:25
51:5,6 53:7,21
**objections** 4:7
8:15 32:25
**objective** 52:4
**objects** 9:13
30:15
**obligation** 27:23
29:11,22
**obtain** 18:9
38:20 48:17
54:14
**obtaining** 9:14
55:17

**obviously** 45:8
**occur** 7:2
**occurred** 50:9
**October** 28:22
47:9
**offer** 10:10
17:22 18:7
19:25 24:3
31:4,8 32:15
33:4,17 34:7
38:17 39:5,14
40:25 41:22
43:7 50:3,14
50:14 54:10
55:24 56:17
59:2 60:15,22
**offered** 39:14,17
**offering** 42:17
**Oh** 18:19 19:7
**okay** 8:23 16:1
18:15,22 22:5
61:3,22
**once** 7:6 21:24
28:19 45:20
46:5 48:15
54:22 55:21
**open** 7:5 60:10
61:1,17
**opinion** 57:19
58:20
**opposite** 25:14
**opposition** 28:1
**order** 4:10 14:18
15:22,24 31:1
32:11 33:15
47:10 56:8
62:1,3,11
**ordered** 23:12
37:20 54:2
55:12 62:13
**ordering** 62:9,10
**organization**
26:19 28:4,10
31:6 33:7
38:22 42:8
60:24
**outside** 29:24

43:3
owe 11:24 12:2
  21:16 24:1
  45:23 46:14,18
owed 20:7 23:13
  29:19 34:5

**P**

P.A 2:3,9
P.C 2:7 5:9
P.L 2:14
page 3:2 4:4
  16:5 24:13
  37:11 38:18
Pages 65:10
paid 28:18,20
  35:25
Palm 1:1 5:11
Palmetto 2:4
paragraph 16:5
  16:13 17:18
  22:21 30:2,7
  32:23 35:17,17
  36:3 40:22
  42:12 43:9
  46:21 47:1,15
  48:13,25 49:16
  49:23 53:6,13
  53:20,22 56:1
  56:20 58:5
  59:24 60:19
Park 2:4
part 22:22 24:5
  44:10 56:8,9
particular 39:15
particularity
  30:14
parties 5:20 9:11
  9:20,21 65:14
parties' 65:15
party 6:8 9:23
  10:4 47:4
  49:14
pay 23:18 26:15
  26:17 28:9
  29:5,11,22,25
  31:5 37:20

38:21 49:21
  50:4,15 51:4
  53:25
paying 26:19
  29:8,18
payments 16:13
people 28:23,24
percent 20:2
  37:17 54:14,19
  54:24,25 55:10
  55:13,17
Perfect 19:16
period 17:2
  18:23 48:14
personal 24:18
pertinent 9:7
phone 2:10,16
  34:22
phrase 20:25
picture 34:6
place 60:3
plain 18:25
plaintiff 2:23
  5:16 9:13,16
  16:13
Plaintiff's 8:16
  9:8 16:6 60:9
plaintiffs 1:5,14
  2:2 5:23 8:24
  10:13,20 16:10
  16:15,19 18:7
  21:8 22:12
  48:18 49:20,20
  53:24 58:7
  59:24 60:2,10
plaintiffs' 4:3,8
  7:15 8:10 18:5
  19:24 20:3
  21:5 22:16
  23:8 24:10
  35:7 44:16
  46:23
plan 37:15 59:20
plans 61:14
pleading 56:19
  56:22,23
please 6:10,12

6:21 19:14
  32:2
pled 47:6
plenty 36:23
plus 39:1 54:18
  54:20
point 12:12 13:2
  17:15 20:21
  21:2 22:1 25:1
  25:23 26:10
  50:9 61:4,17
points 21:3
Pollack 6:4
POLLOCK
  2:14
position 10:18
possibly 23:4
  28:18
power 10:9 18:3
  18:4,4 19:2,3
  19:19,20,21
  20:4 21:1,3,4
  22:22,25 23:1
  23:20,21
powers 19:19
practice 13:6
  36:6,15,20
  37:2 40:24
practices 36:16
practicing 36:17
prank 39:19,21
  39:23 40:1,3,7
prayer 32:7
predates 59:16
  60:6
prefer 13:24
present 2:22
  5:20 9:12
prevented 16:25
  17:17 33:21
previous 17:21
previously 8:5
  11:10 45:3,7
  50:18
primary 33:25
  34:2 51:2
prior 25:19

31:16 40:7,18
  46:1 47:17
  50:6 53:15
privilege 11:23
  14:19 21:22,23
  45:4,4,9,11,14
  45:17 46:3
privileged 14:20
  14:24
Pro 2:19 5:25
procedures 7:4
proceed 7:7
  37:12
proceedings
  16:18
process 40:8
produce 7:3,24
  42:5 60:23
produced 8:1
  14:17 15:1
producing 8:25
  45:6
product 45:15
  45:19,20
production 4:8
  8:5,13,16
professional
  11:20 12:17,20
  44:6 58:2
progress 35:20
prohibited 13:7
propose 23:18
proposed 4:10
  10:23 12:3,9
  12:21 14:15
  15:5 21:13
  23:11 24:5
  42:16 43:17
  44:21
protective 15:22
  15:24
provide 16:20
  30:17 35:18
  53:7
provided 47:7
  58:7
provision 18:25

19:1 21:6
prudence 22:9
prudent 22:10
Public 5:3 64:21
pun 58:1
purport 9:19
purpose 9:10
  20:16,16
pursuant 7:20
  53:8
pursue 31:14
  32:18 51:12,21
pursued 49:19
  52:17
pursuing 49:4
  52:4,7,12
put 7:9,13 8:8
  12:9 16:4 24:9
  31:7 36:9
  38:18 42:11
  43:16 44:15
  51:17 52:20
  56:3,15
putting 10:18

**Q**

Quantum 2:20
question 9:6
  10:1 11:6
  52:14 59:6,7
quite 18:22
  29:21
quoting 30:20

**R**

R 2:14 30:20
  53:8,24
raise 6:11 34:17
raping 28:23
Raton 2:4,15
reach 20:4
reached 13:25
  15:19 17:7
  29:15,16
read 9:2 16:9
  30:7 62:24
reading 63:1,2

**ready** 62:6
**real** 59:25
**really** 26:16 38:4
**reason** 29:25
**reasonable**
  16:19,21 30:14
  35:19 37:20,24
  38:2
**reasonably**
  35:18
**reasoning** 54:13
**rebut** 47:8
**recall** 48:3,10
**receive** 7:6
  19:21,22 23:2
**recipient** 30:12
**record** 5:6 9:3
  62:7,8,15
  65:11
**Recording** 62:18
**recovery** 16:11
**redlined** 19:12
**reduce** 55:20
**reduced** 54:24
**reduction** 37:17
  54:15 55:17
**refer** 8:21 14:11
**reference** 38:16
**referred** 56:19
**referring** 15:23
  56:5
**refers** 23:1
**refusing** 7:3
**regard** 14:15
  15:5 21:19
  49:3
**regarding** 23:3
  28:3
**regards** 17:2,23
  22:3 28:1
  29:14 32:13
  36:22 59:21
**regular** 62:22
**Reinhart** 56:7
**reject** 17:13
**rejected** 17:11
  17:14 42:3

43:6 50:14
  59:3 60:15,22
**rejection** 50:3
**relate** 8:21 11:20
  14:12
**relation** 14:8
**relationship**
  9:17
**relative** 65:13,14
**relevance** 8:3
  9:5 13:16 45:2
**relevant** 14:21
  14:22 15:16
  45:17,21
**relief** 31:9,14,22
  32:7,18 33:19
  34:9 48:18
  49:1,4,10,19
  50:19 51:3,12
  51:21 52:4,7
  52:12,18,22
**remand** 47:10
**reminder** 53:6
**remotely** 1:19
  5:2 64:8 65:7
**Remy** 14:13
**rendering** 9:11
**repeat** 32:3
  41:14
**repeated** 31:6
**reply** 60:11
**report** 65:7
**reporter** 3:7
  5:18 6:10,11
  6:17 7:8 35:2
  62:21,24 65:1
**Reporting** 1:23
  5:19
**represent** 5:21
  14:14 35:19
**representation**
  35:24 48:14
**represented**
  11:10 12:14
**representing** 6:7
**request** 4:8 5:16
  8:5,13,16,18

8:19 14:11
  33:18 45:5
  61:20
**requested** 8:24
  25:3 30:3 33:6
  33:10 51:9
  55:23 56:16
  65:9
**requesting** 34:9
**require** 12:17
**required** 7:6
  11:9 24:25
  35:18 44:8
  58:14
**rescue** 41:2
**research** 27:17
  33:16
**researched**
  26:23
**Resolution**
  16:10
**respond** 26:6,25
  32:2 35:20
  37:9 50:24
**responded** 9:2
  13:18
**responding**
  59:21
**response** 8:14,17
  9:4 58:13
**Responses** 4:7
  8:15
**responsibilities**
  58:16
**responsibility**
  11:19 12:17,20
  21:25 36:25
**resulted** 50:15
**retained** 30:10
  58:9,11
**retainer** 4:12
  35:10,22
**review** 12:14
  17:10 24:25
  37:15 38:8
  48:2,7,20
  49:24 51:19

53:18 60:5
  65:8
**reviewed** 15:12
  15:15 19:10,12
  25:4,5 30:3,4
  31:12 40:11
  41:10,15,17
  47:24 50:12,13
  52:16 56:19,21
  58:7,19,25
**reviewing** 21:9
  25:7 31:19
  32:5 33:16
**rid** 42:6
**right** 6:11 10:3
  11:14 12:24
  17:11 18:21
  20:9 45:12
  51:4 61:16
**rights** 20:6
**Road** 2:4
**role** 36:4 37:13
  37:15
**Ron** 6:2 11:16
  20:12 30:3
  36:5 37:1,14
  41:25
**Ronald** 1:7 2:6
  5:8 35:16
**Roughly** 15:7
**rubber** 37:13
**Ruiz** 47:2,9
**rule** 12:1,22
  22:2,3 44:2
**rules** 7:4 11:19
  12:17,19,25
  13:5 20:15
  21:21 22:2,14
  30:11,24 32:22
  36:6 37:2 46:9

——————
S
——————
**S** 2:8,9 4:1
**S.D** 30:20 53:8
  53:24
**sanctions** 61:2
  61:18

**Sando** 2:8 6:1,1
  25:12,17 26:2
  26:12 27:10,14
  27:18,24 28:13
  28:25 29:7,13
  31:15,23 32:9
  33:11,23 34:3
  35:4 37:5,22
  38:3,13 39:2,9
  39:16,24 40:5
  40:17 41:5,11
  41:23 42:20
  43:10,19,25
  47:19 48:1,8
  48:21 49:6,12
  50:1,11,22
  51:1,5,14,23
  52:5,10,19
  53:2,10 54:6
  54:21 55:5,14
  56:13 57:1,8
  57:16,21 58:24
  59:10 60:13,20
  61:20 62:3
**save** 42:25
**saw** 26:18
**saying** 14:1,5
  20:25 21:2
  37:19,21 40:4
  41:19,22 46:5
  46:14,17
**scared** 42:4
  60:23
**schedule** 61:10
**SCOTT** 2:9
**screen** 7:9,14
  8:9 16:4 19:15
  24:9 35:12
  44:15
**scrolling** 19:13
**Se** 2:19 5:25
**Sebastian** 2:8
  6:2
**sebastian.agui...**
  2:12
**second** 35:17
  39:8

secretly 14:1
  17:16
section 16:25
  17:17,21,25
  18:2 19:17
  21:1,3 38:14
see 19:12 47:14
  47:21 52:3
  61:10
seen 7:18 15:18
semicolon 23:9
sending 27:13
sense 13:22,23
sent 37:14 44:14
sentence 44:24
Sep 30:20
separate 20:11
  22:25 23:7,9
served 7:11 8:5
  48:23 49:8,18
  52:1
services 35:18
serving 50:6
set 19:14 22:21
  32:22 33:18
  35:21 37:16
  39:20 60:19
sets 47:15
settle 10:8 13:21
  13:24 17:3
  18:6,7 19:3,24
  20:3,11,23
  21:5,11 22:16
  23:8
settlement 8:22
  9:6,10,17,20
  10:4,6,11,13
  10:16,20,22,23
  10:25 11:2,3,5
  12:3,9,21
  13:22,25 14:2
  14:12,15 15:5
  15:18 16:1,17
  16:20 17:7,8
  17:18,21,24
  18:3,10 19:2
  19:20,22 21:13

22:11,22 23:2
  23:3,6,21 24:4
  24:5 28:8
  29:15 42:16
  43:17 44:22,25
  45:10 46:12
  50:14 60:16
settlements 20:5
settling 60:10
seven 61:22
sexual 20:17
Shendell 2:14
  6:4
show 12:25 13:2
  13:8,13 35:2
  52:3
showed 10:17
  15:21 49:7
showing 34:4
shown 22:16
  23:8 35:12
  39:18
shows 48:22
  51:25 57:25,25
  58:1
sign 12:5 18:4
  19:20
sign-off 19:19
  21:3 23:20,23
signature 24:13
signed 10:16
  11:4 20:15 24:6
  24:15 35:11
  64:12
significance
  21:1
significant 55:1
significantly
  54:2,12,19
simple 34:7
  57:22 58:3
simply 41:25
skin 42:25
small 23:18
smaller 19:15
smoking 42:9
solely 9:10 32:21

solemnly 6:12
somewhat 29:2
sorry 19:13
sort 12:25 19:20
  23:21 28:2,3
  34:5 42:7,8
  46:7,15 54:25
  57:11
speak 15:14
speaking 15:7
specific 32:24
specifically 9:15
  48:4,11
specificity 15:6
  15:15
specified 17:2
  32:24
speculate 38:4
spoke 17:24
spoken 50:13
ST 64:4 65:3
stage 30:21 41:1
stamp 37:13
stance 26:17
  34:6
stand 41:3 45:2
  45:13
standard 40:23
  41:8,20 42:1
  42:14 43:4,13
  43:22
start 6:22
state 5:3,20 6:21
  8:19 15:6
  28:15,20 29:9
  36:11 45:2,11
  45:12 64:3,21
  65:2
stated 30:24
  31:9 44:19,24
  45:8
statement 7:1
  27:22 30:23
  36:7,8 41:4,7
  43:12 48:19
  49:23 53:9,19
  54:4 56:12

60:4,12
states 13:7
stating 31:1
  32:11 41:24,25
statute 20:19
Stenographer
  1:22 64:21
  65:5,21
stenographic
  65:11
stenographica...
  65:7
steps 35:19
stipulated 9:17
Stipulation 4:9
stop 19:13
stopped 62:18
strictly 13:6
strike 22:19 33:8
strong 27:22
stronger 51:11
subject 21:13
  22:2 61:1,18
subjected 49:21
  50:4 53:25
submit 24:17
Subpart 22:22
substantial
  10:10 20:22
substantive
  16:21 18:5,9
  19:24 20:1
  21:4,10 22:15
  22:18,20 23:1
  23:7,21 59:25
successful 55:9
  55:11,17
successfully
  54:14
sued 11:23
  21:22 29:21
  46:2
sues 21:24
suggest 42:9
suit 11:17 49:18
  58:6,8,18,23
  59:8,14

Suite 1:24 2:9
  2:15,20
supporting
  30:17
sure 34:24,25
  44:1
surprise 56:2
swear 6:10,12
  6:16
sweetener 43:16
  43:20
sworn 42:17
  64:10

                    T
T 4:1
take 13:23 23:24
  31:20 35:19
  44:6 45:5
  62:12,17,19
taken 1:14,16,22
  5:2,15 25:25
  25:25 26:10
  37:4 49:1,3
talking 21:7
tecum 4:6 7:21
  7:23
tell 23:6
ten 15:8,9,10
terms 8:24 31:14
terrorism 26:20
  28:4,11
terrorist 26:18
  28:3 31:6 33:7
  38:22 42:8
  60:24
testified 40:12
  43:8 50:18
  51:6 57:14
testifying 17:12
testimony 3:4
  6:13 42:17,18
  45:13,23 50:22
  51:1
Texas 27:8
  28:11
text 15:1

**texts** 44:20,22
  45:1
**Thank** 6:9,17
  19:16 61:19
**think** 23:16
  27:23
**Third** 4:8 8:16
**Thirty-three**
  53:14
**thorough** 48:6
**thoroughly** 25:5
  30:4
**thought** 38:22
  40:8 54:8
**thoughts** 40:14
**thousands** 19:11
**three** 19:18,23
  20:6 21:3
  23:10 62:23
**throw** 43:1
**throwing** 43:2
**time** 1:17 5:14
  18:23 25:2
  30:5,14 32:3
  40:7 48:9 50:9
  53:4 59:19
  62:14
**timeline** 34:25
**times** 31:7
**timing** 61:11
**title** 8:14
**today** 7:10 9:24
  14:5 45:14,23
  61:22
**Today's** 5:14
**told** 26:3,14 43:6
  44:21 59:3
  60:15,21
**tomorrow** 45:6
**total** 56:11
**totally** 14:4
**Trail** 2:15
**transcript** 62:1
  62:3,10,20
  63:2 65:9,10
**trial** 28:11
**tried** 15:25 17:3

**28:8**
**true** 22:18,20
  24:18 41:6
  43:8,11 54:4
  65:11
**truth** 6:14,14,15
**try** 42:25 43:17
**trying** 13:21
  42:6
**turn** 16:1,4
  46:20
**turned** 47:5
**turning** 24:13
  30:2
**twelve** 15:10
**twice** 13:17
**Twitter** 48:22
  49:8,14,18
  50:5,6 51:25
  52:22 60:1
**two** 6:23 7:2
  34:18 57:7
  61:7,12,15
**typo** 57:2,3,5,15
  57:17,20

**U**

**U.S** 30:19
**ultimate** 11:2
**ultimately** 54:18
**UMC** 45:5 61:8
**underlying**
  11:17
**undersigned**
  16:16 64:7
**understand** 25:1
**understanding**
  36:4
**understood**
  32:22
**undertook** 22:11
**unethical** 43:24
**unindicted** 27:7
  28:10
**unreasonable**
  38:12
**up-to-date** 17:1

**17:4**
**updates** 16:21
**uphill** 26:16
**use** 20:25

**V**

**v** 5:8 9:24 30:18
**vacation** 61:12
  61:14
**valid** 8:3 22:13
  22:15 27:1,19
  28:15,20 29:8
  29:17
**verified** 4:14
  14:9,23 15:17
  45:18,22 46:21
**versus** 57:10
**veto** 10:9 18:3,4
  19:2,21,21
  20:25 21:4
  22:22,25 23:1
  23:5,20,23
**video** 5:6 62:15
**videoconference**
  1:11,14,19 2:1
  5:1 64:9 65:7
**videographer**
  2:25 5:5,17 6:9
  62:6,14
**Videotaped** 1:11
  5:1
**view** 21:18
  40:23 41:1
  42:11 43:3,21
**viewed** 31:5
**vs** 1:6

**W**

**W** 2:19 4:11
**waive** 62:25
  63:1
**waived** 30:22
  31:2 63:3
**want** 6:22 12:4
  21:20 26:17
  31:5 38:21
  44:20

**wanted** 31:3
  32:14,14 33:4
  33:14,14 37:11
  37:12 38:20
  45:1 54:9
**wasn't** 23:4
  55:15
**way** 8:22 14:12
**we'll** 8:4 12:3
  35:5 61:10,17
  62:12
**we're** 62:8,11
**weaken** 34:2,4
**weakened** 33:24
  54:11
**website** 61:10
**Wednesday** 1:16
**weeks** 15:25
  61:7,13,15
**went** 14:13 15:2
  15:4 28:7
**West** 2:4
**whatsoever**
  48:17 57:12
**willfully** 47:6
**William** 2:18 4:7
  5:10,24 8:15
**willing** 43:1
**witness** 1:22
  6:10 25:18
  29:8 64:8
**women** 28:24
**word** 20:1
**work** 19:4 45:15
  45:19,20
**writing** 34:21
**written** 10:15
  18:8 19:11
  20:20 43:9
**wrong** 54:23

**X**

**X** 3:1 4:1

**Y**

**Y-o-u-n-g** 6:25
**yeah** 20:20

**62:11**
**years** 18:16
  48:10
**yesterday** 44:14
**Young** 1:12 2:18
  2:19 3:4 4:11
  4:13 5:2,7,10
  5:24,24 6:16
  6:25 7:18
  52:14 56:5
  58:5 61:19,25
  62:5,12,24
  63:1 64:8 65:8
**Young's** 4:7
  8:15

**Z**

**zero** 47:7
**Zoom** 5:16

**0**

**1**

**1** 4:6 7:15 49:18
  65:10
**10(11th** 30:19
**10:01** 1:17 5:15
**100** 2:20
**101** 1:24
**11** 30:7 32:23
**11:10** 1:17 62:14
  63:4
**12** 15:13
**124,000** 20:8
  54:25
**124,423.37**
  56:11
**14** 30:13,24 36:3
**140,000** 54:18
**1400** 2:9
**144,000** 54:20
**144,931.87**
  38:25
**150** 2:15 54:23
**1500** 1:24
**153,000** 54:24
**15th** 5:11 7:12

**16** 4:9

---
**2**
---

**2** 4:7 8:9,10
  35:17 38:14
  49:19
**2,000** 28:22
**20** 37:17 44:14
  54:14,19,24,25
  55:10,13,17
**2013** 18:20
**2016** 18:14
**2021** 24:23 56:5
**2022** 30:19,20
**2024** 1:16 5:14
  7:11 44:14
  64:9,12 65:17
**2027** 64:22
**21** 1:16
**21st** 5:14 7:11
  64:9
**22** 40:22 42:12
  43:9
**22nd** 47:9
**24** 4:11
**25** 46:21 47:1,15
**2500** 2:20
**26th** 64:12 65:17
**27** 48:13,25
**2700** 2:15
**27435** 30:19
**29** 49:16,23
**29th** 24:23 25:20

---
**3**
---

**3** 4:9 16:5,5,6
  17:18 24:13
**3(a)** 17:6,21,25
**3(b)** 19:17 22:17
**30** 30:20
**305-350-5365**
  2:10
**305-373-2294**
  2:11
**33** 53:13,20
**33256** 2:10
**33301** 1:25

**33426** 2:20
**33431** 2:15
**33433** 2:4
**34** 53:6,22
**35** 4:12
**37** 58:5
**39** 56:1,20
**3rd** 1:24

---
**4**
---

**4** 4:11 24:10
  35:3 36:4 56:5
**43** 59:24 60:19
**44** 4:13
**46** 4:14

---
**5**
---

**5** 4:12 35:7,10
  64:22
**5,000** 29:18 36:2
**50** 13:7
**50-2023-CA-0...**
  1:2 5:13
**561-241-2323**
  2:16
**561-241-2330**
  2:16
**561-558-5336**
  2:5
**561-568-1000**
  2:21

---
**6**
---

**6** 3:5 4:13 44:13
  44:16
**63** 65:10
**64** 3:6
**65** 3:7

---
**7**
---

**7** 4:6,7,14 46:22
  46:23
**7.3(a)** 30:20
  53:8,24
**7050** 2:4
**73,500** 20:8
  21:17 23:15

**7th** 28:22

---
**8**
---

**8** 30:2
**8/20/2024** 4:13

---
**9**
---

**9150** 2:9