## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

ILLOOMINATE MEDIA, INC et al          }
                                      }
                    Plaintiffs        }
                                      }
                                      }
         v.                           }          Case Number: 9:19-CV-81179
                                      }
                                      }   ┌─────────────────────────┐
                                      }   │ FILED BY___MC___D.C.    │
CAIR FLORIDA, INC., et al             }   │                         │
                                      }   │      AUG 2 7 2024        │
                    Defendants        }   │     ANGELA E. NOBLE      │
                                      }   │   CLERK U.S. DIST. CT.   │
                                          │   S. D. OF FLA. - MIAMI  │
                                          └─────────────────────────┘

**PLAINTIFF LAURA LOOMER'S SUPPLEMENT TO PLAINTIFF LAURA LOOMER'S MOTION TO FILE SURREPLY TO REPLY TO DEFENDANT'S MOTION TO COMPEL AND FOR CONTEMPT**

Plaintiff Laura Loomer hereby supplements her motion to file surreply to reply to Defendant's Motion to Compel and for Contempt, filed just today.

Last week, my counsel in the state court malpractice case against Ronald Coleman and Craig Young, and the law firms that were negligent and grossly negligent, causing me to be hit with a huge award of attorneys fees, where this Court and later the U.S. Court of Appeals for the Eleventh Circuit effectively ruled upon their professional misconduct, these defendants were deposed by my counsel in *Loomer v. Coleman et. al*, 50:2023-CA-10810 (15th Judicial Circuit, Palm Beach County, Florida).

Copies of the transcripts of the depositions of Defendants Coleman (Exhibit 1) and Young (Exhibit 2) are attached, and I respectfully ask this Court to review them before ruling on the frivolous motion for order to show cause which counsel for the CAIR defendants filed.

The testimony of defendant Coleman at pages 64 to 67 is instructive as even he effectively admits that the conduct of defendant Craig Young is unethical, particularly since it was not only done in secret, but not something he would do as a matter of professional ethics and the law, since a client cannot agree to not file an ethics complaint with a state bar. And, the deposition of defendant Young also resulted in arrogant and shameless testimony that effectively admits to the unethical and illegal nature of his professional misconduct, as well as the obstructionist withholding of documents which bear on his violative behavior.

In short, it is incumbent for the Court to review these depositions before it rules on the frivolous, harassing and vexatious motion of the CAIR defendants for which they should be sanctioned as the Court may deem appropriate.

Dated: August 26, 2023

Respectfully Submitted,

Laura Loomer
2046 Treasure Coast Plaza
Suite A #138
Vero Beach, FL 32960

*Pro Se*

## CERTIFICATE OF SERVICE

I, Laura Loomer, hereby certify that on this day, August 26, 2024, a copy of the foregoing was served upon all parties and/or counsel of record through Federal Express.

Laura Loomer

# EXHIBIT 1

IN THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CIVIL DIVISION
Case No: 50-2023-CA-010810-XXXX-MB

LAURA LOOMER, et al.,

                Plaintiffs,

v.

RONALD COLEMAN, et al.,

                Defendants.

_____/


VIDEOTAPED VIDEOCONFERENCE DEPOSITION
OF
RONALD COLEMAN


Taken on behalf of the Plaintiff via videotaped
videoconference

DATE TAKEN:  Thursday, August 22, 2024
TIME: 10:00 a.m. - 12:52 p.m.


       Held remotely via videotaped videoconference



Examination of the witness taken before:
Jamie D. Mackrell, Court Reporter
Daughters Reporting, Inc.
101 Northeast 3rd Avenue
Suite 1500
Fort Lauderdale, Florida 33301

```
 1    APPEARANCES VIA VIDEOTAPED VIDEOCONFERENCE:

 2    ON BEHALF OF THE PLAINTIFF:

 3    KLAYMAN LAW GROUP, P.A.
      LARRY KLAYMAN, ESQUIRE
 4    7050 West Palmetto Park Road
      #15-287
 5    Boca Raton, Florida 33433
      561-558-5336
 6    leklayman@gmail.com

 7

 8    ON BEHALF OF DEFENDANTS RONALD COLEMAN
      AND MANDELBAUM BARRETT P.C.:
 9
      COLE, SCOTT & KISSANE, P.A.
10    BLAKE S. SANDO, ESQUIRE
      SEBASTIAN G. AGUIRRE, ESQUIRE
11    9150 South Dadeland Boulevard, Suite 1400
      P.O. Box 569015
12    Miami, Florida 33256
      305-350-5365
13    blake.sando@csklegal.com
      sebastian.aguirre@csklegal.com
14
15    ON BEHALF OF DEFENDANT DHILLON LAW GROUP, INC;

16    SHENDELL & POLLOCK, P.L.
      BRETT R. BLOCH, ESQUIRE
17    2700 North Military Trail
      Suite 150
18    Boca Raton, Florida 33431-1809
      561 241-2323
19    brett@shendellpollock.com

20    ON BEHALF OF DEFENDANT CRAIG WILLIAM YOUNG:

21    CWY Legal & Consulting, LLC
      CRAIG WILLIAM YOUNG, ESQUIRE
22    2500 Quantum Lakes Drive
      Suite 100
23    Boynton Beach, Florida 33426-8308
      561-568-1000
24    craig@cwylegal.com

25
```

```
 1    CONTINUED APPEARANCES:

 2

 3    ALSO PRESENT:

 4    Arthur Grossman, Esquire

 5    Matthew Sarelson, Esquire

 6    Joshua Lida, Esquire

 7    Laura Loomer

 8    Asher Anderson

 9    Jeff Abrams, videographer

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                    INDEX

2

3     Testimony of RONALD COLEMAN

4                                                              Page

5     Direct Examination by Mr. Klayman                        8

6     Cross-Examination by Mr. Bloch                           108

7

8

9     Certificate of Oath                                      110
      Certificate of Reporter                                  111
10    Errata Sheet                                             112
      Read and Sign letter                                     113
11

12

13                        CERTIFIED QUESTIONS

14                        PAGE              LINE

15                         40                3

16                         85                23

17                         90                17

18                         93                3

19                         99                4

20                        104                14

21                   - - - -

22

23

24

25

```
 1                        EXHIBITS

 2   Plaintiff's

 3   EXHIBIT    DESCRIPTION                              PAGE

 4   1          Notice of Deposition                      9

 5   2          Amended Verified Complaint               10

 6   3          Email correspondence                     13

 7   4          "The Daily Beast" article                13

 8   5          Loomer-Coleman Representation Agreement  20

 9   6          CAIR Joint Offer of Judgment             24

10   7          "Wall Street Journal" article            41

11   8          Responses to First Request for Production 75

12   9          Responses to Second Request for Production 91

13   10         Motion for Summary Judgment              98

14

15

16

17

18

19

20

21

22

23

24

25
```

1          Videotaped videoconference deposition of RONALD

2    COLEMAN taken remotely before Jamie D. Mackrell, Court

3    Reporter and Notary Public in and for the State of Florida

4    at Large, in the above cause.

5          THE VIDEOGRAPHER:  We are now on the record.

6          This begins Video 1 of the deposition of Ronald

7          Coleman in the matter of the Laura Loomer and

8          Iloominate Media LLC, Plaintiffs versus Ronald

9          Coleman, Dhillon Law Group Inc., Mandelbaum Barret

10         PC, and Craig William Young, Defendants, in the

11         Fifteenth Judicial Circuit in and for Palm Beach

12         County.  Case Number 50-2023-CA-010810-XXXX-MB.

13         Today's date is August 22, 2024.  The time is

14         10:00 a.m.  This deposition is being taken via Zoom

15         at the request of counsel for the claimant, Larry

16         Klayman, Esquire.  The videographer is Jeff Abrams,

17         and the court reporter is Jamie Mackrell on behalf of

18         Daughters Reporting.

19         Will counsel and all parties present state their

20         appearances and whom they represent?

21         MR. KLAYMAN:  Larry Klayman on behalf of Laura

22         Loomer, who is present for the deposition, and

23         Iloominate Media, Plaintiffs.

24         MR. SANDO:  Good morning.  Blake Sando and

25         Sebastian Aguirre on behalf of Mr. Coleman, our

```
 1      witness today, as well as the Mandelbaum firm, and
 2      with us is Arthur Grossman on behalf of the law firm.
 3           MR. YOUNG:  Good morning.  Craig Young,
 4      Defendant pro se.
 5           MR. GROSSMAN:  Good morning.  Arthur Grossman
 6      from Mandelbaum Barrett.
 7           THE VIDEOGRAPHER:  Will the court reporter
 8      please swear in the witness?
 9           MR. BLOCH:  I need to say my appearance.  Good
10      morning.  Brett Bloch on behalf of the Dhillon Law
11      Group.
12           THE VIDEOGRAPHER:  I apologize, Mr. Bloch.
13           MR. BLOCH:  Not a problem.
14           MR. KLAYMAN:  There is also a video picture of a
15      Joshua Lida.  Who are you with?
16           MR. BLOCH:  He is my associate.
17           MR. KLAYMAN:  You are Mr. Grossman, okay, for
18      the record.  We've got a transcript here as well.
19           THE COURT REPORTER:  Mr. Coleman, can you show
20      me your identification so I can swear you in?
21           THE WITNESS:  Can you read it?
22           THE COURT REPORTER:  A little bit closer.  I'm
23      sorry.  Thank you.  Just raise your right hand when
24      you're ready.
25           Do you swear or affirm the testimony you're
```

8

```
1          about to give will be the truth, the whole truth, and

2          nothing but the truth?

3               THE WITNESS:  I so affirm.

4               THE COURT REPORTER:  Thank you.

5     Thereupon --

6                    RONALD COLEMAN,

7     having been first duly sworn or affirmed, was examined and

8     testified as follows:

9                    DIRECT EXAMINATION

10    BY MR. KLAYMAN:

11         Q.   Please state your name, please.

12         A.   Ronald Coleman.

13         Q.   And when were you born?

14         A.   March 11, 1963.

15         Q.   Where were you born?

16         A.   Queens, New York.

17         Q.   Where are you currently licensed to practice law?

18         A.   New Jersey and New York.

19         Q.   Have you ever been subject to any Bar complaints

20    in either of those jurisdictions?

21         A.   Yes.

22         Q.   When did that happen?

23         A.   There was a complaint filed against me in a

24    matter about ten years ago.

25         Q.   What was the nature of that matter?
```

9

```
 1        A.    It was a billing dispute.

 2        Q.    What Bar handled that disciplinary matter?

 3        A.    It was dismissed by the complainant -- New York.

 4   That was in New York.  I'm sorry.  That was in New Jersey.

 5        Q.    Have any other ethics complaints been filed

 6   against you in your career?

 7        A.    No.

 8        Q.    I will show you what I will ask the court

 9   reporter to mark as the notice of taking deposition that

10   required your presence here today.  Put that up as Exhibit

11   1.

12        (Exhibit No. 1 was marked for identification.)

13   BY MR. KLAYMAN:

14        Q.    Do you see that?

15        A.    Yes.

16        Q.    You are here pursuant to this notice of

17   deposition, correct?

18        A.    Yes.

19        Q.    And you are a defendant in this lawsuit?

20        A.    Yes.

21        Q.    Before this deposition today, did you discuss the

22   deposition with anyone?  Any of your counsel or anyone

23   else?

24        A.    Yes.

25        Q.    Who did you discuss it with?
```

1        A.    With my counsel, and with Mrs. Coleman.

2        Q.    And your counsel is who?

3        A.    Mr. Sando, Mr. Bloch, their associates.  Also my

4    former partner and friend, Arthur, who is on the call,

5    Grossman.

6        Q.    How long were these discussions in total?

7        A.    About two hours.

8        Q.    And when did they occur?

9        A.    Yesterday.

10       Q.    There came a point in time, did there not, when

11   an opinion issued by the 11th Circuit, which is relevant to

12   this case.  I will ask -- it's attached to the verified

13   amended complaint, which I will make Exhibit 2.

14        (Exhibit No. 2 was marked for identification.)

15   BY MR. KLAYMAN:

16       Q.    I ask you to turn -- and Mr. Anderson, my

17   assistant, can put that up on the screen -- to the opinion

18   of the United States Court of Appeals for the 11th Circuit,

19   and it was dated September 30, 2022.  You're aware of that

20   opinion?

21       A.    Yes.

22       Q.    Shortly after that opinion issued -- and I will

23   ask Mr. Anderson to put this up on the screen.  It's the

24   Dhillon Law Firm's Bates number 000067.  I sent you an

25   email, did I not, asking, and I will quote "please advise

 1    by cob this Wednesday" -- that email is dated October 10,

 2    2022 -- "if carrier will pay the attorneys' fees and costs

 3    before Laura considers further action.  Thank you, Larry

 4    Klayman."

 5            Do you remember that email?

 6       A.   I do.

 7       Q.   And you responded on -- excuse me.  Let me back

 8    up.  I contacted you on October 3, 2022 asking you "thank

 9    you for notifying the carrier, and please advise the name

10    and contact information for the carrier.  Larry Klayman."

11            Do you remember that email?

12       A.   Yes.

13            MR. SANDO:  Object to form.

14    BY MR. KLAYMAN:

15       Q.   And you responded on October 3rd, "rejected

16    appeal arguments are not errors, whether your appeal, mine,

17    or otherwise.  In any event, we are not going to resolve

18    this by email.  Our carrier is being notified."

19            You wrote that email, right?

20            MR. SANDO:  Object to form.

21       A.   Yes.

22    BY MR. KLAYMAN:

23       Q.   Now, I had contacted you -- did you respond?  I

24    didn't catch it, Mr. Coleman.

25       A.   I did respond.

```
 1        Q.   And what is your response?

 2        A.   Yes.

 3        Q.   In fact, you never contacted the carrier at that

 4   time, did you?

 5             MR. SANDO:  Object to form.

 6        A.   I did.

 7   BY MR. KLAYMAN:

 8        Q.   You can respond.

 9        A.   I did -- you're incorrect.  I did contact the

10   carrier.

11        Q.   Do you have any written evidence of doing that?

12             MR. SANDO:  Object to form.

13        A.   I don't recall.

14   BY MR. KLAYMAN:

15        Q.   Did you speak with anyone at the carrier?

16             MR. SANDO:  Object to form.

17        A.   I don't recall.

18   BY MR. KLAYMAN:

19        Q.   What's the name of the carrier?

20             MR. SANDO:  Object to form.

21        A.   I do not know.

22   BY MR. KLAYMAN:

23        Q.   You don't know the name of the malpractice

24   carrier or liability carrier that insures you?

25             MR. SANDO:  Object to form and move to strike
```

Daughters Reporting, Inc.
Fort Lauderdale, Florida 954-755-6401

```
1          any reference to insurance.

2          A.    No.

3   BY MR. KLAYMAN:

4          Q.    So the bottom line here is that Ms. Loomer tried

5   to settle this matter before bringing suit, correct?

6          A.    I do not know.

7          Q.    You don't take my request to contact the carrier

8   as a way to try to settle the suit?

9                MR. SANDO:   Object to form.

10         A.    No.

11  BY MR. KLAYMAN:

12         Q.    Now, I turn your attention to --

13               MR. SANDO:   Mr. Klayman, is that email number 3?

14         Is that Exhibit 3?

15               MR. KLAYMAN:   Exhibit 3.   Thank you.

16     (Exhibit No. 3 was marked for identification.)

17  BY MR. KLAYMAN:

18         Q.    Turn your attention to an article in the

19  Huffington Post -- excuse me, The Daily Beast, and I will

20  ask Mr. Anderson to put it up on the screen.   The title is

21  "Laura Loomer Sics Current Lawyer on Former Lawyer."

22               Have you seen that article before?

23               MR. KLAYMAN:   I will make that Exhibit 4.

24     (Exhibit No. 4 was marked for identification.)

25         A.    Yes.
```

```
 1   BY MR. KLAYMAN:
 2        Q.   In fact, you generated this article, did you not?
 3             MR. SANDO:   Form.
 4        A.   No.
 5   BY MR. KLAYMAN:
 6        Q.   You contacted The Daily Beast, correct?
 7        A.   No.
 8        Q.   Now, this is an article that's written with
 9   regard to a dispute between Ms. Loomer and you over payment
10   of legal fees that were ordered by the court with regard to
11   the lawsuit that you brought on her behalf and Iloominate
12   Media's behalf, correct?
13        A.   I would say the article speaks for itself.
14        Q.   It deals with that issue, correct?
15        A.   Apparently it does.
16        Q.   So rather than trying to settle this case, you
17   decided you were going to make a comment to The Daily
18   Beast, as set forth in this article, correct?
19             MR. SANDO:   Object to form.
20        A.   No.
21   BY MR. KLAYMAN:
22        Q.   Well, let's go to the last page of this article,
23   which is dated -- all right.   We'll get to the date.
24             We'll go to the last page of this article.   It
25   quotes you as saying "Coleman said he blames Klayman, not
```

1    Loomer, for the filing."  Talking about the filing, that

2    was the filing that I made on Ms. Loomer's behalf in the

3    US District Court for the Southern District of Florida,

4    correct?

5              MR. SANDO:  Object to form.

6        A.   I don't recall.

7    BY MR. KLAYMAN:

8        Q.   And you do remember a filing that was made in the

9    Southern District of Florida, correct?

10       A.   Could you be more specific?

11       Q.   The filing talked about our seeking to have you

12   pay the attorneys' fees that were ordered to be paid to the

13   CAIR defendants, correct?

14       A.   I remember that there was such a filing.

15       Q.   And the comment that you made is, with regard to

16   me, and that date of that article is May 4, 2023, "I think

17   he's using (this case) as a vehicle to stay relevant and

18   give the appearance of someone who is still entrusted with

19   legal work as part of the conservative movement, Coleman

20   said."

21             Do you think that I'm totally irrelevant as a

22   lawyer and conservative public interest advocate,

23   particularly on behalf of Ms. Loomer?

24             MR. SANDO:  Object to form.

25       A.   Yes.

```
 1   BY MR. KLAYMAN:

 2       Q.   What's the basis of your claim that I'm

 3   irrelevant?

 4            MR. SANDO:  Form.

 5       A.   I'm not aware of anyone who considers you to be

 6   a go-to lawyer in the conservative movement.

 7   BY MR. KLAYMAN:

 8       Q.   You are aware that I'm the founder of Judicial

 9   Watch, are you not?

10            MR. SANDO:  Form.

11       A.   I am.

12   BY MR. KLAYMAN:

13       Q.   You are aware that I ran for the US Senate in

14   Florida in 2003, correct?

15            MR. SANDO:  Form.

16       A.   No.

17   BY MR. KLAYMAN:

18       Q.   You are aware that I currently run a nonprofit by

19   the name of Freedom Watch, correct?

20       A.   No.

21       Q.   You are aware that I enjoined the National

22   Security Agency from mass surveillance while at Freedom

23   Watch as the chairman and general counsel, correct?

24       A.   No.

25       Q.   So you felt the need to, rather than settle this
```

```
 1    case with Ms. Loomer, you would rather have disparaged her

 2    lawyer, Larry Klayman, with The Daily Beast?

 3              MR. SANDO:  Object to form.  Misstates the

 4         evidence -- the testimony I should say.

 5    BY MR. KLAYMAN:

 6         Q.   You can respond.

 7         A.   No.

 8         Q.   What was the necessity of even commenting about

 9    me in this article in The Daily Beast?

10              MR. SANDO:  Object to form.

11         A.   I don't understand the question.

12    BY MR. KLAYMAN:

13         Q.   Why did you even make a comment with regard to

14    Ms. Loomer's lawyer?

15         A.   I was asked.

16         Q.   Who asked you?

17         A.   I don't remember the name of the reporter.

18         Q.   Then you added "but I certainly hope it doesn't

19    reach the point where she authorizes him to file what would

20    most certainly be a meritless claim against me or anyone I

21    work with."  You made that statement, correct?

22         A.   I did.

23         Q.   You fashion yourself as an important lawyer in

24    the conservative movement, correct?

25         A.   I don't know.  I'd like to think that I get my
```

```
 1   -- I get the opportunity to do some meaningful work.

 2        Q.   Do you feel a necessity to put somebody else

 3   down?  Like me?

 4             MR. SANDO:  Object to form.

 5        A.   No.

 6   BY MR. KLAYMAN:

 7        Q.   Is that how you increase your reputation, by

 8   putting another lawyer down who's trying to represent a

 9   client and settle a case?

10             MR. SANDO:  Object to form.

11        A.   No.

12   BY MR. KLAYMAN:

13        Q.   The 11th Circuit opinion doesn't say that

14   Ms. Loomer would have a meritless case against you for

15   malpractice, does it?

16             MR. SANDO:  Object to form.

17        A.   I do not know.

18   BY MR. KLAYMAN:

19        Q.   You never read it?

20        A.   I have read it.

21        Q.   In fact, it enumerates a number of errors which

22   it claims you made -- the court claims you made.

23             MR. SANDO:  Object to form.  Is that a question

24        or a statement?

25   BY MR. KLAYMAN:
```

1      Q.   Yes?

2      A.   I don't understand what the question is.

3      Q.   You are aware that the opinion of the 11th

4  Circuit enumerates a number of legal errors that you made

5  in representing Ms. Loomer and Iloominate Media?

6           MR. SANDO:   Object to form.

7  BY MR. KLAYMAN:

8      Q.   Respond.

9      A.   I don't hear a question.

10  BY MR. KLAYMAN:

11      Q.   Yes.  You are aware that the 11th Circuit opinion

12  of September 30, 2022, which came down before I contacted

13  you to try settle this matter in carrier, enumerates a

14  number of legal errors that you made in the representation

15  of Ms. Loomer and Iloominate Media, correct?

16           MR. SANDO:   Object to form.

17      A.   No.

18  BY MR. KLAYMAN:

19      Q.   So it basically said that you did everything

20  right; is that what you are saying?

21           MR. SANDO:   Form.

22      A.   No.

23  BY MR. KLAYMAN:

24      Q.   How do you interpret this ruling by the 11th

25  Circuit?  What did they say about your representation?

```
 1                MR. SANDO:  Object to form.
 2        A.    I believe -- my recollection is that the ruling
 3    was on the merits of the appeal, not on a claim regarding
 4    my representation.
 5    BY MR. KLAYMAN:
 6        Q.    It dealt with errors that you made at the lower
 7    court level, did it not?
 8                MR. SANDO:  Object to form.
 9        A.    No.
10                MR. KLAYMAN:  I'm going to ask the court
11          reporter to mark as -- is it Exhibit 5?
12                MR. ANDERSON:  Yes.
13                MR. KLAYMAN:  -- the legal representation
14          agreement of the February 7, 2019 between Mandelbaum
15          Salsburg law firm, and you as its counsel, and
16          Ms. Loomer and Iloominate Media, and I will ask that
17          Mr. Anderson put that up on the screen.
18          (Exhibit No. 5 was marked for identification.)
19    BY MR. KLAYMAN:
20        Q.    Is that the legal representation agreement that
21    you entered into with Ms. Loomer?
22        A.    It appears to be.
23        Q.    In paragraph 1 it says "you understand that I'm
24    not admitted to practice in the state of Florida and that
25    we will consult and associate with internal or external
```

1    Florida counsel as appropriate."

2              That's a correct statement, is it not, that you

3    are not licensed to practice in Florida?

4        A.   Yes.

5        Q.   How many cases, if any, have you had in Florida

6    during your career?

7        A.   Between five and ten.

8        Q.   When was the last one you had before you

9    represented Ms. Loomer and Iloominate Media?

10       A.   I don't remember the caption.  It was a

11   trademark infringement trial in the Southern District of

12   New York -- I mean in the Southern District of Florida for

13   my client Gel, G-E-L, Ingredients.

14       Q.   What was the nature of any other lawsuits that

15   you claim to have handled in Florida?

16       A.   I'm sorry.  What do you mean that I claim to

17   have handled?

18       Q.   You said that you've had maybe ten cases in

19   Florida during your career.

20       A.   Right, but --

21       Q.   Or were they just legal matters, they weren't

22   litigation?  Please try to explain what your representation

23   in Florida was, as you claim.

24       A.   I represented a company called Consumer --

25   Consumer Research I think it was in litigation brought by

1    a company called Boca Labs in the Southern District of

2    Florida.  I think they're actually two -- there were a

3    couple of companion cases there.  It has been a while.

4    Those both went to summary judgment in my client's favor.

5         Q.   What were the claims that were raised in that

6    case?

7         A.   My client operated a consumer review website,

8    and a company that sold a diet supplement, which was

9    subsequently prohibited by the Food and Drug

10   Administration, sued my client for publishing truthful

11   reviews by former customers of Boca Labs.

12        Q.   Any other lawsuits that you've handled in

13   Florida?

14        A.   There are, but I do have some trouble

15   remembering them now.

16        Q.   In fact, you do not have significant experience

17   in representing clients in Florida, correct?

18             MR. SANDO:  Object to form.

19        A.   No.

20   BY MR. KLAYMAN:

21        Q.   I turn to paragraph 7 of the representation

22   agreement wherein you state "we will communicate with you

23   throughout the course of our representation so that you're

24   aware of how we are progressing, and will certainly seek

25   its input in decisions which may have impact on both the

1  cost of the matter and the outcome. Given the number of
2  unknowns, however, we cannot warrant, predict, or guarantee
3  any particular result or the final outcome of this matter."
4          So you actually had an agreement with Ms. Loomer
5  to communicate with her regularly and to keep her up to
6  date and to explain to her what was going to be in the
7  lawsuit that you were going to bring on her behalf,
8  correct?
9      A.  Yes.
10     Q.  And, in fact, you did not regularly communicate
11  with her, did you?
12     A.  I did.
13     Q.  In fact, on many occasions when she tried to talk
14  to you, you told her "I got to go because I'm a
15  conservative Jew and I've got to be to Sabbath," or worship
16  or something to that effect. You basically just brushed her
17  off, correct?
18          MR. SANDO:  Object to form.
19     A.  No.
20          MR. KLAYMAN:  I will ask that the court reporter
21      mark as -- is it Exhibit 7?
22          MR. SANDO:  6.
23          MR. KLAYMAN:  I'm not good with numbers.  The
24      CAIR Foundation, Inc. and CAIR Florida Inc's Joint
25      Offer of Judgment.

1       (Exhibit No. 6 was marked for identification.)

2   BY MR. KLAYMAN:

3       Q.   Do you see that?  You can look through each of

4   the pages if you'd' like.

5       A.   I have seen it.

6       Q.   You never sent her that offer of judgment, did

7   you?  Ms. Loomer?

8       A.   I don't recall.

9       Q.   It's pretty important to send an offer of

10  judgment to a client, is it not, based on your experience?

11      A.   Yes.

12      Q.   So how is it that you don't recall?

13      A.   Because I recall discussing it with her by

14  phone, but I don't recall emailing it to her, and in

15  reviewing the documents produced in this case, I did not

16  find that email -- I did not find an email sending it to

17  her.

18      Q.   In fact, this offer of judgment specifically

19  states that if it's not accepted, that Ms. Loomer and

20  Iloominate Media could be liable for attorneys' fees and

21  costs, correct?

22      A.   Yes.

23      Q.   And you never discussed that with her, did you?

24      A.   I did.

25      Q.   But you have no proof of that in writing, do you?

1       A.   That is correct.

2       Q.   You consider yourself to be a thorough lawyer, do

3  you not?

4       A.   I do.

5       Q.   And you consider yourself to be ethical, do you

6  not?

7       A.   I do.

8       Q.   In the ordinary course of your practice, is it

9  not the case that you would send a client a document as

10  important as this and have a record of having done so?

11           MR. SANDO:   Object to form.

12       A.   Yes.

13  BY MR. KLAYMAN:

14       Q.   Now I'll turn your attention back to the amended

15  complaint, the verified amended complaint.  You've seen

16  this before, have you not?

17       A.   Yes.

18           MR. SANDO:   This is Exhibit 2?

19           MR. KLAYMAN:   Correct.

20  BY MR. KLAYMAN:

21       Q.   Let's turn to paragraph 11, wherein it states "in

22  and around January of 2019, Defendant Coleman, who was

23  working at the time at Mandelbaum, invited Ms. Loomer to

24  his office in New York City and induced and convinced her

25  to file lawsuit against the Council on American Islamic

```
 1    Relations and Twitter."
 2            That's an accurate statement, is it not?
 3       A.   No.
 4       Q.   Why is it not accurate?
 5       A.   I did not induce or convince Ms. Loomer.
 6       Q.   But you invited her to your office, did you not?
 7       A.   Yes.
 8       Q.   And you had a meeting where you discussed the
 9    lawsuit ultimately you would bring on her behalf and
10    Iloominate Media, correct?
11       A.   I did.
12       Q.   And you told her it would be a very strong case,
13    correct?
14       A.   I don't think so.
15       Q.   You told her it would be a weak case?
16       A.   I certainly did not.
17       Q.   What did you tell her?
18       A.   I don't remember the exact words that I used in
19    this January of 2019.
20       Q.   Do you remember any words that you used?
21       A.   Not really.
22       Q.   Paragraph 13, "Defendant Coleman did not apprise
23    Ms. Loomer of the risks of the litigation, namely that she
24    could be subject to a court order and that she could pay
25    the other side's attorneys' fees and costs if the suit was
```

1    not successful, and Defendant Coleman also did not provide

2    an honest or accurate and competent assessment of the

3    merits of the case against CAIR and Twitter."

4              That's an accurate statement, is it not?

5         A.   No, it is not.

6         Q.   During that meeting, that initial meeting in

7    January 2019, you did not discuss the issue of whether if

8    she lost she would have to pay attorneys' fees, correct?

9              MR. SANDO:   Object to form.

10        A.   That is not correct.

11   BY MR. KLAYMAN:

12        Q.   Why is it not correct?

13        A.   It's a statement of fact which is contrary to

14   the truth.

15        Q.   Okay.  Well, what did you tell her at that

16   meeting?

17        A.   That there was a risk range of possibilities,

18   including that the case could be dismissed, that there's

19   always the possibility of sanctions.  In my opinion, there

20   was no risk in this case -- no appreciable risk of a grant

21   of attorneys' fees.

22        Q.   You actually really wanted to bring a case

23   against the CAIR defendants and Twitter, correct?

24        A.   No.

25        Q.   And the reason that you wanted to do that is

1  because you consider yourself to be a major figure in

2  social media, correct?

3      A.   I already answered "no," so I don't understand

4  your second question.

5      Q.   Well, this helps your reputation in the

6  conservative community, does it not, to bring a case

7  against CAIR, a group that was an unindicted coconspirator

8  in a case in Dallas, Texas, a criminal case, with regard to

9  the Islamic Associates of North America?  It helps your

10  representation, does it not, to have brought this case?

11          MR. SANDO:  Object to form.

12      A.   It may or may not have.

13  BY MR. KLAYMAN:

14      Q.   And this allows you to attract more clients to

15  you and your firm, correct?

16      A.   It may or may not have.

17      Q.   And as a conservative Jew, you obviously have

18  great concerns about CAIR, correct?

19      A.   I do.

20      Q.   And what is your problem with CAIR?

21          MR. SANDO:  Form.

22      A.   CAIR is an antisemitic organization that is

23  actively involved -- especially at that time, was actively

24  involved in censoring conservative and pro-Israel figures

25  from social media.

1    BY MR. KLAYMAN:

2         Q.    You were aware that CAIR was linked to helping to

3    finance Hamas at the time that you met with Ms. Loomer,

4    correct?

5         A.    Yes.

6         Q.    So this case would have been great for you in

7    terms of bringing in new clients, and building your

8    reputation, and getting you out on social media?

9         A.    I would not necessarily have any way of knowing

10   that.

11        Q.    You've bragged about your social media presence,

12   have you not --

13             MR. SANDO:  Object to form.

14   BY MR. KLAYMAN:

15        Q.    -- and elsewhere?

16        A.    "Bragged" strikes me as a subjective opinion.

17        Q.    What social media did you generally participate

18   in at this time when you met -- at the time that you met

19   with Ms. Loomer?

20        A.    Mostly Twitter.

21        Q.    And what else?

22        A.    I had an account on Facebook.  Didn't make much

23   use of it.

24        Q.    How many followers did you have on Twitter at the

25   time that you met with Ms. Loomer, approximately?

```
 1      A.    I don't remember.

 2      Q.    Tens of thousands?

 3      A.    Probably.

 4      Q.    Over a hundred thousand?

 5      A.    I don't think so.

 6      Q.    Give me a rough estimate.

 7      A.    I don't remember.

 8      Q.    Do you know how many followers you have today?

 9      A.    I do, yes.

10      Q.    How many?

11      A.    250,000 -- 250.7 thousand.

12      Q.    So at the time that you met with Ms. Loomer in

13   2019, you had about the same amount, correct?

14      A.    No.

15      Q.    What has caused you to acquire more followers

16   over these years -- over the last five years?

17      A.    I do not know.

18      Q.    What do you generally write about on Twitter?

19      A.    Politics and law.

20      Q.    Have you ever been sued by a client before, other

21   than Ms. Loomer and Iloominate Media?

22      A.    I was sued by the client in that billing dispute

23   that I mentioned to you.  That was the only other time.

24      Q.    And maybe I asked you this question and you

25   responded.  What court was that in?
```

```
 1          A.    New Jersey Superior Court.

 2          Q.    In which city of New Jersey?

 3          A.    It was Essex County.

 4          Q.    When was that suit filed against you?  The year?

 5          A.    I think maybe 2018.  I'm not really sure.

 6          Q.    Do you still have the file pertaining to that

 7    lawsuit?

 8          A.    No.

 9          Q.    Who has it?

10          A.    My former law firm.

11          Q.    Mandelbaum?

12          A.    No.

13          Q.    Which one was that?

14          A.    Goetz, G-O-E-T-Z -- Goetz Fitzpatrick.

15          Q.    You left the Mandelbaum law firm to work for the

16    Dhillon law firm to become -- you're a partner in the

17    Dhillon law firm?

18          A.    I am not.

19          Q.    What is your status there?

20          A.    I am Of Counsel.

21          Q.    You were asked to leave the Mandelbaum law firm

22    as a result of your representation of Ms. Loomer and

23    Iloominate Media, correct?

24                MR. SANDO:  Object to form.

25          A.    That was never how it was explained to me.
```

1    BY MR. KLAYMAN:

2        Q.   What reasons did Mandelbaum want you to leave

3    their firm?  What was explained to you?

4        A.   That I had filed too many controversial

5    lawsuits.  And after we had agreed to have them vetted

6    more carefully, in their view, one lawsuit that I had

7    filed that they believed should have been vetted, and

8    which I thought should -- did not need to be vetted, was

9    filed, and they no longer wanted to bear the risk of my

10   being involved in controversial cases, given that I wasn't

11   complying with what they considered to be, you know, the

12   management framework that they put in place.

13       Q.   What was their vetting policy?

14       A.   That they -- if there was a case that I had

15   reason to believe would be politically sensitive, that I

16   would discuss it with appropriate management -- a firm

17   management representative.

18       Q.   At the time that you met with Ms. Loomer and

19   entered into a legal representation agreement, did you

20   consult with the appropriate management at Mandelbaum about

21   that case?

22       A.   Well, when I met with Ms. Loomer, that policy

23   wasn't in place.  It was a -- I had discretion to take on

24   any case that passed conflict checks, and as long as I

25   provided the necessary information in the case opening

1    memorandum.

2        Q.   Did you prepare a case opening memorandum with

3    Mandelbaum with regard to Ms. Loomer and Iloominate?

4        A.   Yes.

5        Q.   Who reviewed it, if anyone, at Mandelbaum?

6        A.   I do not remember.

7        Q.   Do you have that documentation in your files?

8        A.   No.

9        Q.   Does the Dhillon law firm?

10       A.   No.

11       Q.   Does Mandelbaum have it?

12       A.   I do not know.

13       Q.   Have you asked to get it in order to be able to

14   -- with regard to your defense in this case?

15       A.   No.

16       Q.   And you can't remember anybody you talked to at

17   Mandelbaum about bringing the lawsuit for Ms. Loomer and

18   Iloominate Media?

19       A.   I remember discussing it with Steve Teppler, who

20   was our -- admitted in Florida and asking whether he would

21   be interested in working on it with me because I would

22   need someone in Florida.

23       Q.   So Steve Teppler was actually a lawyer with

24   Mandelbaum that was licensed in Florida at the time that

25   you accepted representation?

```
 1        A.   Yes.

 2        Q.   Did he agree to work on the Loomer-Iloominate

 3   case with you?

 4        A.   He did.

 5        Q.   When you left the Mandelbaum firm and Mr. Craig

 6   Young was retained, did you first make an effort to have

 7   Mr. Teppler represent Ms. Loomer when you changed firms?

 8        A.   No.

 9        Q.   Why is that?

10        A.   I didn't think he would have any interest in

11   that -- I didn't think Mandelbaum had any interest in

12   maintaining that representation.

13        Q.   Because, in fact, the Loomer case was the reason

14   why Mandelbaum wanted you to leave, correct?

15             MR. SANDO:  Object to form.

16        A.   I do not know why the decision was made to ask

17   me to leave.  I only know what I was told, and they did

18   not tell me that.

19   BY MR. KLAYMAN:

20        Q.   There were writings that explained why they

21   wanted you to leave, correct, the Mandelbaum office?

22             MR. SANDO:  Object to form.

23        A.   I don't know.

24   BY MR. KLAYMAN:

25        Q.   You're not saying they don't exist, you just
```

1    don't know at this time?

2         MR. SANDO:  Form.

3         A.    I said I don't know.

4    BY MR. KLAYMAN:

5         Q.    So you don't recall seeing anything in writing

6    from Mandelbaum saying that you must leave the firm?

7         A.    No.

8         Q.    And who is it that advised you that you should

9    leave the firm at Mandelbaum?

10        A.    It was Mr. Grossman and the co-chairman of the

11   litigation department, whose name escapes me at the

12   moment.

13        Q.    At the time that you left the Mandelbaum firm,

14   Mandelbaum was aware that you could very well be sued for

15   malpractice for representing Ms. Loomer and Iloominate

16   Media, correct?

17        MR. SANDO:  Object to form.

18        A.    No.

19   BY MR. KLAYMAN:

20        Q.    So the Mandelbaum firm by asking you to leave was

21   trying to cut its losses potentially, correct?

22        MR. SANDO:  Object to form.

23        A.    I have no idea.

24   BY MR. KLAYMAN:

25        Q.    Who was the insurer of the Mandelbaum law firm,

```
 1    liability insurer?

 2            MR. SANDO:  Object to form.

 3        A.    I do not know.

 4    BY MR. KLAYMAN:

 5        Q.    How long were you with the Mandelbaum law firm?

 6        A.    About four years.

 7        Q.    And you were a partner, correct?

 8        A.    Oh, no.  I'm sorry.  It wasn't four years.  I

 9    joined Mandelbaum -- it was two years.  Yes, I was -- I

10    was a partner.

11        Q.    Now, in the ordinary course of becoming a

12    partner, you would have learned who the insurance carrier

13    was for liability insurance, correct?

14            MR. SANDO:  Object to form.

15        A.    No.

16    BY MR. KLAYMAN:

17        Q.    That would have been provided to you by the

18    partnership committee, or whatever committee would be

19    engaged in having you come on as a partner, correct?

20            MR. SANDO:  Object to form.  Move to strike any

21            reference to insurance.  You may answer.

22        A.    No.

23    BY MR. KLAYMAN:

24        Q.    So as far as you're concerned, you didn't think

25    that Mandelbaum had any insurance that would cover you for
```

```
 1   potential liability claims?

 2           MR. SANDO:  Same objection.  Move to strike.

 3       You may answer it.

 4       A.    That is incorrect.

 5   BY MR. KLAYMAN:

 6       Q.    You never asked anyone at Mandelbaum "who is our

 7   insurance carrier" and if you're insured?

 8           MR. SANDO:  Same objection.  Move to strike.

 9       A.    No.

10   BY MR. KLAYMAN:

11       Q.    Paragraph 14 of the amended complaint, Exhibit 2,

12   "it is now evident to Plaintiffs that Defendant Coleman was

13   simply looking for any vehicle to bring a lawsuit against

14   CAIR and Twitter, regardless of the merits, in order to

15   boost his own notoriety, fame, and social media presence

16   after Ms. Loomer crowd funded over $90,000 to pay for a

17   lawsuit when she was banned on all social media."

18           That's a correct statement, is it not?

19       A.    No.

20       Q.    You're saying that Ms. Loomer didn't crowd fund

21   over $90,000 to pay for the lawsuit that you would bring?

22       A.    I did not say that at all.

23       Q.    You are aware that that's how she paid the

24   initial retainer and helped finance the lawsuit that you

25   brought on her behalf, correct?
```

```
 1        A.   No.

 2        Q.   You're not aware of her crowd funding to raise

 3   money to pay you?

 4        A.   I am aware.

 5        Q.   And she did, right?  Correct?

 6        A.   Yes.

 7        Q.   Did you give her an estimate of how much you

 8   thought the lawsuit you would bring for her and Iloominate

 9   Media would cost to litigate to a conclusion?

10        A.   Yes.

11        Q.   What was that estimate?

12        A.   I do not remember.

13        Q.   Several hundred thousand dollars?

14        A.   I do not remember.

15        Q.   So you advised her to enter into litigation

16   without telling her what ultimately you would bill her for,

17   as well as her company Iloominate Media?

18             MR. SANDO:  Object to form, and misstates the

19        testimony.

20   BY MR. KLAYMAN:

21        Q.   Correct?

22        A.   No.

23        Q.   Is it your practice not to tell the client that's

24   paying fees how much the litigation is estimated to cost?

25   Is that your regular practice?
```

```
 1        A.   No.

 2        Q.   Now, in the case you were going up against an

 3   organization which was accused to have ties to terrorism,

 4   correct?

 5        A.   Yes.

 6        Q.   And you understood that this case could become

 7   very contentious as a result, correct?

 8        A.   Yes.

 9        Q.   You understood that CAIR was alleged to have

10   financed terrorist groups that killed Jews and others,

11   correct?

12        A.   Yes.

13        Q.   So would it not have been prudent to tell her

14   what you thought this litigation would cost, given the fact

15   that you're going up against such an adverse foe?

16             MR. SANDO:  Object to form, and misstates the

17        testimony.

18        A.   Yes.

19   BY MR. KLAYMAN:

20        Q.   Now, does this refresh your recollection as to

21   what you told her, if anything, that this case could likely

22   cost?

23        A.   Yes.

24        Q.   Okay.  How much?

25        A.   It refreshes my recollection that I did discuss
```

1    the range of possibilities with her, but I don't remember

2    what estimate I gave her.

3        Q.    Well, based on your independent expertise, how

4    much do you think this case would have cost to litigate to

5    a conclusion if it hadn't been dismissed?

6        A.    Are you asking me to speculate?

7        Q.    I'm asking you based on your experience.

8            MR. SANDO:  Object to form.

9    BY MR. KLAYMAN:

10       Q.    It's not speculation.

11       A.    I decline to speculate.

12       Q.    Well, you're declining to answer question?

13       A.    Yeah.

14           MR. KLAYMAN:  Okay.  Certify it.

15           MR. SANDO:  Form.  Misstates his testimony.

16           MR. KLAYMAN:  There was no testimony.

17           MR. SANDO:  He said he doesn't know and declined

18       to answer.

19           MR. KLAYMAN:  Yeah.  That's really credible, Mr.

20       Sando.

21           MR. SANDO:  Well, he can't make a guess,

22       Mr. Klayman.  He's a fact witness.

23    BY MR. KLAYMAN:

24       Q.    Now, at the time that this complaint was to be

25    filed, it was contemplated that Twitter would be a

1    defendant, correct?

2        A.   Yes.

3        Q.   And I will turn your attention to an article

4    written by Kirsten Grind, K-I-R-S-T-E-N.  Grind, G-R-I-N-D,

5    and John D. McKinnon with the title "Facebook, Twitter Turn

6    to Right-Leaning Groups to Help Referee Political Speech."

7    Subtitled "Advisers on touchy issues include Tony Perkins'

8    Family Research Council, Grover Norquist's Americans for

9    Tax Reform and, on the left, the Southern Poverty Law

10   Center."

11           MR. KLAYMAN:  We'll make that -- what is the

12       next exhibit, Mr. Anderson?  Is that 8?

13           MR. ANDERSON:  7.

14           MR. KLAYMAN:  We'll mark that 7.

15           If you could please keep a list of the exhibits,

16       Mr. Anderson.  If you'd put that up on screen, if we

17       can scroll through this.

18       (Exhibit No. 7 was marked for identification.)

19   BY MR. KLAYMAN:

20       Q.   Mr. Coleman, you have seen this article before,

21   correct?

22       A.   I am not sure.

23       Q.   Take your time to look at it.

24           MR. KLAYMAN:  Mr. Anderson, scroll the pages so

25       Mr. Coleman can review it so he can refresh his

 1          recollection.

 2              MR. SANDO:   Art, would you mind muting your

 3      microphone if there's background noise?   Thank you.

 4  BY MR. KLAYMAN:

 5      Q.   Turn your particular attention to Pages 7, 8 and

 6  9 in the article dated January 8, 2019.   Having shown it to

 7  you, this refreshes your recollection, does it not, of this

 8  article?

 9      A.   Yes.

10      Q.   Ms. Loomer brought this article to your attention

11  when you first met, correct?

12      A.   Yes.

13      Q.   And turning to Page 7 it states therein

14  "conservative Jewish activist Laura Loomer says she didn't

15  know until recently that outside groups and individuals had

16  privately lobbied Twitter executives to remove her from the

17  site in late November."

18              "In an email to Ms. Loomer, Twitter said she had

19  violated hateful conduct policy for a tweet calling Ilhan

20  Omar," I-L-H-A-N, Omar, O-M-A-R "the Muslim congresswoman

21  from Minnesota, anti-Jewish and supportive of Shariah law.

22  In an interview, Ms. Loomer says she was referring to a

23  2012 tweet from Ms. Omar in which the congresswoman

24  wrote," quote "may Allah awaken the people and help them

25  see the evil doings of Israel" unquote.

1              "Among the groups that had complained to Twitter

2     was the Council on American-Islamic Relations, an advocacy

3     organization.  The council doesn't often step in to

4     advocate against other users, says Executive Director

5     Zahra Billoo," Z-A-H-R-A.  Last name B-I-L-L-O-O, "but did

6     so in the case of Ms. Loomer based on her previous

7     comments about Muslims."

8              "In 2017, Ms. Loomer tweeted after a terror

9     attack in New York City," quote "Leave it to Muslims to

10    ruin Everything. People can't even enjoy Halloween without

11    those savages f-king everything up for everyone".

12             "Other organizations, including the civil-rights

13    organization, Muslim Advocates, voiced similar

14    complaints."

15             "Twitter's email to Ms. Loomer didn't mention

16    the behind-the-scenes discussions.  After her suspension,

17    she handcuffed herself to Twitter's New York headquarters

18    in protest.  Police cut her free from the handcuffs after

19    two hours."

20             "Twitter's Mr. Borrman," B-O-R-R-M-A-N, "says

21    Ms. Loomer's suspension," quote, "was the result of

22    multiple, repeated violations of the same rules, it was

23    not about any one tweet," unquote.  "He added that many

24    organizations and individuals contacted Twitter about her

25    account over the years.  Ms. Loomer says she didn't post

1    anything hateful, or anything in violation of Twitter's

2    terms of service."

3           "Twitter's hateful conduct policy says that

4    users," quote, "may not promote violence against or

5    directly attack or threaten other people," unquote, "based

6    on race, ethnicity, or gender, nor may users incite harm

7    toward others."

8           "Ms. Billoo of the Council on American-Islamic

9    Relations welcomes tech companies' openness to feedback.

10   In 2016, her own Facebook account was suspended after she

11   posted a photo of a hate letter sent to a San Jose,

12   California mosque.  Ms. Billoo says she asked dozens of

13   contacts to email everyone that she knew at Facebook,

14   until someone internally took up the issue and her account

15   was resolved."  Quote, "you need to throw the kitchen sink

16   at it, she says," quote, "it's a little like politics,"

17   unquote.

18          "Write to Kirsten Grind at kirsten.grind@wsj.com

19   and John D. McKinnon at John.mckinnon@wsj.com."

20          Now, Ms. Loomer raised this article with you,

21   correct, when you met initially?

22      A.   Yes.

23      Q.   And she advised you to get an affidavit from

24   Kirsten Grind, correct, with regard to what she wrote in

25   this article, correct?

```
 1        A.   I don't recall.

 2        Q.   In fact, she instructed you to do that after a

 3   legal representation agreement was signed, correct?

 4             MR. SANDO:  Object to form.

 5        A.   I don't recall.

 6   BY MR. KLAYMAN:

 7        Q.   Now, based on the information provided in

 8   article, Twitter became a primary defendant in the lawsuit

 9   that you had ultimately filed for Ms. Loomer and Iloominate

10   Media, correct?

11        A.   I don't know what you mean by "primary

12   defendant."

13        Q.   Well, it was important to include them in the

14   complaint.

15             MR. SANDO:  Form.

16        A.   They were a defendant.

17   BY MR. KLAYMAN:

18        Q.   And they were -- based on this article, in which

19   you knew at the time that you filed the complaint,

20   including Twitter as a defendant, Twitter was an important

21   defendant to put in the complaint because Twitter

22   interfered with Ms. Loomer's social media account with

23   Twitter, correct?

24             MR. SANDO:  Object to form.

25        A.   No.
```

```
 1    BY MR. KLAYMAN:

 2         Q.   CAIR rather interfered, correct?  Correct?

 3         A.   It was -- well, ultimately our conclusion was

 4    that it was worth including Twitter as a defendant.

 5         Q.   In fact, you never served Twitter with the

 6    complaint, did you?

 7         A.   No.

 8         Q.   You are saying you did serve Twitter?

 9         A.   No, I didn't -- we did not serve Twitter.  I was

10    contacted by Twitter after news of the complaint became

11    public, and service was not an issue.

12         Q.   So are you saying that Twitter accepted service?

13         A.   I don't recall whether they accepted the

14    service.  They may have, but the gravamen of the

15    conversation was that they wanted me to know that we could

16    expect a motion based on their venue selection provision

17    in the user agreement, and we decided to dismiss Twitter

18    from the Florida lawsuit without prejudice.

19         Q.   And you never discussed that with Ms. Loomer, did

20    you, dismissing them without prejudice?

21         A.   Yes, I did.

22         Q.   You don't have anything in writing to that

23    effect, do you?

24         A.   I don't know.

25         Q.   It's a pretty important issue in this lawsuit for
```

```
 1    malpractice, is it not?

 2              MR. SANDO:  Object to form.

 3         A.   No.

 4    BY MR. KLAYMAN:

 5         Q.   In fact, both the lower courts and the 11th

 6    Circuit held that you failed to serve Twitter, correct?

 7              MR. SANDO:  Form.

 8    BY MR. KLAYMAN:

 9         Q.   That's in the court orders.

10              MR. SANDO:  Form.

11         A.   No.

12    BY MR. KLAYMAN:

13         Q.   And it's in the court orders as well that you

14    fraudulently joined CAIR Florida.  That was a finding by

15    Magistrate Judge Bruce Reinhart, which was adopted by Judge

16    Ruiz, correct?  R-U-I-Z.

17              MR. SANDO:  Object to form.

18         A.   There was a finding of fraudulent joinder, yes,

19    there was.

20    BY MR. KLAYMAN:

21         Q.   Did you ever have communications with CAIR over

22    whether or not they had interfered with Ms. Loomer's social

23    media Twitter account?

24         A.   No.

25         Q.   And you received no information that what
```

1   Ms. Kirsten wrote about in her article, and Mr. McKinnon,

2   that I just referenced, Exhibit 7, was simply a prank by

3   CAIR?  You had no information that it was a prank, did you?

4       A.   At what time?

5       Q.   Anytime.

6            MR. SANDO:   Form.

7       A.   Eventually papers were submitted in the motion

8   in opposition -- on the remand motion.  I'm sorry.  In

9   opposition to remand, claiming that there had been a prank

10  played.

11  BY MR. KLAYMAN:

12      Q.   But you had no independent verification of that

13  other than what CAIR said, correct?

14           MR. SANDO:   Form.

15      A.   Verification that there had in fact been a

16  prank?

17  BY MR. KLAYMAN:

18      Q.   Correct.

19      A.   That is correct.

20      Q.   And, in fact, the individual that could have

21  confirmed that it wasn't a prank, two of them, was Kirsten

22  Grind and John McKinnon of the Wall Street Journal,

23  correct?

24      A.   No.

25      Q.   Well, they said that this in fact had occurred,

1    that CAIR had intervened with Twitter with regard to

2    Ms. Loomer and Iloominate Media, correct?  That's what they

3    wrote about, correct?

4         A.   That's what they wrote about, but that's not

5    necessarily what they would have been competent to testify

6    about.

7         Q.   And you never made any effort to contact them,

8    did you?  Ms. Grind or Mr. McKinnon?

9         A.   Incorrect.

10        Q.   Did you speak with either of them ever?

11        A.   Yes.

12        Q.   When did you speak with them?

13        A.   I don't remember.

14        Q.   And what did Ms. Grind tell you?

15        A.   I don't remember.

16        Q.   What did Mr. McKinnon tell you?

17        A.   I did not speak to him.

18        Q.   Now, you're aware that one of the ways that

19   people can escape from liability, at least try to, is to

20   say they don't remember, correct?

21             MR. SANDO:  Object to form.  Argumentative.

22        A.   Yes.

23   BY MR. KLAYMAN:

24        Q.   In fact, in the course of this deposition over

25   the last hour you've remembered very little, correct?

```
 1              MR. SANDO:  Object to form.  Misstates his
 2         testimony.  Argumentative.
 3         A.    Incorrect.
 4  BY MR. KLAYMAN:
 5         Q.   In fact, Mr. Coleman, you're simply lying, aren't
 6  you?
 7              MR. SANDO:  Same objection.  Argumentative.
 8         Watch it, Larry.  Form.
 9         A.    Incorrect.
10  BY MR. KLAYMAN:
11         Q.   Something as important as this, you would
12  necessarily remember, would you not?
13              MR. SANDO:  Form.
14         A.    As important as what?
15  BY MR. KLAYMAN:
16         Q.   Well, in this particular instance, with regard to
17  what the Wall Street Journal had written about CAIR's
18  interference with Ms. Loomer and her company Iloominate
19  Media?
20         A.    I don't understand the question.
21         Q.   The article is important because it implicates
22  CAIR in interfering and competing unfairly in an unfair
23  trade practice with Ms. Loomer and Iloominate Media,
24  correct?
25              MR. SANDO:  Form.
```

1    A.   The article was important, yes.

2  BY MR. KLAYMAN:

3    Q.   And consequently, it was important to have

4  Twitter as a defendant, because you had proof as to why

5  Twitter should be a defendant.

6    A.   I don't think it was as important as having CAIR

7  as a defendant.

8    Q.   During the course of your representation of

9  Ms. Loomer or Iloominate Media, did you seek to take any

10  discovery of Twitter?

11         MR. SANDO:   Form.

12    A.   The case was dismissed before discovery began.

13  BY MR. KLAYMAN:

14    Q.   But you never sought to take discovery?

15         MR. SANDO:   Form.

16    A.   The case was dismissed before discovery began.

17  BY MR. KLAYMAN:

18    Q.   Did you ask the court to allow you to take

19  discovery?

20    A.   No.

21    Q.   Did you ask the court to allow you to take

22  discovery before you had to respond to the defendant's

23  motion to dismiss?

24    A.   No.

25    Q.   And I take it you never tried to contact or get

1    an affidavit from Ms. Kirsten Grin or John McKinnon to be

2    able to use in responding to the motion to dismiss of the

3    defendants, correct?

4        A.    Affidavits are not used in motions to dismiss.

5        Q.    Well, that's your legal conclusion.  I just asked

6    you the question straight up.  You never sought to get an

7    affidavit from Ms. Grind or Mr. McKinnon to use to defend

8    the motion to dismiss, yes or no?

9        A.    I did not.

10       Q.    Now, I didn't quite understand your response

11   before.  Why did you say -- what was your reasoning for not

12   proceeding against Twitter and getting them served?

13       A.    Twitter was prepared to make a motion to

14   transfer venue to, I think, the Northern District or

15   Central District of California based on their user

16   agreement with Ms. Loomer, and I did not want the case

17   transferred to California.  I thought it was more

18   important to proceed against CAIR in this case and to deal

19   with Twitter in a separate case if the result of this

20   case, including discovery that might be obtained, would

21   support a future claim against Twitter.

22       Q.    Now, the reason you didn't want to transfer it to

23   the Central District of California is because you didn't

24   have counsel there that could represent her in conjunction

25   with your own representation, correct?

```
 1              MR. SANDO:  Object to form.

 2        A.   No.

 3  BY MR. KLAYMAN:

 4        Q.   Correct?

 5        A.   No.

 6        Q.   Did the Mandelbaum law firm have counsel on its

 7  staff licensed in California?

 8        A.   No.

 9        Q.   The fact that it would be transferred to

10  California would not preclude bringing the suit against

11  Twitter, would it?

12        A.   No.

13        Q.   Now, with regard to your representation of Ms.

14  Loomer and Iloominate Media, you never took any steps, such

15  as filing a preliminary -- motion for preliminary

16  injunction, or any motion for equitable relief on her

17  behalf, or on Iloominate Media's behalf, correct?

18        A.   Correct.

19        Q.   You were aware, given your expertise, that to

20  combat any claim for attorneys' fees and failing to accept

21  an offer of judgment, you'd have to make a showing that

22  your clients pursued injunctive and equitable relief,

23  correct?

24              MR. SANDO:  Object to form.

25        A.   No.
```

1    BY MR. KLAYMAN:

2        Q.   You didn't know that?

3        A.   That's not my testimony.

4        Q.   So you did know that?

5        A.   Pursuing injunctive relief does not require

6    making a motion for a preliminary injunction.

7        Q.   Or doing anything else?  I mean, you took no

8    affirmative step to obtain equitable relief for Ms. Loomer

9    and Iloominate Media during your representation of them,

10   correct?

11       A.   Incorrect.

12       Q.   Okay.  What efforts did you make to get equitable

13   relief on their behalf, other than just a passing reference

14   in the amended complaint?

15       A.   Well, I don't consider a demand for injunctive

16   relief to be a passing reference.  Everything that I put

17   into a complaint I take full responsibility for.  So when

18   I sought in the addendum clause injunctive relief against

19   all defendants, I consider that to be a significant act

20   from a legal practice point of view.

21       Q.   But both the lower court and the appellate court,

22   the 11th Circuit, found that it was not, correct, that did

23   you not pursue equitable relief sufficient to absolve

24   Ms. Loomer and Iloominate Media from having to pay

25   attorneys' fees?  That's been their findings, correct?

```
 1            MR. SANDO:  Object to form.

 2       A.   Yes, that was their finding.

 3  BY MR. KLAYMAN:

 4       Q.   So you're saying that those courts are wrong?

 5       A.   Sure.

 6       Q.   But that is the law in terms of the case that you

 7  brought for Ms. Loomer and Iloominate Media, correct, that

 8  is currently the law?

 9       A.   That is currently the ruling with respect to

10  this case, yes.

11       Q.   Now, there came a point in time, did there not,

12  when you abandoned Ms. Loomer and Iloominate Media as their

13  counsel?

14            MR. SANDO:  Object to form.

15  BY MR. KLAYMAN:

16       Q.   Correct?

17       A.   No.

18       Q.   There came a point in time when you refused to

19  represent them further, correct?

20       A.   Yes.

21       Q.   And why was that?

22       A.   I found that it was almost impossible for me to

23  work with Laura at that point.

24       Q.   Did you put that in writing to her?

25       A.   I don't think so.
```

56

```
1        Q.   In fact, the reason that you didn't continue on
2    is because you didn't think you were going to make money
3    out of this, given all the screw-ups that occurred prior?
4            MR. SANDO:  Object to form.
5    BY MR. KLAYMAN:
6        Q.   Correct?
7        A.   No.
8            MR. SANDO:  Form.
9    BY MR. KLAYMAN:
10       Q.   In other words, it would no longer be a
11   money-making venture, correct?
12       A.   No.
13       Q.   And it wasn't doing anything good to your
14   representation either, was it, in terms of the perception
15   that you did not represent her diligently and competently,
16   correct?
17           MR. SANDO:  Form.
18       A.   I don't understand what you are asking.
19   BY MR. KLAYMAN:
20       Q.   Well, you bailed out because you were no longer
21   wanting to associate yourself with Ms. Loomer or Iloominate
22   Media because, in fact, your reputation was being harmed,
23   given the way you handled the case.
24           MR. SANDO:  Form.
25       A.   No.
```

```
 1    BY MR. KLAYMAN:

 2        Q.   If you had continued to represent her, you could

 3    have made the argument that you sufficiently pled equitable

 4    relief, and that was all that needed to be done, correct?

 5        A.   I did make that argument.

 6        Q.   Which was not accepted by the courts, correct?

 7        A.   That is correct.

 8        Q.   Turn to Page 27 of the Ms. Loomer's verified

 9    amended complaint.  "During the entire period of

10    representation, Defendants Coleman and Mandelbaum never

11    once followed up on, litigated, or took any action

12    whatsoever to obtain the injunctive and equitable relief

13    that Plaintiffs desired."

14             That's a correct statement, correct?

15        A.   No.

16        Q.   Why is that not correct?

17        A.   We filed a lawsuit seeking equitable relief.

18    Everything we did in connection with that lawsuit,

19    including defending the motion to dismiss, the venue --

20    the remand motion, the appeal, all were in pursuit of the

21    relief demanded in the complaint, which included the

22    equitable relief.

23        Q.   But that's the extent of your seeking equitable

24    relief on behalf of Ms. Loomer and Iloominate Media?

25        A.   That is pursuing equitable relief, yes.
```

1      Q.    And that's the extent of your actions on her

2   behalf with regard to equitable relief, correct?

3      A.    What do you mean by "that is the extent"?

4      Q.    That's all you did was to plead it.

5      A.    All one can do when filing a lawsuit is plead.

6   And then if it's dismissed, there's nothing else you can

7   do.

8      Q.    Turn to paragraph 33 of the complaint, where it

9   says "despite this reminder, Defendants Coleman and Dhillon

10   failed to provide any objection pursuant to Southern

11   District of Florida rule 7.3(a)".

12         That's an accurate statement, is it not?

13      A.    Yes.  Well, actually, ultimately we did.

14   Ultimately we did, because in fact the court did reduce

15   the amount due by 20 percent.

16      Q.    Your sole argument, was it not, that attorneys'

17   fees were not due and owing, you never actually item by

18   item opposed the request for attorneys' fees by the CAIR

19   defendants, correct?

20      A.    We made the tactical decision that it would be

21   more useful and more effectual to make the point that

22   under the offer of judgment statute there should not be

23   any fees owing at all.

24      Q.    You are aware that lawyers generally plead in the

25   alternative, if one argument does not stick with the court,

1    another one may; you are aware of that, based on your

2    experience?

3          A.    Yes.

4          Q.    Yet, you chose not to do that here, correct?

5          A.    Correct.

6          Q.    You never advised Ms. Loomer that that was your

7    tactic here, did you?

8          A.    I don't remember doing so.

9          Q.    In fact, when the attorneys' fees award issued at

10   the lower court, you did not immediately advise her of

11   that, did you?

12         A.    I don't remember.

13         Q.    In fact, she learned of it only because it was in

14   the media at the time.

15               MR. SANDO:   Object to form.

16   BY MR. KLAYMAN:

17         Q.    Correct?

18         A.    I don't know.

19         Q.    Turn to paragraph 35 where it states, "even

20   worse, Defendants Coleman and Dhillon failed to even file

21   any response to CAIR and CAIR Florida's joint motion for

22   attorneys' fees, forcing Magistrate Bruce Reinhart

23   (Magistrate Reinhart), to whom this issue had been referred

24   by Judge Ruiz, to issue an order to show cause on May 18,

25   2021 as to why CAIR and CAIR Florida's motion should not be

```
 1   granted."

 2              That's an accurate statement, is it not?

 3              MR. SANDO:  Object to form.

 4      A.   The procedural facts recited in that statement

 5   are correct.

 6   BY MR. KLAYMAN:

 7      Q.   Then it states "Defendants Coleman and Dhillon

 8   also failed to timely respond to the OSC," that's order to

 9   show cause.

10              That's also an accurate statement, is it not?

11              MR. SANDO:  Form.

12      A.   Failed to respond -- we did not respond.  We

13   were not aware of it.

14   BY MR. KLAYMAN:

15      Q.   You were not aware that the court had issued an

16   order to show cause?

17      A.   Correct.

18      Q.   What's your reason for that?  You were on the

19   electronic service filing system, were you not?

20      A.   Only under my previous firm's email.

21      Q.   So you never took the time to update the

22   electronic service requirements of the Southern District of

23   California?

24      A.   You mean Florida?

25      Q.   Well, when you changed firms, you did not advise
```

61

```
 1    the Southern District of Florida that you had another

 2    contact at your new law firm?

 3         A.   There have -- the case was actually in the 11th

 4    Circuit at the time, so the Southern District of Florida

 5    filings were entirely quiescent.

 6         Q.   What do you mean by "quiescent"?

 7         A.   Nothing was going on there.  Nothing was being

 8    filed.  We weren't filing.  The court didn't have

 9    jurisdiction.

10         Q.   Wouldn't it have been an ordinary standard of

11    care to advise the lower court that you had a new contact

12    information for electronic filings?

13              MR. SANDO:  Form.

14         A.   I thought that the changes I had made to my

15    PACER account had accounted for that.

16    BY MR. KLAYMAN:

17         Q.   So you were negligent in not providing that

18    information to the Southern District of Florida, correct?

19              MR. SANDO:  Form.

20         A.   No.

21    BY MR. KLAYMAN:

22         Q.   You intentionally did not provide it?

23              MR. SANDO:  Form.

24    BY MR. KLAYMAN:

25         Q.   You can answer.
```

1       A.    I did not provide it, because I was under the

2   impression that changing my PACER log-in information had

3   effectuated the change.

4       Q.    Continuing in paragraph 35 "only on June 1, 2021

5   did Magistrate Reinhart receive an email from Defendant

6   Coleman with the specious, if not wholly manufactured,

7   story that he had not been receiving any notifications, and

8   Magistrate Reinhart ultimately granted additional time."

9           That's an accurate statement, isn't it?

10      A.    No.

11      Q.    Paragraph 36, "on or around June 24, 2021,

12  Defendants Coleman and Dhillon contracted with Defendant

13  Young on behalf of Ms. Loomer and Iloominate Media LLC to

14  serve as local counsel pursuant to the US District Court

15  for the Southern District of Florida's pro hac vice rules.

16  Defendant Young agreed to review filings and attend

17  hearings as second chair in exchange for $5,000, which was

18  paid by Defendants."

19          That's an accurate statement, is it not?

20      A.    No.

21      Q.    What's inaccurate about it?

22      A.    Neither I nor the Dhillon law firm contracted

23  with Mr. Young.

24      Q.    But Mr. Young was serving as your so-called local

25  counsel, correct, at Dhillon?

63

```
1          A.   What do you mean "so-called?"

2          Q.   Well, was he local counsel that you were relying

3     upon with regard to proceedings in this case?

4          A.   Yes.

5          Q.   Were you the one who found Craig Young to

6     represent Ms. Loomer and Iloominate Media?

7          A.   I was the one who found him and recommended that

8     she speak to him and that we use him.

9          Q.   How did you find him?

10         A.   I asked a colleague who I knew practiced in

11    Florida for a recommendation.

12         Q.   Now, in bringing Mr. Young into the case as local

13    counsel, it was his duty and responsibility to review the

14    file, the entire file, correct?

15              MR. SANDO:  Object to form.

16         A.   I'm not really cognizant of the full extent of

17    his duty, whether it required the entire file.

18    Considering the procedural situation that was involved at

19    the time, I'd think that there are things in the file that

20    would have nothing to do with his responsibilities.

21    BY MR. KLAYMAN:

22         Q.   And what are they?

23         A.   The issue of whether or not to dismiss Twitter,

24    the remand motion, the fraudulent joinder issue, these

25    things are all adjudicated.  The 11th Circuit had ruled,
```

1    and we had now to deal with a fairly narrow issue.

2         Q.   He was local counsel at the time that you and he

3    decided not to oppose the attorneys' fees and costs under

4    Southern District of Florida rule 7.3(a) line by line,

5    correct?

6         A.   That is correct.

7         Q.   And he made that issue -- he made that

8    determination along with you?

9         A.   We both made a conclusion -- yeah, we discussed

10   it, and came up with a strategy based on our judgment as

11   to what would be a good tactical approach to dealing with

12   the motion.

13        Q.   And like you, he never raised this with

14   Ms. Loomer?  Neither of you told her what you were doing in

15   terms of your strategy in this regard?

16        A.   That's correct.

17        Q.   Are you aware that Mr. Young has attempted to

18   settle his claim in this lawsuit directly with CAIR?

19        A.   Yes.

20        Q.   How did you learn of that?

21        A.   Through my counsel.

22        Q.   That's nothing that you would have done, correct?

23             MR. SANDO:   Object to form.

24        A.   I would not have attempted to settle Mr. Young's

25   claim, no.

1   BY MR. KLAYMAN:

2       Q.   No.  I'm talking about your claim.  Is it

3   appropriate for you to go to CAIR, a nonparty, to enter

4   into a settlement agreement in the case that you're here on

5   today?  Is that appropriate?

6            MR. SANDO:  Object to form.

7       A.   I have no opinion as to the propriety of it.

8   BY MR. KLAYMAN:

9       Q.   Have you attempted to do that?

10      A.   No.

11      Q.   And the reason you haven't done it is because

12   CAIR is not a party to this lawsuit, correct?

13           MR. SANDO:  Object to form.

14   BY MR. KLAYMAN:

15      Q.   The one we're here for today.

16      A.   That is not correct.

17      Q.   And, in fact, based upon your experience, it

18   wouldn't be ethical for you to do that, would it?

19           MR. SANDO:  Object to form.

20      A.   I have no experience with situations such as

21   this one.

22   BY MR. KLAYMAN:

23      Q.   In fact, if you were to do that, you could not

24   only subject yourself to ethical ramifications, but also

25   your counsel, Mr. Sando, if you were to do that?

```
 1              MR. SANDO:  Form.
 2   BY MR. KLAYMAN:
 3       Q.   Correct?
 4       A.   I have no idea.
 5       Q.   Have you seen the proposed settlement agreement
 6   that Mr. Young sought to enter into with CAIR?
 7       A.   No.
 8       Q.   So you are not aware that he put in that
 9   settlement that he wants Ms. Loomer and Iloominate Media to
10   sign off on that they cannot file an ethics complaint
11   against him with the Florida Bar?
12              MR. SANDO:  Object to form.
13       A.   I have not seen that agreement.
14   BY MR. KLAYMAN:
15       Q.   You've taken courses on legal ethics with regard
16   to New York and New Jersey, have you not?
17       A.   Yes.
18       Q.   And you're familiar with their rules of
19   professional responsibility?
20       A.   Yes.
21       Q.   And you are aware that under the rules of
22   professional responsibility in those jurisdictions that you
23   cannot agree with a client to not file an ethics complaint
24   against you, that that's strictly prohibited?
25       A.   Yes, I am aware of that.
```

```
 1        Q.   Are you aware that Mr. Young admits to having

 2   negotiated this proposed settlement without advising

 3   Ms. Loomer or Iloominate Media?

 4             MR. SANDO:   Object to form.

 5        A.   No.

 6   BY MR. KLAYMAN:

 7        Q.   You wouldn't do that, would you?

 8             MR. SANDO:   Form.

 9        A.   I would never do something that I knew to be

10   unethical in the jurisdictions where I practice.

11   BY MR. KLAYMAN:

12        Q.   Well, you were practicing in Florida, were you

13   not, for Ms. Loomer and Iloominate Media, correct?

14        A.   I was.

15        Q.   And you wouldn't do that in a Florida

16   jurisdiction either, would you?

17        A.   I would not.

18        Q.   Turning to paragraph 37, "Defendant Young upon

19   entering an appearance in the CAIR suit should have

20   reviewed the case and provided Plaintiffs with an accurate

21   and competent assessment of the merits of the CAIR suit."

22             That's an accurate statement, is it not?

23        A.   No.

24        Q.   In fact, that would be the ordinary practice of a

25   lawyer when he enters into a case, to review the entire
```

```
 1   file, correct?

 2              MR. SANDO:  Object to form.

 3   BY MR. KLAYMAN:

 4         Q.   You can respond.

 5         A.   Not necessarily.

 6         Q.   You wouldn't do that, would you?  I mean, if

 7   you're entering a case, Mr. Coleman, you would want to know

 8   what came before your entry to decide whether you wanted to

 9   enter into it, correct?

10              MR. SANDO:  Form.

11   BY MR. KLAYMAN:

12         Q.   Correct?

13         A.   Yes.

14         Q.   Because you could potentially be liable for

15   malpractice committed by another lawyer before you entered

16   the case.

17              MR. SANDO:  Form.

18   BY MR. KLAYMAN:

19         Q.   Correct?

20         A.   I can't imagine why someone would make such a

21   claim against me if I came into the case late, but I

22   suppose there are people who are vicious enough to do

23   that.

24         Q.   Paragraph 38, "Defendants Coleman, Dhillon, and

25   Young together ultimately prepared and filed on July 21,
```

1    2021 Plaintiff's opposition to joint motion for attorneys'

2    fees and additional costs, which was clearly," quote,

3    "mailed in" unquote.  "Despite CAIR and CAIR Florida having

4    filed an extremely detailed joint motion for attorneys'

5    fees and costs, which was supported by numerous

6    declarations, Defendants Coleman, Dhillon, and Young threw

7    together a cursory and slip shod response of only eight

8    pages making only general and extremely broad arguments.

9    The final straw was that Defendants Coleman, Dhillon, and

10   Young still chose not to comply with Southern District of

11   Florida rule 7.3(a), which required them to describe with

12   reasonable particularity each time entry or nontaxable

13   expense to which it objects both as to issues of

14   entitlement and as to amount and shall provide supporting

15   legal authority."

16           That's an accurate statement in that paragraph,

17   correct?

18           MR. SANDO:   Form.

19       A.   No.

20   BY MR. KLAYMAN:

21       Q.   Why is it not accurate?

22       A.   It was not clearly mailed in.  It was not

23   cursory --

24       Q.   Let's stop there with the "cursory" and the

25   "mailed in."  The reason that you only generally challenged

```
 1    the attorneys' fees and costs is because you had already
 2    been untimely in filing a response and wanted to get
 3    something in quickly, correct, and didn't want to take the
 4    time or effort to challenge the claimed attorneys' fees of
 5    CAIR line by line, correct?
 6              MR. SANDO:   Form.
 7    BY MR. KLAYMAN:
 8         Q.   Correct?
 9         A.   No.
10         Q.   It would have taken great effort to challenge the
11    attorneys' fees and costs claimed by CAIR line by line,
12    correct?
13              MR. SANDO:   Form.
14         A.   No.
15    BY MR. KLAYMAN:
16         Q.   In fact, they were claiming almost $150,000 of
17    attorney's fees; that was a lot to go through, correct?
18              MR. SANDO:   Form.
19         A.   "A lot" is a subjective term.
20    BY MR. KLAYMAN:
21         Q.   Okay.   That's a substantial sum in your opinion,
22    correct?
23              MR. SANDO:   Form.
24         A.   The sum doesn't -- I don't understand your
25    question.
```

1    BY MR. KLAYMAN:

2         Q.   My question is that they had submitted affidavits

3    which were extremely detailed which set forth their claim

4    for attorneys' fees of about $150,000, and it would have

5    required effort to go through each of those line item

6    entries of the work that CAIR's attorneys had done to

7    respond pursuant to Florida rule 7.3(a), item by item,

8    correct?

9              MR. SANDO:   Form.

10             MR. BLOCH:   Join.

11        A.   As the complaint states in paragraph 38, the

12   motion by CAIR and CAIR Florida was extremely detailed and

13   was supported by numerous declarations.  Viewing it, my

14   conclusion was that it would be difficult to find a

15   principal basis for objecting to this well-developed and

16   authenticated record of charges under the circumstances in

17   a situation where there had been unusual motion practice

18   implicating unusual and, in some cases, complex litigation

19   issues, in a court that had already demonstrated a decided

20   lack of sympathy for my client on issues where I felt far

21   more strongly I could support my arguments.

22   BY MR. KLAYMAN:

23        Q.   Did you seek to retain an expert to rebut the

24   claims of CAIR with regard to each of their entries for

25   attorneys' fees and costs?

```
 1              MR. SANDO:  Form.

 2         A.   No.

 3    BY MR. KLAYMAN:

 4         Q.   In the ordinary course of your practice over many

 5    years, that would be something that you would do in the

 6    ordinary course, correct?

 7              MR. SANDO:  Form.

 8         A.   No.

 9    BY MR. KLAYMAN:

10         Q.   And you yourself had the expertise to be able to

11    assess whether the attorneys' fees that were claimed by

12    CAIR were correct or whether they were inflated, correct?

13              MR. BLOCH:  Form.

14         A.   I had the experience.

15    BY MR. KLAYMAN:

16         Q.   So you yourself could have countered their

17    attorneys' fees by submitting your own affidavit by saying

18    "this line item, they're charging too much," et cetera,

19    correct?

20              MR. SANDO:  Form.

21              MR. BLOCH:  Join.

22         A.   If I had observed time entries that struck me as

23    clearly amenable to that kind of objection, I would not

24    have hesitated to do so.

25    BY MR. KLAYMAN:
```

 1          Q.    So you considered CAIR's fees to be totally

 2     legit?

 3               MR. BLOCH:    Form.

 4               MR. SANDO:    Form.

 5          A.    I consider them to have been so well-documented

 6     and thorough that I did not really have a good faith basis

 7     for objecting to any particular item of expense or time

 8     delay.

 9     BY MR. KLAYMAN:

10          Q.    Of course the real reason you didn't want to

11     object line by line, and Mr. Young didn't as well, is that

12     would have taken a lot of time, correct?

13               MR. SANDO:    Object to form.

14               MR. BLOCH:    Form.

15          A.    No.

16     BY MR. KLAYMAN:

17          Q.    Well, you are aware that the Magistrate Judge

18     Reinhart himself cut the fees back 20 percent, correct?

19          A.    I am.

20          Q.    So apparently you are aware that he didn't agree

21     with you that they were well pled, correct?

22               MR. SANDO:    Object to form.    Misstates his

23          testimony.

24          A.    The Magistrate has the discretion to act as he

25     sees fit.    I did not see a principal basis on which I

1    could object to these charges.

2    BY MR. KLAYMAN:

3       Q.   In fact, you're aware from having participated in

4    the case as lead counsel, that the amount of work claimed

5    by CAIR was inflated?

6            MR. SANDO:   Form.

7       A.   I am not.

8    BY MR. KLAYMAN:

9       Q.   You're aware that regrettably, based on your

10   years of practice, that lawyers frequently ask for more

11   than they deserve in fee matters thinking that the court

12   will cut them back?

13           MR. SANDO:   Form.

14      A.   I am aware that some lawyers do this.

15   BY MR. KLAYMAN:

16      Q.   As a general rule, you're aware that the legal

17   profession is not a paradigm of honesty, is it?

18      A.   I think lawyers are more honest than nonlawyers,

19   as a general rule.

20      Q.   How long have you been practicing?

21      A.   Thirty-five years.

22      Q.   How old are you now?

23      A.   Sixty-one.

24      Q.   Where did you graduate from law school?

25      A.   Northwestern University School of Law.

```
 1        Q.    Paragraph 45 where it says, "indeed, Ms. Loomer

 2   is in possession of communications between herself and

 3   Defendant Coleman where Defendant Coleman admits that the

 4   law firm made egregious errors in representing the

 5   Plaintiffs."  Do you have that correspondence?

 6        A.    I don't believe I do.

 7        Q.    Who has it?

 8        A.    I believe, according to paragraph 45, Ms. Loomer

 9   has it.

10        Q.    Is that correspondence in the possession of

11   Dhillon law firm?

12        A.    No.

13             MR. KLAYMAN:  I would ask that court reporter

14        mark -- what is it?  Is it exhibit 8 or 9?

15             MR. ANDERSON:  This is 8.

16             MR. KLAYMAN:  Exhibit 8.  Defendant Coleman's

17        response to Plaintiff's first request for production

18        of documents.

19   (Exhibit No. 8 was marked for identification.)

20   BY MR. KLAYMAN:

21        Q.    If you could put that up on screen.

22             Do you remember responding to this, Mr. Coleman,

23   or having your lawyer do it?

24        A.    Yes.

25        Q.    You consulted with your lawyer in making the
```

1   response to this request for production of documents, the

2   first request?

3       A.   I do -- or I did.

4       Q.   What your lawyer wrote is what you directed him

5   to write?

6            MR. SANDO:  Object to form.  Do not answer that

7       question.  That's privileged.

8   BY MR. KLAYMAN:

9       Q.   You didn't produce any documents as to Ms. Loomer

10  or Iloominate Media in response to the first request for

11  production of documents?

12           MR. SANDO:  Object to form.

13      A.   My counsel was responsible for production of

14  documents.

15  BY MR. KLAYMAN:

16      Q.   Let's just turn to number four, as just one

17  example, wherein it is requested the "documents which will

18  be used or cited to show that each the Defendants did not

19  commit legal malpractice, violate his or her fiduciary

20  duties to Plaintiffs and/or did not act in a fraudulent

21  fashion towards them."  The response -- your response:

22  "Objection.  Defendant Ronald Coleman states that this

23  request is vague and ambiguous."

24           What is vague and ambiguous about that request?

25           MR. SANDO:  Objection.  Object to form.

1    BY MR. KLAYMAN:

2         Q.   You can respond.

3         A.   My lawyers recommended certain objections be

4    interposed in response to discovery, and I deferred to

5    them.

6         Q.   And those recommendations were for purposes of

7    delay and obstruction?

8              MR. SANDO:   Object to form.  Mr. Coleman, don't

9         speak about recommendations.  There is a privilege

10        there, which you have a right to insert there.  I

11        instruct you not to answer.

12   BY MR. KLAYMAN:

13        Q.   Let me finish this.  "Defendant Ronald Coleman

14   states this request is vague and ambiguous, overbroad and

15   unduly burdensome, protected by the work product privilege,

16   and not reasonably calculated to lead to admissible

17   evidence."  You stand by that?

18             MR. SANDO:   Object to form.

19        A.   Yes.

20   BY MR. KLAYMAN:

21        Q.   Sir, you are aware that you could be subject to

22   sanctions personally for making that response, correct?

23             MR. SANDO:   Object to form.  Mr. Klayman, don't

24        try to bully my client.  You never even filed a

25        motion to compel on this.  Form.

1          MR. KLAYMAN:  I'm asking him a question, and
2     it's not bullying.  I'm talking very softly.
3          MR. SANDO:  You are bullying because there's
4     absolutely zero basis, considering you never
5     litigated the --
6          MR. KLAYMAN:  You are concerned, Mr. Sando,
7     because it touches on your representation.
8          MR. SANDO:  It's filed by me, so if you want to
9     know why we filed what we filed, then litigate it in
10    court.
11         MR. KLAYMAN:  This is going to come up at trial,
12    so I'm entitled to ask about it.
13         MR. SANDO:  That's not a trial issue,
14    Mr. Klayman.  If you could read the response, he is
15    very clear that the law firms have the files and they
16    produce the records.
17         MR. KLAYMAN:  You got a guy here, no disrespect
18    towards Mr. Coleman, who can't remember much of
19    anything.
20         MR. SANDO:  Object to form.
21         MR. KLAYMAN:  Then he's asked what documents he
22    is relying upon to defend himself of the legal
23    malpractice claims in a complaint verified by
24    Ms. Loomer, on behalf of herself and Iloominate
25    Media, which is --

```
 1          MR. SANDO:  No.  He is not being asked what he
 2   relied upon.  That is a request for documents.  That
 3   is a production of documents.  That is not
 4   Mr. Coleman's testimony.  Form.
 5          MR. KLAYMAN:  That's correct.  That's correct.
 6   So I'm asking him --
 7          MR. SANDO:  You're asking him if he's relying
 8   upon that.  He responded to that, Mr. Klayman.
 9          MR. KLAYMAN:  I'm asking why he considers that
10   request to be vague and ambiguous, overbroad and
11   unduly burdensome, protected by work product
12   privilege, and not reasonably calculated to lead --
13          MR. SANDO:  I'm going to instruct you not to
14   answer on the basis of attorney-client privilege and
15   the work product privilege, and it invades the
16   providence of this defendant to defend himself.
17          MR. KLAYMAN:  I'm not asking him for anything
18   that you discussed with him.  I'm asking him he
19   stands behind that.  He's the one responsible --
20          MR. SANDO:  Let me say something.  To the extent
21   that he can answer that question without relying on
22   the advice of his lawyer, then he can answer it.
23          MR. KLAYMAN:  Yeah.  Let him do that.
24          MR. SANDO:  Do you understand, Mr. Coleman?  To
25   the extent that you can answer Mr. Klayman's question
```

80

```
 1        without relying on the advice and consultation of

 2        your lawyers, you are welcome to do so.  If you

 3        can't, then I instruct you not to answer.

 4        A.   I cannot answer that question without relying on

 5   privileged communications with my counsel.

 6   BY MR. KLAYMAN:

 7        Q.   It goes on to state "notwithstanding the

 8   foregoing objection, Mr. Coleman does not have personal

 9   possession of any file relative to the underlying

10   litigation styled, Laura Loomer and Iloominate Media LLC

11   versus CAIR Foundation Inc, et al., 9:19cv81179 (Southern

12   District of Florida).  The underlying file documents remain

13   in the possession of the law firms, and Mr. Coleman would

14   defer to the codefendant law firms for their respective

15   litigation files, as they are kept in their regular course

16   of business, and which may contain responsive documents to

17   this request ."

18        Are you saying that in particular with regard to

19   Dhillon law firm of which you are Of Counsel, that the

20   documents I requested on behalf of Ms. Loomer and

21   Iloominate Media are not in your custody, possession, and

22   control?

23        MR. SANDO:  Object to form.

24        A.   No.

25   BY MR. KLAYMAN:
```

1        Q.   You don't have the ability to request those

2   documents from Dhillon?

3            MR. SANDO:   Object to form.   As this request was

4        directed to Mr. Coleman individually, not the law

5        firms.

6            MR. KLAYMAN:   That's fine.   I'm clear what it's

7        directed to.

8   BY MR. KLAYMAN:

9        Q.   But you are a lawyer with the Dhillon law firm,

10  correct?

11       A.   What the answer says is I do not have personal

12  possession, that the documents are in the possession of

13  the law firms.

14       Q.   Well, not all the documents are in possession of

15  law firms, are they, such as emails and texts to and from

16  Ms. Loomer?

17           MR. SANDO:   Form.

18       A.   I'm not aware of any that would not be.

19  BY MR. KLAYMAN:

20       Q.   You never did a search to see whether there were

21  documents that were not in the possession of these law

22  firms, did you, that were responsive to this request to

23  produce?   You never did a search, did you?

24       A.   I did.

25           MR. SANDO:   Object to form.

1        A.   I did.

2    BY MR. KLAYMAN:

3        Q.   Correct?

4        A.   Incorrect.  I've answered it three times.

5        Q.   No, you haven't answered it at all, Mr. Coleman.

6    I'm asking for your response.

7             THE WITNESS:  Will the reporter please read back

8        my response?

9    BY MR. KLAYMAN:

10       Q.   You're simply hiding behind your counsel.

11            MR. SANDO:  Object to form.  Mr. Klayman, don't

12       badger or belittle my client.  Form.

13            THE WITNESS:  He can't belittle me.

14   BY MR. KLAYMAN:

15       Q.   Why can't I belittle you?

16            MR. SANDO:  Form.

17       A.   Because my size is not in any way a function of

18   your comments, statements, reflections, or views.

19   BY MR. KLAYMAN:

20       Q.   I'm not worthy of asking you questions; is that

21   the reason?

22       A.   That is also true.

23       Q.   Well, you made that clear to The Daily Beast,

24   which remains potentially actionable, Mr. Coleman.

25            MR. SANDO:  Object to form.  Is that a question

1          or a statement?

2                    MR. KLAYMAN:  That's a statement.

3                    MR. SANDO:  Okay.  Let's focus on questions.

4     BY MR. KLAYMAN:

5          Q.   You never searched your cellphone, or your

6     computer yourself, for emails and/or text messages to and

7     from Ms. Loomer with regard to the allegations that you had

8     committed legal malpractice and violated your fiduciary

9     duties to the Plaintiffs and acted in a fraudulent fashion

10    towards them?  You never --

11                   MR. SANDO:  Object to form.

12    BY MR. KLAYMAN:

13         Q.   You never made such a search, did you?

14                   MR. SANDO:  Object to form.

15         A.   I did search my devices for anything that would

16    not have been already available in the law firm records.

17    BY MR. KLAYMAN:

18         Q.   What devices did you search --

19                   MR. SANDO:  Form.

20    BY MR. KLAYMAN:

21         Q.   -- specifically?

22         A.   My computer and my cellphone.

23         Q.   What kind of computer do you have?

24         A.   A PC.

25         Q.   And what's the make of it?  What is the model and

1    what company?

2         A.   I don't know.

3         Q.   You don't know whether you have an Apple, or you

4    don't whether you have a --

5         A.   No.  It is a -- an Intel PC.  I change machines

6    approximately every two years.  I, frankly, couldn't tell

7    you right now.  I probably got a Dell -- a Dell computer

8    at home.

9         Q.   When you claim to change machines, you transfer

10   over what's on the prior machine, correct?

11        A.   Yes.

12        Q.   So you have everything still in your possession

13   of your communications with Ms. Loomer with regard to your

14   representation of her and Iloominate Media, correct?

15             MR. SANDO:  Object to form.

16        A.   Everything I have is in the possession of the

17   law firm.

18   BY MR. KLAYMAN:

19        Q.   Including your computers?

20        A.   No.

21        Q.   Including your cell phones?

22        A.   No.

23        Q.   So my question is when you changed the computer,

24   and we'll get to the cellphone, you would have transferred

25   over to the new computer that which you had on the old

1    computer, correct?

2         A.   Yes, but all my firm information, all the firm

3    documents, all firm business was always retained in the

4    possession of the law firms.  I was meticulous.  I would

5    even copy and paste WhatsApp conversations and text

6    conversations into the document management systems of the

7    law firms because that's where they belong.

8         Q.   From your computer?

9         A.   Yes, and from my cellphone.

10        Q.   So you're saying that Dhillon has all that stuff?

11        A.   Yes.

12        Q.   Did you ask Dhillon to be able to conduct the

13    search yourself?

14             MR. BLOCH:   Form.

15        A.   No.

16    BY MR. KLAYMAN:

17        Q.   Who, if anyone, conducted the search in response

18    to the requests to produce, and I'll get to number two,

19    that were sent to you to respond to in this case?

20        A.   I did.

21        Q.   So you went into Dhillon's files?

22        A.   Yes.

23        Q.   Is there a record of your having requested access

24    to those files with Dhillon?

25             MR. SANDO:   Object to form.  Don't answer that

```
 1          question.  That would be work product and

 2          attorney-client privilege.

 3               MR. KLAYMAN:  It's not attorney-client

 4          privilege.  The fact that he --

 5               MR. SANDO:  What he did --

 6               MR. KLAYMAN:  No.

 7               MR. SANDO:  -- and who he spoke with -- let me

 8          make the objection, because you're challenging it.

 9               Who he spoke with at Dhillon, which is a named

10          defendant to this lawsuit of which he works for, in

11          response to discovery is privileged.

12               MR. KLAYMAN:  No, it's not.  I mean, that is not

13          dealing with the substance of any communication, and

14          you know --

15               MR. SANDO:  It would be his work product.

16               MR. KLAYMAN:  -- even in a privilege log, you

17          have to state the date, individuals that are

18          involved, and the general nature.

19               MR. SANDO:  You're asking him this question now

20          for the first time, and I'm instructing him that he

21          has a work product and an attorney-client privilege,

22          and I would instruct Mr. Coleman not to answer on

23          those bases.

24               MR. KLAYMAN:  Certify it.

25     BY MR. KLAYMAN:
```

1        Q.    So you can't verify with anything in writing that

2    you ever actually did a search in response to the requests

3    to produce that were served upon you?

4              MR. SANDO:   Object to form.

5        A.    I'm unfamiliar with the entire concept.   I'm a

6    lawyer at the Dhillon Law Group.   I have access to the

7    files that I maintain in connection with my work, and I

8    searched those files in order -- and turned them over to

9    outside counsel for production.

10   BY MR. KLAYMAN:

11       Q.    Who, if anyone, from Dhillon participated in any

12   search in response to requests to produce served upon you

13   by Ms. Loomer and Iloominate Media?   Who from Dhillon

14   conducted any search, if anyone?

15       A.    Ronald Coleman.

16       Q.    You're the only one?

17       A.    Yes.

18       Q.    There was no administrative individual that

19   assisted you in the search?

20       A.    Correct.

21       Q.    So if you're the only one that did a search, then

22   how would Dhillon know what to produce in response to the

23   requests to produce that were served upon them?

24              MR. SANDO:   Object to form.

25              MR. BLOCH:   Join.

```
 1        A.   I don't understand the question.

 2   BY MR. KLAYMAN:

 3        Q.   Well, Dhillon has been sued here, correct?

 4   Correct?

 5        A.   Oh.  Yeah.  Very good.

 6        Q.   And Dhillon's concerned with the fact that

 7   they're a defendant in this case, correct?

 8        A.   I can't speak --

 9             MR. BLOCH:  Object to form.

10        A.   I can't speak for the firm.

11   BY MR. KLAYMAN:

12        Q.   Who at the firm have you talked to about this

13   lawsuit -- at Dhillon?

14             MR. SANDO:  You can give the name, but not the

15        content of what you discussed.  Form.

16             MR. BLOCH:  Join.

17        A.   Harmeet Dhillon, Matthew Sarelson.

18   BY MR. KLAYMAN:

19        Q.   What was the general subject matter of your

20   discussion?

21             MR. SANDO:  I instruct you not to answer.

22        Attorney-client, work product privilege.

23             MR. BLOCH:  Join.

24             MR. KLAYMAN:  General subject matter is not

25        covered.
```

```
 1              MR. SANDO:  Yeah, it is, Larry.  You don't get
 2         to decide.  I made a good faith basis for asserting a
 3         privilege, attorney-client, work product privilege.
 4         I instruct you not to answer.
 5              MR. BLOCH:  Join.
 6              MR. KLAYMAN:  Certify it.
 7              That would ordinarily be required in a privilege
 8         log, for instance.
 9              MR. SANDO:  In response to an interrogatory.
10    BY MR. KLAYMAN:
11         Q.  In terms of --
12              MR. KLAYMAN:  No.  When you produce documents,
13         you know that, Mr. Sando, that if you don't produce
14         documents you're claiming a privilege on, you have to
15         produce a privilege log.
16              MR. SANDO:  Mr. Klayman, he did not assert a
17         privilege in his response, Ron Coleman's response, to
18         the RFP that you just marked.
19              MR. KLAYMAN:  No.  It was a total stonewall,
20         correct?
21              MR. SANDO:  It was an objection that you never
22         bothered to pursue.
23              MR. KLAYMAN:  Well, not yet.
24              MR. SANDO:  Well, you got a lot going on.  Form.
25    BY MR. KLAYMAN:
```

```
 1        Q.   So this is the point that I'm trying to make:
 2   You're the only one that knows what was produced and what
 3   was not produced by Dhillon.
 4             MR. SANDO:  Object to form.
 5   BY MR. KLAYMAN:
 6        Q.   Correct?
 7        A.   I turned over the entirety of the files to
 8   outside counsel.  So there is no issue of what was or what
 9   was not produced.  Everything -- everything that was or
10   was not produced, that decision was made at the level of
11   outside counsel.
12        Q.   Did outside counsel consult with you before it
13   made production, or he made production?
14        A.   Yes.
15             MR. SANDO:  Object to form.
16   BY MR. KLAYMAN:
17        Q.   Did you go through each document that was being
18   produced with him?
19             MR. SANDO:  Object to form.  I instruct you not
20        to answer on the basis of work product and
21        attorney-client privilege.
22             MR. KLAYMAN:  That's not privileged.
23             MR. SANDO:  What documents we discussed --
24             MR. KLAYMAN:  But that --
25             MR. SANDO:  Let me finish the objection.  What
```

```
 1          documents we discussed or not discussed in response
 2          to a discovery request with our own clients is
 3          privileged.
 4               MR. KLAYMAN:  I'm not asking for content.
 5               MR. SANDO:  You just did.  You asked --
 6               MR. KLAYMAN:  No.  I'm asking did you go over
 7          each document that was produced.
 8               MR. SANDO:  That's content.  That's content.
 9          That's privilege.  That's privileged.  That's
10          content, and I instruct you not to answer.
11               MR. KLAYMAN:  Certify it.
12     BY MR. KLAYMAN:
13          Q.   I'll turn your attention to --
14               MR. KLAYMAN:  What's the next exhibit number,
15          Mr. Anderson?
16               MR. ANDERSON:  9.
17               MR. KLAYMAN:  9?  Defendant Ron Coleman's
18          responses and objections to Plaintiff's second
19          request for production document.
20          (Exhibit No. 9 was marked for identification.)
21     BY MR. KLAYMAN:
22          Q.   You remember receiving this, do you not?
23               MR. KLAYMAN:  And you can scroll through it so
24          he can look through it, Mr. Anderson.
25          A.   I don't need to scroll it in such slow motion.
```

```
 1    I remember -- I remember seeing it, yes.
 2    BY MR. KLAYMAN:
 3         Q.    Number one says "any and all documents which
 4    refer or relate in any way to communications with The Daily
 5    Beast, or any other media publication concerning Laura
 6    Loomer and/or Larry Klayman."  Your objection is "Defendant
 7    states this request is irrelevant, vague and ambiguous,
 8    overbroad, and not reasonably calculated to lead to
 9    admissible evidence."
10         Now, with regard to that Daily Beast story,
11    which we went over at the beginning of this deposition,
12    you are claiming that Ms. Loomer and I are making false
13    claims that you committed malpractice, correct?
14         MR. SANDO:  Object to form.
15         A.    I would say meritless claims.
16    BY MR. KLAYMAN:
17         Q.    Okay.  Meritless claims.  And you're saying the
18    only reason that I'm doing that is because I want to make
19    myself relevant again in the conservative legal community.
20    That's what you told The Daily Beast, right?
21         MR. SANDO:  Object to form.
22         A.    That is what I told The Daily Beast.
23    BY MR. KLAYMAN:
24         Q.    Correct.  That is relevant, because it deals with
25    the issue of whether you committed malpractice, correct?
```

```
 1              MR. SANDO:  Form.  Argumentative.

 2   BY MR. KLAYMAN:

 3        Q.   Correct?

 4        A.   No.

 5              MR. KLAYMAN:  Certify it.

 6              MR. SANDO:  Certify what?

 7              MR. KLAYMAN:  The response.  It's nonresponsive.

 8              MR. SANDO:  You don't certify that, Mr. Klayman.

 9         Form.

10              MR. KLAYMAN:  I'll do what I want.  It will be

11         certified.

12   BY MR. KLAYMAN:

13        Q.   Number two, "any and all documents which refer or

14   relate to communications with the US District Court for the

15   Southern District of Florida, the Florida Bar, or any other

16   Bar authority with regard to Larry Klayman."

17              You, in fact, sent communications to the

18   Southern District of Florida and the Florida Bar with

19   regard to me and my participation as counsel for Laura

20   Loomer and Iloominate Media, correct?

21              MR. SANDO:  Object to form.

22        A.   Correct.

23   BY MR. KLAYMAN:

24        Q.   And you have those communications, do you not?

25              MR. SANDO:  Form.
```

```
 1        A.   I am not sure.
 2   BY MR. KLAYMAN:
 3        Q.   Do you have any communications from those courts
 4   and the Florida Bar from that court in the Florida Bar?
 5        A.   I believe so.
 6        Q.   Okay.  Well, I'm requesting that you produce
 7   them.  I'm going to give you another opportunity to do it
 8   before I have to go to the court.  Are you going to do
 9   that?
10        MR. SANDO:  There is an objection which stands
11        absent a court order.  Form.
12   BY MR. KLAYMAN:
13        Q.   The reason you did that is that you were trying
14   to interfere with my representation of Ms. Loomer and
15   Iloominate Media?
16        MR. SANDO:  Object to form.
17   BY MR. KLAYMAN:
18        Q.   Correct?
19        A.   No.
20        Q.   No, you just did it out of -- because you're a
21   person who has great concern with regard to me?  You're
22   fixated on me?  Is that why you did it?
23        MR. SANDO:  Form.  Come on, Larry.
24        Argumentative.
25   BY MR. KLAYMAN:
```

1      Q.   Is that why you did it?

2           MR. SANDO:  Form.

3    BY MR. KLAYMAN:

4      Q.   Is this something you do with lawyers you do

5    business with or have contact with, you just send in Bar

6    complaints to courts and Bars?

7           MR. SANDO:  Object to form.

8      A.   Not all.

9    BY MR. KLAYMAN:

10     Q.   Not all.  So you viewed me as a threat, is that

11   correct?  That's why you did it?

12          MR. SANDO:  Object to form.

13     A.   No.

14          MR. SANDO:  Which malpractice case are we

15      talking about here, Larry?  Because I'm confused with

16      this line of questioning.  I don't know if there's

17      another one that -- form.

18   BY MR. KLAYMAN:

19     Q.   In fact, that was something you did vindictively

20   because I had raised the possibility in a court pleading of

21   your being held accountable for alleged malpractice,

22   correct?

23          MR. SANDO:  Form.

24     A.   No.

25   BY MR. KLAYMAN:

1         Q.   So you thought you'd try to throw a monkey wrench

2    into my representation of Ms. Loomer before the Southern

3    District of Florida, where this case resided in front of

4    Judge Ruiz and Magistrate Judge Reinhart, correct?

5              MR. SANDO:   Form.

6         A.   No.

7    BY MR. KLAYMAN:

8         Q.   What do you mean by "no"?

9         A.   You asked me a yes or no question.   I answered

10   "no".

11        Q.   Okay.   So you just gratuitously sent this stuff

12   to the Southern District of Florida and the Florida Bar?

13             MR. SANDO:   Object to form.

14        A.   No.

15   BY MR. KLAYMAN:

16        Q.   Are you aware of laws that say trying to tamper

17   with counsel of a litigant can constitute a crime?

18        A.   I don't understand what the word "tamper" means.

19        Q.   Obstruct -- obstruct representation of the lawyer

20   who's representing the client in due course.

21        A.   Generally speaking, yes.

22        Q.   Turn to request three:   "Any and all documents

23   which refer or relate to any and all legal malpractice, any

24   negligent allegations leveled against you by any person or

25   entity in your legal practice."

1          Are all of these documents in the custody,

2    possession, and control of the Dhillon law firm?

3        A.    Yes.

4        Q.    Even dealing with legal malpractice claims

5    against you before you became Of Counsel to that firm?

6        A.    No.

7        Q.    So you have them, right?

8        A.    No.

9        Q.    Where are they?

10       A.    They do not exist.

11       Q.    Why don't they exist?

12       A.    I have never been accused of legal malpractice

13   before.

14       Q.    Well, you just told me earlier that you got sued

15   for financial -- alleged financial irregularities in your

16   representation, correct?

17            THE WITNESS:  Have you muted my counsel's

18       microphone, Mr. Klayman?

19            MR. KLAYMAN:  No.  Maybe he went to the

20       bathroom.  I don't know.

21            THE WITNESS:  Mr. Sando, can you please respond?

22            MR. ANDERSON:  He just messaged in the chat.

23            MR. LIDA:  He's advised he's muted.  Stop the

24       depo.

25            MR. KLAYMAN:  We don't have the ability to mute

```
 1        anybody else.
 2             MR. LIDA:  Mr. Sando is unable to participate,
 3        so we kind of need to take a break.
 4             MR. KLAYMAN:  All right.  We can take a break
 5        now anyway.  Let's take a 15-minute break.  We'll
 6        resume at 9:25 -- 9:26.
 7             THE VIDEOGRAPHER:  The time is 12:06 p.m.  We
 8        are off the record.
 9        (A recess was taken from 12:06 p.m. until 12:25 p.m.)
10             THE VIDEOGRAPHER:  The time is 12:25 p.m.  Back
11        on the record.
12             MR. KLAYMAN:  I will ask the next exhibit be
13        made Exhibit 10.  It's Defendants Ronald Coleman and
14        Mandelbaum Barrett PC's motion for final judgment.
15        Can you put that up on the screen, Mr. Anderson?
16        (Exhibit No. 10 was marked for identification.)
17             MR. KLAYMAN:  Mr. Coleman, are you there?
18             THE WITNESS:  Yes.
19             MR. KLAYMAN:  Mr. Sando there?
20             MR. SANDO:  Yes.
21             MR. KLAYMAN:  Okay.  Good.  We're all here.
22   BY MR. KLAYMAN:
23        Q.   Have you seen this motion for summary judgment
24   that was filed recently?
25        A.   Yes.
```

```
 1          Q.   You wrote the first draft?

 2               MR. SANDO:  I'm sorry.  What's the question?

 3   BY MR. KLAYMAN:

 4          Q.   Yeah.  Mr. Coleman, you wrote the first draft of

 5   this, didn't you?

 6               MR. SANDO:  Object to form.  Don't answer.

 7          Privileged.  Work product privilege.  Attorney-client

 8          privilege.

 9               MR. KLAYMAN:  That's not privileged.

10               MR. SANDO:  Yes, it is.  Work product of who

11          prepared a motion in an ongoing case?  Absolutely.

12               MR. KLAYMAN:  Oh, really?  Okay.  Certify that.

13          I'm learning all kind of new things.  Thank you, Mr.

14          Sando.

15               MR. SANDO:  Yeah, you are.

16               MR. KLAYMAN:  I don't think so.  I don't think

17          so.

18               MR. SANDO:  What relevance is it who drafted a

19          motion for summary judgment, Mr. Klayman?

20               MR. KLAYMAN:  That's my decision to ask the

21          question.

22               MR. SANDO:  Yeah.  Exactly.  None.

23   BY MR. KLAYMAN:

24          Q.   I'm asking you, Mr. Coleman, did you draft this?

25               MR. SANDO:  Object to form.  Instruct you not to
```

1          answer.  Work product.  Attorney-client.

2     BY MR. KLAYMAN:

3          Q.   Did review this motion for summary judgment

4     before it was filed?

5          A.   Yes.

6          Q.   Did you suggest changes to the draft of it before

7     it was filed?

8               MR. SANDO:  Object to form.  Work product.

9          Attorney-client.  Do not answer.

10    BY MR. KLAYMAN:

11         Q.   Have you ever read the deposition of Laura Loomer

12    in this case?

13         A.   No.

14         Q.   You're aware -- were you advised that before --

15    strike that.

16              You were advised that she testified that she

17    would never have accepted the offer of judgment of CAIR if

18    she had known the ramifications of what could be caused

19    with regard to attorneys' fees, et cetera.

20              MR. SANDO:  Object to form.

21         A.   I am aware.

22    BY MR. KLAYMAN:

23         Q.   You're also aware that Ms. Loomer and Iloominate

24    Media's claims for malpractice, or shall we say the counts

25    in the amended complaint, concern more than just whether or

101

```
 1    not an offer of judgment should have been accepted as put

 2    forth by CAIR, correct?

 3              MR. SANDO:  Object to form.

 4         A.   I am aware.

 5    BY MR. KLAYMAN:

 6         Q.   So to the extent that there's any validity to the

 7    motion for final summary judgment, it should have been

 8    styled, correct, "partial summary judgment," correct?

 9              MR. SANDO:  Object to form.

10         A.   I have no opinion on that.  I rely on my outside

11    counsel for how to designate motions and how to format

12    them.

13    BY MR. KLAYMAN:

14         Q.   You are aware that you were sued for legal

15    malpractice, professional negligence, gross professional

16    negligence --

17         A.   I'm aware of the claims in the --

18         Q.   -- fraudulent inducement, and breach of fiduciary

19    duty, correct, and breach of contract?

20         A.   Yes.

21         Q.   And you're aware that the unjust enrichment count

22    is no longer in this case?

23         A.   I am.

24         Q.   Do you yourself have a listing of the legal fees

25    that were charged to Ms. Loomer and Iloominate Media?
```

```
 1        A.   No.

 2        Q.   Mandelbaum law firm has that, and Dhillon?

 3             MR. SANDO:   Object to form.

 4        A.   I would assume so.

 5   BY MR. KLAYMAN:

 6        Q.   Did you itemize the fees that were charged to

 7   Laura Loomer and Iloominate Media during your

 8   representation of them?

 9             MR. SANDO:   Object to form.

10        A.   I don't understand what "itemize fees" means.

11   The bills reflect itemized time charges, yes.

12   BY MR. KLAYMAN:

13        Q.   Okay.  Is there any other record that was kept by

14   you, or the Mandelbaum law firm, or Dhillon as to the work

15   you performed on behalf of Iloominate Media and Ms. Loomer?

16             MR. SANDO:   Form.

17        A.   The record of our communications implies time

18   spent, but it's not a time record as such.

19   BY MR. KLAYMAN:

20        Q.   Did you keep notes of your communications with

21   Ms. Loomer?

22        A.   No.

23        Q.   Do you have an iPad?

24        A.   No.

25        Q.   Do you have any kind of device where you would
```

```
 1    record notes of what you've done on a particular case?

 2         A.   Yes.

 3         Q.   What's that?

 4         A.   I have computers with Outlook -- I mean, there

 5    are virtually every sort of mobile phone and computer has

 6    software on it that enables you to keep notes.

 7         Q.   Do you have notes with regard to your

 8    representation of Ms. Loomer and Iloominate Media --

 9              MR. SANDO:  Object to form.

10    BY MR. KLAYMAN:

11         Q.   -- on that device?

12         A.   On no device.

13         Q.   Maybe I misunderstood.  I want to know if there

14    is any recordation, other than your billing statements, of

15    the work you performed for her and Iloominate Media?

16         A.   No.

17         Q.   While you were with Mandelbaum, what associates

18    worked on the case for Ms. Loomer and Iloominate Media with

19    you or other lawyers and paralegals?  Who was involved in

20    representing Ms. Loomer and Iloominate Media?

21         A.   Mr. Teppler, and another partner named Lauren

22    Topelsohn, and I would not be able to tell you the names

23    of any of the support staff.

24         Q.   Do you intend to call any of them as witnesses at

25    trial?
```

1           MR. SANDO:  Object to form.  Work product.  You

2       may answer, Ron, if you know.

3       A.   I am not the person who decides on witnesses to

4   be called at trial.

5   BY MR. KLAYMAN:

6       Q.   Have you spoken with either of these persons with

7   regard to this case?

8       A.   No.

9       Q.   Do you intend to call an expert witness at trial?

10          MR. SANDO:  Object to form.

11      A.   I leave that up to the judgment of the lawyers

12  representing me, and the law firm.

13  BY MR. KLAYMAN:

14      Q.   Have you identified an expert witness in this

15  case?

16          MR. SANDO:  Object to form.  Work product.  Do

17      not answer.

18          MR. KLAYMAN:  I'm talking about in pleadings.

19          MR. SANDO:  In pleadings?

20          MR. KLAYMAN:  Yeah.

21          MR. SANDO:  You're asking if he's consulted with

22      an expert in defense of the case?  Object to form.

23      Work product.  Attorney-client.  Do not answer.

24          MR. KLAYMAN:  Certify it.

25  BY MR. KLAYMAN:

105

```
1          Q.   When you moved from Mandelbaum law firm to

2     Dhillon law firm, you didn't have a separate representation

3     agreement prepared for Dhillon law firm with Ms. Loomer or

4     Iloominate Media, did you?

5          A.   Correct.

6          Q.   Is there anything in writing between you and the

7     Dhillon law firm that sets forth your representation of

8     Ms. Loomer and Iloominate Media?

9          A.   The firm was aware of all my ongoing cases, and

10    that was provided to them in writing.

11         Q.   And the firm advised you to prepare a legal

12    representation agreement for them to have with Ms. Loomer

13    and Iloominate Media?

14              MR. BLOCH:  Form.

15         A.   No.

16    BY MR. KLAYMAN:

17         Q.   Is there anything in writing which sets forth for

18    the Dhillon law firm what your terms of representation were

19    with Ms. Loomer and Iloominate Media when you were at

20    Mandelbaum?

21         A.   I believe the entire file was transferred over

22    from the Mandelbaum firm to Dhillon.  So the retainer

23    agreement would have been included in that file.

24         Q.   Is the Dhillon law firm going to claim that they

25    don't have any agreement with Loomer and Iloominate Media?
```

```
 1                MR. SANDO:  Object to form.
 2                MR. BLOCH:  Form -- join.
 3         A.    Can you repeat the question?
 4     BY MR. KLAYMAN:
 5         Q.    Is the Dhillon law firm going to make the claim
 6     that they don't have a legal representation agreement with
 7     Loomer and Iloominate Media?
 8                MR. SANDO:  Same objection.
 9         A.    I don't know.
10     BY MR. KLAYMAN:
11         Q.    Are they taking the position that you're the one
12     who's on the hook here?
13                MR. SANDO:  Object to form.  Same objection.
14     BY MR. KLAYMAN:
15         Q.    You can respond.
16         A.    Yeah, I don't really understand the question.
17     We've never had such a discussion.
18         Q.    Well, if there's no legal representation
19     agreement that Dhillon signed with Ms. Loomer and
20     Iloominate Media, are they saying "it's all on you,
21     Mr. Coleman"?
22                MR. BLOCH:  Form.
23                MR. SANDO:  Form.
24         A.    No.
25                MR. KLAYMAN:  Let's take a break.  I want to
```

107

1          consult with Ms. Loomer.  We may be close to

2          finishing here.  Let's take a 15-minute break.

3                THE VIDEOGRAPHER:  Thank you.  Time is 12:38

4          p.m.  We are off the record.

5          (A recess was taken from 12:38 p.m. until 12:50 p.m.)

6                THE VIDEOGRAPHER:  The time is 12:50 p.m.  We

7          are back on the record.

8    BY MR. KLAYMAN:

9          Q.   Mr. Coleman, you previously testified that you

10   were aware at the time you filed suit for Ms. Loomer and

11   Iloominate Media that CAIR did have alleged ties to

12   terrorist organizations, including Hamas, correct?

13         A.   Yes.

14         Q.   Consequently, the fact that Ms. Loomer had to pay

15   attorneys' fees to CAIR is something which was more than

16   emotionally difficult for her based on your opinion,

17   correct?

18               MR. SANDO:  Object to form.

19         A.   I can speculate -- I would deduce that that is

20   the case, yes.

21               MR. KLAYMAN:  I have no further questions.  At

22         this time I'm going to leave the deposition open

23         pending my seeking the documents which weren't

24         produced and some other matters where I had to

25         certify questions.  But as far as right now, we'll

```
 1        adjourn the deposition.
 2             MR. SANDO:  No.  We're not agreeing to adjourn.
 3        The deposition of Mr. Coleman is over.  There's no
 4        pending --
 5             MR. BLOCH:  Actually --
 6             MR. SANDO:  Mr. Bloch, sorry?  What?
 7             MR. BLOCH:  Blake, I'd like to just ask one
 8        question of Mr. Coleman.
 9             MR. SANDO:  Okay.
10                  CROSS-EXAMINATION
11   BY MR. BLOCH:
12        Q.   Mr. Coleman, this Brett Bloch.  I just have one
13   question for you.
14             Do you recall the date that you joined the
15   Dhillon Law Group?
16        A.   I think it was August 1, 2020.
17             MR. BLOCH:  Thank you very much.  Nothing
18        further.
19             MR. SANDO:  Okay.  So the witness will read.  We
20        are not agreeing to reproduce him.  There are no
21        motions to compel documents pending.  And if it's
22        ordered by Mr. Klayman, then I will take a copy for
23        myself.
24             MR. KLAYMAN:  And we'll let the Court decide
25        whether the deposition will go forward at this point.
```

1        So this concludes the deposition for right now, and

2        thank you for your attention everyone.

3            THE VIDEOGRAPHER:  Everyone ready to go off the

4        record?

5            MR. KLAYMAN:  Yes.

6            MR. SANDO:  Yes.

7            THE VIDEOGRAPHER:  The time is 12:52 p.m.  We

8        are off the record.

9   (Videotaped videoconference concluded at 12:52 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OATH

 2

 3        THE STATE OF FLORIDA

 4        COUNTY OF BROWARD

 5

 6

 7            I, the undersigned authority, certify that the

 8   witness, RONALD COLEMAN, appeared before me via videotaped

 9   videoconference on the 22nd of August, 2024.

10

11     Signed this 22nd of August, 2024.

12

13

14

15        _____

16        JAMIE D. MACKRELL, CSR
          Notary Public - State of Florida
17        Commission No. HH173501
          Expires:  September 8, 2025
18

19

20

21

22

23

24

25
```

1                    REPORTER'S CERTIFICATE

2

3          I, Jamie D. Mackrell, Shorthand Reporter and

4    Notary Public in and for the State of Florida at Large, do

5    hereby certify that the foregoing transcript, Pages 1 to

6    and including 109, is a true and correct transcription of

7    my stenographic notes of the statement given by RONALD

8    COLEMAN via videotaped videoconference, on the 22nd of

9    August, 2024, commencing at 10:00 a.m.

10         I FURTHER CERTIFY that I am neither attorney nor

11   counsel for, nor related to or employed by, any of the

12   parties to the action in which this statement is taken;

13   and further that I am not a relative or employee of any

14   attorney or counsel employed by the parties hereto, or

15   financially interested in the action.

16                    Dated this 27th of August, 2024.

17                    _____

18                    JAMIE D. MACKRELL, CSR
                      Notary Public - State of Florida
19                    Commission No. HH173501
                      Expires:  September 8, 2025
20

21

22              •

23

24

25                                      ſ

```
 1                        ERRATA SHEET

 2   In RE: LAURA LOOMER, et al. vs RONALD COLEMAN, et al.
     CASE NO.: 50-2023-CA-010810-XXXX-MB
 3   DEPONENT: RONALD COLEMAN

 4

 5   Page No:_____   Line No.: ____ Change to:_____

 6   Reason for change:_____

 7

 8   Page No:_____   Line No.: ____ Change to:_____

 9   Reason for change:_____

10

11   Page No.:____   Line No.: ____ Change to:_____

12   Reason for change:_____

13

14   Page No.:____   Line No.: ____ Change to:_____

15   Reason for change:_____

16

17   Page No.:____   Line No.: ____ Change to:_____

18   Reason for change:_____

19

20   Page No.:____   Line No.: ____ Change to:_____

21   Reason for change:_____

22   Under the penalties of perjury, I declare that I have read
     the foregoing document and that the facts stated are true.

23

24   _____

25   date                              Name
```

```
 1    AUGUST 26, 2024
      blake.sando@csklegal.com
 2
         IN RE:            Deposition of Ronald Coleman
 3              Taken on: August 22, 2024
                Laura Loomer, et al. vs Ronald Coleman, et al.
 4
      Dear Mr. Sando,
 5
                This letter is to advise you that the deposition
 6    taken in the above-referenced case has been
      transcribed.  Please have the deponent execute the
 7    Errata Sheet, which can be found at the back of the
      transcript, when reading your copy, and have it
 8    returned to us for distribution to all parties.
                The original of this transcript has been
 9    forwarded to the ordering party and your errata, once
      received, will be forwarded to all ordering parties
10    for inclusion in the transcript.
                If the deponent does not read and sign the
11    deposition within 30 days, the original, which has
      already been forwarded to the ordering attorney, may
12    be filed with the Clerk of the Court.
                If the deponent wishes to now waive signature,
13    please have the deponent sign his/her name in the
      blank at the bottom of this letter and return to the
14    address listed below.

15       Sincerely,

16                  _____
                    Jamie Mackrell, Court Reporter
17                  Daughters Reporting Inc.
                    101 Northeast 3rd Avenue
18                  Suite 1500
                    Fort Lauderdale, Florida 33301
19                  daughtersreporting@gmail.com

20

21    I do hereby waive my signature

22    _____
      Ronald Coleman
23

24    cc:  leklayman@gmail.com

25
```

**A**

**a.m** 1:16 6:14
  111:9
**abandoned**
  55:12
**ability** 81:1
  97:25
**able** 33:13 52:2
  72:10 85:12
  103:22
**above-referen...**
  113:6
**Abrams** 3:9 6:16
**absent** 94:11
**absolutely** 78:4
  99:11
**absolve** 54:23
**accept** 53:20
**accepted** 24:19
  33:25 46:12,13
  57:6 100:17
  101:1
**access** 85:23
  87:6
**account** 29:22
  43:25 44:10,14
  45:22 47:23
  61:15
**accountable**
  95:21
**accounted** 61:15
**accurate** 26:2,4
  27:2,4 58:12
  60:2,10 62:9
  62:19 67:20,22
  69:16,21
**accused** 39:3
  97:12
**acquire** 30:15
**act** 54:19 73:24
  76:20
**acted** 83:9
**action** 11:3
  57:11 111:12
  111:15
**actionable** 82:24

**actions** 58:1
**actively** 28:23
  28:23
**activist** 42:14
**added** 17:18
  43:23
**addendum**
  54:18
**additional** 62:8
  69:2
**address** 113:14
**adjourn** 108:1,2
**adjudicated**
  63:25
**Administration**
  22:10
**administrative**
  87:18
**admissible** 77:16
  92:9
**admits** 67:1 75:3
**admitted** 20:24
  33:20
**adopted** 47:15
**adverse** 39:15
**advice** 79:22
  80:1
**advise** 10:25
  11:9 59:10
  60:25 61:11
  113:5
**advised** 35:8
  38:15 44:23
  59:6 97:23
  100:14,16
  105:11
**Advisers** 41:7
**advising** 67:2
**advocacy** 43:2
**advocate** 15:22
  43:4
**Advocates** 43:13
**affidavit** 44:23
  52:1,7 72:17
**affidavits** 52:4
  71:2
**affirm** 7:25 8:3

**affirmative** 54:8
**affirmed** 8:7
**Agency** 16:22
**ago** 8:24
**agree** 34:2 66:23
  73:20
**agreed** 32:5
  62:16
**agreeing** 108:2
  108:20
**agreement** 5:8
  20:14,20 22:22
  23:4 32:19
  45:3 46:17
  52:16 65:4
  66:5,13 105:3
  105:12,23,25
  106:6,19
**Aguirre** 2:10
  6:25
**al** 1:4,8 80:11
  112:2,2 113:3
  113:3
**Allah** 42:24
**allegations** 83:7
  96:24
**alleged** 39:9
  95:21 97:15
  107:11
**allow** 51:18,21
**allows** 28:14
**alternative**
  58:25
**ambiguous**
  76:23,24 77:14
  79:10 92:7
**amenable** 72:23
**amended** 5:5
  10:13 25:14,15
  37:11 54:14
  57:9 100:25
**America** 28:9
**American** 25:25
**American-Isla...**
  43:2 44:8
**Americans** 41:8
**amount** 30:13

58:15 69:14
  74:4
**and/or** 76:20
  83:6 92:6
**Anderson** 3:8
  10:16,23 13:20
  20:12,17 41:12
  41:13,16,24
  75:15 91:15,16
  91:24 97:22
  98:15
**answer** 36:21
  37:3 40:12,18
  61:25 76:6
  77:11 79:14,21
  79:22,25 80:3
  80:4 81:11
  85:25 86:22
  88:21 89:4
  90:20 91:10
  99:6 100:1,9
  104:2,17,23
**answered** 28:3
  82:4,5 96:9
**anti-Jewish**
  42:21
**antisemitic**
  28:22
**anybody** 33:16
  98:1
**Anytime** 48:5
**anyway** 98:5
**apologize** 7:12
**apparently**
  14:15 73:20
**appeal** 11:16,16
  20:3 57:20
**Appeals** 10:18
**appearance** 7:9
  15:18 67:19
**appearances** 2:1
  3:1 6:20
**appeared** 110:8
**appears** 20:22
**appellate** 54:21
**Apple** 84:3
**appreciable**

27:20
**apprise** 26:22
**approach** 64:11
**appropriate**
  21:1 32:16,20
  65:3,5
**approximately**
  29:25 84:6
**argument** 57:3,5
  58:16,25
**Argumentative**
  49:21 50:2,7
  93:1 94:24
**arguments**
  11:16 69:8
  71:21
**Art** 42:2
**Arthur** 3:4 7:2,5
  10:4
**article** 5:7,10
  13:18,22 14:2
  14:8,13,18,22
  14:24 15:16
  17:9 41:3,20
  42:6,8,10
  44:20,25 45:8
  45:18 48:1
  50:21 51:1
**Asher** 3:8
**asked** 17:15,16
  30:24 31:21
  33:13 37:6
  44:12 52:5
  63:10 78:21
  79:1 91:5 96:9
**asking** 10:25
  11:8 33:20
  35:20 40:6,7
  56:18 78:1
  79:6,7,9,17,18
  82:6,20 86:19
  91:4,6 99:24
  104:21
**assert** 89:16
**asserting** 89:2
**assess** 72:11
**assessment** 27:2

67:21
**assistant** 10:17
**assisted** 87:19
**associate** 7:16
  20:25 56:21
**associates** 10:3
  28:9 103:17
**assume** 102:4
**attached** 10:12
**attack** 43:9 44:5
**attempted** 64:17
  64:24 65:9
**attend** 62:16
**attention** 13:12
  13:18 25:14
  41:3 42:5,10
  91:13 109:2
**attorney** 111:10
  111:14 113:11
**attorney's** 70:17
**attorney-client**
  79:14 86:2,3
  86:21 88:22
  89:3 90:21
  99:7 100:1,9
  104:23
**attorneys** 71:6
**attorneys'** 11:2
  15:12 24:20
  26:25 27:8,21
  53:20 54:25
  58:16,18 59:9
  59:22 64:3
  69:1,4 70:1,4
  70:11 71:4,25
  72:11,17
  100:19 107:15
**attract** 28:14
**August** 1:16
  6:13 108:16
  110:9,11 111:9
  111:16 113:1,3
**authenticated**
  71:16
**authority** 69:15
  93:16 110:7
**authorizes** 17:19

**available** 83:16
**Avenue** 1:22
  113:17
**awaken** 42:24
**award** 59:9
**aware** 10:19
  16:5,8,13,18
  16:21 19:3,11
  22:24 29:2
  35:14 37:23
  38:2,4 49:18
  53:19 58:24
  59:1 60:13,15
  64:17 66:8,21
  66:25 67:1
  73:17,20 74:3
  74:9,14,16
  77:21 81:18
  96:16 100:14
  100:21,23
  101:4,14,17,21
  105:9 107:10

———— **B** ————
**B-I-L-L-O-O**
  43:5
**B-O-R-R-M-...**
  43:20
**back** 11:7 25:14
  73:18 74:12
  82:7 98:10
  107:7 113:7
**background**
  42:3
**badger** 82:12
**bailed** 56:20
**banned** 37:17
**Bar** 8:19 9:2
  66:11 93:15,16
  93:18 94:4,4
  95:5 96:12
**Barret** 6:9
**Barrett** 2:8 7:6
  98:14
**Bars** 95:6
**based** 24:10
  40:3,7 43:6

44:5 45:7,18
  46:16 52:15
  59:1 64:10
  65:17 74:9
  107:16
**bases** 86:23
**basically** 19:19
  23:16
**basis** 16:2 71:15
  73:6,25 78:4
  79:14 89:2
  90:20
**Bates** 10:24
**bathroom** 97:20
**Beach** 1:1 2:23
  6:11
**bear** 32:9
**Beast** 5:7 13:19
  14:6,18 17:2,9
  82:23 92:5,10
  92:20,22
**becoming** 36:11
**began** 51:12,16
**beginning** 92:11
**begins** 6:6
**behalf** 1:14 2:2,8
  2:15,20 6:17
  6:21,25 7:2,10
  14:11,12 15:2
  15:23 23:7
  26:9 37:25
  53:17,17 54:13
  57:24 58:2
  62:13 78:24
  80:20 102:15
**behind-the-sc...**
  43:16
**believe** 20:2
  32:15 75:6,8
  94:5 105:21
**believed** 32:7
**belittle** 82:12,13
  82:15
**belong** 85:7
**bill** 38:16
**billing** 9:1 30:22
  103:14

**Billoo** 43:5 44:8
  44:12
**bills** 102:11
**bit** 7:22
**Blake** 2:10 6:24
  108:7
**blake.sando@...**
  2:13 113:1
**blames** 14:25
**blank** 113:13
**Bloch** 2:16 4:6
  7:9,10,12,13
  7:16 10:3
  71:10 72:13,21
  73:3,14 85:14
  87:25 88:9,16
  88:23 89:5
  105:14 106:2
  106:22 108:5,6
  108:7,11,12,17
**Boca** 2:5,18 22:1
  22:11
**boost** 37:15
**born** 8:13,15
**Borrman** 43:20
**bothered** 89:22
**bottom** 13:4
  113:13
**Boulevard** 2:11
**Box** 2:11
**Boynton** 2:23
**bragged** 29:11
  29:16
**breach** 101:18
  101:19
**break** 98:3,4,5
  106:25 107:2
**Brett** 2:16 7:10
  108:12
**brett@shende...**
  2:19
**bring** 23:7 26:9
  27:22 28:6
  37:13,21 38:8
**bringing** 13:5
  29:7 33:17
  53:10 63:12

**broad** 69:8
**brought** 14:11
  21:25 28:10
  37:25 42:10
  55:7
**BROWARD**
  110:4
**Bruce** 47:15
  59:22
**brushed** 23:16
**building** 29:7
**bully** 77:24
**bullying** 78:2,3
**burdensome**
  77:15 79:11
**business** 80:16
  85:3 95:5

———— **C** ————
**CAIR** 5:9 15:13
  23:24,24 27:3
  27:23 28:7,18
  28:20,22 29:2
  37:14 39:9
  46:2 47:14,21
  48:3,13 49:1
  50:22 51:6
  52:18 58:18
  59:21,21,25,25
  64:18 65:3,12
  66:6 67:19,21
  69:3,3 70:5,11
  71:12,12,24
  72:12 74:5
  80:11 100:17
  101:2 107:11
  107:15
**CAIR's** 50:17
  71:6 73:1
**calculated** 77:16
  79:12 92:8
**California** 44:12
  52:15,17,23
  53:7,10 60:23
**call** 10:4 103:24
  104:9
**called** 21:24

22:1 104:4
calling 42:19
caption 21:10
care 61:11
career 9:6 21:6
21:19
carefully 32:6
carrier 11:2,9,10
11:18 12:3,10
12:15,19,24,24
13:7 19:13
36:12 37:7
case 1:2 6:12
10:12 14:16
15:17 17:1
18:9,14 22:6
24:15 25:9
26:12,15 27:3
27:18,20,22
28:6,8,8,10
29:6 32:14,21
32:24,25 33:2
33:14 34:3,13
39:2,6,21 40:4
43:6 51:12,16
52:16,18,19,20
55:6,10 56:23
61:3 63:3,12
65:4 67:20,25
68:7,16,21
74:4 85:19
88:7 95:14
96:3 99:11
100:12 101:22
103:1,18 104:7
104:15,22
107:20 112:2
113:6
cases 21:5,18
22:3 32:10
71:18 105:9
catch 11:24
cause 6:4 59:24
60:9,16
caused 30:15
100:18
cc 113:24

cell 84:21
cellphone 83:5
83:22 84:24
85:9
censoring 28:24
Center 41:10
Central 52:15
52:23
certain 77:3
certainly 17:18
17:20 22:24
26:16
Certificate 4:9,9
110:1 111:1
certified 4:13
93:11
certify 40:14
86:24 89:6
91:11 93:5,6,8
99:12 104:24
107:25 110:7
111:5,10
cetera 72:18
100:19
chair 62:17
chairman 16:23
challenge 70:4
70:10
challenged
69:25
challenging 86:8
change 62:3
84:5,9 112:5,6
112:8,9,11,12
112:14,15,17
112:18,20,21
changed 34:7
60:25 84:23
changes 61:14
100:6
changing 62:2
charged 101:25
102:6
charges 71:16
74:1 102:11
charging 72:18
chat 97:22

checks 32:24
chose 59:4 69:10
Circuit 1:1 6:11
10:11,18 18:13
19:4,11,25
47:6 54:22
61:4 63:25
circumstances
71:16
cited 76:18
city 25:24 31:2
43:9
CIVIL 1:2
civil-rights
43:12
claim 16:2 17:20
20:3 21:15,16
21:23 52:21
53:20 64:18,25
65:2 68:21
71:3 84:9
105:24 106:5
claimant 6:15
claimed 70:4,11
72:11 74:4
claiming 48:9
70:16 89:14
92:12
claims 18:22,22
22:5 37:1
71:24 78:23
92:13,15,17
97:4 100:24
101:17
clause 54:18
clear 78:15 81:6
82:23
clearly 69:2,22
72:23
Clerk 113:12
client 18:9 21:13
22:7,10 24:10
25:9 30:20,22
38:23 66:23
71:20 77:24
82:12 96:20
client's 22:4

clients 22:17
28:14 29:7
53:22 91:2
close 107:1
closer 7:22
co-chairman
35:10
cob 11:1
coconspirator
28:7
codefendant
80:14
cognizant 63:16
COLE 2:9
Coleman 1:8,12
2:8 4:3 6:2,7,9
6:25 7:19 8:6
8:12 10:1
11:24 14:25
15:19 25:22
26:22 27:1
37:12 41:20,25
50:5 57:10
58:9 59:20
60:7 62:6,12
68:7,24 69:6,9
75:3,3,22
76:22 77:8,13
78:18 79:24
80:8,13 81:4
82:5,24 86:22
87:15 98:13,17
99:4,24 106:21
107:9 108:3,8
108:12 110:8
111:8 112:2,3
113:2,3,22
Coleman's 75:16
79:4 89:17
91:17
colleague 63:10
combat 53:20
come 36:19
78:11 94:23
commencing
111:9
comment 14:17

15:15 17:13
commenting
17:8
comments 43:7
82:18
Commission
110:17 111:19
commit 76:19
committed
68:15 83:8
92:13,25
committee 36:18
36:18
communicate
22:22 23:5,10
communication
86:13
communicatio...
47:21 75:2
80:5 84:13
92:4 93:14,17
93:24 94:3
102:17,20
community 28:6
92:19
companies' 44:9
companion 22:3
company 21:24
22:1,8 38:17
50:18 84:1
compel 77:25
108:21
competent 27:2
49:5 67:21
competently
56:15
competing 50:22
complainant 9:3
complained 43:1
complaint 5:5
8:23 10:13
25:15,15 37:11
40:24 45:14,19
45:21 46:6,10
54:14,17 57:9
57:21 58:8
66:10,23 71:11

78:23 100:25
**complaints** 8:19
  9:5 43:14 95:6
**complex** 71:18
**comply** 69:10
**complying** 32:11
**computer** 83:6
  83:22,23 84:7
  84:23,25 85:1
  85:8 103:5
**computers** 84:19
  103:4
**concept** 87:5
**concern** 94:21
  100:25
**concerned** 36:24
  78:6 88:6
**concerning** 92:5
**concerns** 28:18
**concluded** 109:9
**concludes** 109:1
**conclusion** 38:9
  40:5 46:3 52:5
  64:9 71:14
**conduct** 42:19
  44:3 85:12
**conducted** 85:17
  87:14
**confirmed** 48:21
**conflict** 32:24
**confused** 95:15
**congresswoman**
  42:20,23
**conjunction**
  52:24
**connection**
  57:18 87:7
**consequently**
  51:3 107:14
**conservative**
  15:19,22 16:6
  17:24 23:15
  28:6,17,24
  42:14 92:19
**consider** 25:2,5
  28:1 54:15,19
  73:5

**considered**
  32:11 73:1
**considering**
  63:18 78:4
**considers** 11:3
  16:5 79:9
**constitute** 96:17
**consult** 20:25
  32:20 90:12
  107:1
**consultation**
  80:1
**consulted** 75:25
  104:21
**Consulting** 2:21
**consumer** 21:24
  21:25 22:7
**contact** 11:10
  12:9 13:7 49:7
  51:25 61:2,11
  95:5
**contacted** 11:8
  11:23 12:3
  14:6 19:12
  43:24 46:10
**contacts** 44:13
**contain** 80:16
**contemplated**
  40:25
**content** 88:15
  91:4,8,8,10
**contentious** 39:7
**continue** 56:1
**continued** 3:1
  57:2
**Continuing** 62:4
**contract** 101:19
**contracted**
  62:12,22
**contrary** 27:13
**control** 80:22
  97:2
**controversial**
  32:4,10
**conversation**
  46:15
**conversations**

85:5,6
**convince** 26:5
**convinced** 25:24
**copy** 85:5
  108:22 113:7
**correct** 9:17
  13:5 14:6,12
  14:14,18 15:4
  15:9,13 16:14
  16:19,23 17:21
  17:24 19:15
  21:2 22:17
  23:8,17 24:21
  25:1,19 26:10
  26:13 27:8,10
  27:12,23 28:2
  28:15,18 29:4
  30:13 31:23
  34:14,21 35:16
  35:21 36:7,13
  36:19 37:18,25
  38:5,21 39:4,7
  39:11 41:1,21
  42:11 44:21,24
  44:25 45:3,10
  45:23 46:2,2
  47:6,16 48:13
  48:18,19,23
  49:2,3,20,25
  50:24 52:3,25
  53:4,17,18,23
  54:10,22,25
  55:7,16,19
  56:6,11,16
  57:4,6,7,14,14
  57:16 58:2,19
  59:4,5,17 60:5
  60:17 61:18
  62:25 63:14
  64:5,6,16,22
  65:12,16 66:3
  67:13 68:1,9
  68:12,19 69:17
  70:3,5,8,12,17
  70:22 71:8
  72:6,12,12,19
  73:12,18,21

77:22 79:5,5
  81:10 82:3
  84:10,14 85:1
  87:20 88:3,4,7
  89:20 90:6
  92:13,24,25
  93:3,20,22
  94:18 95:11,22
  96:4 97:16
  101:2,8,8,19
  105:5 107:12
  107:17 111:6
**correspondence**
  5:6 75:5,10
**cost** 23:1 38:9,24
  39:14,22 40:4
**costs** 11:2 24:21
  26:25 64:3
  69:2,5 70:1,11
  71:25
**council** 25:25
  41:8 43:2,3
  44:8
**counsel** 6:15,19
  9:22 10:1,2
  16:23 20:15
  21:1 31:20
  52:24 53:6
  55:13 62:14,25
  63:2,13 64:2
  64:21 65:25
  74:4 76:13
  80:5,19 82:10
  87:9 90:8,11
  90:12 93:19
  96:17 97:5
  101:11 111:11
  111:14
**counsel's** 97:17
**count** 101:21
**countered** 72:16
**counts** 100:24
**County** 1:1 6:12
  31:3 110:4
**couple** 22:3
**course** 22:23
  25:8 36:11

49:24 51:8
  72:4,6 73:10
  80:15 96:20
**courses** 66:15
**court** 1:21 6:2
  6:17 7:7,19,22
  8:4 9:8 10:18
  14:10 15:3
  18:22 20:7,10
  23:20 26:24
  30:25 31:1
  47:9,13 51:18
  51:21 54:21,21
  58:14,25 59:10
  60:15 61:8,11
  62:14 71:19
  74:11 75:13
  78:10 93:14
  94:4,8,11
  95:20 108:24
  113:12,16
**courts** 47:5 55:4
  57:6 94:3 95:6
**cover** 36:25
**covered** 88:25
**Craig** 2:20,21
  6:10 7:3 34:5
  63:5
**craig@cwyleg...**
  2:24
**credible** 40:19
**crime** 96:17
**criminal** 28:8
**Cross-Examin...**
  4:6 108:10
**crowd** 37:16,20
  38:2
**CSR** 110:16
  111:18
**Current** 13:21
**currently** 8:17
  16:18 55:8,9
**cursory** 69:7,23
  69:24
**custody** 80:21
  97:1
**customers** 22:11

cut 35:21 43:18
    73:18 74:12
CWY 2:21
_____
        D
D 1:21 6:2 41:5
    44:19 110:16
    111:3,18
Dadeland 2:11
Daily 5:7 13:19
    14:6,17 17:2,9
    82:23 92:4,10
    92:20,22
Dallas 28:8
date 1:16 6:13
    14:23 15:16
    23:6 86:17
    108:14 112:25
dated 10:19 11:1
    14:23 42:6
    111:16
Daughters 1:22
    6:18 113:17
daughtersrep...
    113:19
days 113:11
deal 52:18 64:1
dealing 64:11
    86:13 97:4
deals 14:14
    92:24
dealt 20:6
Dear 113:4
decide 68:8 89:2
    108:24
decided 14:17
    46:17 64:3
    71:19
decides 104:3
decision 34:16
    58:20 90:10
    99:20
decisions 22:25
declarations
    69:6 71:13
declare 112:22
decline 40:11

declined 40:17
declining 40:12
deduce 107:19
defend 52:7
    78:22 79:16
defendant 2:15
    2:20 7:4 9:19
    25:22 26:22
    27:1 37:12
    41:1 45:8,12
    45:16,20,21
    46:4 51:4,5,7
    62:5,12,16
    67:18 75:3,3
    75:16 76:22
    77:13 79:16
    86:10 88:7
    91:17 92:6
defendant's
    51:22
defendants 1:9
    2:8 6:10 15:13
    27:23 52:3
    54:19 57:10
    58:9,19 59:20
    60:7 62:12,18
    68:24 69:6,9
    76:18 98:13
defending 57:19
defense 33:14
    104:22
defer 80:14
deferred 77:4
delay 73:8 77:7
Dell 84:7,7
demand 54:15
demanded 57:21
demonstrated
    71:19
department
    35:11
depo 97:24
deponent 112:3
    113:6,10,12,13
deposition 1:11
    5:4 6:1,6,14,22
    9:9,17,21,22

49:24 92:11
    100:11 107:22
    108:1,3,25
    109:1 113:2,5
    113:11
describe 69:11
DESCRIPTION
    5:3
deserve 74:11
designate
    101:11
desired 57:13
despite 58:9
    69:3
detailed 69:4
    71:3,12
determination
    64:8
device 102:25
    103:11,12
devices 83:15,18
Dhillon 2:15 6:9
    7:10 10:24
    31:16,17 33:9
    58:9 59:20
    60:7 62:12,22
    62:25 68:24
    69:6,9 75:11
    80:19 81:2,9
    85:10,12,24
    86:9 87:6,11
    87:13,22 88:3
    88:13,17 90:3
    97:2 102:2,14
    105:2,3,7,18
    105:22,24
    106:5,19
    108:15
Dhillon's 85:21
    88:6
diet 22:8
difficult 71:14
    107:16
diligently 56:15
Direct 4:5 8:9
directed 76:4
    81:4,7

directly 44:5
    64:18
Director 43:4
disciplinary 9:2
discovery 51:10
    51:12,14,16,19
    51:22 52:20
    77:4 86:11
    91:2
discretion 32:23
    73:24
discuss 9:21,25
    27:7 32:16
    39:25
discussed 24:23
    26:8 46:19
    64:9 79:18
    88:15 90:23
    91:1,1
discussing 24:13
    33:19
discussion 88:20
    106:17
discussions 10:6
    43:16
dismiss 46:17
    51:23 52:2,4,8
    57:19 63:23
dismissed 9:3
    27:18 40:5
    51:12,16 58:6
dismissing 46:20
disparaged 17:1
dispute 9:1 14:9
    30:22
disrespect 78:17
distribution
    113:8
District 15:3,3,9
    21:11,12 22:1
    52:14,15,23
    58:11 60:22
    61:1,4,18
    62:14,15 64:4
    69:10 80:12
    93:14,15,18
    96:3,12

DIVISION 1:2
document 25:9
    85:6 90:17
    91:7,19 112:22
documentation
    33:7
documents
    24:15 75:18
    76:1,9,11,14
    76:17 78:21
    79:2,3 80:12
    80:16,20 81:2
    81:12,14,21
    85:3 89:12,14
    90:23 91:1
    92:3 93:13
    96:22 97:1
    107:23 108:21
doing 12:11 54:7
    56:13 59:8
    64:14 92:18
doings 42:25
dollars 38:13
dozens 44:12
draft 99:1,4,24
    100:6
drafted 99:18
Drive 2:22
Drug 22:9
due 58:15,17
    96:20
duly 8:7
duties 76:20
    83:9
duty 63:13,17
    101:19
_____
        E
earlier 97:14
effect 23:16
    46:23
effectual 58:21
effectuated 62:3
effort 34:6 49:7
    70:4,10 71:5
efforts 54:12
egregious 75:4

**eight** 69:7
**either** 8:20
  49:10 56:14
  67:16 104:6
**electronic** 60:19
  60:22 61:12
**email** 5:6 10:25
  11:1,5,11,18
  11:19 13:13
  24:16,16 42:18
  43:15 44:13
  60:20 62:5
**emailing** 24:14
**emails** 81:15
  83:6
**emotionally**
  107:16
**employed**
  111:11,14
**employee** 111:13
**enables** 103:6
**engaged** 36:19
**enjoined** 16:21
**enjoy** 43:10
**enrichment**
  101:21
**enter** 38:15 65:3
  66:6 68:9
**entered** 20:21
  32:19 68:15
**entering** 67:19
  68:7
**enters** 67:25
**entire** 57:9
  63:14,17 67:25
  87:5 105:21
**entirely** 61:5
**entirety** 90:7
**entitled** 78:12
**entitlement**
  69:14
**entity** 96:25
**entries** 71:6,24
  72:22
**entrusted** 15:18
**entry** 68:8 69:12
**enumerates**

18:21 19:4,13
**equitable** 53:16
  53:22 54:8,12
  54:23 57:3,12
  57:17,22,23,25
  58:2
**errata** 4:10
  112:1 113:7,9
**errors** 11:16
  18:21 19:4,14
  20:6 75:4
**escape** 49:19
**escapes** 35:11
**especially** 28:23
**Esquire** 2:3,10
  2:10,16,21 3:4
  3:5,6 6:16
**Essex** 31:3
**estimate** 30:6
  38:7,11 40:2
**estimated** 38:24
**et** 1:4,8 72:18
  80:11 100:19
  112:2,2 113:3
  113:3
**ethical** 25:5
  65:18,24
**ethics** 9:5 66:10
  66:15,23
**ethnicity** 44:6
**event** 11:17
**Eventually** 48:7
**evidence** 12:11
  17:4 77:17
  92:9
**evident** 37:12
**evil** 42:25
**exact** 26:18
**Exactly** 99:22
**Examination**
  1:21 4:5 8:9
**examined** 8:7
**example** 76:17
**exchange** 62:17
**excuse** 11:7
  13:19
**execute** 113:6

**Executive** 43:4
**executives** 42:16
**exhibit** 5:3 9:10
  9:12 10:13,14
  13:14,15,16,23
  13:24 20:11,18
  23:21 24:1
  25:18 37:11
  41:12,18 48:2
  75:14,16,19
  91:14,20 98:12
  98:13,16
**exhibits** 5:1
  41:15
**exist** 34:25 97:10
  97:11
**expect** 46:16
**expense** 69:13
  73:7
**experience**
  22:16 24:10
  40:7 59:2
  65:17,20 72:14
**expert** 71:23
  104:9,14,22
**expertise** 40:3
  53:19 72:10
**Expires** 110:17
  111:19
**explain** 21:22
  23:6
**explained** 31:25
  32:3 34:20
**extent** 57:23
  58:1,3 63:16
  79:20,25 101:6
**external** 20:25
**extremely** 69:4,8
  71:3,12

---
F
---

**f-king** 43:11
**Facebook** 29:22
  41:5 44:10,13
**fact** 12:3 14:2
  18:21 22:16
  23:10,13 24:18

27:13 34:13
  39:14 40:22
  45:2 46:5 47:5
  48:15,20,25
  49:24 50:5
  53:9 56:1,22
  58:14 59:9,13
  65:17,23 67:24
  70:16 74:3
  86:4 88:6
  93:17 95:19
  107:14
**facts** 60:4
  112:22
**failed** 47:6 58:10
  59:20 60:8,12
**failing** 53:20
**fairly** 64:1
**faith** 73:6 89:2
**false** 92:12
**fame** 37:15
**familiar** 66:18
**Family** 41:8
**far** 36:24 71:20
  107:25
**fashion** 17:23
  76:21 83:9
**favor** 22:4
**February** 20:14
**fee** 74:11
**feedback** 44:9
**feel** 18:2
**fees** 11:2 14:10
  15:12 24:20
  26:25 27:8,21
  38:24 53:20
  54:25 58:17,18
  58:23 59:9,22
  64:3 69:2,5
  70:1,4,11,17
  71:4,25 72:11
  72:17 73:1,18
  100:19 101:24
  102:6,10
  107:15
**felt** 16:25 71:20
**fiduciary** 76:19

**83:8** 101:18
**Fifteenth** 1:1
  6:11
**figure** 28:1
**figures** 28:24
**file** 17:19 25:25
  31:6 59:20
  63:14,14,17,19
  66:10,23 68:1
  80:9,12 105:21
  105:23
**filed** 8:23 9:5
  31:4 32:4,7,9
  40:25 45:9,19
  57:17 61:8
  68:25 69:4
  77:24 78:8,9,9
  98:24 100:4,7
  107:10 113:12
**files** 33:7 78:15
  80:15 85:21,24
  87:7,8 90:7
**filing** 15:1,1,2,8
  15:11,14 53:15
  58:5 60:19
  61:8 70:2
**filings** 61:5,12
  62:16
**final** 23:3 69:9
  98:14 101:7
**finance** 29:3
  37:24
**financed** 39:10
**financial** 97:15
  97:15
**financially**
  111:15
**find** 24:16,16
  63:9 71:14
**finding** 47:14,18
  55:2
**findings** 54:25
**fine** 81:6
**finish** 77:13
  90:25
**finishing** 107:2
**firm** 7:1,2 20:15

28:15 31:10,15
31:16,17,21
32:3,16 33:9
34:5 35:6,9,13
35:20,25 36:5
53:6 61:2
62:22 75:4,11
80:19 81:9
83:16 84:17
85:2,2,3 88:10
88:12 97:2,5
102:2,14
104:12 105:1,2
105:3,7,9,11
105:18,22,24
106:5
**firm's** 10:24
60:20
**firms** 34:7 60:25
78:15 80:13,14
81:5,13,15,22
85:4,7
**first** 5:11 8:7
34:6 42:11
75:17 76:2,10
86:20 99:1,4
**fit** 73:25
**Fitzpatrick**
31:14
**five** 21:7 30:16
**fixated** 94:22
**Florida** 1:1,23
2:5,12,18,23
6:3 15:3,9
16:14 20:24
21:1,3,5,12,15
21:19,23 22:2
22:13,17 23:24
33:20,22,24
46:18 47:14
58:11 60:24
61:1,4,18
63:11 64:4
66:11 67:12,15
69:3,11 71:7
71:12 80:12
93:15,15,18,18

94:4,4 96:3,12
96:12 110:3,16
111:4,18
113:18
**Florida's** 59:21
59:25 62:15
**focus** 83:3
**foe** 39:15
**followed** 57:11
**followers** 29:24
30:8,15
**follows** 8:8
**Food** 22:9
**forcing** 59:22
**foregoing** 80:8
111:5 112:22
**form** 11:13,20
12:5,12,16,20
12:25 13:9
14:3,19 15:5
15:24 16:4,10
16:15 17:3,10
18:4,10,16,23
19:6,16,21
20:1,8 22:18
23:18 25:11
27:9 28:11,21
29:13 31:24
34:15,22 35:2
35:17,22 36:2
36:14,20 38:18
39:16 40:8,15
45:4,15,24
47:2,7,10,17
48:6,14 49:21
50:1,8,13,25
51:11,15 53:1
53:24 55:1,14
56:4,8,17,24
59:15 60:3,11
61:13,19,23
63:15 64:23
65:6,13,19
66:1,12 67:4,8
68:2,10,17
69:18 70:6,13
70:18,23 71:9

72:1,7,13,20
73:3,4,13,14
73:22 74:6,13
76:6,12,25
77:8,18,23,25
78:20 79:4
80:23 81:3,17
81:25 82:11,12
82:16,25 83:11
83:14,19 84:15
85:14,25 87:4
87:24 88:9,15
89:24 90:4,15
90:19 92:14,21
93:1,9,21,25
94:11,16,23
95:2,7,12,17
95:23 96:5,13
99:6,25 100:8
100:20 101:3,9
102:3,9,16
103:9 104:1,10
104:16,22
105:14 106:1,2
106:13,22,23
107:18
**format** 101:11
**former** 10:4
13:21 22:11
31:10
**Fort** 1:23 113:18
**forth** 14:18 71:3
101:2 105:7,17
**forward** 108:25
**forwarded** 113:9
113:9,11
**found** 54:22
55:22 63:5,7
113:7
**Foundation**
23:24 80:11
**founder** 16:8
**four** 36:6,8
76:16
**framework**
32:12
**frankly** 84:6

**fraudulent**
47:18 63:24
76:20 83:9
101:18
**fraudulently**
47:14
**free** 43:18
**Freedom** 16:19
16:22
**frequently** 74:10
**friend** 10:4
**front** 96:3
**full** 54:17 63:16
**function** 82:17
**fund** 37:20
**funded** 37:16
**funding** 38:2
**further** 11:3
55:19 107:21
108:18 111:10
111:13
**future** 52:21

**G**

**G** 2:10
**G-E-L** 21:13
**G-O-E-T-Z**
31:14
**G-R-I-N-D** 41:4
**Gel** 21:13
**gender** 44:6
**general** 16:23
69:8 74:16,19
86:18 88:19,24
**generally** 29:17
30:18 58:24
69:25 96:21
**generated** 14:2
**getting** 29:8
52:12
**give** 8:1 15:18
30:6 38:7
88:14 94:7
**given** 23:1 32:10
39:14 53:19
56:3,23 111:7
**go** 14:22,24

23:14 65:3
70:17 71:5
90:17 91:6
94:8 108:25
109:3
**go-to** 16:6
**goes** 80:7
**Goetz** 31:14,14
**going** 11:17
14:17 20:10
23:6,7 39:2,15
56:2 61:7
78:11 79:13
89:24 94:7,8
105:24 106:5
107:22
**good** 6:24 7:3,5
7:9 23:23
56:13 64:11
73:6 88:5 89:2
98:21
**graduate** 74:24
**grant** 27:20
**granted** 60:1
62:8
**gratuitously**
96:11
**gravamen** 46:14
**great** 28:18 29:6
70:10 94:21
**Grin** 52:1
**Grind** 41:4,4
44:18,24 48:22
49:8,14 52:7
**gross** 101:15
**Grossman** 3:4
7:2,5,5,17 10:5
35:10
**group** 2:3,15 6:9
7:11 28:7 87:6
108:15
**groups** 39:10
41:6 42:15
43:1
**Grover** 41:8
**guarantee** 23:2
**guess** 40:21

**guy** 78:17

---

**H**

**hac** 62:15
**Halloween** 43:10
**Hamas** 29:3
  107:12
**hand** 7:23
**handcuffed**
  43:17
**handcuffs** 43:18
**handled** 9:2
  21:15,17 22:12
  56:23
**happen** 8:22
**harm** 44:6
**harmed** 56:22
**Harmeet** 88:17
**hate** 44:11
**hateful** 42:19
  44:1,3
**headquarters**
  43:17
**hear** 19:9
**hearings** 62:17
**held** 1:18 47:6
  95:21
**help** 41:6 42:24
**helped** 37:24
**helping** 29:2
**helps** 28:5,9
**hereto** 111:14
**hesitated** 72:24
**HH173501**
  110:17 111:19
**hiding** 82:10
**his/her** 113:13
**home** 84:8
**honest** 27:2
  74:18
**honesty** 74:17
**hook** 106:12
**hope** 17:18
**hour** 49:25
**hours** 10:7 43:19
**Huffington**
  13:19

**hundred** 30:4
  38:13

---

**I**

**I-L-H-A-N**
  42:20
**idea** 35:23 66:4
**identification**
  7:20 9:12
  10:14 13:16,24
  20:18 24:1
  41:18 75:19
  91:20 98:16
**identified**
  104:14
**Ilhan** 42:19
**Iloominate** 6:8
  6:23 14:11
  19:5,15 20:16
  21:9 24:20
  26:10 30:21
  31:23 33:3,18
  35:15 38:8,17
  45:9 49:2
  50:18,23 51:9
  53:14,17 54:9
  54:24 55:7,12
  56:21 57:24
  62:13 63:6
  66:9 67:3,13
  76:10 78:24
  80:10,21 84:14
  87:13 93:20
  94:15 100:23
  101:25 102:7
  102:15 103:8
  103:15,18,20
  105:4,8,13,19
  105:25 106:7
  106:20 107:11
**imagine** 68:20
**immediately**
  59:10
**impact** 22:25
**implicates** 50:21
**implicating**
  71:18

**implies** 102:17
**important** 17:23
  24:9 25:10
  45:13,20 46:25
  50:11,14,21
  51:1,3,6 52:18
**impossible** 55:22
**impression** 62:2
**inaccurate**
  62:21
**Inc's** 23:24
**incite** 44:6
**include** 41:7
  45:13
**included** 57:21
  105:23
**including** 27:18
  43:12 45:20
  46:4 52:20
  57:19 84:19,21
  107:12 111:6
**inclusion** 113:10
**incorrect** 12:9
  37:4 49:9 50:3
  50:9 54:11
  82:4
**increase** 18:7
**independent**
  40:3 48:12
**INDEX** 4:1
**individual** 48:20
  87:18
**individually**
  81:4
**individuals**
  42:15 43:24
  86:17
**induce** 26:5
**induced** 25:24
**inducement**
  101:18
**inflated** 72:12
  74:5
**information**
  11:10 32:25
  45:7 47:25
  48:3 61:12,18

  62:2 85:2
**infringement**
  21:11
**Ingredients**
  21:13
**initial** 27:6
  37:24
**initially** 44:21
**injunction** 53:16
  54:6
**injunctive** 53:22
  54:5,15,18
  57:12
**input** 22:25
**insert** 77:10
**instance** 50:16
  89:8
**instruct** 77:11
  79:13 80:3
  86:22 88:21
  89:4 90:19
  91:10 99:25
**instructed** 45:2
**instructing**
  86:20
**insurance** 13:1
  36:12,13,21,25
  37:7
**insured** 37:7
**insurer** 35:25
  36:1
**insures** 12:24
**Intel** 84:5
**intend** 103:24
  104:9
**intentionally**
  61:22
**interest** 15:22
  34:10,11
**interested** 33:21
  111:15
**interfere** 94:14
**interfered** 45:22
  46:2 47:22
**interference**
  50:18
**interfering**

  50:22
**internal** 20:25
**internally** 44:14
**interposed** 77:4
**interpret** 19:24
**interrogatory**
  89:9
**intervened** 49:1
**interview** 42:22
**invades** 79:15
**invited** 25:23
  26:6
**involved** 28:23
  28:24 32:10
  63:18 86:18
  103:19
**iPad** 102:23
**irregularities**
  97:15
**irrelevant** 15:21
  16:3 92:7
**Islamic** 25:25
  28:9
**Israel** 42:25
**issue** 14:14 27:7
  44:14 46:11,25
  59:23,24 63:23
  63:24 64:1,7
  78:13 90:8
  92:25
**issued** 10:11,22
  59:9 60:15
**issues** 41:7 69:13
  71:19,20
**item** 58:17,18
  71:5,7,7 72:18
  73:7
**itemize** 102:6,10
**itemized** 102:11

---

**J**

**Jamie** 1:21 6:2
  6:17 110:16
  111:3,18
  113:16
**January** 25:22
  26:19 27:7

42:6
**Jeff** 3:9 6:16
**Jersey** 8:18 9:4
   31:1,2 66:16
**Jew** 23:15 28:17
**Jewish** 42:14
**Jews** 39:10
**John** 41:5 44:19
   48:22 52:1
**John.mckinno...**
   44:19
**join** 71:10 72:21
   87:25 88:16,23
   89:5 106:2
**joinder** 47:18
   63:24
**joined** 36:9
   47:14 108:14
**joint** 5:9 23:24
   59:21 69:1,4
**Jose** 44:11
**Joshua** 3:6 7:15
**Journal** 5:10
   48:22 50:17
**Judge** 47:15,15
   59:24 73:17
   96:4,4
**judgment** 5:9,13
   22:4 23:25
   24:6,10,18
   53:21 58:22
   64:10 98:14,23
   99:19 100:3,17
   101:1,7,8
   104:11
**Judicial** 1:1 6:11
   16:8
**July** 68:25
**June** 62:4,11
**jurisdiction** 61:9
   67:16
**jurisdictions**
   8:20 66:22
   67:10

___
**K**
K-I-R-S-T-E-N

41:4
**keep** 23:5 41:15
   102:20 103:6
**kept** 80:15
   102:13
**killed** 39:10
**kind** 72:23
   83:23 98:3
   99:13 102:25
**Kirsten** 41:4
   44:18,24 48:1
   48:21 52:1
**kirsten.grind...**
   44:18
**KISSANE** 2:9
**kitchen** 44:15
**Klayman** 2:3,3
   4:5 6:16,21,21
   7:14,17 8:10
   9:13 10:15
   11:4,10,14,22
   12:7,14,18,22
   13:3,11,13,15
   13:17,23 14:1
   14:5,21,25
   15:7 16:1,7,12
   16:17 17:2,5
   17:12 18:6,12
   18:18,25 19:7
   19:10,18,23
   20:5,10,13,19
   22:20 23:20,23
   24:2 25:13,19
   25:20 27:11
   28:13 29:1,14
   32:1 34:19,24
   35:4,19,24
   36:4,16,23
   37:5,10 38:20
   39:19 40:9,14
   40:16,19,22,23
   41:11,14,19,24
   42:4 45:6,17
   46:1 47:4,8,12
   47:20 48:11,17
   49:23 50:4,10
   50:15 51:2,13

51:17 53:3
   54:1 55:3,15
   56:5,9,19 57:1
   59:16 60:6,14
   61:16,21,24
   63:21 65:1,8
   65:14,22 66:2
   66:14 67:6,11
   68:3,11,18
   69:20 70:7,15
   70:20 71:1,22
   72:3,9,15,25
   73:9,16 74:2,8
   74:15 75:13,16
   75:20 76:8,15
   77:1,12,20,23
   78:1,6,11,14
   78:17,21 79:5
   79:8,9,17,23
   80:6,25 81:6,8
   81:19 82:2,9
   82:11,14,19
   83:2,4,12,17
   83:20 84:18
   85:16 86:3,6
   86:12,16,24,25
   87:10 88:2,11
   88:18,24 89:6
   89:10,12,16,19
   89:23,25 90:5
   90:16,22,24
   91:4,6,11,12
   91:14,17,21,23
   92:2,6,16,23
   93:2,5,7,8,10
   93:12,16,23
   94:2,12,17,25
   95:3,9,18,25
   96:7,15 97:18
   97:19,25 98:4
   98:12,17,19,21
   98:22 99:3,9
   99:12,16,19,20
   99:23 100:2,10
   100:22 101:5
   101:13 102:5
   102:12,19

103:10 104:5
   104:13,18,20
   104:24,25
   105:16 106:4
   106:10,14,25
   107:8,21
   108:22,24
   109:5
**Klayman's**
   79:25
**knew** 44:13
   45:19 63:10
   67:9
**know** 12:21,23
   13:6 17:25
   18:17 30:8,17
   32:11 33:12
   34:16,17,23
   35:1,3 36:3
   40:17 42:15
   45:11 46:15,24
   54:2,4 59:18
   68:7 78:9 84:2
   84:3 86:14
   87:22 89:13
   95:16 97:20
   103:13 104:2
   106:9
**knowing** 29:9
**known** 100:18
**knows** 90:2

___
**L**
**Labs** 22:1,11
**lack** 71:20
**Lakes** 2:22
**Large** 6:4 111:4
**Larry** 2:3 6:15
   6:21 11:3,10
   17:2 50:8 89:1
   92:6 93:16
   94:23 95:15
**late** 42:17 68:21
**Lauderdale** 1:23
   113:18
**Laura** 1:4 3:7
   6:7,21 11:3

13:21 42:14
   55:23 80:10
   92:5 93:19
   100:11 102:7
   112:2 113:3
**Lauren** 103:21
**law** 2:3,15 6:9
   7:2,10 8:17
   10:24 20:15
   30:19 31:10,15
   31:16,17,21
   33:9 35:25
   36:5 41:9
   42:21 53:6
   55:6,8 61:2
   62:22 74:24,25
   75:4,11 78:15
   80:13,14,19
   81:4,9,13,15
   81:21 83:16
   84:17 85:4,7
   87:6 97:2
   102:2,14
   104:12 105:1,2
   105:3,7,18,24
   106:5 108:15
**laws** 96:16
**lawsuit** 9:19
   14:11 23:7
   25:25 26:9
   31:7 32:6
   33:17 37:13,17
   37:21,24 38:8
   45:8 46:18,25
   57:17,18 58:5
   64:18 65:12
   86:10 88:13
**lawsuits** 21:14
   22:12 32:5
**lawyer** 13:21,21
   15:22 16:6
   17:2,14,23
   18:8 25:2
   33:23 67:25
   68:15 75:23,25
   76:4 79:22
   81:9 87:6

96:19
**lawyers** 58:24
74:10,14,18
77:3 80:2 95:4
103:19 104:11
**lead** 74:4 77:16
79:12 92:8
**learn** 64:20
**learned** 36:12
59:13
**learning** 99:13
**leave** 31:21 32:2
34:14,17,21
35:6,9,20 43:9
104:11 107:22
**left** 31:15 34:5
35:13 41:9
**legal** 2:21 14:10
15:19 19:4,14
20:13,20 21:21
32:19 45:3
52:5 54:20
66:15 69:15
74:16 76:19
78:22 83:8
92:19 96:23,25
97:4,12 101:14
101:24 105:11
106:6,18
**legit** 73:2
**leklayman@g...**
2:6 113:24
**let's** 14:22 25:21
69:24 76:16
83:3 98:5
106:25 107:2
**letter** 4:10 44:11
113:5,13
**level** 20:7 90:10
**leveled** 96:24
**liability** 12:24
36:1,13 37:1
49:19
**liable** 24:20
68:14
**licensed** 8:17
21:3 33:24

53:7
**Lida** 3:6 7:15
97:23 98:2
**line** 4:14 13:4
64:4,4 70:5,5
70:11,11 71:5
72:18 73:11,11
95:16 112:5,8
112:11,14,17
112:20
**linked** 29:2
**list** 41:15
**listed** 113:14
**listing** 101:24
**litigant** 96:17
**litigate** 38:9
40:4 78:9
**litigated** 57:11
78:5
**litigation** 21:22
21:25 26:23
35:11 38:15,24
39:14 71:18
80:10,15
**little** 7:22 44:16
49:25
**LLC** 2:21 6:8
62:13 80:10
**lobbied** 42:16
**local** 62:14,24
63:2,12 64:2
**log** 86:16 89:8
89:15
**log-in** 62:2
**long** 10:6 32:24
36:5 74:20
**longer** 32:9
56:10,20
101:22
**look** 24:3 41:23
91:24
**looking** 37:13
**Loomer** 1:4 3:7
6:7,22 13:4,21
14:9 15:1,23
17:1 18:14
19:5,15 20:16

20:21 21:9
23:4 24:7,19
25:23 26:5,23
29:3,19,25
30:12,21 31:22
32:18,22 33:3
33:17 34:7,13
35:15 37:16,20
42:10,14,18,22
43:6,8,15,25
44:20 45:9
46:19 49:2
50:18,23 51:9
52:16 53:14
54:8,24 55:7
55:12 56:21
57:24 59:6
62:13 63:6
64:14 66:9
67:3,13 75:1,8
76:9 78:24
80:10,20 81:16
83:7 84:13
87:13 92:6,12
93:20 94:14
96:2 100:11,23
101:25 102:7
102:15,21
103:8,18,20
105:3,8,12,19
105:25 106:7
106:19 107:1
107:10,14
112:2 113:3
**Loomer's** 15:2
17:14 43:21
45:22 47:22
57:8
**Loomer-Cole...**
5:8
**Loomer-Iloom...**
34:2
**losses** 35:21
**lost** 27:8
**lot** 70:17,19
73:12 89:24
**lower** 20:6 47:5

54:21 59:10
61:11
**lying** 50:5

---

## M

**machine** 84:10
**machines** 84:5,9
**Mackrell** 1:21
6:2,17 110:16
111:3,18
113:16
**Magistrate**
47:15 59:22,23
62:5,8 73:17
73:24 96:4
**mailed** 69:3,22
69:25
**maintain** 87:7
**maintaining**
34:12
**major** 28:1
**making** 54:6
69:8 75:25
77:22 92:12
**malpractice**
12:23 18:15
35:15 47:1
68:15 76:19
78:23 83:8
92:13,25 95:14
95:21 96:23
97:4,12 100:24
101:15
**management**
32:12,16,17,20
85:6
**Mandelbaum**
2:8 6:9 7:1,6
20:14 25:23
31:11,15,21
32:2,20 33:3,5
33:11,17,24
34:5,11,14,21
35:6,9,13,14
35:20,25 36:5
36:9,25 37:6
53:6 57:10

98:14 102:2,14
103:17 105:1
105:20,22
**manufactured**
62:6
**March** 8:14
**mark** 9:9 20:11
23:21 41:14
75:14
**marked** 9:12
10:14 13:16,24
20:18 24:1
41:18 75:19
89:18 91:20
98:16
**mass** 16:22
**matter** 6:7 8:24
8:25 9:2 13:5
19:13 23:1,3
88:19,24
**matters** 21:21
74:11 107:24
**Matthew** 3:5
88:17
**McKinnon** 41:5
44:19 48:1,22
49:8,16 52:1,7
**mean** 21:12,16
45:11 54:7
58:3 60:24
61:6 63:1 68:6
86:12 96:8
103:4
**meaningful** 18:1
**means** 96:18
102:10
**media** 6:8,23
19:5,15 20:16
21:9 24:20
26:10 28:2,25
29:8,11,17
30:21 31:23
33:18 35:16
37:15,17 38:9
38:17 45:10,22
47:23 49:2
50:19,23 51:9

53:14 54:9,24
55:7,12 56:22
57:24 59:14
62:13 63:6
66:9 67:3,13
76:10 78:25
80:10,21 84:14
87:13 92:5
93:20 94:15
101:25 102:7
102:15 103:8
103:15,18,20
105:4,8,13,19
105:25 106:7
106:20 107:11
**Media's** 14:12
53:17 100:24
**meeting** 26:8
27:6,6,16
**memorandum**
33:1,2
**mention** 43:15
**mentioned**
30:23
**meritless** 17:20
18:14 92:15,17
**merits** 20:3 27:3
37:14 67:21
**messaged** 97:22
**messages** 83:6
**met** 29:3,18,18
29:25 30:12
32:18,22 42:11
44:21
**meticulous** 85:4
**Miami** 2:12
**microphone**
42:3 97:18
**Military** 2:17
**mind** 42:2
**mine** 11:16
**Minnesota**
42:21
**misstates** 17:3
38:18 39:16
40:15 50:1
73:22

**misunderstood**
103:13
**mobile** 103:5
**model** 83:25
**moment** 35:12
**money** 38:3 56:2
**money-making**
56:11
**monkey** 96:1
**morning** 6:24
7:3,5,10
**mosque** 44:12
**motion** 5:13
46:16 48:7,8
51:23 52:2,8
52:13 53:15,16
54:6 57:19,20
59:21,25 63:24
64:12 69:1,4
71:12,17 77:25
91:25 98:14,23
99:11,19 100:3
101:7
**motions** 52:4
101:11 108:21
**move** 12:25
36:20 37:2,8
**moved** 105:1
**movement** 15:19
16:6 17:24
**multiple** 43:22
**Muslim** 42:20
43:13
**Muslims** 43:7,9
**mute** 97:25
**muted** 97:17,23
**muting** 42:2

___

**N**

**name** 8:11 11:9
12:19,23 16:19
17:17 35:11
43:5 88:14
112:25 113:13
**named** 86:9
103:21
**names** 103:22

**narrow** 64:1
**National** 16:21
**nature** 8:25
21:14 86:18
**necessarily** 29:9
49:5 50:12
68:5
**necessary** 32:25
**necessity** 17:8
18:2
**need** 7:9 16:25
32:8 33:22
44:15 91:25
98:3
**needed** 57:4
**negligence**
101:15,16
**negligent** 61:17
96:24
**negotiated** 67:2
**neither** 62:22
64:14 111:10
**never** 12:3 18:19
24:6,23 31:25
37:6 46:5,19
49:7 51:14,25
52:6 53:14
57:10 58:17
59:6 60:21
64:13 67:9
77:24 78:4
81:20,23 83:5
83:10,13 89:21
97:12 100:17
106:17
**new** 8:16,18,18
9:3,4,4 21:12
25:24 29:7
31:1,2 43:9,17
61:2,11 66:16
66:16 84:25
99:13
**news** 46:10
**noise** 42:3
**nonlawyers**
74:18
**nonparty** 65:3

**nonprofit** 16:18
**nonresponsive**
93:7
**nontaxable**
69:12
**Norquist's** 41:8
**North** 2:17 28:9
**Northeast** 1:22
113:17
**Northern** 52:14
**Northwestern**
74:25
**Notary** 6:3
110:16 111:4
111:18
**notes** 102:20
103:1,6,7
111:7
**notice** 5:4 9:9,16
**notifications**
62:7
**notified** 11:18
**notifying** 11:9
**notoriety** 37:15
**notwithstandi...**
80:7
**November** 42:17
**number** 6:12
10:24 13:13
18:21 19:4,14
23:1 76:16
85:18 91:14
92:3 93:13
**numbers** 23:23
**numerous** 69:5
71:13

___

**O**

**O-M-A-R** 42:20
**Oath** 4:9 110:1
**object** 11:13,20
12:5,12,16,20
12:25 13:9
14:19 15:5,24
17:3,10 18:4
18:10,16,23
19:6,16 20:1,8

22:18 23:18
25:11 27:9
28:11 29:13
31:24 34:15,22
35:17,22 36:2
36:14,20 38:18
39:16 40:8
45:4,24 47:2
47:17 49:21
50:1 53:1,24
55:1,14 56:4
59:15 60:3
63:15 64:23
65:6,13,19
66:12 67:4
68:2 73:11,13
73:22 74:1
76:6,12,25
77:8,18,23
78:20 80:23
81:3,25 82:11
82:25 83:11,14
84:15 85:25
87:4,24 88:9
90:4,15,19
92:14,21 93:21
94:16 95:7,12
96:13 99:6,25
100:8,20 101:3
101:9 102:3,9
103:9 104:1,10
104:16,22
106:1,13
107:18
**objecting** 71:15
73:7
**objection** 37:2,8
50:7 58:10
72:23 76:22,25
80:8 86:8
89:21 90:25
92:6 94:10
106:8,13
**objections** 77:3
91:18
**objects** 69:13
**observed** 72:22

obstruct 96:19
96:19
obstruction 77:7
obtain 54:8
57:12
obtained 52:20
obviously 28:17
occasions 23:13
occur 10:8
occurred 48:25
56:3
October 11:1,8
11:15
offer 5:9 23:25
24:6,9,18
53:21 58:22
100:17 101:1
office 25:24 26:6
34:21
Oh 36:8 88:5
99:12
okay 7:17 27:15
39:24 40:14
54:12 70:21
83:3 92:17
94:6 96:11
98:21 99:12
102:13 108:9
108:19
old 74:22 84:25
Omar 42:20,20
42:23
once 57:11
113:9
ongoing 99:11
105:9
open 107:22
opening 32:25
33:2
openness 44:9
operated 22:7
opinion 10:11
10:17,20,22
18:13 19:3,11
27:19 29:16
65:7 70:21
101:10 107:16

opportunity
18:1 94:7
oppose 64:3
opposed 58:18
opposition 48:8
48:9 69:1
order 26:24
33:13 37:14
59:24 60:8,16
87:8 94:11
ordered 14:10
15:12 108:22
ordering 113:9,9
113:11
orders 47:9,13
ordinarily 89:7
ordinary 25:8
36:11 61:10
67:24 72:4,6
organization
28:22 39:3
43:3,13
organizations
43:12,24
107:12
original 113:8
113:11
OSC 60:8
outcome 23:1,3
Outlook 103:4
outside 42:15
87:9 90:8,11
90:12 101:10
overbroad 77:14
79:10 92:8
owing 58:17,23

_____
        P
_____
P.A 2:3,9
P.C 2:8
P.L 2:16
p.m 1:16 98:7,9
98:9,10 107:4
107:5,5,6
109:7,9
P.O 2:11
PACER 61:15

62:2
page 4:4,14 5:3
14:22,24 42:13
57:8 112:5,8
112:11,14,17
112:20
pages 24:4 41:24
42:5 69:8
111:5
paid 15:12 37:23
62:18
Palm 1:1 6:11
Palmetto 2:4
papers 48:7
paradigm 74:17
paragraph
20:23 22:21
25:21 26:22
37:11 58:8
59:19 62:4,11
67:18 68:24
69:16 71:11
75:1,8
paralegals
103:19
Park 2:4
part 15:19
partial 101:8
participate
29:17 98:2
participated
74:3 87:11
participation
93:19
particular 23:3
42:5 50:16
73:7 80:18
103:1
particularity
69:12
particularly
15:23
parties 6:19
111:12,14
113:8,9
partner 10:4
31:16 36:7,10

36:12,19
103:21
partnership
36:18
party 65:12
113:9
passed 32:24
passing 54:13,16
paste 85:5
pay 11:2 15:12
26:24 27:8
37:16,21 38:3
54:24 107:14
paying 38:24
payment 14:9
PC 6:10 83:24
84:5
PC's 98:14
penalties 112:22
pending 107:23
108:4,21
people 42:24
43:10 44:5
49:19 68:22
percent 58:15
73:18
perception
56:14
performed
102:15 103:15
period 57:9
perjury 112:22
Perkins' 41:7
person 94:21
96:24 104:3
personal 80:8
81:11
personally 77:22
persons 104:6
pertaining 31:6
phone 24:14
103:5
phones 84:21
photo 44:11
picture 7:14
place 32:12,23
Plaintiff 1:14

2:2
Plaintiff's 5:2
69:1 75:17
91:18
Plaintiffs 1:5 6:8
6:23 37:12
57:13 67:20
75:5 76:20
83:9
played 48:10
plead 58:4,5,24
pleading 95:20
pleadings
104:18,19
please 7:8 8:11
8:11 10:25
11:9 21:22
41:15 82:7
97:21 113:6,13
pled 57:3 73:21
point 10:10
17:19 54:20
55:11,18,23
58:21 90:1
108:25
Police 43:18
policy 32:13,22
42:19 44:3
Political 41:6
politically 32:15
politics 30:19
44:16
POLLOCK
2:16
position 106:11
possession 75:2
75:10 80:9,13
80:21 81:12,12
81:14,21 84:12
84:16 85:4
97:2
possibilities
27:17 40:1
possibility 27:19
95:20
post 13:19 43:25
posted 44:11

potential 37:1
potentially
35:21 68:14
82:24
Poverty 41:9
practice 8:17
20:24 21:3
25:8 38:23,25
50:23 54:20
67:10,24 71:17
72:4 74:10
96:25
practiced 63:10
practicing 67:12
74:20
prank 48:2,3,9
48:16,21
preclude 53:10
predict 23:2
prejudice 46:18
46:20
preliminary
53:15,15 54:6
prepare 33:2
105:11
prepared 52:13
68:25 99:11
105:3
presence 9:10
29:11 37:15
present 3:3 6:19
6:22
pretty 24:9
46:25
previous 43:6
60:20
previously 107:9
primary 45:8,11
principal 71:15
73:25
prior 56:3 84:10
privately 42:16
privilege 77:9,15
79:12,14,15
86:2,4,16,21
88:22 89:3,3,7
89:14,15,17

90:21 91:9
99:7,8
privileged 76:7
80:5 86:11
90:22 91:3,9
99:7,9
pro 7:4 62:15
pro-Israel 28:24
probably 30:3
84:7
problem 7:13
28:20
procedural 60:4
63:18
proceed 52:18
proceeding
52:12
proceedings
63:3
produce 76:9
78:16 81:23
85:18 87:3,12
87:22,23 89:12
89:13,15 94:6
produced 24:15
90:2,3,9,10,18
91:7 107:24
product 77:15
79:11,15 86:1
86:15,21 88:22
89:3 90:20
99:7,10 100:1
100:8 104:1,16
104:23
production 5:11
5:12 75:17
76:1,11,13
79:3 87:9
90:13,13 91:19
profession 74:17
professional
66:19,22
101:15,15
progressing
22:24
prohibited 22:9
66:24

promote 44:4
proof 24:25 51:4
proposed 66:5
67:2
propriety 65:7
protected 77:15
79:11
protest 43:18
provide 27:1
58:10 61:22
62:1 69:14
provided 32:25
36:17 45:7
67:20 105:10
providence
79:16
providing 61:17
provision 46:16
prudent 39:13
public 6:3 15:22
46:11 110:16
111:4,18
publication 92:5
publishing
22:10
purposes 77:6
pursuant 9:16
58:10 62:14
71:7
pursue 54:23
89:22
pursued 53:22
pursuing 54:5
57:25
pursuit 57:20
put 9:10 10:17
10:23 13:20
18:2 20:17
32:12 41:16
45:21 54:16
55:24 66:8
75:21 98:15
101:1
putting 18:8

**Q**

Quantum 2:22

Queens 8:16
question 17:11
18:23 19:2,9
28:4 30:24
40:12 50:20
52:6 70:25
71:2 76:7 78:1
79:21,25 80:4
82:25 84:23
86:1,19 88:1
96:9 99:2,21
106:3,16 108:8
108:13
questioning
95:16
questions 4:13
82:20 83:3
107:21,25
quickly 70:3
quiescent 61:5,6
quite 52:10
quote 10:25
42:24 43:9,21
44:4,15,16
69:2
quotes 14:25

**R**

R 2:16
R-U-I-Z 47:16
race 44:6
raise 7:23 38:2
raised 22:5
44:20 64:13
95:20
ramifications
65:24 100:18
ran 16:13
range 27:17 40:1
Raton 2:5,18
reach 17:19
read 4:10 7:21
18:19,20 78:14
82:7 100:11
108:19 112:22
113:10
reading 113:7

ready 7:24 109:3
real 73:10
really 26:21
27:22 31:5
40:19 63:16
73:6 99:12
106:16
reason 27:25
32:15 34:13
52:22 56:1
60:18 65:11
69:25 73:10
82:21 92:18
94:13 112:6,9
112:12,15,18
112:21
reasonable
69:12
reasonably
77:16 79:12
92:8
reasoning 52:11
reasons 32:2
rebut 71:23
recall 12:13,17
15:6 24:8,12
24:13,14 35:5
45:1,5 46:13
108:14
receive 62:5
received 47:25
113:9
receiving 62:7
91:22
recess 98:9
107:5
recited 60:4
recollection 20:2
39:20,25 42:1
42:7
recommendati...
63:11
recommendati...
77:6,9
recommended
63:7 77:3
record 6:5 7:18

Page 127

25:10 71:16
85:23 98:8,11
102:13,17,18
103:1 107:4,7
109:4,8
**recordation**
103:14
**records** 78:16
83:16
**reduce** 58:14
**refer** 92:4 93:13
96:23
**Referee** 41:6
**reference** 13:1
36:21 54:13,16
**referenced** 48:2
**referred** 59:23
**referring** 42:22
**reflect** 102:11
**reflections** 82:18
**Reform** 41:9
**refresh** 39:20
41:25
**refreshes** 39:25
42:7
**refused** 55:18
**regard** 14:9,10
15:15 17:13
28:8 33:3,14
44:24 49:1
50:16 53:13
58:2 63:3
64:15 66:15
71:24 80:18
83:7 84:13
92:10 93:16,19
94:21 100:19
103:7 104:7
**regarding** 20:3
**regardless** 37:14
**regrettably** 74:9
**regular** 38:25
80:15
**regularly** 23:5
23:10
**Reinhart** 47:15
59:22,23 62:5

62:8 73:18
96:4
**rejected** 11:15
**relate** 92:4 93:14
96:23
**related** 111:11
**Relations** 26:1
43:2 44:9
**relative** 80:9
111:13
**relevance** 99:18
**relevant** 10:11
15:17 92:19,24
**relied** 79:2
**relief** 53:16,22
54:5,8,13,16
54:18,23 57:4
57:12,17,21,22
57:24,25 58:2
**rely** 101:10
**relying** 63:2
78:22 79:7,21
80:1,4
**remain** 80:12
**remains** 82:24
**remand** 48:8,9
57:20 63:24
**remember** 11:5
11:11 15:8,14
17:17 21:10
26:18,20 30:1
30:7 33:6,16
33:19 38:12,14
40:1 49:13,15
49:20 50:12
59:8,12 75:22
78:18 91:22
92:1,1
**remembered**
49:25
**remembering**
22:15
**reminder** 58:9
**remotely** 1:18
6:2
**remove** 42:16
**repeat** 106:3

**repeated** 43:22
**reporter** 1:21
4:9 6:3,17 7:7
7:19,22 8:4 9:9
17:17 20:11
23:20 75:13
82:7 111:3
113:16
**REPORTER'S**
111:1
**Reporting** 1:22
6:18 113:17
**represent** 6:20
18:8 34:7
52:24 55:19
56:15 57:2
63:6
**representation**
5:8 19:14,25
20:4,13,20
21:22 22:21,23
28:10 31:22
32:19 33:25
34:12 45:3
51:8 52:25
53:13 54:9
56:14 57:10
78:7 84:14
94:14 96:2,19
97:16 102:8
103:8 105:2,7
105:12,18
106:6,18
**representative**
32:17
**represented**
21:9,24
**representing**
19:5 22:17
35:15 75:4
96:20 103:20
104:12
**reproduce**
108:20
**reputation** 18:7
28:5 29:8
56:22

**request** 5:11,12
6:15 13:7
58:18 75:17
76:1,2,10,23
76:24 77:14
79:2,10 80:17
81:1,3,22 91:2
91:19 92:7
96:22
**requested** 76:17
80:20 85:23
**requesting** 94:6
**requests** 85:18
87:2,12,23
**require** 54:5
**required** 9:10
63:17 69:11
71:5 89:7
**requirements**
60:22
**Research** 21:25
41:8
**resided** 96:3
**resolve** 11:17
**resolved** 44:15
**respect** 55:9
**respective** 80:14
**respond** 11:23
11:25 12:8
17:6 19:8
51:22 60:8,12
60:12 68:4
71:7 77:2
85:19 97:21
106:15
**responded** 11:7
11:15 30:25
79:8
**responding** 52:2
75:22
**response** 12:1
52:10 59:21
69:7 70:2
75:17 76:1,10
76:21,21 77:4
77:22 78:14
82:6,8 85:17

86:11 87:2,12
87:22 89:9,17
89:17 91:1
93:7
**responses** 5:11
5:12 91:18
**responsibilities**
63:20
**responsibility**
54:17 63:13
66:19,22
**responsible**
76:13 79:19
**responsive** 80:16
81:22
**result** 23:3 31:22
39:7 43:21
52:19
**resume** 98:6
**retain** 71:23
**retained** 34:6
85:3
**retainer** 37:24
105:22
**return** 113:13
**returned** 113:8
**review** 22:7
41:25 62:16
63:13 67:25
100:3
**reviewed** 33:5
67:20
**reviewing** 24:15
**reviews** 22:11
**RFP** 89:18
**right** 7:23 11:19
14:23 19:20
21:20 38:5
77:10 84:7
92:20 97:7
98:4 107:25
109:1
**Right-Leaning**
41:6
**risk** 27:17,20,20
32:9
**risks** 26:23

| | | | | |
|---|---|---|---|---|
| **Road** 2:4 | 36:2,14,20 | 101:9 102:3,9 | see 9:14 24:3 | **SHENDELL** |
| **Ron** 89:17 91:17 | 37:2,8 38:18 | 102:16 103:9 | 42:25 73:25 | 2:16 |
| 104:2 | 39:16 40:8,15 | 104:1,10,16,19 | 81:20 | **shod** 69:7 |
| **Ronald** 1:8,12 | 40:17,20,21 | 104:21 106:1,8 | **seeing** 35:5 92:1 | **Shorthand** |
| 2:8 4:3 6:1,6,8 | 42:2 45:4,15 | 106:13,23 | **seek** 22:24 51:9 | 111:3 |
| 8:6,12 76:22 | 45:24 47:2,7 | 107:18 108:2,6 | 71:23 | **Shortly** 10:22 |
| 77:13 87:15 | 47:10,17 48:6 | 108:9,19 109:6 | **seeking** 15:11 | **show** 7:19 9:8 |
| 98:13 110:8 | 48:14 49:21 | 113:4 | 57:17,23 | 59:24 60:9,16 |
| 111:7 112:2,3 | 50:1,7,13,25 | **Sarelson** 3:5 | 107:23 | 76:18 |
| 113:2,3,22 | 51:11,15 53:1 | 88:17 | **seen** 13:22 24:5 | **showing** 53:21 |
| **rough** 30:6 | 53:24 55:1,14 | **savages** 43:11 | 25:15 41:20 | **shown** 42:6 |
| **ruin** 43:10 | 56:4,8,17,24 | **saying** 14:25 | 66:5,13 98:23 | **Sics** 13:21 |
| **Ruiz** 47:16 | 59:15 60:3,11 | 19:20 34:25 | **sees** 73:25 | **side's** 26:25 |
| 59:24 96:4 | 61:13,19,23 | 35:6 37:20 | **selection** 46:16 | **sign** 4:10 66:10 |
| **rule** 58:11 64:4 | 63:15 64:23 | 46:8,12 55:4 | **Senate** 16:13 | 113:10,13 |
| 69:11 71:7 | 65:6,13,19,25 | 72:17 80:18 | **send** 24:9 25:9 | **signature** |
| 74:16,19 | 66:1,12 67:4,8 | 85:10 92:17 | 95:5 | 113:12,21 |
| **ruled** 63:25 | 68:2,10,17 | 106:20 | **sending** 24:16 | **signed** 45:3 |
| **rules** 43:22 | 69:18 70:6,13 | **says** 20:23 42:14 | **sensitive** 32:15 | 106:19 110:11 |
| 62:15 66:18,21 | 70:18,23 71:9 | 42:22 43:4,20 | **sent** 10:24 24:6 | **significant** 22:16 |
| **ruling** 19:24 | 72:1,7,20 73:4 | 43:25 44:3,12 | 44:11 85:19 | 54:19 |
| 20:2 55:9 | 73:13,22 74:6 | 44:16 58:9 | 93:17 96:11 | **similar** 43:13 |
| **run** 16:18 | 74:13 76:6,12 | 75:1 81:11 | **separate** 52:19 | **simply** 37:13 |
| | 76:25 77:8,18 | 92:3 | 105:2 | 48:2 50:5 |
| **_____** | 77:23 78:3,6,8 | **school** 74:24,25 | **September** | 82:10 |
| **S** | 78:13,20 79:1 | **SCOTT** 2:9 | 10:19 19:12 | **Sincerely** 113:15 |
| **S** 2:10 | 79:7,13,20,24 | **screen** 10:17,23 | 110:17 111:19 | **sink** 44:15 |
| **Sabbath** 23:15 | 80:23 81:3,17 | 13:20 20:17 | **serve** 46:8,9 | **Sir** 77:21 |
| **Salsburg** 20:15 | 81:25 82:11,16 | 41:16 75:21 | 47:6 62:14 | **site** 42:17 |
| **San** 44:11 | 82:25 83:3,11 | 98:15 | **served** 46:5 | **situation** 63:18 |
| **sanctions** 27:19 | 83:14,19 84:15 | **screw-ups** 56:3 | 52:12 87:3,12 | 71:17 |
| 77:22 | 85:25 86:5,7 | **scroll** 41:17,24 | 87:23 | **situations** 65:20 |
| **Sando** 2:10 6:24 | 86:15,19 87:4 | 91:23,25 | **service** 44:2 | **Sixty-one** 74:23 |
| 6:24 10:3 | 87:24 88:14,21 | **se** 7:4 | 46:11,12,14 | **size** 82:17 |
| 11:13,20 12:5 | 89:1,9,13,16 | **search** 81:20,23 | 60:19,22 | **slip** 69:7 |
| 12:12,16,20,25 | 89:21,24 90:4 | 83:13,15,18 | **serving** 62:24 | **slow** 91:25 |
| 13:9,13 14:3 | 90:15,19,23,25 | 85:13,17 87:2 | **set** 14:18 71:3 | **so-called** 62:24 |
| 14:19 15:5,24 | 91:5,8 92:14 | 87:12,14,19,21 | **sets** 105:7,17 | 63:1 |
| 16:4,10,15 | 92:21 93:1,6,8 | **searched** 83:5 | **settle** 13:5,8 | **social** 28:2,25 |
| 17:3,10 18:4 | 93:21,25 94:10 | 87:8 | 14:16 16:25 | 29:8,11,17 |
| 18:10,16,23 | 94:16,23 95:2 | **Sebastian** 2:10 | 18:9 19:13 | 37:15,17 45:22 |
| 19:6,16,21 | 95:7,12,14,23 | 6:25 | 64:18,24 | 47:22 |
| 20:1,8 22:18 | 96:5,13 97:21 | **sebastian.agui...** | **settlement** 65:4 | **softly** 78:2 |
| 23:18,22 25:11 | 98:2,19,20 | 2:13 | 66:5,9 67:2 | **software** 103:6 |
| 25:18 27:9 | 99:2,6,10,14 | **second** 5:12 28:4 | **Shariah** 42:21 | **sold** 22:8 |
| 28:11,21 29:13 | 99:15,18,22,25 | 62:17 91:18 | **Sheet** 4:10 112:1 | **sole** 58:16 |
| 31:24 34:15,22 | 100:8,20 101:3 | **Security** 16:22 | 113:7 | **somebody** 18:2 |
| 35:2,17,22 | | | | |

sorry 7:23 9:4
21:16 36:8
48:8 99:2
108:6
sort 103:5
sought 51:14
52:6 54:18
66:6
South 2:11
Southern 15:3,9
21:11,12 22:1
41:9 58:10
60:22 61:1,4
61:18 62:15
64:4 69:10
80:11 93:15,18
96:2,12
speak 12:15
49:10,12,17
63:8 77:9 88:8
88:10
speaking 96:21
speaks 14:13
specific 15:10
specifically
24:18 83:21
specious 62:6
speculate 40:6
40:11 107:19
speculation
40:10
Speech 41:6
spent 102:18
spoke 86:7,9
spoken 104:6
staff 53:7 103:23
stand 77:17
standard 61:10
stands 79:19
94:10
state 6:3,19 8:11
20:24 22:22
80:7 86:17
110:3,16 111:4
111:18
stated 112:22
statement 17:21

18:24 21:2
26:2 27:4,13
37:18 57:14
58:12 60:2,4
60:10 62:9,19
67:22 69:16
83:1,2 111:7
111:12
statements
82:18 103:14
states 10:18
24:19 25:21
42:13 59:19
60:7 71:11
76:22 77:14
92:7
status 31:19
statute 58:22
stay 15:17
stenographic
111:7
step 43:3 54:8
steps 53:14
Steve 33:19,23
stick 58:25
stonewall 89:19
stop 69:24 97:23
story 62:7 92:10
straight 52:6
strategy 64:10
64:15
straw 69:9
Street 5:10
48:22 50:17
strictly 66:24
strike 12:25
36:20 37:2,8
100:15
strikes 29:16
strong 26:12
strongly 71:21
struck 72:22
stuff 85:10 96:11
styled 80:10
101:8
subject 8:19
26:24 65:24

77:21 88:19,24
subjective 29:16
70:19
submitted 48:7
71:2
submitting
72:17
subsequently
22:9
substance 86:13
substantial
70:21
Subtitled 41:7
successful 27:1
sued 22:10
30:20,22 35:14
88:3 97:14
101:14
sufficient 54:23
sufficiently 57:3
suggest 100:6
suit 13:5,8 26:25
31:4 53:10
67:19,21
107:10
Suite 1:23 2:11
2:17,22 113:18
sum 70:21,24
summary 5:13
22:4 98:23
99:19 100:3
101:7,8
Superior 31:1
supplement 22:8
support 52:21
71:21 103:23
supported 69:5
71:13
supporting
69:14
supportive
42:21
suppose 68:22
sure 31:5 41:22
55:5 94:1
surveillance
16:22

suspended 44:10
suspension
43:16,21
swear 7:8,20,25
sworn 8:7
sympathy 71:20
system 60:19
systems 85:6

**T**

tactic 59:7
tactical 58:20
64:11
take 13:7 32:23
41:23 51:9,14
51:18,21,25
54:17 70:3
98:3,4,5
106:25 107:2
108:22
taken 1:14,16,21
6:2,14 66:15
70:10 73:12
98:9 107:5
111:12 113:3,6
talk 23:13
talked 15:11
33:16 88:12
talking 15:1
65:2 78:2
95:15 104:18
tamper 96:16,18
Tax 41:9
tech 44:9
tell 26:17 27:15
34:18 38:23
39:13 49:14,16
84:6 103:22
telling 38:16
ten 8:24 21:7,18
Tens 30:2
Teppler 33:19
33:23 34:7
103:21
term 70:19
terms 29:7 44:2
55:6 56:14

64:15 89:11
105:18
terror 43:8
terrorism 39:3
terrorist 39:10
107:12
testified 8:8
100:16 107:9
testify 49:5
testimony 4:3
7:25 17:4
38:19 39:17
40:15,16 50:2
54:3 73:23
79:4
Texas 28:8
text 83:6 85:5
texts 81:15
thank 7:23 8:4
11:3,8 13:15
42:3 99:13
107:3 108:17
109:2
things 63:19,25
99:13
think 15:16,21
17:25 21:25
22:2 26:14
30:5 31:5
34:10,11 36:24
40:4 51:6
52:14 55:25
56:2 63:19
74:18 99:16,16
108:16
thinking 74:11
Thirty-five
74:21
thorough 25:2
73:6
thought 32:8
38:8 39:14
52:17 61:14
96:1
thousand 30:4
30:11 38:13
thousands 30:2

threat 95:10
threaten 44:5
three 82:4 96:22
threw 69:6
throw 44:15
  96:1
Thursday 1:16
ties 39:3 107:11
time 1:16 6:13
  10:10 12:4
  25:23 28:23
  29:3,18,18,25
  30:12,23 32:18
  33:24 35:1,13
  40:24 41:23
  45:19 48:4
  55:11,18 59:14
  60:21 61:4
  62:8 63:19
  64:2 69:12
  70:4 72:22
  73:7,12 86:20
  98:7,10 102:11
  102:17,18
  107:3,6,10,22
  109:7
timely 60:8
times 82:4
title 13:20 41:5
today 7:1 9:10
  9:21 30:8 65:5
  65:15
Today's 6:13
told 23:14 26:12
  26:15 34:17
  39:21 64:14
  92:20,22 97:14
Tony 41:7
Topelsohn
  103:22
total 10:6 89:19
totally 15:21
  73:1
touches 78:7
touchy 41:7
trade 50:23
trademark

21:11
Trail 2:17
transcribed
  113:6
transcript 7:18
  111:5 113:7,8
  113:10
transcription
  111:6
transfer 52:14
  52:22 84:9
transferred
  52:17 53:9
  84:24 105:21
trial 21:11 78:11
  78:13 103:25
  104:4,9
tried 13:4 23:13
  51:25
trouble 22:14
true 82:22 111:6
  112:22
truth 8:1,1,2
  27:14
truthful 22:10
try 13:8 19:13
  21:22 49:19
  77:24 96:1
trying 14:16
  18:8 35:21
  90:1 94:13
  96:16
turn 10:16 13:12
  13:18 22:21
  25:14,21 41:3
  41:5 42:5 57:8
  58:8 59:19
  76:16 91:13
  96:22
turned 87:8 90:7
turning 42:13
  67:18
tweet 42:19,23
  43:23
tweeted 43:8
Twitter 26:1
  27:3,23 29:20

29:24 30:18
  37:14 40:25
  41:5 42:16,18
  43:1,24 45:8
  45:20,20,21,23
  46:4,5,8,9,10
  46:12,17 47:6
  47:23 49:1
  51:4,5,10
  52:12,13,19,21
  53:11 63:23
Twitter's 43:15
  43:17,20 44:1
  44:3
two 10:7 22:2
  36:9 43:19
  48:21 84:6
  85:18 93:13

_____ U _____
ultimately 26:9
  38:16 45:9
  46:3 58:13,14
  62:8 68:25
unable 98:2
underlying 80:9
  80:12
undersigned
  110:7
understand
  17:11 19:2
  20:23 28:3
  50:20 52:10
  56:18 70:24
  79:24 88:1
  96:18 102:10
  106:16
understood 39:6
  39:9
unduly 77:15
  79:11
unethical 67:10
unfair 50:22
unfairly 50:22
unfamiliar 87:5
unindicted 28:7
United 10:18

University 74:25
unjust 101:21
unknowns 23:2
unquote 42:25
  43:23 44:5,17
  69:3
untimely 70:2
unusual 71:17
  71:18
update 60:21
use 29:23 52:2,7
  63:8
useful 58:21
user 46:17 52:15
  44:6

_____ V _____
v 1:7
vague 76:23,24
  77:14 79:10
  92:7
validity 101:6
vehicle 15:17
  37:13
venture 56:11
venue 46:16
  52:14 57:19
verification
  48:12,15
verified 5:5
  10:12 25:15
  57:8 78:23
verify 87:1
versus 6:8 80:11
vetted 32:5,7,8
vetting 32:13
vice 62:15
vicious 68:22
video 6:6 7:14
videoconference
  1:11,14,18 2:1
  6:1 109:9
  110:9 111:8
videographer
  3:9 6:5,16 7:7
  7:12 98:7,10

107:3,6 109:3
  109:7
videotaped 1:11
  1:14,18 2:1 6:1
  109:9 110:8
  111:8
view 32:6 54:20
viewed 95:10
Viewing 71:13
views 82:18
vindictively
  95:19
violate 76:19
violated 42:19
  83:8
violation 44:1
violations 43:22
violence 44:4
virtually 103:5
voiced 43:13
vs 112:2 113:3

_____ W _____
waive 113:12,21
Wall 5:10 48:22
  50:17
want 32:2 52:16
  52:22 68:7
  70:3 73:10
  78:8 92:18
  93:10 103:13
  106:25
wanted 27:22,25
  32:9 34:14,21
  46:15 68:8
  70:2
wanting 56:21
wants 66:9
warrant 23:2
wasn't 32:10,23
  36:8 48:21
  56:13
Watch 16:9,19
  16:23 50:8
way 13:8 29:9
  56:23 82:17
  92:4

ways 49:18
we'll 14:23,24
   41:11,14 84:24
   98:5 107:25
   108:24
we're 65:15
   98:21 108:2
We've 7:18
   106:17
weak 26:15
website 22:7
Wednesday 11:1
welcome 80:2
welcomes 44:9
well-developed
   71:15
well-documen...
   73:5
went 22:4 85:21
   92:11 97:19
weren't 21:21
   61:8 107:23
West 2:4
WhatsApp 85:5
whatsoever
   57:12
wholly 62:6
William 2:20,21
   6:10
wishes 113:12
witness 1:21 7:1
   7:8,21 8:3
   40:22 82:7,13
   97:17,21 98:18
   104:9,14
   108:19 110:8
witnesses 103:24
   104:3
word 96:18
words 26:18,20
   56:10
work 15:19
   17:21 18:1
   31:15 34:2
   55:23 71:6
   74:4 77:15
   79:11,15 86:1

86:15,21 87:7
88:22 89:3
90:20 99:7,10
100:1,8 102:14
103:15 104:1
104:16,23
worked 103:18
working 25:23
   33:21
works 86:10
worse 59:20
worship 23:15
worth 46:4
worthy 82:20
wouldn't 61:10
   65:18 67:7,15
   68:6
wrench 96:1
write 30:18
   44:18 76:5
writing 24:25
   35:5 46:22
   55:24 87:1
   105:6,10,17
writings 34:20
written 12:11
   14:8 41:4
   50:17
wrong 55:4
wrote 11:19
   42:24 44:24
   48:1 49:3,4
   76:4 99:1,4

—————
       X
—————

—————
       Y
—————
yeah 40:13,19
   64:9 79:23
   88:5 89:1 99:4
   99:15,22
   104:20 106:16
year 31:4
years 8:24 30:16
   30:16 36:6,8,9
   43:25 72:5
   74:10,21 84:6

Yesterday 10:9
York 8:16,18
   9:3,4 21:12
   25:24 43:9,17
   66:16
you'd' 24:4
Young 2:20,21
   6:10 7:3,3 34:6
   62:13,16,23,24
   63:5,12 64:17
   66:6 67:1,18
   68:25 69:6,10
   73:11
Young's 64:24

—————
       Z
—————
Z-A-H-R-A 43:5
Zahra 43:5
zero 78:4
Zoom 6:14

—————
       0
—————
000067 10:24

—————
       1
—————
1 5:4 6:6 9:11,12
   20:23 62:4
   108:16 111:5
10 5:5,13 11:1
   98:13,16
10:00 1:16 6:14
   111:9
100 2:22
101 1:22 113:17
104 4:20
108 4:6
109 111:6
11 8:14 25:21
110 4:9
111 4:9
112 4:10
113 4:10
11th 10:11,18
   18:13 19:3,11
   19:24 47:5
   54:22 61:3
   63:25

12:06 98:7,9
12:25 98:9,10
12:38 107:3,5
12:50 107:5,6
12:52 1:16 109:7
   109:9
13 5:6,7 26:22
14 4:20 37:11
1400 2:17
15-287 2:4
15-minute 98:5
   107:2
150 2:17
150,000 70:16
   71:4
1500 1:23
   113:18
17 4:17
18 59:24
1963 8:14

—————
       2
—————
2 5:5 10:13,14
   25:18 37:11
20 5:8 58:15
   73:18
2003 16:14
2012 42:23
2016 44:10
2017 43:8
2018 31:5
2019 20:14
   25:22 26:19
   27:7 30:13
   42:6
2020 108:16
2021 59:25 62:4
   62:11 69:1
2022 10:19 11:2
   11:8 19:12
2023 15:16
2024 1:16 6:13
   110:9,11 111:9
   111:16 113:1,3
2025 110:17
   111:19
21 68:25

22 1:16 6:13
   113:3
22nd 110:9,11
   111:8
23 4:16
24 5:9 62:11
241-2323 2:18
250,000 30:11
250.7 30:11
2500 2:22
26 113:1
27 57:8
2700 2:17
27th 111:16

—————
       3
—————
3 4:15,18 5:6
   11:8 13:13,14
   13:15,16
30 10:19 19:12
   113:11
305-350-5365
   2:12
33 58:8
33256 2:12
33301 1:23
   113:18
33426-8308 2:23
33431-1809 2:18
33433 2:5
35 59:19 62:4
36 62:11
37 67:18
38 68:24 71:11
3rd 1:22 11:15
   113:17

—————
       4
—————
4 4:19 5:7 13:23
   13:24 15:16
40 4:15
41 5:10
45 75:1,8

—————
       5
—————
5 5:8 20:11,18
5,000 62:17

| | | | | |
|---|---|---|---|---|
| **50-2023-CA-0...** 1:2 6:12 112:2 **561** 2:18 **561-558-5336** 2:5 **561-568-1000** 2:23 **569015** 2:11 | | | | |

<hr>

**6**

6 5:9 23:22 24:1

<hr>

**7**

**7** 5:10 20:14 22:21 23:21 41:13,14,18 42:5,13 48:2 **7.3(a)** 58:11 64:4 69:11 71:7 **7050** 2:4 **75** 5:11

<hr>

**8**

**8** 4:5 5:11 41:12 42:5,6 75:14 75:15,16,19 110:17 111:19 **85** 4:16

<hr>

**9**

**9** 5:4,12 42:6 75:14 91:16,17 91:20 **9:19cv81179** 80:11 **9:25** 98:6 **9:26** 98:6 **90** 4:17 **90,000** 37:16,21 **91** 5:12 **9150** 2:11 **93** 4:18 **98** 5:13 **99** 4:19

# EXHIBIT 2

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.:  50-2023-CA-010810-XXXX-MB


LAURA LOOMER, et al.,

    Plaintiffs,

vs.

RONALD COLEMAN, et al.,

    Defendants.
_____/



VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

CRAIG YOUNG


Taken on Behalf of the Plaintiffs via Videoconference


DATE TAKEN:     Wednesday, August 21, 2024
TIME:          10:01 a.m. to 11:10 a.m.


Held remotely via videoconference



Examination of the witness taken before:
Gail Hmielewski, Court Stenographer

Daughters Reporting, Inc.
101 Northeast 3rd Avenue
Suite 1500
Fort Lauderdale, Florida  33301

```
 1    APPEARANCES VIA VIDEOCONFERENCE:
 2    Appearing for the Plaintiffs:
 3         LARRY E. KLAYMAN, ESQUIRE
           KLAYMAN LAW GROUP, P.A.
 4         7050 West Palmetto Park Road
           Boca Raton, Florida  33433
 5         561-558-5336
           leklayman@gmail.com
 6
      Appearing for Defendants Ronald Coleman and
 7    Mandelbaum Barrett P.C.:
 8         BLAKE S. SANDO, ESQUIRE
           SEBASTIAN A. AGUIRRE, ESQUIRE
 9         COLE, SCOTT & KISSANE, P.A.
           9150 S. Dadeland Blvd., Suite 1400
10         Miami, Florida 33256
           305-350-5365  Phone
11         305-373-2294  Fax
           blake.sando@csklegal.com
12         sebastian.aguirre@csklegal.com
13    Appearing for Defendant Dhillon Law Group Inc.:
14         BRETT R. BLOCH, ESQUIRE
           SHENDELL & POLLOCK, P.L.
15         2700 N. Military Trail, Suite 150
           Boca Raton, Florida  33431
16         561-241-2323  Phone
           561-241-2330  Fax
17         brett@shendellpollack.com
18    Appearing for Defendant/Deponent Craig William Young:
19         CRAIG W. YOUNG, ESQUIRE, PRO SE
           CWY LEGAL & CONSULTING, LLC
20         2500 Quantum Lakes Drive, Suite 100
           Boynton Beach, Florida  33426
21         561-568-1000
           craig@cwylegal.com
22
      ALSO PRESENT:
23
           Laura Loomer, Plaintiff
24         Cheryl Burstein, Esquire
           Asher Anderson, Legal Assistant
25         Jeff Abrams, Videographer
```

1                    I N D E X

2

3                                                         Page

4    TESTIMONY OF CRAIG YOUNG

5    Direct Examination by Mr. Klayman:              6

6    Certificate of Oath:                           64

7    Certificate of Reporter:                       65

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          E X H I B I T S

2

3                        PLAINTIFFS' EXHIBIT

4
         Number                     Description                Page
5

6          1       Notice of Taking Deposition Duces Tecum      7

7          2       Defendant, Craig William Young's,            7
                   Responses and Objections to the
8                  Plaintiffs' Third Request for Production
                   to the Defendant
9
           3       Notice of Filing Stipulation and            16
10                 Proposed Order

11         4       Affidavit of Craig W. Young, Esq.           24

12         5       Legal Retainer Agreement                    35

13         6       Email From Craig Young to Larry Klayman     44
                   Dated 8/20/2024
14
           7       Verified Amended Complaint                  46
15

16

17

18

19

20

21

22

23

24

25

1 Videotaped videoconference deposition of CRAIG

2 YOUNG, taken remotely before Gail Hmielewski, Notary

3 Public in and for the State of Florida at large, in the

4 above cause.

5    THE VIDEOGRAPHER: Good morning, we are now on

6   the record. This begins video one in the

7   deposition of Craig Young in the matter of Laura

8   Loomer and Illoominate Media LLC v. Ronald Coleman,

9   Dhillon Law Group Inc., Mandelbaum Barrett P.C.,

10   and Craig William Young, Defendants, in the Court

11   of the 15th Judicial Circuit in and for Palm Beach

12   County, Florida, Case No.

13   50-2023-CA-010810-XXXX-MB.

14    Today's date is August 21st, 2024 and the time

15   is 10:01 a.m. This deposition is being taken via

16   Zoom at the request of counsel for the plaintiff,

17   Larry Klayman, Esquire. The videographer is Jeff

18   Abrams and the court reporter is Gail Hmielewski on

19   behalf of Daughters Reporting.

20    Will counsel and all parties present state

21   their appearances and whom they represent?

22    MR. KLAYMAN: Larry Klayman on behalf of Laura

23   Loomer and Illoominate Media, Plaintiffs.

24    MR. YOUNG: Craig William Young, Defendant,

25   Pro Se.

```
 1              MR. SANDO:  Good morning, Blake Sando and
 2         Sebastian Aguirre on behalf of Ron Coleman and the
 3         Mandelbaum firm.
 4              MR. BLOCH:  Brett Bloch, Shendell & Pollack,
 5         on behalf of the Dhillon Law Group.
 6              MS. BURSTEIN:  Cheryl Burstein, Mandelbaum
 7         Barrett.  I am not representing Mandelbaum Barrett,
 8         I'm a party.
 9              THE VIDEOGRAPHER:  Thank you.  Will the court
10         reporter please swear in the witness?
11              THE COURT REPORTER:  Yes.  Raise your right
12         hand, please.  Do you solemnly swear or affirm that
13         the testimony you're about to give in this case
14         will be the truth, the whole truth, and nothing but
15         the truth?
16              MR. YOUNG:  I swear.
17              THE COURT REPORTER:  Thank you.  You can lower
18         your hand.
19                        DIRECT EXAMINATION
20    BY MR. KLAYMAN:
21         Q.   Please state your name.
22         A.   Before we start, Mr. Klayman, I just want to
23    make it clear that we agreed to two hours for this
24    deposition and it will end at noon, and my name is Craig
25    Young, C-r-a-i-g Y-o-u-n-g.
```

1      Q.    Your statement that it's going to be limited to

2   two hours is not likely to occur, given the fact that

3   you're refusing to produce documents and otherwise comply

4   with other rules and procedures of this court, so when we

5   do move the court, we will ask them to open this

6   deposition to complete it once we receive the required

7   documents.  We can proceed.

8          I'm going to ask the court reporter to mark, and

9   my assistant, Mr. Anderson, will put it up on the screen,

10  a notice of deposition for you to appear here today dated

11  August - to appear on August 21st, 2024.  It was served on

12  or about August 15th.

13          MR. KLAYMAN:  Mr. Anderson, put that up on the

14     screen.

15          (Plaintiffs' Exhibit No. 1 was marked for

16     identification.)

17  BY MR. KLAYMAN:

18     Q.    Have you seen that before, Mr. Young?

19     A.    Yes.

20     Q.    You are here pursuant to this notice of

21  deposition duces tecum?

22     A.    Yes.

23     Q.    And that notice of deposition duces tecum asked

24  you to produce certain documents, did it not?

25     A.    Yes.

```
 1        Q.    And you have not produced any of those
 2    documents?
 3        A.    No.  I have a valid objection of relevance.
 4        Q.    We'll let the court decide that.  And you
 5    previously had been served with a request for production
 6    of documents, correct?
 7        A.    Correct.
 8        Q.    I'll ask that Mr. Anderson put that up on the
 9    screen and that that be made your Exhibit No. 2.
10              (Plaintiffs' Exhibit No. 2 was marked for
11          identification.)
12    BY MR. KLAYMAN:
13        Q.    Is that the request for production of documents
14    and your response?  The title of it is Defendant, Craig
15    William Young's, Responses and Objections to the
16    Plaintiff's Third Request for Production to the Defendant.
17        A.    That is just my response, that is not your
18    request.
19        Q.    Well, you state my request in there, correct?
20        A.    Correct.
21        Q.    Any and all documents that refer or relate in
22    any way to an alleged settlement by you - by and between
23    you; CAIR Florida, Inc.; and CAIR Foundation, okay, that
24    is what I requested on behalf of the plaintiffs in terms
25    of your producing documents, correct?
```

1          A.    Correct.

2          Q.    And you responded, and I'm going to read it into

3    the record:

4                "Response:  Objection is made on the grounds

5          of relevance and the availability of less intrusive

6          means.  The settlement communication in question is

7          not pertinent to any of the claims articulated in

8          ... Plaintiff's Amended Complaint.  Furthermore,

9          this communication is confidential and intended

10         solely for the purpose of facilitating a settlement

11         between the parties, rendering it irrelevant to the

12         present action.  Additionally, the Defendant

13         objects on the basis that the Plaintiff has access

14         to less intrusive methods for obtaining the

15         agreement, specifically through CAIR, with which

16         the Plaintiff has an existing contractual

17         relationship as stipulated in their settlement

18         agreement with CAIR."

19               Now, number one, you purport to have

20   negotiated a settlement in this case with the parties,

21   the CAIR parties, correct, K-A-I-R, correct?

22         A.    Correct.

23         Q.    You - CAIR is not a party in this lawsuit, is it

24   not, the one you're here on today, Loomer v. Coleman,

25   et al.?

1        A.    Is that a question?

2        Q.    Yes.

3        A.    They have a contractual right to your

4    settlement in this matter, but they are not a party.

5        Q.    Correct.  So what is your legal basis for

6    negotiating a settlement with a nonparty?

7        A.    They have a - they have a contract between

8    CAIR and your clients to actually settle this case.

9    They have veto power, they have full authority over any

10   offer of judgment, and they have substantial control

11   over settlement in this malpractice lawsuit.

12       Q.    So you're making your own legal conclusions as

13   to what the settlement agreement between plaintiffs and

14   CAIR entailed, correct?

15       A.    No, that's written down in the actual

16   settlement agreement that Ms. Laura Loomer signed and

17   that you showed at the last motion hearing that we had.

18       Q.    So you're putting yourself in the position of a

19   judge in a court of law in determining what that

20   settlement agreement between plaintiffs and CAIR entails?

21       A.    No.

22       Q.    You negotiated this settlement agreement, this

23   proposed settlement agreement, behind the back of

24   Ms. Loomer and Illoominate Media, did you not?  You did

25   not inform them that you were negotiating a settlement

1    that you hope to have enforced with CAIR, correct?

2         A.    CAIR has ultimate settlement authority in this

3    matter via the settlement agreement that your client

4    signed.  As such, I negotiated with the entity that has

5    settlement control in this malpractice action.

6         Q.    The question is you did not inform either

7    Ms. Loomer, Illoominate Media, or me that you were doing

8    that, correct?

9         A.    Correct.  I was not required to.

10        Q.    You previously represented Ms. Loomer, correct?

11        A.    Correct, for about a month-and-a-half.

12        Q.    And Illoominate Media, correct?

13        A.    Correct.

14        Q.    Right.  You were her attorney and Illoominate

15   Media's attorney, correct?

16        A.    I was acting as local counsel for Ron Coleman

17   in the underlying action of this malpractice suit.

18        Q.    But your duties enure to the clients, correct?

19   Your duties and responsibility under the Florida Rules of

20   Professional Conduct relate to the clients, which are

21   Laura Loomer and Illoominate Media, correct?

22        A.    They are no longer my client and they lost

23   that privilege whenever they sued me.

24        Q.    So you owe them no duty at all ethically or

25   legally?

12

```
 1        A.    There is no ethical rule being broken here and
 2    I owe no duty to them.
 3        Q.    In fact, in this proposed settlement, and we'll
 4    get to it, you actually want me, on behalf of Ms. Loomer
 5    and Illoominate Media, to sign off that she cannot file a
 6    bar complaint against you, correct?
 7        A.    Correct.  That was negotiated at arm's length.
 8        Q.    Did you check with the Florida Bar before you
 9    put that into this proposed settlement agreement with
10    CAIR?
11        A.    I did not, but it's a contractual agreement
12    and at that point there's no illegality to it.  It is
13    negotiated at arm's length, there's consideration, and
14    she is actually being represented by you, who can review
15    that document.
16        Q.    So you took it upon yourself to decide what the
17    Florida Rules of Professional Responsibility require?
18        A.    No.
19        Q.    You didn't consult with the Florida Rules of
20    Professional Responsibility, did you, before entering into
21    this proposed settlement agreement, did you?
22        A.    No, there's no ethical rule being broken here.
23        Q.    You're going to decide for the Florida Bar to
24    that effect, is that right?
25        A.    You have yet to show any sort of ethical rules
```

```
 1    that have been broken even though it has been asked of
 2    you, so at this point you have nothing to show as far as
 3    any ethical issue.  If the Florida Bar has one, they
 4    could bring one, but until then there is no issue under
 5    the ethical rules.
 6         Q.   You're aware that that practice is strictly
 7    prohibited in the bars of 50 states in this country?
 8         A.   You have yet to show that.
 9         Q.   So just to be clear, you never communicated with
10    the Florida Bar, because they'll give advice as to whether
11    this was legal and ethical or not?
12         A.   Correct.
13         Q.   Now I'm going to show you -- Well, let's back
14    up a little bit.  What documents, if any, did you bring to
15    this deposition?
16         A.   None, I -- None.  I had a relevance objection
17    that I filed with the court twice now that you have not
18    responded to.
19         Q.   Since you are claiming that this is irrelevant
20    and has nothing to do with this case, why are you then
21    trying to settle this case with CAIR?
22         A.   Settlement just makes the most sense.  It
23    makes no sense to actually take this out any further
24    than it has to or to delay anything.  I prefer to settle
25    if a settlement could be reached.
```

1       Q.   So you're saying you're secretly engaging in

2    settlement discussions with CAIR behind the backs of

3    Ms. Loomer, Illoominate Media and me as her counsel, as

4    totally irrelevant to the lawsuit that you're here on

5    today?  Is that what you're saying?

6       A.   Object to form, and also I don't believe --  I

7    believe the documents are irrelevant.  They have no

8    relation to your cause of action in your amended

9    verified complaint.

10      Q.   We had a discussion, did we not, and in addition

11   the request asks for any and all documents that refer or

12   relate in any way to an alleged settlement.  You did have

13   emails that went back and forth to CAIR's counsel, Remy

14   Green, and others that represent CAIR, did you not, with

15   regard to this proposed settlement?

16      A.   Yes.

17      Q.   You have not produced them, correct?

18      A.   No, and I will not absent a court order.

19      Q.   And you're claiming a privilege, that these are

20   privileged communications?

21      A.   I'm claiming that they're not relevant.

22   They're not relevant to your claims of action in your

23   amended verified complaint.

24      Q.   So you're not claiming that they're privileged?

25      A.   No.

1      Q.    I ask that they be produced.  Were there text

2    messages that went to and from CAIR's attorneys?

3          A.    No.

4          Q.    How many emails, approximately, went to and from

5    CAIR's attorneys with regard to the proposed settlement?

6          A.    I couldn't state with specificity.

7          Q.    Roughly speaking.

8          A.    Ten.

9          Q.    More than ten?

10         A.    Ten to twelve, I would say would be a fair

11   estimate.

12         Q.    You have reviewed your files or your computer

13   and determined that there was 12?

14         A.    Well, like I said, I cannot speak with

15   specificity.  I have not reviewed how many emails I

16   have.  I just know that they are not relevant to your -

17   any claims in your amended verified complaint.

18         Q.    Now, you said that you've seen the settlement

19   agreement that was reached between Ms. Loomer, Illoominate

20   Media, and the CAIR defendants, correct?

21         A.    Yes.  You showed it at our last motion for

22   protective order hearing.

23         Q.    What hearing are you referring to?

24         A.    My motion for protective order whenever you

25   actually tried to depose me a couple weeks ago, maybe.

1    Q.   Okay.   Let's turn to the actual settlement

2    agreement that was agreed to between Ms. Loomer,

3    Illoominate Media, and the CAIR defendants, and I'll ask

4    that Mr. Asher Anderson put it up on the screen and turn

5    to Paragraph 3 on Page 3.

6         (Plaintiff's Exhibit No. 3 was marked for

7         identification.)

8    BY MR. KLAYMAN:

9    Q.   I'm going to read it:

10        "Coleman Resolution.   Plaintiffs shall, upon

11        any recovery in Coleman, become immediately liable

12        for the Full Amount Due (with credit for all

13        payments Plaintiff has made under paragraph one to

14        that date) as follows:

15        "a.   Information.   Plaintiffs shall keep CAIR,

16        by and through CAIR's undersigned counsel, up to

17        date and informed about any settlement discussions,

18        proceedings, and the like in Coleman; and

19        Plaintiffs shall give CAIR reasonable notice before

20        any settlement.   Failure to provide (any) such

21        reasonable updates shall be a substantive breach

22        of" the agreement.

23        Now, since neither I nor Ms. Loomer nor

24   Illoominate Media knew what you were doing behind our

25   backs, we were prevented from complying with Section A

 1   in keeping CAIR up-to-date, correct?

 2        A.   With regards to that specified period,

 3   however, when we tried to settle earlier, Mr. Klayman,

 4   you did not keep CAIR up-to-date --

 5        Q.   Well, we never --

 6        A.   -- you therefore breached 3(a).

 7        Q.   We never reached a settlement, did we, we never

 8   agreed to any settlement?

 9        A.   You actually never even brought it over to

10   CAIR to even have them review or to discuss.

11        Q.   That's right, because I rejected it, but I'm not

12   testifying.

13        A.   You're not allowed to reject it.

14        Q.   Ms. Loomer rejected it and so did Illoominate

15   Media, but the point I'm making is that you did this

16   secretly behind the backs of Ms. Loomer and Illoominate

17   Media and prevented them from complying with Section A of

18   Paragraph 3 of the settlement agreement with the CAIR

19   defendants, correct?

20        A.   I believe you were already in breach of

21   Section 3(a) based on our previous settlement

22   discussions, as I did make an offer and you did not

23   bring that to CAIR; but with regards to the latest

24   settlement that I spoke to with CAIR, perhaps you did

25   not breach Section 3(a), but that would be up for a

```
 1    court to decide and not for myself.
 2         Q.    Now let's go to Section B:
 3              "Veto Power and Settlement Authority.  CAIR
 4         shall have final sign off power on; veto power
 5         over; and substantive control of Plaintiffs'
 6         authority to settle Coleman, including through any
 7         offer of judgment.  Plaintiffs may not settle
 8         Coleman without CAIR's written consent, and failure
 9         to obtain such consent is a substantive breach of
10         this Settlement."
11              Now, you're a lawyer, correct?
12         A.    Correct.
13         Q.    When were you admitted to the Florida Bar?
14         A.    2016.
15         Q.    Okay, so you've been a lawyer for almost eight
16    years, correct?
17         A.    I've been a lawyer longer.  I was admitted
18    in --
19         Q.    Oh, excuse me.
20         A.    -- in 2013.
21         Q.    Right.  That's why I'm a lawyer, I'm not good at
22    math, okay?  So you've been a lawyer for quite a good
23    period of time.
24         A.    Correct.
25         Q.    Now, this provision, based upon the plain
```

 1    language of the provision, gives the CAIR defendants only

 2    a veto power over any settlement.  It does not give them

 3    the power to settle it themselves, the CAIR defendants.

 4        A.    Disagree, Mr. Coleman.  I actually work in

 5    corporate law --

 6        Q.    My name is not Coleman.

 7        A.    Oh, you are correct, Mr. Klayman.  Excuse me -

 8    Coleman, Klayman - I apologize, Mr. Klayman.

 9              You're incorrect, Mr. Klayman.  I handle

10    corporate contracts.  I've reviewed hundreds, if not

11    thousands, of contracts and I've written contracts,

12    redlined, reviewed, and let's see.

13              I'm sorry, Asher, can you stop scrolling,

14    please?  You set a line through there somehow on the

15    screen.  And can you make it a little bit smaller,

16    Mr. Anderson?  Thank you, that's better.  Perfect.

17              So Section 3(b), it gives the CAIR

18    defendants actually three bargained-for - bargained-for

19    powers, as it will.  First is final sign-off power on,

20    meaning final sign off power on any sort of settlement

21    that you may receive; veto power over, veto any

22    settlement that you may receive if it's not good enough

23    to cover their fees, most likely; and then three,

24    substantive control of plaintiffs' authority to settle

25    Coleman, including through any offer of judgment.

1           This substantive is a big word in contract
2     law, meaning the majority or almost a hundred percent
3     control of plaintiffs' authority to settle Coleman.  It
4     actually gives them the power to reach out and to create
5     settlements in this malpractice action.  You've signed
6     away three rights here.  On a bargained-for exchange I
7     believe you took the monetary award owed to CAIR from
8     124,000 down to 73,500, so that's your bargained-for
9     exchange right there.

10         Q.   How can a nonparty, such as the CAIR defendants,
11    decide to settle a separate lawsuit for legal malpractice
12    against you and Ron Coleman and the law firms that are
13    involved in this case?  How can they do that ethically?

14         A.   Through this contract.  It breaks no ethical
15    rules.  You could contract for anything as long as there
16    is not an illegal purpose, and an illegal purpose could
17    be sexual acts, it could be criminal acts such as the
18    death of someone, killing someone, something of that
19    nature.  It must abide by the statute of frauds, and,
20    yeah, and it's written down.

21         So at this point this is an actual contract
22    between Loomer and CAIR and they have substantial
23    authority to settle this matter contractually.  Laura
24    bargained that away.

25         Q.   Are you saying that the use of the phrase veto

1    power has no significance in this section?

2         A.    I'm saying it's actually one point of that

3    section.    There are three points - final sign-off power

4    on, veto power over, and substantive control of

5    plaintiffs' authority to settle Coleman.

6         Q.    And you decided to interpret this provision

7    without ever talking to either me as the attorney for the

8    plaintiffs or Ms. Loomer, correct?

9         A.    There was no need to.    After reviewing it, it

10   was clear that CAIR had substantive control over the

11   authority to settle this matter, not Laura Loomer.

12        Q.    You're aware that any amount of money that was

13   not subject to your proposed settlement, that Ms. Loomer

14   would still be liable for, as well as Illoominate Media,

15   correct?

16        A.    Yes, she would still owe under this agreement

17   up to 73,500.

18        Q.    So in your view, you have no continuing duty

19   with regard to Ms. Loomer; you can do, in effect, whatever

20   you want.

21        A.    Within the bounds of the rules.    She has lost

22   all that privilege when she actually sued me, including

23   attorney-client privilege.

24        Q.    So once she sues you, you are absolved of any

25   ethical responsibility?

1    A.    As long as -- If you can point to an ethical

2  rule, then I'm still subject to the Florida Bar rules of

3  ethics, however, there's no ethical rule with regards to

4  this contract.

5    Q.    Okay, so you're making a determination on behalf

6  of the Florida Bar?

7    A.    I'm making a determination on the fact of this

8  contract, not on --

9    Q.    As a matter of prudence and care, would it have

10  not been prudent for you to consult with the Florida Bar

11  before you undertook negotiated settlement behind the

12  backs of the plaintiffs?

13    A.    This is a valid contract, it has nothing to do

14  with the ethics or the Florida rules of ethics.  This is

15  a valid contract and thus gives CAIR substantive control

16  of plaintiffs' authority to settle Coleman, as is shown

17  in 3(b).

18    Q.    Isn't it true that the substantive control deals

19  with the fact -- Or strike that.

20        Isn't it true that any substantive control

21  that's set forth in Paragraph B is exercised through the

22  veto power, which is part of Subpart B of the settlement

23  agreement between Loomer, Illoominate Media, and the CAIR

24  defendants?

25    A.    No, the veto power is separate from

23

```
1    substantive control.  Veto power refers to if Ms. Loomer
2    were to receive a settlement, and if you were to
3    actually communicate with CAIR regarding that settlement
4    and it wasn't good enough to cover, possibly, CAIR's
5    fees - I'm assuming that - then they could actually veto
6    that settlement and tell you not to accept it.
7            That is separate from substantive control of
8    plaintiffs' authority to settle Coleman.  That's shown
9    through the semicolon and the separate "and", allowing
10   for three different bargained-for exchanges.
11      Q.   Your agreement, as proposed with the CAIR
12   defendants, does not cover the fees that were ordered to
13   be owed to the CAIR defendants from Ms. Loomer and
14   Illoominate Media, correct?
15      A.   Not all 73,500, no.
16      Q.   And you don't think that Ms. Loomer has any say,
17   on behalf of herself and Illoominate Media, in approving
18   the very small amount that you propose to pay to the CAIR
19   defendants?
20      A.   No.  CAIR has final sign-off power, veto
21   power, and substantive control.  Any sort of settlement
22   that is either communicated to you or to them must go to
23   them for either the final sign-off to veto or to just
24   have control and to take over the negotiations.
25      Q.   So based upon your own actions, you get to
```

24

1    decide how much Loomer will continue to owe, and

2    Illoominate Media, the CAIR defendants?

3        A.   No, I have control over what I can offer as a

4    settlement.

5        Q.   Now, as part of this proposed settlement, you

6    signed an affidavit, did you not?

7        A.   I did.

8            MR. KLAYMAN:  And I'll ask that Mr. Anderson

9        put that up on the screen.

10           (Plaintiffs' Exhibit No. 4 was marked for

11       identification.)

12   BY MR. KLAYMAN:

13       Q.   And turning to Page 3, is that your signature?

14       A.   Correct.

15       Q.   And this affidavit was signed under oath?

16       A.   Yes.

17       Q.   And you will submit that everything in this

18   affidavit is true and correct to the best of your personal

19   knowledge and belief?

20       A.   Yes.

21       Q.   When did you become a lawyer on behalf of

22   Ms. Loomer and Illoominate Media?

23       A.   That would have been June 29th, 2021.

24       Q.   On becoming counsel for Ms. Loomer and

25   Illoominate Media, you were required to review the file,

```
 1    correct, to understand what had gone on up to that point
 2    in time?
 3         A.    Yes.  I requested the file from Mr. Coleman
 4    and I reviewed the file in its entirety.
 5         Q.    And you thoroughly reviewed it, correct?
 6         A.    Correct.
 7         Q.    In reviewing that file, you came to the
 8    conclusion that the lawsuit that was filed on behalf of
 9    Ms. Loomer and Illoominate Media was non-meritorious,
10    correct?
11         A.    No.
12               MR. SANDO:  Object to form.
13    BY MR. KLAYMAN:
14         Q.    Did you come to the opposite conclusion, that it
15    was meritorious?
16         A.    Object to form, but I believe that.
17               MR. SANDO:  Object to form, too.
18               THE WITNESS:  It seemed meritorious to me, but
19          that - all the decisions back then happened prior
20          to June 29th, so I was not around for those
21          decisions or for that judgment.
22    BY MR. KLAYMAN:
23         Q.    Now, from that point forward that you became
24    counsel, you've had a duty to advise Ms. Loomer as to
25    whether any actions that were taken or not taken were
```

1    meritorious and justified, correct?

2           MR. SANDO: Object to form.

3       A.   I'll also object to form. And, no, I told

4    Ms. Loomer that - where she was in the case, why the

5    case was dismissed, and where we were as far as actually

6    having to respond to the motion for attorney's fees.

7    BY MR. KLAYMAN:

8       Q.   But as co-counsel with Mr. Coleman and his law

9    firms, you had a duty to advise her as to the efficacy and

10   merits of any action that was taken from that point

11   forward, correct?

12          MR. SANDO: Object to form.

13      A.   Object to form, and from when I came on, yes,

14   I told her that the law was against her, that she was

15   going to have to actually pay something, and that it was

16   really going to be an uphill battle. However, her

17   stance was the fact that she did not want to pay

18   anything to CAIR, that she saw CAIR as a terrorist

19   organization and paying them would be akin to actually

20   funding terrorism. Where she came to that conclusion, I

21   don't know.

22   BY MR. KLAYMAN:

23      Q.   Have you ever researched the history of CAIR?

24      A.   No, that was not what I needed to do to

25   actually adequately respond to a motion for attorney's

1    fees.  They're a valid Florida entity and that's what I

2    needed to know.

3         Q.   So you have no knowledge as to CAIR's history at

4    all?

5         A.   No.

6         Q.   You are aware that CAIR was named as an

7    unindicted co-conspirator in a criminal case in Dallas,

8    Texas against the Holy Land Foundation, correct?

9         A.   I am not aware.

10        MR. SANDO:  Object to form.

11   BY MR. KLAYMAN:

12        Q.   You are aware that CAIR was linked to acting in

13   a capacity of sending financial aid to Hamas, correct?

14        MR. SANDO:  Object to form.

15        A.   Object to form, and, no, I'm not aware.

16   BY MR. KLAYMAN:

17        Q.   You've done no research since?

18        MR. SANDO:  Form.

19        A.   Object to form, and no.  CAIR is a valid

20   Florida entity.

21   BY MR. KLAYMAN:

22        Q.   Well, Ms. Loomer made a rather strong statement.

23   Don't you think you had an obligation to check it out?

24        MR. SANDO:  Form.

25        A.   Object to form, and, no, it had no bearing on

1    what I had to do with regards to filing an opposition

2    for a motion for attorney's fees.  Any sort of argument

3    regarding CAIR being linked to any sort of terrorist

4    organization or funding terrorism is not a meritorious

5    argument.

6    BY MR. KLAYMAN:

7         Q.   Before you went behind Ms. Loomer's back and

8    tried to negotiate a settlement, it didn't concern you

9    that the monies that you would be agreeing to pay would go

10   to an organization that was named as an unindicted

11   co-conspirator in a terrorism trial in Dallas, Texas for

12   having aided Hamas?

13             MR. SANDO:  Object to form.

14        A.   Object to form, and also, the money would be

15   going to a valid state entity.

16   BY MR. KLAYMAN:

17        Q.   And you have no concern where that money could

18   possibly go after you - it was paid to CAIR?

19        A.   Object to form, and once again, it would be

20   paid to a valid state entity.

21        Q.   You are aware that CAIR, excuse me, that Hamas

22   attacked Israel on October 7th and killed nearly 2,000

23   people, including beheaded - beheading children, raping

24   women and taking hostages and otherwise killing people?

25             MR. SANDO:  Object to form.

```
1        A.    Object to form.   Yes, I am aware of what's

2    going on in Gaza somewhat, with Israel.

3    BY MR. KLAYMAN:

4        Q.    So it didn't concern you that you were agreeing

5    to pay money over to CAIR?

6        A.    Object to form.

7              MR. SANDO:   Form.

8              THE WITNESS:   No, I am paying to a valid

9        Florida state entity.

10   BY MR. KLAYMAN:

11       Q.    And you have no legal obligation to pay any

12   money to CAIR, do you?

13             MR. SANDO:   Form.

14       A.    Object to form.   With regards to the

15   settlement, if we reached a different deal, then it

16   would be a different deal, but we reached the deal that

17   we did and if the contract goes through and is valid,

18   then I would be paying CAIR $5,000, which would go

19   towards Loomer's fees owed to CAIR.

20   BY MR. KLAYMAN:

21       Q.    Quite apart from your being sued for

22   malpractice, you have no financial obligation to pay CAIR

23   anything?

24       A.    Object to form and, no, I'd have, outside of

25   this lawsuit, no reason to pay CAIR anything.
```

```
 1    BY MR. KLAYMAN:

 2         Q.    Turning to your affidavit, Paragraph 8, "I

 3    requested the file from Ron Coleman and I reviewed the

 4    matter," you thoroughly reviewed the case, correct, at

 5    that time?

 6         A.    Yes.

 7         Q.    Paragraph 11, I'm going to read it:

 8               I should note that -- "I should also note

 9         that, as described by the Circuit, it was before I

10         was retained that 'Illoominate's counsel declined

11         to follow local rules of the district court

12         instructing that the recipient of a motion for

13         costs and attorney's fees, within 14 days, 'shall

14         describe with reasonable particularity each time

15         entry or nontaxable expense to which it objects,

16         both as to issues of entitlement and as to amount,

17         and shall provide supporting legal authority.'"

18         Illoominate Media, Inc. v. Cair Florida, Inc.,

19         2022, U.S. App. LEXIS 27435, at 10(11th Cir

20         Sep. 30, 2022), quoting S.D. Fla. R. 7.3(a).  Thus,

21         at that stage, arguments about the amount of fees

22         were waived."

23               That's an accurate statement, is it not?

24         A.    It is.  The rules stated that you have 14 days

25    to actually discuss that.  That did not happen.
```

1    However, there was no order from the court stating that
2    this was waived and we actually believed that, given the
3    instructions from Ms. Loomer as to how she wanted to
4    invalidate the offer of judgment, due to the fact that
5    she did not want to pay CAIR as she viewed them as a
6    terrorist organization, which she repeated multiple
7    times, in my judgment the best argument we could put
8    forward was to invalid the offer of judgment by claiming
9    that there was nonmonetary equitable relief stated in
10   the complaint.

11   BY MR. KLAYMAN:

12        Q.   Having reviewed the file, you became aware that
13   Mr. Coleman and his law firms never took any action to
14   pursue equitable relief in terms of the case?

15             MR. SANDO:   Object to form.

16        A.   Object to form, and that happened prior to my
17   joining.

18   BY MR. KLAYMAN:

19        Q.   But in reviewing the file, you were able to
20   determine that Mr. Coleman and his law firms didn't take
21   any action to further the claims of Ms. Loomer and
22   Illoominate Media for equitable relief?

23             MR. SANDO:   Object to form.

24        A.   Object to form.

25             MR. BLOCH:   And join as to Dhillon.

1    BY MR. KLAYMAN:

2        Q.    Respond, please.

3        A.    Yes, also --  Repeat that one more time,

4    Mr. Klayman.

5        Q.    In reviewing the file, you were able to

6    ascertain that Mr. Coleman and his law firm took no action

7    to further - to litigate the prayer for injunctive relief

8    in the complaint?

9            MR. SANDO:   The same objection.

10       A.    Object to form.  Also, while there was no

11   action, there was also no order from the court stating

12   that it could not be done.  In my judgment, it was not a

13   good argument to make with regards to what Ms. Loomer

14   wanted and the arguments that we wanted to make to

15   actually invalid the offer of judgment as a whole.

16   BY MR. KLAYMAN:

17       Q.    Now, as you entered the case, you would have had

18   the ability to pursue the injunctive relief on behalf of

19   Ms. Loomer and Illoominate Media, correct?

20       A.    Object to form, and when I joined it was

21   solely an attorney fees matter.

22       Q.    Now, you also understood the rules as set forth

23   in Paragraph 11.  You did not file a motion, along with

24   Mr. Coleman and his law firm, that specified specific

25   objections to line entries for the claim for attorney's

1    fees and costs by the CAIR defendants, correct?

2        A.   Object to form.  We didn't -- In my judgment,

3    it was going to go against the main argument that we

4    wanted to make that would invalidate the offer of

5    judgment as a whole, as that was what Ms. Loomer had

6    requested, because she continued to say that CAIR was a

7    terrorist organization.

8        Q.   What does that have to do -- Well, strike that.

9             That has nothing to do with objecting to line

10   items of the attorney's fees requested award, correct?

11            MR. SANDO:  Object to form.

12       A.   Object to form.  In my judgment, that was not

13   an argument that was going to actually help us with what

14   we wanted to do.  Ms. Loomer wanted the fees gone and so

15   in order to do that, the best argument we could make,

16   after consulting and reviewing and doing our research,

17   was to invalidate the offer of a judgment as a whole by

18   claiming that the complaint had set forth a request for

19   nonmonetary and equitable relief.

20   BY MR. KLAYMAN:

21       Q.   In fact, nothing prevented you from making both

22   arguments, correct?  You could have made both.

23            MR. SANDO:  Object to form.

24       A.   Object to form.  It would have weakened our

25   primary argument.

1    BY MR. KLAYMAN:

2         Q.   How does that weaken your primary argument?

3              MR. SANDO:   Form.

4         A.   Object to form.  It would weaken by showing

5    that there would be some sort of fees owed to CAIR.  The

6    hard stance and the bigger picture that we took, which

7    was a clean, clear, simple argument, is that the offer

8    of a judgment as a whole was invalid due to the

9    complaint requesting equitable relief.

10   BY MR. KLAYMAN:

11        Q.   Lawyers frequently argue in the alternative, do

12   they not?

13        A.   Object to form, and lawyers can if that's

14   their judgment.

15        Q.   And you never informed Ms. Loomer and

16   Illoominate Media that in fact you were making a decision,

17   along with Mr. Coleman, only to raise one argument,

18   whereas you had two that you could have made.

19        A.   Object to form.  She was aware of every

20   argument that we were making.

21        Q.   Do you have anything in writing to that effect?

22        A.   Object to form.  I believe that was in a phone

23   call between myself and Ms. Loomer and Mr. Coleman.

24        Q.   But you're not sure, you believe that it was?

25        A.   I'm not sure of the timeline, but I believe

 1    there was a call, yes.

 2         Q.   I'll show you what I'll ask the court reporter

 3    to mark as Exhibit - is it 4?

 4              MR. SANDO:  The affidavit is four, I have.

 5              MR. KLAYMAN:  The affidavit is four and we'll

 6         get back to the affidavit.

 7              (Plaintiffs' Exhibit No. 5 was marked for

 8         identification.)

 9    BY MR. KLAYMAN:

10         Q.   Five, this --  Exhibit 5 is the legal retainer

11    agreement that you signed with Ms. Loomer, correct?

12         A.   Is it going to be shown on the screen?

13         Q.   Yes.

14         A.   That would be it, yes, to act as local counsel

15    to Illoominate Media and Laura Loomer's attorney,

16    Ronald D. Coleman.

17         Q.   Paragraph 2, the second paragraph, "Attorney

18    shall provide those legal services reasonably required to

19    represent Client, and shall take reasonable steps to keep

20    Client informed of progress and to respond to Client's

21    inquiries," that was your duty as set forth in the legal

22    retainer agreement, correct?

23         A.   Yes, and that was fulfilled.

24         Q.   And in furtherance of this legal representation

25    agreement, you were paid due consideration by Ms. Loomer

36

1    and Illoominate Media, correct?

2         A.   Yes, in the amount of $5,000.

3         Q.   Paragraph 14 of your affidavit, going back to

4    Exhibit 4, "My understanding of my role was ... I would

5    essentially be checking materials drafted by Ron for

6    general compliance with local rules and practice," is that

7    an accurate statement?

8         A.   That is an accurate statement, and we also

9    actually consulted with each other frequently to put

10   forth the motion that we did.

11        Q.   Now, Mr. Coleman is not licensed in the State of

12   Florida, correct?

13        A.   Correct.

14        Q.   Based on your knowledge, he doesn't generally

15   practice in Florida, correct?

16        A.   I don't know where he generally practices.  I

17   know for that case he was practicing in Florida, and he

18   is I believe a New Jersey licensed attorney.

19        Q.   And you never asked him about how much

20   experience he had in Florida legal practice in the law,

21   correct?

22        A.   As regards to Florida, no, but I did ask him

23   as to this matter and he said he had plenty of

24   experience.

25        Q.   You had a duty and responsibility, did you not,

```
 1    to not just check Ron for general compliance with local
 2    rules and practice, but to also affirmatively and
 3    independently advise Ms. Loomer as to whether the actions
 4    taken were ethically and legally appropriate, correct?
 5              MR. SANDO:  Object to form.
 6         A.   Object to form.
 7              MR. BLOCH:  Join.
 8    BY MR. KLAYMAN:
 9         Q.   You can respond.
10         A.   Yes.  We did have that discussion, we all were
11    on the same page with what we wanted to do with the
12    motion and how we wanted to proceed.
13         Q.   Your role was not just to rubber stamp what
14    Ron Coleman sent to you, correct?
15         A.   My role was to review and we had a game plan
16    that we set forth and that was actually accomplished and
17    we actually ended up with a 20 percent reduction in
18    attorney's fees.
19         Q.   So you're saying the amount of attorney's fees
20    that Ms. Loomer was ordered to pay was reasonable?  Is
21    that what you're saying?
22              MR. SANDO:  Object to form.
23         A.   Object to form.  The court found them
24    reasonable.
25    BY MR. KLAYMAN:
```

38

1          Q.   I asked you, do you believe that they're

2    reasonable?

3               MR. SANDO:  Form.

4          A.   Object to form, and I really can't speculate

5    on that.

6    BY MR. KLAYMAN:

7          Q.   Well, you looked at the motion for attorney's

8    fees, did you not?  You did review it, did you not?

9          A.   Yes, I did.

10         Q.   And you never made any argument on behalf of

11   Ms. Loomer or Illoominate Media that those fees were

12   unreasonable and inflated, did you?

13              MR. SANDO:  Object to form.

14         A.   Object to form.  I believe in Section 2, I'd

15   have to go back and look, but I believe we didn't make a

16   reference to it, however, the main goal was to

17   invalidate the offer of judgment.  We were all on the

18   same page with that.  That is what we put forth.

19              In my judgment that was the best argument we

20   can make to actually obtain what Ms. Loomer wanted,

21   given that she did not want to pay CAIR, given her

22   thought that they were a terrorist organization.

23   BY MR. KLAYMAN:

24         Q.   So neither you nor Mr. Coleman and Coleman's law

25   firm and your law firm ever challenged the $144,931.87

```
1    plus interest which CAIR was demanding in attorney's fees?

2             MR. SANDO:  Object to form.

3        A.   Object to form, and we challenged the --

4             MR. BLOCH:  Join.

5        A.   -- offer of judgment as a whole.

6    BY MR. KLAYMAN:

7        Q.   You never challenged the amount?

8        A.   I believe we did the second one.

9             MR. SANDO:  Object to form.

10   BY MR. KLAYMAN:

11       Q.   That's a lot of money, isn't it?

12       A.   Object to form, and to me, yes.

13       Q.   And that's a lot of money for someone who was

14   offered one dollar in an offer of judgment, correct, in

15   particular?

16            MR. SANDO:  Form.

17       A.   Object to form and she was offered one dollar

18   after it was shown that there was actually - Laura

19   Loomer fell for a prank and that CAIR was actually not

20   involved in any of the allegations that she set forth.

21   She fell for a prank.

22   BY MR. KLAYMAN:

23       Q.   So Mr. Coleman fell for a prank, too, correct?

24            MR. SANDO:  Form.

25       A.   Object to form.  I have no idea if he fell for
```

1   the prank or not.

2   BY MR. KLAYMAN:

3        Q.   You filed a lawsuit he fell for the prank, is

4   that what you're saying?

5             MR. SANDO:   Form.

6        A.   Object to form.  I do not know if he fell for

7   a prank.  That was prior to my time and I have no idea

8   what his thought process or what their discussions were

9   as to that.

10  BY MR. KLAYMAN:

11       Q.   But you reviewed the file, as you just

12  testified, the entire file?

13       A.   Object to form.  Yes, I did, but that does not

14  include their thoughts.

15       Q.   And you came to no conclusion as to whether

16  Mr. Coleman filed a frivolous lawsuit, correct?

17            MR. SANDO:   Object to form.

18       A.   Object to form.  That was all done prior to my

19  joining the case, whether it was frivolous or not.  I

20  believe Mr. Coleman would file a meritorious lawsuit.

21  BY MR. KLAYMAN:

22       Q.   Paragraph 22 of your affidavit, "Likewise, it is

23  my view that it is well below the general standard of

24  practice to fail to alert a client of the existence of -

25  to say nothing of the consequences of - an offer of

 1    judgment.  I was not involved in that stage, and my view

 2    was that I did everything I could to rescue a client from

 3    the consequences of that failure."  Do you stand by that

 4    statement?

 5             MR. SANDO:  Object to form.

 6        A.   Object to form.  Yes, that is a true

 7    statement.  If that did happen, and that's a big if,

 8    then that would fall below the general standard of CAIR.

 9    BY MR. KLAYMAN:

10        Q.   Well, you reviewed the file and --

11             MR. SANDO:  Object to form.

12    BY MR. KLAYMAN:

13        Q.   -- you were involved, correct?

14        A.   You'll have to repeat that.

15        Q.   You reviewed the file, correct, and you had

16    conversations with Mr. Coleman, correct?

17        A.   Object to form, and, yes, I reviewed the file

18    and, yes, we did have conversations.

19        Q.   So what you're saying here is that Mr. Coleman

20    did not follow the general standard of care to alert

21    Ms. Loomer and Illoominate Media of the existence of an

22    offer of judgment; that's what you're saying, correct?

23             MR. SANDO:  Object to form.

24        A.   Object to form.  No, I'm not stating that

25    Ron Coleman did that.  I'm stating simply that it would

```
 1   fall below the general standard of care, however, in my

 2   initial conversation with Mr. Coleman and Ms. Loomer, I

 3   did ask about it.  She said that she rejected it because

 4   she was - she believed CAIR was scared about what she

 5   could actually produce at discovery and that she was -

 6   they were just trying to get rid of her to avoid any

 7   sort of embarrassment due to the fact that she believes

 8   they were a terrorist organization and she had some sort

 9   of smoking gun to suggest as such.

10   BY MR. KLAYMAN:

11        Q.   If that was your view, why did you put

12   Paragraph 22 in this affidavit?

13        A.   Because - object to form - because it would

14   actually fall below the standard of care.

15        Q.   So you were hoping that Ms. Loomer and

16   Illoominate Media would accept your proposed settlement by

17   offering up testimony in the form of this affidavit, sworn

18   testimony, that Mr. Coleman and his law firm had committed

19   malpractice?

20            MR. SANDO:  Object to form.

21        A.   Object to form, and I never said that

22   Mr. Coleman or any of the other defendants committed

23   malpractice.

24   BY MR. KLAYMAN:

25        Q.   So to try to save your own skin, you were
```

43

1    willing to throw Mr. Coleman and his law firm overboard.

2         A.    Object to form, and, no, I'm not throwing

3    anyone overboard.  It is my general view that not

4    alerting a client would fall below the general standard

5    of care.  However, in my discussion with Ms. Loomer, it

6    was already - it was told to me that she had rejected

7    that offer of judgment.

8         Q.    If in fact what you testified is true, you would

9    not have written Paragraph 22 into your affidavit?

10             MR. SANDO:  Form.

11        A.    Object to form.  It is true and it still would

12   have the same statement because it is still below the

13   general standard of care if that were to happen, but it

14   did not happen.

15   BY MR. KLAYMAN:

16        Q.    So this was a sweetener that you put in the

17   affidavit to try and induce a proposed settlement with

18   CAIR, correct?

19             MR. SANDO:  Form.

20        A.    Object to form.  It is not a sweetener, it is

21   just my general view that not alerting the client would

22   fall below the general standard of care.

23   BY MR. KLAYMAN:

24        Q.    And would be unethical, correct?

25             MR. SANDO:  Object to form.

```
 1         A.    Object to form.  I'm not sure about the

 2   ethical rule on that, but client communication is

 3   important, so keeping a client informed as to that would

 4   be important.

 5   BY MR. KLAYMAN:

 6         Q.    Do you take CLE courses on professional ethics

 7   to keep your license in Florida?

 8         A.    Object to form, and, yes, as we are required

 9   to do so.

10         Q.    So therefore you know that part of the ethical

11   considerations is to keep a client fully informed?

12         A.    Object to form, and yes.

13         Q.    I'll ask that we attach as Exhibit 6 an email

14   that you sent to me yesterday evening, August 20, 2024.

15   Mr. Anderson could put that up on the screen.

16              (Plaintiffs' Exhibit No. 6 was marked for

17         identification.)

18   BY MR. KLAYMAN:

19         Q.    "Mr. Klayman, you stated you have the document

20   already but want the emails, texts and notes."

21              What I told you was I have your proposed

22   settlement already, correct, not your emails, texts, and

23   notes.

24         A.    That's what's stated in the first sentence.

25   You said you have the settlement document, but you
```

1    wanted the emails, texts, and notes.

2        Q.    Then you state, "I stand by my relevance

3    objection previously filed with the court and there is no

4    privilege so I will not be filing a privilege log.  You

5    can take it up (with) your request on a UMC hearing.  I

6    will not be producing any documents tomorrow."

7            Now, you are claiming, or you claimed previously

8    but you obviously stated otherwise earlier in this

9    deposition, that you felt you had a privilege to discuss

10   settlement confidentially with the CAIR defendants.

11       A.    I did not state that I had a privilege, I

12   state that they had the contractual right.

13       Q.    And so you'll stand by your testimony earlier

14   today that you're not claiming any privilege on your

15   communications with CAIR or a work product doctrine?

16       A.    Objection to form, and, no, there is no

17   privilege.  However, it is not relevant to your cause of

18   action in your amended verified complaint.

19       Q.    And no work product claimed?

20       A.    And no work product, but once again, it is not

21   relevant to any admissible evidence that you may be able

22   to find given your verified amended complaint.

23       Q.    Is it your testimony that as of today you owe no

24   duty of care to Ms. Loomer and Illoominate Media --

25       A.    Object to form.

46

```
 1       Q.    -- as their prior attorney?

 2       A.    She lost that whenever she actually sued me.

 3  There is no attorney-client privilege and no longer any

 4  duty.

 5       Q.    You're saying essentially that once a claim for

 6  malpractice is brought against you and your firm, you have

 7  no longer any duty of any sort, legal or ethical, towards

 8  Ms. Loomer and Illoominate Media?

 9       A.    Object to form.  I am bound by the rules of

10  ethics, of which I am following, and there is no other

11  duty to Ms. Loomer due to her filing this malpractice

12  case and actually contracting away her settlement

13  authority.

14       Q.    So you're saying you owe her no duties at all of

15  any sort?

16       A.    Object to form.  No.

17       Q.    That's what you're saying, the answer is yes?

18       A.    Object to form.  Correct, I owe no duty to her

19  anymore.

20       Q.    You are aware that --  Let's turn now to the

21  verified amended complaint, Paragraph 25.  I'll ask that

22  be marked as Exhibit 7 to your deposition.

23            (Plaintiffs' Exhibit No. 7 was marked for

24       identification.)

25  BY MR. KLAYMAN:
```

1        Q.    Paragraph 25:

2              "Judge Ruiz found that Defendants Coleman and

3        Mandelbaum had 'fraudulently' joined CAIR Florida

4        as a party, despite having no basis in law or fact.

5        It then turned out that Defendants Coleman and

6        Mandelbaum, as pled herein, did this willfully and

7        intentionally because they provided zero evidence

8        to rebut CAIR's ... arguments that it was joined

9        fraudulently.  Thus, on October 22nd ... Judge Ruiz

10       entered an order denying remand and dismissing all

11       claims against CAIR Florida for lack of

12       jurisdiction."

13             When you came into the case as Ms. Loomer and

14  Illoominate Media's counsel, you were able to see

15  exactly what Paragraph 25 sets forth, that CAIR Florida

16  had been joined fraudulently, correct?

17       A.    That happened prior to my joining.

18       Q.    But you agree that it was joined fraudulently?

19             MR. SANDO:  Object to form.

20       A.    Object to form.  I'd have to go back and look

21  and see exactly what the court said.

22  BY MR. KLAYMAN:

23       Q.    I'm asking you for your own independent

24  judgment, given your having reviewed the entire file when

25  you became counsel.

```
 1              MR. SANDO:  Object to form.
 2       A.    Object to form, and, while I did review the
 3    entire file when I became counsel, I do not recall this
 4    specifically.
 5    BY MR. KLAYMAN:
 6       Q.    So you're claiming you didn't do a very thorough
 7    review, is that it?
 8              MR. SANDO:  Form.
 9       A.    Object to form.  At the time I did.  It has
10    now been a couple years since then and I do not recall
11    this specifically.
12    BY MR. KLAYMAN:
13       Q.    Paragraph 27:
14              "During the entire period of representation,
15         Defendants Coleman and Mandelbaum never once
16         followed up on, litigated, or took any action
17         whatsoever to obtain the injunctive and equitable
18         relief that Plaintiffs desired."
19              That's an accurate statement, is it not, based
20    on your review of the file when you became counsel?
21              MR. SANDO:  Object to form.
22       A.    Object to form.  The file shows that Twitter
23    was not served.
24    BY MR. KLAYMAN:
25       Q.    Paragraph 27 deals with whether any action was
```

```
 1    taken for injunctive and equitable relief.  You were able
 2    to determine when you became counsel that no action was
 3    taken by Defendants Coleman and Mandelbaum with regard to
 4    pursuing injunctive and equitable relief on behalf of
 5    Ms. Loomer and Illoominate Media, correct?
 6            MR. SANDO:  Object to form.
 7       A.   Object to form.  What the docket showed was
 8    that Twitter was not served.
 9    BY MR. KLAYMAN:
10       Q.   And that no injunctive relief had been furthered
11    in the case, correct?
12            MR. SANDO:  Form.
13       A.   Object to form.  I believe that would have to
14    be done with Twitter as a party.
15    BY MR. KLAYMAN:
16       Q.   Paragraph 29 of the amended complaint:
17            "Thus, had Defendants Coleman and Mandelbaum
18       actually (1) served Twitter with the CAIR suit, and
19       (2) pursued injunctive and equitable relief that
20       Plaintiffs desired, then Plaintiffs would not have
21       been subjected to having to pay attorneys fees to
22       CAIR and CAIR Florida."
23            That is an accurate statement in Paragraph 29,
24    correct, based upon your review of the file and your
25    experience as an attorney?
```

50

```
 1              MR. SANDO:  Object to form.
 2         A.   Object to form, and, no, I do not believe so.
 3    I believe it was her rejection of the offer of judgment
 4    that subjected her to having to pay attorney's fees.
 5    Whether Mr. Coleman made a judgment on Twitter and
 6    serving Twitter, that was prior to my joining the case.
 7    BY MR. KLAYMAN:
 8         Q.   Well, you joined the case and you were asked to
 9    analyze what had occurred up to that point in time,
10    correct?
11              MR. SANDO:  Form.
12         A.   Object to form.  I reviewed the case file, I
13    reviewed the docket, and I had spoken with them.  She
14    rejected the offer - settlement offer of judgment and
15    that is what resulted in her having to pay attorney's
16    fees.
17    BY MR. KLAYMAN:
18         Q.   But you just previously testified that if in
19    fact injunctive relief had been furthered in the case,
20    that that was your argument, that attorney's fees were not
21    due?
22              MR. SANDO:  Form, misstates his testimony.
23    BY MR. KLAYMAN:
24         Q.   You can respond.
25         A.   Object to form.  The same objection as
```

1    Mr. Sando, that does misstate my testimony.

2         Q.   Well, you said your primary argument or your

3    only argument was that, on equitable relief, that that

4    nullified having to pay attorney's fees, right?

5              MR. SANDO:   Same objection.

6         A.   Same objection.   What I testified was that it

7    was brought up in the complaint and that is what we used

8    to actually make our argument to get Ms. Loomer out of

9    the fees, as she requested.

10   BY MR. KLAYMAN:

11        Q.   But the argument would be even stronger if in

12   fact any effort had been made to pursue equitable relief

13   by Mr. Coleman and Mandelbaum?

14             MR. SANDO:   Form.

15        A.   Object to form.   That would be up to the

16   court.   It was made - it was mentioned in the complaint

17   and that is what we put forth.

18   BY MR. KLAYMAN:

19        Q.   Based upon your review of the file when you

20   became counsel, you became aware that no effort was made

21   by Coleman or Mandelbaum to pursue equitable relief,

22   correct?

23             MR. SANDO:   Object to form.

24        A.   Object to form.   I don't know about the

25   effort, all I know is that the docket shows Twitter was

```
 1    not served.

 2    BY MR. KLAYMAN:

 3         Q.    Do you see anything in the file to show that

 4    they were pursuing objective relief?

 5              MR. SANDO:   Form.

 6         A.    Object to form.   In the complaint they were

 7    pursuing equitable relief.

 8    BY MR. KLAYMAN:

 9         Q.    And that's it?

10              MR. SANDO:   Form.

11         A.    Object to form.   In the complaint, they were

12    pursuing equitable relief.

13    BY MR. KLAYMAN:

14         Q.    Answer the question, Mr. Young.

15         A.    I did.

16         Q.    When you reviewed the file, did you find any

17    evidence that Coleman and Mandelbaum had actually pursued

18    equitable relief?

19              MR. SANDO:   Object to form.

20         A.    Object to form, already answered.   He put that

21    in the complaint and that was him looking to get

22    equitable relief from Twitter.

23    BY MR. KLAYMAN:

24         Q.    And that was it?

25         A.    Object to form.   That is what happened.
```

```
 1        Q.    Nothing more?

 2              MR. SANDO:  Form.

 3        A.    Object to form.  Correct.  I have nothing more

 4   to add, and that was before my time.

 5   BY MR. KLAYMAN:

 6        Q.    Paragraph 34, "Despite this reminder, Defendants

 7   Coleman and Dhillon failed to provide any objection

 8   pursuant to S.D. Fla. R. 7.3(a)," that's an accurate

 9   statement, correct?

10              MR. SANDO:  Form.

11        A.    Form.  Which one are you looking at,

12   Mr. Klayman?

13        Q.    Paragraph 33.

14        A.    Thirty-three, excuse me.  Object to form.  I

15   believe this was prior to my joining the case.  I do not

16   know what judgment they made or why they made any

17   judgment.

18        Q.    So based upon your review of the file, you were

19   able to ascertain that that's a correct statement in

20   Paragraph 33, correct?

21        A.    Object to form.  There was no objection.

22        Q.    Paragraph 34:

23              "Had Defendants Coleman and Dhillon complied

24         with S.D. Fla. R. 7.3(a), Plaintiffs would not have

25         been subjected to having to pay attorney's fees to
```

54

```
 1        CAIR and CAIR Florida, or at a minimum, the amount
 2        of fees ordered would have been significantly
 3        lower."
 4             That is also a true statement in the
 5    complaint, correct?
 6             MR. SANDO:  Object to form.
 7        A.   Object to form, and, no, I did not believe so.
 8    In my judgment, we thought that would go against our
 9    argument and what Ms. Loomer actually wanted in
10    invalidating the offer of judgment as a whole and would
11    have actually weakened our argument.  I also do not
12    believe that it would have been significantly lower.
13    The court did actually go through the reasoning and we
14    were actually able to successfully obtain a 20 percent
15    reduction in attorney's fees.
16    BY MR. KLAYMAN:
17        Q.   Well, Ms. Loomer and Illoominate Media were
18    ultimately hit with 140,000 plus in attorney's fees.  If
19    you increase that by 20 percent, that's significantly more
20    than even 144,000 plus, correct?
21             MR. SANDO:  Object to form.
22        A.   Object to form, and once again you got the
23    math wrong.  CAIR was looking for 150 - I believe
24    153,000.  We had it reduced by 20 percent, down to
25    124,000.  That 20 percent in any sort of financial
```

 1    aspect is significant.

 2    BY MR. KLAYMAN:

 3         Q.   So it was a good deal that you were able to get

 4    for her, huh, a hundred and --

 5              MR. SANDO:   Form.

 6         A.   Object to form.

 7    BY MR. KLAYMAN:

 8         Q.   You did a great job, didn't you?

 9         A.   Object to form.   We were successful in

10    lowering the amount of attorney's fees by 20 percent.

11    We believe we were successful.

12         Q.   That was the judge that ordered that, not an

13    argument that you made for 20 percent, correct?

14              MR. SANDO:   Object to form.

15         A.   Object to form.   If it wasn't for our argument

16    or me coming in, there would have been no argument, and

17    we were successful in obtaining a 20 percent reduction.

18    BY MR. KLAYMAN:

19         Q.   In fact, neither you nor Coleman nor his law

20    firm ever made that argument to reduce the fees, correct?

21         A.   Object to form.   Once again, we believe that

22    it would actually, in my judgment, not help our case and

23    would not help what Ms. Loomer had requested us to do,

24    which was to invalidate the offer of judgment as a

25    whole.

1        Q.   Paragraph 39:

2             "Thus, it should come as no surprise that,

3        after the litany of egregious errors put in front

4        of the Court by Defendants Coleman, Dhillon, and

5        Young, on August 4, 2021, including referring to

6        Illoominate Media as (a) corporation instead of a

7        limited liability company, Magistrate Reinhart

8        issued an order granting in part and denying in

9        part CAIR and CAIR Florida's Joint Motion for

10       Attorneys Fees, and awarded CAIR and CAIR Florida a

11       total of $124,423.37 in fees and costs."

12            That's an accurate statement, correct?

13            MR. SANDO:   Object to form.

14       A.   Object to form.   No.   There were no egregious

15   errors.   In my judgment, we put forth the actual

16   arguments that Ms. Loomer requested of us to actually

17   invalidate the offer of a judgment as a whole.

18   BY MR. KLAYMAN:

19       Q.   So you reviewed the pleading that is referred to

20   in Paragraph 39 before it was filed, correct?

21       A.   Object to form, and, yes, I reviewed our

22   pleading before we filed it.

23       Q.   And you are aware that that pleading was

24   inaccurate in that it described Illoominate Media as a

25   corporation rather than a limited liability company?

57

```
 1              MR. SANDO:  Form.
 2         A.   Object to form.  If there was a typo, then
 3    there was a typo.
 4    BY MR. KLAYMAN:
 5         Q.   Well, that's not a typo, that's a different form
 6    of corporate form, is it not?  A corporation and a limited
 7    liability company are two different entities, correct?
 8              MR. SANDO:  Form.
 9         A.   Object to form.  There is a difference in a
10    corporation versus a limited liability company, however,
11    I don't believe that had anything to do with any sort of
12    decision or any issue whatsoever.
13    BY MR. KLAYMAN:
14         Q.   But you just testified falsely.  That's not a
15    typo, correct?
16              MR. SANDO:  Object to form.
17         A.   Object to form.  It would still be a typo.
18    BY MR. KLAYMAN:
19         Q.   In your opinion, if you just make a mistake, or
20    don't do your job, then it's just a typo?
21              MR. SANDO:  Object to form.
22         A.   Object to form.  A simple mistake like that is
23    not --
24    BY MR. KLAYMAN:
25         Q.   It shows a lack of care, does it not?  It shows
```

1   that, no pun intended, it shows a lack of care,

2   professional care, that that error was in there?

3       A.   Object to form.  A simple error, that does not

4   actually affect anything.  There was no lack of care.

5       Q.   Paragraph 37 of the complaint, "Defendant Young,

6   upon entering an appearance in the CAIR Suit, should have

7   reviewed the case and provided Plaintiffs with an accurate

8   and competent assessment of the merits of the CAIR Suit."

9            In fact, that is what you were retained to do,

10  was it not?

11      A.   Object to form.  I was retained to act as

12  local counsel to assist Mr. Coleman in filing the

13  response for a motion for attorney's fees.

14      Q.   But you were also required, as a matter of your

15  agreement with Ms. Loomer and also as a matter of your

16  ethical responsibilities when you came into the case, to

17  give her an accurate and competent assessment of the

18  merits of the CAIR suit, correct?

19      A.   Object to form.  I reviewed the matter and I

20  gave her an opinion as to where we were, why we were

21  doing what we were doing, and what we needed to do.

22      Q.   So you gave her an accurate and competent

23  assessment of the merits of the CAIR suit?

24           MR. SANDO:  Object to form.

25      A.   Object to form.  I reviewed the case in its

1    entirety and I discussed what had happened – the case

2    was dismissed by motion, that there was an offer of

3    judgment that she told me she rejected, and then now we

4    were dealing with the attorney's fees matter.

5    BY MR. KLAYMAN:

6        Q.    Well, you didn't answer my question.  The

7    question is you did give her an accurate and competent

8    assessment of the merits of the CAIR suit when you came

9    into the case, correct?  That was your duty --

10            MR. SANDO:  Object to form.

11   BY MR. KLAYMAN:

12       Q.    -- as counsel.

13       A.    Object to form.  We didn't actually discuss

14   the merits of the CAIR suit.  We looked at it, they had

15   filed it, they were happy with it.  I was not there for

16   the judgment, that predates when I was – when I joined.

17            What I needed to do and I had an ethical duty

18   to do is to actually discuss the case with her, with her

19   attorney, who had been her attorney the entire time,

20   discuss what our plan was and what we had to do with

21   regards to responding to the motion for attorney's fees

22   filed by the CAIR defendants.

23   BY MR. KLAYMAN:

24       Q.    Paragraph 43, "Indeed, had Plaintiffs known

25   that there was no real substantive basis for their

60

```
 1    claims against CAIR, CAIR Florida, and Twitter,

 2    Plaintiffs would never have agreed to initiate this

 3    lawsuit in the first place."

 4              That's an accurate statement, based upon your

 5    review of the file, is it not?

 6         A.   Object to form.  That predates me and I have

 7    no idea what was discussed at the beginning of the

 8    lawsuit.

 9         Q.   The next line, "Had Plaintiff's known that CAIR

10    was open to settling the lawsuit, Plaintiffs also would

11    have been agreeable, but Defendants failed to reply

12    adequately," that's an accurate statement, is it not?

13              MR. SANDO:  Object to form.

14         A.   Object to form.  I do not believe so because

15    she told me that she had rejected the offer of

16    settlement.

17    BY MR. KLAYMAN:

18         Q.   In fact, Ms. Loomer communicated with you

19    exactly what is set forth in Paragraph 43, did she not?

20              MR. SANDO:  Object to form.

21         A.   Object to form.  She told me that she had

22    rejected the offer of judgment, she believed CAIR was

23    scared about what she was actually going to produce via

24    discovery and that they were a terrorist organization.

25    BY MR. KLAYMAN:
```

61

```
 1        Q.   I'm going to leave this deposition open subject

 2   to our motion to compel and for sanctions, and so you're

 3   fortunate, okay?  So I'm taking one less hour at this

 4   point than I would otherwise need to because I need the

 5   documents to complete this deposition, and it may go

 6   beyond that.

 7            So are you available in the next two weeks for a

 8   UMC hearing?

 9        A.   File your motion to compel, get on the court's

10   website, see what their schedule looks like, and we'll

11   come to a determination on timing.

12        Q.   You're not going on vacation in the next two

13   weeks?

14        A.   No, I have no plans for a vacation in the next

15   two weeks.

16            MR. KLAYMAN:  All right.  The deposition is,

17        at this point, left open and we'll continue it

18        subject to our motion to compel and for sanctions.

19            Thank you, Mr. Young.

20            MR. SANDO:  Asher, we would request the

21        exhibits to be furnished to all counsel that were

22        marked here today, okay?  One through seven, I

23        believe.

24            MR. KLAYMAN:  That's fine.

25            MR. YOUNG:  And, Gail, I would actually like
```

62

1        to make an order of this deposition transcript as

2        well.

3            MR. SANDO:  I didn't order the transcript, I

4        just asked for the exhibits.

5            MR. YOUNG:  I know you did.

6            THE VIDEOGRAPHER:  Is everybody ready to go

7        off the record?

8            MR. KLAYMAN:  We're off the record.

9            MR. BLOCH:  Is anybody ordering?  Is

10       Mr. Klayman ordering the transcript?

11           MR. KLAYMAN:  Yeah, we're going to order it,

12       too.  We'll take a copy off of what Mr. Young just

13       ordered.

14           THE VIDEOGRAPHER:  The time is 11:10 a.m.  We

15       are off the video record.

16           MR. BLOCH:  And this is Brett Bloch.  I'll

17       take a copy --

18           (Recording stopped.)

19           MR. BLOCH:  This is Brett Bloch.  I'll take a

20       copy of the transcript.

21           THE COURT REPORTER:  Mr. Klayman, is it

22       regular delivery?

23           MR. KLAYMAN:  Three days.

24           THE COURT REPORTER:  Mr. Young, do you read or

25       waive?

1          MR. YOUNG:   I'll waive the reading.

2          (The reading of the deposition transcript was

3     waived.)

4          (The deposition adjourned at 11:10 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                     CERTIFICATE OF OATH

 2

 3    THE STATE OF FLORIDA

 4    COUNTY OF ST. LUCIE

 5

 6

 7               I, the undersigned authority, certify that

 8    the witness, CRAIG YOUNG, appeared before me remotely

 9    via videoconference on the 21st day of August, 2024, and

10    was duly sworn.

11

12    Signed this 26th day of August, 2024

13

14

15

16

17

18

19

20    _____
21    Gail Hmielewski, Stenographer
      Notary Public - State of Florida
22    My Commission No.: HH406786
      Expires:  June 5, 2027
23

24

25
```

```
 1                    CERTIFICATE OF REPORTER

 2   STATE OF FLORIDA

 3   COUNTY OF ST. LUCIE

 4

 5              I, GAIL HMIELEWSKI, Court Stenographer,

 6   HEREBY CERTIFY that I was authorized to and did

 7   stenographically remotely report the videoconference of

 8   the foregoing deposition of CRAIG YOUNG; that a review

 9   of the transcript was not requested; and that the

10   foregoing transcript, Pages 1 through 63, inclusive, is

11   a true and complete record of my stenographic notes.

12              I FURTHER CERTIFY that I am not a

13   relative, employee, attorney, or counsel of any of the

14   parties, nor am I a relative or employee of any of the

15   parties' attorney or counsel connected with the action,

16   nor am I financially interested in the action.

17              Dated this 26th day of August, 2024.

18

19

20

21   _____

     GAIL HMIELEWSKI, Court Stenographer
22

23

24

25
```

**A**

**a.m** 1:17,17 5:15
62:14 63:4
**abide** 20:19
**ability** 32:18
**able** 31:19 32:5
45:21 47:14
49:1 53:19
54:14 55:3
**Abrams** 2:25
5:18
**absent** 14:18
**absolved** 21:24
**accept** 23:6
42:16
**access** 9:13
**accomplished**
37:16
**accurate** 30:23
36:7,8 48:19
49:23 53:8
56:12 58:7,17
58:22 59:7
60:4,12
**act** 35:14 58:11
**acting** 11:16
27:12
**action** 9:12 11:5
11:17 14:8,22
20:5 26:10
31:13,21 32:6
32:11 45:18
48:16,25 49:2
65:15,16
**actions** 23:25
25:25 37:3
**acts** 20:17,17
**actual** 10:15
16:1 20:21
56:15
**add** 53:4
**addition** 14:10
**Additionally**
9:12
**adequately**
26:25 60:12

**adjourned** 63:4
**admissible** 45:21
**admitted** 18:13
18:17
**advice** 13:10
**advise** 25:24
26:9 37:3
**affect** 58:4
**affidavit** 4:11
24:6,15,18
30:2 35:4,5,6
36:3 40:22
42:12,17 43:9
43:17
**affirm** 6:12
**affirmatively**
37:2
**ago** 15:25
**agree** 47:18
**agreeable** 60:11
**agreed** 6:23 16:2
17:8 60:2
**agreeing** 28:9
29:4
**agreement** 4:12
9:15,18 10:13
10:16,20,22,23
11:3 12:9,11
12:21 15:19
16:2,22 17:18
21:16 22:23
23:11 35:11,22
35:25 58:15
**Aguirre** 2:8 6:2
**aid** 27:13
**aided** 28:12
**akin** 26:19
**al** 1:4,7 9:25
**alert** 40:24
41:20
**alerting** 43:4,21
**allegations**
39:20
**alleged** 8:22
14:12
**allowed** 17:13
**allowing** 23:9

**alternative**
34:11
**amended** 4:14
9:8 14:8,23
15:17 45:18,22
46:21 49:16
**amount** 16:12
21:12 23:18
30:16,21 36:2
37:19 39:7
54:1 55:10
**analyze** 50:9
**Anderson** 2:24
7:9,13 8:8 16:4
19:16 24:8
44:15
**answer** 46:17
52:14 59:6
**answered** 52:20
**anybody** 62:9
**anymore** 46:19
**apart** 29:21
**apologize** 19:8
**App** 30:19
**appear** 7:10,11
**appearance** 58:6
**appearances** 2:1
5:21
**appeared** 64:8
**Appearing** 2:2,6
2:13,18
**appropriate**
37:4
**approving** 23:17
**approximately**
15:4
**argue** 34:11
**argument** 28:2,5
31:7 32:13
33:3,13,15,25
34:2,7,17,20
38:10,19 50:20
51:2,3,8,11
54:9,11 55:13
55:15,16,20
**arguments**
30:21 32:14

33:22 47:8
56:16
**arm's** 12:7,13
**articulated** 9:7
**ascertain** 32:6
53:19
**Asher** 2:24 16:4
19:13 61:20
**asked** 7:23 13:1
36:19 38:1
50:8 62:4
**asking** 47:23
**asks** 14:11
**aspect** 55:1
**assessment** 58:8
58:17,23 59:8
**assist** 58:12
**assistant** 2:24
7:9
**assuming** 23:5
**attach** 44:13
**attacked** 28:22
**attorney** 11:14
11:15 21:7
32:21 35:15,17
36:18 46:1
49:25 59:19,19
65:13,15
**attorney's** 26:6
26:25 28:2
30:13 32:25
33:10 37:18,19
38:7 39:1 50:4
50:15,20 51:4
53:25 54:15,18
55:10 58:13
59:4,21
**attorney-client**
21:23 46:3
**attorneys** 15:2,5
49:21 56:10
**August** 1:16
5:14 7:11,11
7:12 44:14
56:5 64:9,12
65:17
**authority** 10:9

11:2 18:3,6
19:24 20:3,23
21:5,11 22:16
23:8 46:13
64:7
**authority.'**
30:17
**authorized** 65:6
**availability** 9:5
**available** 61:7
**Avenue** 1:24
**avoid** 42:6
**award** 20:7
33:10
**awarded** 56:10
**aware** 13:6
21:12 27:6,9
27:12,15 28:21
29:1 31:12
34:19 46:20
51:20 56:23

**B**

**B** 4:1 18:2 22:21
22:22
**back** 10:23
13:13 14:13
25:19 28:7
35:6 36:3
38:15 47:20
**backs** 14:2 16:25
17:16 22:12
**bar** 12:6,8,23
13:3,10 18:13
22:2,6,10
**bargained** 20:24
**bargained-for**
19:18,18 20:6
20:8 23:10
**Barrett** 2:7 5:9
6:7,7
**bars** 13:7
**based** 17:21
18:25 23:25
36:14 48:19
49:24 51:19
53:18 60:4

**basis** 9:13 10:5
 47:4 59:25
**battle** 26:16
**Beach** 1:1 2:20
 5:11
**bearing** 27:25
**becoming** 24:24
**beginning** 60:7
**begins** 5:6
**behalf** 1:14 5:19
 5:22 6:2,5 8:24
 12:4 22:5
 23:17 24:21
 25:8 32:18
 38:10 49:4
**beheaded** 28:23
**beheading** 28:23
**belief** 24:19
**believe** 14:6,7
 17:20 20:7
 25:16 34:22,24
 34:25 36:18
 38:1,14,15
 39:8 40:20
 49:13 50:2,3
 53:15 54:7,12
 54:23 55:11,21
 57:11 60:14
 61:23
**believed** 31:2
 42:4 60:22
**believes** 42:7
**best** 24:18 31:7
 33:15 38:19
**better** 19:16
**beyond** 61:6
**big** 20:1 41:7
**bigger** 34:6
**bit** 13:14 19:15
**Blake** 2:8 6:1
**blake.sando@...**
 2:11
**Bloch** 2:14 6:4,4
 31:25 37:7
 39:4 62:9,16
 62:16,19,19
**Blvd** 2:9

**Boca** 2:4,15
**bound** 46:9
**bounds** 21:21
**Boynton** 2:20
**breach** 16:21
 17:20,25 18:9
**breached** 17:6
**breaks** 20:14
**Brett** 2:14 6:4
 62:16,19
**brett@shende...**
 2:17
**bring** 13:4,14
 17:23
**broken** 12:1,22
 13:1
**brought** 17:9
 46:6 51:7
**Burstein** 2:24
 6:6,6

───────────
**C**
**C-r-a-i-g** 6:25
**Cair** 8:23,23
 9:15,18,21,23
 10:8,14,20
 11:1,2 12:10
 13:21 14:2,14
 15:20 16:3,15
 16:19 17:1,4
 17:10,18,23,24
 18:3 19:1,3,17
 20:7,10,22
 21:10 22:15,23
 23:3,11,13,18
 23:20 24:2
 26:18,18,23
 27:6,12,19
 28:3,18,21
 29:5,12,18,19
 29:22,25 30:18
 31:5 33:1,6
 34:5 38:21
 39:1,19 41:8
 42:4 43:18
 45:10,15 47:3
 47:11,15 49:18

49:22,22 54:1
 54:1,23 56:9,9
 56:10,10 58:6
 58:8,18,23
 59:8,14,22
 60:1,1,9,22
**CAIR's** 14:13
 15:2,5 16:16
 18:8 23:4 27:3
 47:8
**call** 34:23 35:1
**capacity** 27:13
**care** 22:9 41:20
 42:1,14 43:5
 43:13,22 45:24
 57:25 58:1,2,4
**case** 1:2 5:12
 6:13 9:20 10:8
 13:20,21 20:13
 26:4,5 27:7
 30:4 31:14
 32:17 36:17
 40:19 46:12
 47:13 49:11
 50:6,8,12,19
 53:15 55:22
 58:7,16,25
 59:1,9,18
**cause** 5:4 14:8
 45:17
**certain** 7:24
**Certificate** 3:6,7
 64:1 65:1
**certify** 64:7 65:6
 65:12
**challenged**
 38:25 39:3,7
**check** 12:8 27:23
 37:1
**checking** 36:5
**Cheryl** 2:24 6:6
**children** 28:23
**Cir** 30:19
**Circuit** 1:1,1
 5:11 30:9
**claim** 32:25 46:5
**claimed** 45:7,19

**claiming** 13:19
 14:19,21,24
 31:8 33:18
 45:7,14 48:6
**claims** 9:7 14:22
 15:17 31:21
 47:11 60:1
**CLE** 44:6
**clean** 34:7
**clear** 6:23 13:9
 21:10 34:7
**client** 11:3,22
 35:19,20 40:24
 41:2 43:4,21
 44:2,3,11
**Client's** 35:20
**clients** 10:8
 11:18,20
**co-conspirator**
 27:7 28:11
**co-counsel** 26:8
**COLE** 2:9
**Coleman** 1:7 2:6
 5:8 6:2 9:24
 11:16 16:10,11
 16:18 18:6,8
 19:4,6,8,25
 20:3,12 21:5
 22:16 23:8
 25:3 26:8 30:3
 31:13,20 32:6
 32:24 34:17,23
 35:16 36:11
 37:14 38:24
 39:23 40:16,20
 41:16,19,25
 42:2,18,22
 43:1 47:2,5
 48:15 49:3,17
 50:5 51:13,21
 52:17 53:7,23
 55:19 56:4
 58:12
**Coleman's** 38:24
**come** 25:14 56:2
 61:11
**coming** 55:16

**Commission**
 64:22
**committed**
 42:18,22
**communicate**
 23:3
**communicated**
 13:9 23:22
 60:18
**communication**
 9:6,9 44:2
**communicatio...**
 14:20 45:15
**company** 56:7
 56:25 57:7,10
**compel** 61:2,9
 61:18
**competent** 58:8
 58:17,22 59:7
**complaint** 4:14
 9:8 12:6 14:9
 14:23 15:17
 31:10 32:8
 33:18 34:9
 45:18,22 46:21
 49:16 51:7,16
 52:6,11,21
 54:5 58:5
**complete** 7:6
 61:5 65:11
**compliance** 36:6
 37:1
**complied** 53:23
**comply** 7:3
**complying** 16:25
 17:17
**computer** 15:12
**concern** 28:8,17
 29:4
**conclusion** 25:8
 25:14 26:20
 40:15
**conclusions**
 10:12
**Conduct** 11:20
**confidential** 9:9
**confidentially**

45:10
connected 65:15
consent 18:8,9
consequences
   40:25 41:3
consideration
   12:13 35:25
considerations
   44:11
consult 12:19
   22:10
consulted 36:9
consulting 2:19
   33:16
continue 24:1
   61:17
continued 33:6
continuing
   21:18
contract 10:7
   20:1,14,15,21
   22:4,8,13,15
   29:17
contracting
   46:12
contracts 19:10
   19:11,11
contractual 9:16
   10:3 12:11
   45:12
contractually
   20:23
control 10:10
   11:5 18:5
   19:24 20:3
   21:4,10 22:15
   22:18,20 23:1
   23:7,21,24
   24:3
conversation
   42:2
conversations
   41:16,18
copy 62:12,17
   62:20
corporate 19:5
   19:10 57:6

corporation
   56:6,25 57:6
   57:10
correct 8:6,7,19
   8:20,25 9:1,21
   9:21,22 10:5
   10:14 11:1,8,9
   11:10,11,12,13
   11:15,18,21
   12:6,7 13:12
   14:17 15:20
   17:1,19 18:11
   18:12,16,24
   19:7 21:8,15
   23:14 24:14,18
   25:1,5,6,10
   26:1,11 27:8
   27:13 30:4
   32:19 33:1,10
   33:22 35:11,22
   36:1,12,13,15
   36:21 37:4,14
   39:14,23 40:16
   41:13,15,16,22
   43:18,24 44:22
   46:18 47:16
   49:5,11,24
   50:10 51:22
   53:3,9,19,20
   54:5,20 55:13
   55:20 56:12,20
   57:7,15 58:18
   59:9
costs 30:13 33:1
   56:11
counsel 5:16,20
   11:16 14:3,13
   16:16 24:24
   25:24 30:10
   35:14 47:14,25
   48:3,20 49:2
   51:20 58:12
   59:12 61:21
   65:13,15
country 13:7
County 1:1 5:12
   64:4 65:3

couple 15:25
   48:10
courses 44:6
court 1:1,22
   5:10,18 6:9,11
   6:17 7:4,5,8
   8:4 10:19
   13:17 14:18
   18:1 30:11
   31:1 32:11
   35:2 37:23
   45:3 47:21
   51:16 54:13
   56:4 62:21,24
   65:5,21
court's 61:9
cover 19:23 23:4
   23:12
Craig 1:12 2:18
   2:19 3:4 4:7,11
   4:13 5:1,7,10
   5:24 6:24 8:14
   64:8 65:8
craig@cwyleg...
   2:21
create 20:4
credit 16:12
criminal 20:17
   27:7
CWY 2:19

D

D 3:1 35:16
Dadeland 2:9
Dallas 27:7
   28:11
date 1:16 5:14
   16:14,17
dated 4:13 7:10
   65:17
Daughters 1:23
   5:19
day 64:9,12
   65:17
days 30:13,24
   62:23
deal 29:15,16,16

55:3
dealing 59:4
deals 22:18
   48:25
death 20:18
decide 8:4 12:16
   12:23 18:1
   20:11 24:1
decided 21:6
decision 34:16
   57:12
decisions 25:19
   25:21
declined 30:10
Defendant 2:13
   4:7,8 5:24 8:14
   8:16 9:12 58:5
Defendant/De...
   2:18
defendants 1:8
   2:6 5:10 15:20
   16:3 17:19
   19:1,3,18
   20:10 22:24
   23:12,13,19
   24:2 33:1
   42:22 45:1
   47:2,5 48:15
   49:3,17 53:6
   53:23 56:4
   59:22 60:11
delay 13:24
delivery 62:22
demanding 39:1
denying 47:10
   56:8
depose 15:25
deposition 1:11
   4:6 5:1,7,15
   6:24 7:6,10,21
   7:23 13:15
   45:9 46:22
   61:1,5,16 62:1
   63:2,4 65:8
describe 30:14
described 30:9
   56:24

Description 4:4
desired 48:18
   49:20
despite 47:4
   53:6
determination
   22:5,7 61:11
determine 31:20
   49:2
determined
   15:13
determining
   10:19
Dhillon 2:13 5:9
   6:5 31:25 53:7
   53:23 56:4
difference 57:9
different 23:10
   29:15,16 57:5
   57:7
Direct 3:5 6:19
Disagree 19:4
discovery 42:5
   60:24
discuss 17:10
   30:25 45:9
   59:13,18,20
discussed 59:1
   60:7
discussion 14:10
   37:10 43:5
discussions 14:2
   16:17 17:22
   40:8
dismissed 26:5
   59:2
dismissing 47:10
district 30:11
docket 49:7
   50:13 51:25
doctrine 45:15
document 12:15
   44:19,25
documents 7:3,7
   7:24 8:2,6,13
   8:21,25 13:14
   14:7,11 45:6

61:5
**doing** 11:7 16:24
  33:16 58:21,21
**dollar** 39:14,17
**drafted** 36:5
**Drive** 2:20
**duces** 4:6 7:21
  7:23
**due** 16:12 31:4
  34:8 35:25
  42:7 46:11
  50:21
**duly** 64:10
**duties** 11:18,19
  46:14
**duty** 11:24 12:2
  21:18 25:24
  26:9 35:21
  36:25 45:24
  46:4,7,11,18
  59:9,17

**E**

**E** 2:3 3:1 4:1
**earlier** 17:3 45:8
  45:13
**effect** 12:24
  21:19 34:21
**efficacy** 26:9
**effort** 51:12,20
  51:25
**egregious** 56:3
  56:14
**eight** 18:15
**either** 11:6 21:7
  23:22,23
**email** 4:13 44:13
**emails** 14:13
  15:4,15 44:20
  44:22 45:1
**embarrassment**
  42:7
**employee** 65:13
  65:14
**ended** 37:17
**enforced** 11:1
**engaging** 14:1

**entailed** 10:14
**entails** 10:20
**entered** 32:17
  47:10
**entering** 12:20
  58:6
**entire** 40:12
  47:24 48:3,14
  59:19
**entirety** 25:4
  59:1
**entities** 57:7
**entitlement**
  30:16
**entity** 11:4 27:1
  27:20 28:15,20
  29:9
**entries** 32:25
**entry** 30:15
**enure** 11:18
**equitable** 31:9
  31:14,22 33:19
  34:9 48:17
  49:1,4,19 51:3
  51:12,21 52:7
  52:12,18,22
**error** 58:2,3
**errors** 56:3,15
**Esq** 4:11
**Esquire** 2:3,8,8
  2:14,19,24
  5:17
**essentially** 36:5
  46:5
**estimate** 15:11
**et** 1:4,7 9:25
**ethical** 12:1,22
  12:25 13:3,5
  13:11 20:14
  21:25 22:1,3
  44:2,10 46:7
  58:16 59:17
**ethically** 11:24
  20:13 37:4
**ethics** 22:3,14,14
  44:6 46:10
**evening** 44:14

**everybody** 62:6
**evidence** 45:21
  47:7 52:17
**exactly** 47:15,21
  60:19
**Examination**
  1:22 3:5 6:19
**exchange** 20:6,9
**exchanges** 23:10
**excuse** 18:19
  19:7 28:21
  53:14
**exercised** 22:21
**Exhibit** 4:3 7:15
  8:9,10 16:6
  24:10 35:3,7
  35:10 36:4
  44:13,16 46:22
  46:23
**exhibits** 61:21
  62:4
**existence** 40:24
  41:21
**existing** 9:16
**expense** 30:15
**experience**
  36:20,24 49:25
**Expires** 64:22

**F**

**facilitating** 9:10
**fact** 7:2 12:3
  22:7,19 26:17
  31:4 33:21
  34:16 42:7
  43:8 47:4
  50:19 51:12
  55:19 58:9
  60:18
**fail** 40:24
**failed** 53:7 60:11
**failure** 16:20
  18:8 41:3
**fair** 15:10
**fall** 41:8 42:1,14
  43:4,22
**falsely** 57:14

**far** 13:2 26:5
**Fax** 2:11,16
**fees** 19:23 23:5
  23:12 26:6
  27:1 28:2
  29:19 30:13,21
  32:21 33:1,10
  33:14 34:5
  37:18,19 38:8
  38:11 39:1
  49:21 50:4,16
  50:20 51:4,9
  53:25 54:2,15
  54:18 55:10,20
  56:10,11 58:13
  59:4,21
**fell** 39:19,21,23
  39:25 40:3,6
**felt** 45:9
**FIFTEENTH**
  1:1
**file** 12:5 24:25
  25:3,4,7 30:3
  31:12,19 32:5
  32:23 40:11,12
  41:17 47:24
  48:3,20,22
  49:24 50:12
  51:19 52:3,16
  53:18 60:5
  61:9
**filed** 13:17 25:8
  40:3,16 45:3
  56:20,22 59:15
  59:22
**files** 15:12
**filing** 4:9 28:1
  45:4 46:11
  58:12
**final** 18:4 19:19
  19:20 21:3
  23:20,23
**financial** 27:13
  29:22 54:25
**financially** 65:16
**find** 45:22 52:16

**fine** 61:24
**firm** 6:3 32:6,24
  38:25,25 42:18
  43:1 46:6
  55:20
**firms** 20:12 26:9
  31:13,20
**first** 19:19 44:24
  60:3
**Five** 35:10
**Fla** 30:20 53:8
  53:24
**Florida** 1:1,25
  2:4,10,15,20
  5:3,12 8:23
  11:19 12:8,17
  12:19,23 13:3
  13:10 18:13
  22:2,6,10,14
  27:1,20 29:9
  30:18 36:12,15
  36:17,20,22
  44:7 47:3,11
  47:15 49:22
  54:1 56:10
  60:1 64:3,21
  65:2
**Florida's** 56:9
**follow** 30:11
  41:20
**followed** 48:16
**following** 46:10
**follows** 16:14
**foregoing** 65:8
  65:10
**form** 14:6 25:12
  25:16,17 26:2
  26:3,12,13
  27:10,14,15,18
  27:19,24,25
  28:13,14,19,25
  29:1,6,7,13,14
  29:24 31:15,16
  31:23,24 32:10
  32:20 33:2,11
  33:12,23,24
  34:3,4,13,19

34:22 37:5,6
37:22,23 38:3
38:4,13,14
39:2,3,9,12,16
39:17,24,25
40:5,6,13,17
40:18 41:5,6
41:11,17,23,24
42:13,17,20,21
43:2,10,11,19
43:20,25 44:1
44:8,12 45:16
45:25 46:9,16
46:18 47:19,20
48:1,2,8,9,21
48:22 49:6,7
49:12,13 50:1
50:2,11,12,22
50:25 51:14,15
51:23,24 52:5
52:6,10,11,19
52:20,25 53:2
53:3,10,11,14
53:21 54:6,7
54:21,22 55:5
55:6,9,14,15
55:21 56:13,14
56:21 57:1,2,5
57:6,8,9,16,17
57:21,22 58:3
58:11,19,24,25
59:10,13 60:6
60:13,14,20,21
**Fort** 1:25
**forth** 14:13
22:21 32:22
33:18 35:21
36:10 37:16
38:18 39:20
47:15 51:17
56:15 60:19
**fortunate** 61:3
**forward** 25:23
26:11 31:8
**found** 37:23
47:2
**Foundation** 8:23

27:8
**four** 35:4,5
**frauds** 20:19
**fraudulently**
47:9,16,18
**fraudulently'**
47:3
**frequently** 34:11
36:9
**frivolous** 40:16
40:19
**front** 56:3
**fulfilled** 35:23
**full** 10:9 16:12
**fully** 44:11
**funding** 26:20
28:4
**furnished** 61:21
**further** 13:23
31:21 32:7
65:12
**furtherance**
35:24
**furthered** 49:10
50:19
**Furthermore**
9:8

**G**
**Gail** 1:22 5:2,18
61:25 64:21
65:5,21
**game** 37:15
**Gaza** 29:2
**general** 36:6
37:1 40:23
41:8,20 42:1
43:3,4,13,21
43:22
**generally** 36:14
36:16
**give** 6:13 13:10
16:19 19:2
58:17 59:7
**given** 7:2 31:2
38:21,21 45:22
47:24

**gives** 19:1,17
20:4 22:15
**go** 18:2 23:22
28:9,18 29:18
33:3 38:15
47:20 54:8,13
61:5 62:6
**goal** 38:16
**goes** 29:17
**going** 7:1,8 9:2
12:23 13:13
16:9 26:15,16
28:15 29:2
30:7 33:3,13
35:12 36:3
60:23 61:1,12
62:11
**good** 5:5 6:1
18:21,22 19:22
23:4 32:13
55:3
**granting** 56:8
**great** 55:8
**Green** 14:14
**grounds** 9:4
**Group** 2:3,13
5:9 6:5
**gun** 42:9

**H**
**H** 4:1
**Hamas** 27:13
28:12,21
**hand** 6:12,18
**handle** 19:9
**happen** 30:25
41:7 43:13,14
**happened** 25:19
31:16 47:17
52:25 59:1
**happy** 59:15
**hard** 34:6
**hearing** 10:17
15:22,23 45:5
61:8
**Held** 1:19
**help** 33:13 55:22

55:23
**HH406786**
64:22
**history** 26:23
27:3
**hit** 54:18
**Hmielewski** 1:22
5:2,18 64:21
65:5,21
**Holy** 27:8
**hope** 11:1
**hoping** 42:15
**hostages** 28:24
**hour** 61:3
**hours** 6:23 7:2
**huh** 55:4
**hundred** 20:2
55:4
**hundreds** 19:10

**I**
**idea** 39:25 40:7
60:7
**identification**
7:16 8:11 16:7
24:11 35:8
44:17 46:24
**illegal** 20:16,16
**illegality** 12:12
**Illoominate** 5:8
5:23 10:24
11:7,12,14,21
12:5 14:3
15:19 16:3,24
17:14,16 21:14
22:23 23:14,17
24:2,22,25
25:9 30:18
31:22 32:19
34:16 35:15
36:1 38:11
41:21 42:16
45:24 46:8
47:14 49:5
54:17 56:6,24
**Illoominate's**
30:10

**immediately**
16:11
**important** 44:3
44:4
**inaccurate**
56:24
**include** 40:14
**including** 18:6
19:25 21:22
28:23 56:5
**inclusive** 65:10
**incorrect** 19:9
**increase** 54:19
**independent**
47:23
**independently**
37:3
**induce** 43:17
**inflated** 38:12
**inform** 10:25
11:6
**Information**
16:15
**informed** 16:17
34:15 35:20
44:3,11
**initial** 42:2
**initiate** 60:2
**injunctive** 32:7
32:18 48:17
49:1,4,10,19
50:19
**inquiries** 35:21
**instructing**
30:12
**instructions**
31:3
**intended** 9:9
58:1
**intentionally**
47:7
**interest** 39:1
**interested** 65:16
**interpret** 21:6
**intrusive** 9:5,14
**invalid** 31:8
32:15 34:8

invalidate 31:4
  33:4,17 38:17
  55:24 56:17
invalidating
  54:10
involved 20:13
  39:20 41:1,13
irrelevant 9:11
  13:19 14:4,7
Israel 28:22 29:2
issue 13:3,4
  57:12
issued 56:8
issues 30:16
items 33:10

**J**

Jeff 2:25 5:17
Jersey 36:18
job 55:8 57:20
join 31:25 37:7
  39:4
joined 32:20
  47:3,8,16,18
  50:8 59:16
joining 31:17
  40:19 47:17
  50:6 53:15
Joint 56:9
judge 10:19 47:2
  47:9 55:12
judgment 10:10
  18:7 19:25
  25:21 31:4,7,8
  32:12,15 33:2
  33:5,12,17
  34:8,14 38:17
  38:19 39:5,14
  41:1,22 43:7
  47:24 50:3,5
  50:14 53:16,17
  54:8,10 55:22
  55:24 56:15,17
  59:3,16 60:22
Judicial 1:1 5:11
June 24:23
  25:20 64:22

jurisdiction
  47:12
justified 26:1

**K**

K-A-I-R 9:21
keep 16:15 17:4
  35:19 44:7,11
keeping 17:1
  44:3
killed 28:22
killing 20:18
  28:24
KISSANE 2:9
Klayman 2:3,3
  3:5 4:13 5:17
  5:22,22 6:20
  6:22 7:13,17
  8:12 16:8 17:3
  19:7,8,8,9 24:8
  24:12 25:13,22
  26:7,22 27:11
  27:16,21 28:6
  28:16 29:3,10
  29:20 30:1
  31:11,18 32:1
  32:4,16 33:20
  34:1,10 35:5,9
  37:8,25 38:6
  38:23 39:6,10
  39:22 40:2,10
  40:21 41:9,12
  42:10,24 43:15
  43:23 44:5,18
  44:19 46:25
  47:22 48:5,12
  48:24 49:9,15
  50:7,17,23
  51:10,18 52:2
  52:8,13,23
  53:5,12 54:16
  55:2,7,18
  56:18 57:4,13
  57:18,24 59:5
  59:11,23 60:17
  60:25 61:16,24
  62:8,10,11,21

62:23
knew 16:24
know 15:16
  26:21 27:2
  36:16,17 40:6
  44:10 51:24,25
  53:16 62:5
knowledge
  24:19 27:3
  36:14
known 59:24
  60:9

**L**

lack 47:11 57:25
  58:1,4
Lakes 2:20
Land 27:8
language 19:1
large 5:3
Larry 2:3 4:13
  5:17,22
latest 17:23
Lauderdale 1:25
Laura 1:4 2:23
  5:7,22 10:16
  11:21 20:23
  21:11 35:15
  39:18
law 2:3,13 5:9
  6:5 10:19 19:5
  20:2,12 26:8
  26:14 31:13,20
  32:6,24 36:20
  38:24,25 42:18
  43:1 47:4
  55:19
lawsuit 9:23
  10:11 14:4
  20:11 25:8
  29:25 40:3,16
  40:20 60:3,8
  60:10
lawyer 18:11,15
  18:17,21,22
  24:21
lawyers 34:11

34:13
leave 61:1
left 61:17
legal 2:19,24
  4:12 10:5,12
  13:11 20:11
  29:11 30:17
  35:10,18,21,24
  36:20 46:7
legally 11:25
  37:4
leklayman@g...
  2:5
length 12:7,13
let's 13:13 16:1
  18:2 19:12
  46:20
LEXIS 30:19
liability 56:7,25
  57:7,10
liable 16:11
  21:14
license 44:7
licensed 36:11
  36:18
Likewise 40:22
limited 7:1 56:7
  56:25 57:6,10
line 19:14 32:25
  33:9 60:9
linked 27:12
  28:3
litany 56:3
litigate 32:7
litigated 48:16
little 13:14 19:15
LLC 2:19 5:8
local 11:16
  30:11 35:14
  36:6 37:1
  58:12
log 45:4
long 20:15 22:1
longer 11:22
  18:17 46:3,7
look 38:15 47:20
looked 38:7

59:14
looking 52:21
  53:11 54:23
looks 61:10
Loomer 1:4 2:23
  5:8,23 9:24
  10:16,24 11:7
  11:10,21 12:4
  14:3 15:19
  16:2,23 17:14
  17:16 20:22
  21:8,11,13,19
  22:23 23:1,13
  23:16 24:1,22
  24:24 25:9,24
  26:4 27:22
  31:3,21 32:13
  32:19 33:5,14
  34:15,23 35:11
  35:25 37:3,20
  38:11,20 39:19
  41:21 42:2,15
  43:5 45:24
  46:8,11 47:13
  49:5 51:8 54:9
  54:17 55:23
  56:16 58:15
  60:18
Loomer's 28:7
  29:19 35:15
lost 11:22 21:21
  46:2
lot 39:11,13
lower 6:17 54:3
  54:12
lowering 55:10
LUCIE 64:4
  65:3

**M**

Magistrate 56:7
main 33:3 38:16
majority 20:2
making 10:12
  17:15 22:5,7
  33:21 34:16,20
malpractice

10:11 11:5,17 20:5,11 29:22 42:19,23 46:6 46:11
**Mandelbaum** 2:7 5:9 6:3,6,7 47:3,6 48:15 49:3,17 51:13 51:21 52:17
**mark** 7:8 35:3
**marked** 7:15 8:10 16:6 24:10 35:7 44:16 46:22,23 61:22
**materials** 36:5
**math** 18:22 54:23
**matter** 5:7 10:4 11:3 20:23 21:11 22:9 30:4 32:21 36:23 58:14,15 58:19 59:4
**meaning** 19:20 20:2
**means** 9:6
**Media** 5:8,23 10:24 11:7,12 11:21 12:5 14:3 15:20 16:3,24 17:15 17:17 21:14 22:23 23:14,17 24:2,22,25 25:9 30:18 31:22 32:19 34:16 35:15 36:1 38:11 41:21 42:16 45:24 46:8 49:5 54:17 56:6,24
**Media's** 11:15 47:14
**mentioned** 51:16

**meritorious** 25:15,18 26:1 28:4 40:20
**merits** 26:10 58:8,18,23 59:8,14
**messages** 15:2
**methods** 9:14
**Miami** 2:10
**Military** 2:15
**minimum** 54:1
**misstate** 51:1
**misstates** 50:22
**mistake** 57:19 57:22
**monetary** 20:7
**money** 21:12 28:14,17 29:5 29:12 39:11,13
**monies** 28:9
**month-and-a-...** 11:11
**morning** 5:5 6:1
**motion** 10:17 15:21,24 26:6 26:25 28:2 30:12 32:23 36:10 37:12 38:7 56:9 58:13 59:2,21 61:2,9,18
**move** 7:5
**multiple** 31:6

_____
**N**
**N** 2:15 3:1
**name** 6:21,24 19:6
**named** 27:6 28:10
**nature** 20:19
**nearly** 28:22
**need** 21:9 61:4,4
**needed** 26:24 27:2 58:21 59:17
**negotiate** 28:8

**negotiated** 9:20 10:22 11:4 12:7,13 22:11
**negotiating** 10:6 10:25
**negotiations** 23:24
**neither** 16:23 38:24 55:19
**never** 13:9 17:5 17:7,7,9 31:13 34:15 36:19 38:10 39:7 42:21 48:15 60:2
**New** 36:18
**non-meritorious** 25:9
**nonmonetary** 31:9 33:19
**nonparty** 10:6 20:10
**nontaxable** 30:15
**noon** 6:24
**Northeast** 1:24
**Notary** 5:2 64:21
**note** 30:8,8
**notes** 44:20,23 45:1 65:11
**notice** 4:6,9 7:10 7:20,23 16:19
**nullified** 51:4
**number** 4:4 9:19

_____
**O**
**oath** 3:6 24:15 64:1
**object** 14:6 25:12,16,17 26:2,3,12,13 27:10,14,15,19 27:25 28:13,14 28:19,25 29:1 29:6,14,24 31:15,16,23,24

32:10,20 33:2 33:11,12,23,24 34:4,13,19,22 37:5,6,22,23 38:4,13,14 39:2,3,9,12,17 39:25 40:6,13 40:17,18 41:5 41:6,11,17,23 41:24 42:13,20 42:21 43:2,11 43:20,25 44:1 44:8,12 45:25 46:9,16,18 47:19,20 48:1 48:2,9,21,22 49:6,7,13 50:1 50:2,12,25 51:15,23,24 52:6,11,19,20 52:25 53:3,14 53:21 54:6,7 54:21,22 55:6 55:9,14,15,21 56:13,14,21 57:2,9,16,17 57:21,22 58:3 58:11,19,24,25 59:10,13 60:6 60:13,14,20,21
**objecting** 33:9
**objection** 8:3 9:4 13:16 32:9 45:3,16 50:25 51:5,6 53:7,21
**objections** 4:7 8:15 32:25
**objective** 52:4
**objects** 9:13 30:15
**obligation** 27:23 29:11,22
**obtain** 18:9 38:20 48:17 54:14
**obtaining** 9:14 55:17

**obviously** 45:8
**occur** 7:2
**occurred** 50:9
**October** 28:22 47:9
**offer** 10:10 17:22 18:7 19:25 24:3 31:4,8 32:15 33:4,17 34:7 38:17 39:5,14 40:25 41:22 43:7 50:3,14 50:14 54:10 55:24 56:17 59:2 60:15,22
**offered** 39:14,17
**offering** 42:17
**Oh** 18:19 19:7
**okay** 8:23 16:1 18:15,22 22:5 61:3,22
**once** 7:6 21:24 28:19 45:20 46:5 48:15 54:22 55:21
**open** 7:5 60:10 61:1,17
**opinion** 57:19 58:20
**opposite** 25:14
**opposition** 28:1
**order** 4:10 14:18 15:22,24 31:1 32:11 33:15 47:10 56:8 62:1,3,11
**ordered** 23:12 37:20 54:2 55:12 62:13
**ordering** 62:9,10
**organization** 26:19 28:4,10 31:6 33:7 38:22 42:8 60:24
**outside** 29:24

43:3
owe 11:24 12:2
  21:16 24:1
  45:23 46:14,18
owed 20:7 23:13
  29:19 34:5

**P**
P.A 2:3,9
P.C 2:7 5:9
P.L 2:14
page 3:2 4:4
  16:5 24:13
  37:11 38:18
Pages 65:10
paid 28:18,20
  35:25
Palm 1:1 5:11
Palmetto 2:4
paragraph 16:5
  16:13 17:18
  22:21 30:2,7
  32:23 35:17,17
  36:3 40:22
  42:12 43:9
  46:21 47:1,15
  48:13,25 49:16
  49:23 53:6,13
  53:20,22 56:1
  56:20 58:5
  59:24 60:19
Park 2:4
part 22:22 24:5
  44:10 56:8,9
particular 39:15
particularity
  30:14
parties 5:20 9:11
  9:20,21 65:14
parties' 65:15
party 6:8 9:23
  10:4 47:4
  49:14
pay 23:18 26:15
  26:17 28:9
  29:5,11,22,25
  31:5 37:20

38:21 49:21
  50:4,15 51:4
  53:25
paying 26:19
  29:8,18
payments 16:13
people 28:23,24
percent 20:2
  37:17 54:14,19
  54:24,25 55:10
  55:13,17
Perfect 19:16
period 17:2
  18:23 48:14
personal 24:18
pertinent 9:7
phone 2:10,16
  34:22
phrase 20:25
picture 34:6
place 60:3
plain 18:25
plaintiff 2:23
  5:16 9:13,16
  16:13
Plaintiff's 8:16
  9:8 16:6 60:9
plaintiffs 1:5,14
  2:2 5:23 8:24
  10:13,20 16:10
  16:15,19 18:7
  21:8 22:12
  48:18 49:20,20
  53:24 58:7
  59:24 60:2,10
plaintiffs' 4:3,8
  7:15 8:10 18:5
  19:24 20:3
  21:5 22:16
  23:8 24:10
  35:7 44:16
  46:23
plan 37:15 59:20
plans 61:14
pleading 56:19
  56:22,23
please 6:10,12

6:21 19:14
  32:2
pled 47:6
plenty 36:23
plus 39:1 54:18
  54:20
point 12:12 13:2
  17:15 20:21
  21:2 22:1 25:1
  25:23 26:10
  50:9 61:4,17
points 21:3
Pollack 6:4
POLLOCK
  2:14
position 10:18
possibly 23:4
  28:18
power 10:9 18:3
  18:4,4 19:2,3
  19:19,20,21
  20:4 21:1,3,4
  22:22,25 23:1
  23:20,21
powers 19:19
practice 13:6
  36:6,15,20
  37:2 40:24
practices 36:16
practicing 36:17
prank 39:19,21
  39:23 40:1,3,7
prayer 32:7
predates 59:16
  60:6
prefer 13:24
present 2:22
  5:20 9:12
prevented 16:25
  17:17 33:21
previous 17:21
previously 8:5
  11:10 45:3,7
  50:18
primary 33:25
  34:2 51:2
prior 25:19

31:16 40:7,18
  46:1 47:17
  50:6 53:15
privilege 11:23
  14:19 21:22,23
  45:4,4,9,11,14
  45:17 46:3
privileged 14:20
  14:24
Pro 2:19 5:25
procedures 7:4
proceed 7:7
  37:12
proceedings
  16:18
process 40:8
produce 7:3,24
  42:5 60:23
produced 8:1
  14:17 15:1
producing 8:25
  45:6
product 45:15
  45:19,20
production 4:8
  8:5,13,16
professional
  11:20 12:17,20
  44:6 58:2
progress 35:20
prohibited 13:7
propose 23:18
proposed 4:10
  10:23 12:3,9
  12:21 14:15
  15:5 21:13
  23:11 24:5
  42:16 43:17
  44:21
protective 15:22
  15:24
provide 16:20
  30:17 35:18
  53:7
provided 47:7
  58:7
provision 18:25

19:1 21:6
prudence 22:9
prudent 22:10
Public 5:3 64:21
pun 58:1
purport 9:19
purpose 9:10
  20:16,16
pursuant 7:20
  53:8
pursue 31:14
  32:18 51:12,21
pursued 49:19
  52:17
pursuing 49:4
  52:4,7,12
put 7:9,13 8:8
  12:9 16:4 24:9
  31:7 36:9
  38:18 42:11
  43:16 44:15
  51:17 52:20
  56:3,15
putting 10:18

**Q**
Quantum 2:20
question 9:6
  10:1 11:6
  52:14 59:6,7
quite 18:22
  29:21
quoting 30:20

**R**
R 2:14 30:20
  53:8,24
raise 6:11 34:17
raping 28:23
Raton 2:4,15
reach 20:4
reached 13:25
  15:19 17:7
  29:15,16
read 9:2 16:9
  30:7 62:24
reading 63:1,2

**ready** 62:6
**real** 59:25
**really** 26:16 38:4
**reason** 29:25
**reasonable**
  16:19,21 30:14
  35:19 37:20,24
  38:2
**reasonably**
  35:18
**reasoning** 54:13
**rebut** 47:8
**recall** 48:3,10
**receive** 7:6
  19:21,22 23:2
**recipient** 30:12
**record** 5:6 9:3
  62:7,8,15
  65:11
**Recording** 62:18
**recovery** 16:11
**redlined** 19:12
**reduce** 55:20
**reduced** 54:24
**reduction** 37:17
  54:15 55:17
**refer** 8:21 14:11
**reference** 38:16
**referred** 56:19
**referring** 15:23
  56:5
**refers** 23:1
**refusing** 7:3
**regard** 14:15
  15:5 21:19
  49:3
**regarding** 23:3
  28:3
**regards** 17:2,23
  22:3 28:1
  29:14 32:13
  36:22 59:21
**regular** 62:22
**Reinhart** 56:7
**reject** 17:13
**rejected** 17:11
  17:14 42:3

43:6 50:14
  59:3 60:15,22
**rejection** 50:3
**relate** 8:21 11:20
  14:12
**relation** 14:8
**relationship**
  9:17
**relative** 65:13,14
**relevance** 8:3
  9:5 13:16 45:2
**relevant** 14:21
  14:22 15:16
  45:17,21
**relief** 31:9,14,22
  32:7,18 33:19
  34:9 48:18
  49:1,4,10,19
  50:19 51:3,12
  51:21 52:4,7
  52:12,18,22
**remand** 47:10
**reminder** 53:6
**remotely** 1:19
  5:2 64:8 65:7
**Remy** 14:13
**rendering** 9:11
**repeat** 32:3
  41:14
**repeated** 31:6
**reply** 60:11
**report** 65:7
**reporter** 3:7
  5:18 6:10,11
  6:17 7:8 35:2
  62:21,24 65:1
**Reporting** 1:23
  5:19
**represent** 5:21
  14:14 35:19
**representation**
  35:24 48:14
**represented**
  11:10 12:14
**representing** 6:7
**request** 4:8 5:16
  8:5,13,16,18

8:19 14:11
  33:18 45:5
  61:20
**requested** 8:24
  25:3 30:3 33:6
  33:10 51:9
  55:23 56:16
  65:9
**requesting** 34:9
**require** 12:17
**required** 7:6
  11:9 24:25
  35:18 44:8
  58:14
**rescue** 41:2
**research** 27:17
  33:16
**researched**
  26:23
**Resolution**
  16:10
**respond** 26:6,25
  32:2 35:20
  37:9 50:24
**responded** 9:2
  13:18
**responding**
  59:21
**response** 8:14,17
  9:4 58:13
**Responses** 4:7
  8:15
**responsibilities**
  58:16
**responsibility**
  11:19 12:17,20
  21:25 36:25
**resulted** 50:15
**retained** 30:10
  58:9,11
**retainer** 4:12
  35:10,22
**review** 12:14
  17:10 24:25
  37:15 38:8
  48:2,7,20
  49:24 51:19

53:18 60:5
  65:8
**reviewed** 15:12
  15:15 19:10,12
  25:4,5 30:3,4
  31:12 40:11
  41:10,15,17
  47:24 50:12,13
  52:16 56:19,21
  58:7,19,25
**reviewing** 21:9
  25:7 31:19
  32:5 33:16
**rid** 42:6
**right** 6:11 10:3
  11:14 12:24
  17:11 18:21
  20:9 45:12
  51:4 61:16
**rights** 20:6
**Road** 2:4
**role** 36:4 37:13
  37:15
**Ron** 6:2 11:16
  20:12 30:3
  36:5 37:1,14
  41:25
**Ronald** 1:7 2:6
  5:8 35:16
**Roughly** 15:7
**rubber** 37:13
**Ruiz** 47:2,9
**rule** 12:1,22
  22:2,3 44:2
**rules** 7:4 11:19
  12:17,19,25
  13:5 20:15
  21:21 22:2,14
  30:11,24 32:22
  36:6 37:2 46:9

---

**S**

**S** 2:8,9 4:1
**S.D** 30:20 53:8
  53:24
**sanctions** 61:2
  61:18

**Sando** 2:8 6:1,1
  25:12,17 26:2
  26:12 27:10,14
  27:18,24 28:13
  28:25 29:7,13
  31:15,23 32:9
  33:11,23 34:3
  35:4 37:5,22
  38:3,13 39:2,9
  39:16,24 40:5
  40:17 41:5,11
  41:23 42:20
  43:10,19,25
  47:19 48:1,8
  48:21 49:6,12
  50:1,11,22
  51:1,5,14,23
  52:5,10,19
  53:2,10 54:6
  54:21 55:5,14
  56:13 57:1,8
  57:16,21 58:24
  59:10 60:13,20
  61:20 62:3
**save** 42:25
**saw** 26:18
**saying** 14:1,5
  20:25 21:2
  37:19,21 40:4
  41:19,22 46:5
  46:14,17
**scared** 42:4
  60:23
**schedule** 61:10
**SCOTT** 2:9
**screen** 7:9,14
  8:9 16:4 19:15
  24:9 35:12
  44:15
**scrolling** 19:13
**Se** 2:19 5:25
**Sebastian** 2:8
  6:2
**sebastian.agui...**
  2:12
**second** 35:17
  39:8

secretly 14:1
  17:16
section 16:25
  17:17,21,25
  18:2 19:17
  21:1,3 38:14
see 19:12 47:14
  47:21 52:3
  61:10
seen 7:18 15:18
semicolon 23:9
sending 27:13
sense 13:22,23
sent 37:14 44:14
sentence 44:24
Sep 30:20
separate 20:11
  22:25 23:7,9
served 7:11 8:5
  48:23 49:8,18
  52:1
services 35:18
serving 50:6
set 19:14 22:21
  32:22 33:18
  35:21 37:16
  39:20 60:19
sets 47:15
settle 10:8 13:21
  13:24 17:3
  18:6,7 19:3,24
  20:3,11,23
  21:5,11 22:16
  23:8
settlement 8:22
  9:6,10,17,20
  10:4,6,11,13
  10:16,20,22,23
  10:25 11:2,3,5
  12:3,9,21
  13:22,25 14:2
  14:12,15 15:5
  15:18 16:1,17
  16:20 17:7,8
  17:18,21,24
  18:3,10 19:2
  19:20,22 21:13

22:11,22 23:2
  23:3,6,21 24:4
  24:5 28:8
  29:15 42:16
  43:17 44:22,25
  45:10 46:12
  50:14 60:16
settlements 20:5
settling 60:10
seven 61:22
sexual 20:17
Shendell 2:14
  6:4
show 12:25 13:2
  13:8,13 35:2
  52:3
showed 10:17
  15:21 49:7
showing 34:4
shown 22:16
  23:8 35:12
  39:18
shows 48:22
  51:25 57:25,25
  58:1
sign 12:5 18:4
  19:20
sign-off 19:19
  21:3 23:20,23
signature 24:13
signed 10:16
  11:4 20:5 24:6
  24:15 35:11
  64:12
significance
  21:1
significant 55:1
significantly
  54:2,12,19
simple 34:7
  57:22 58:3
simply 41:25
skin 42:25
small 23:18
smaller 19:15
smoking 42:9
solely 9:10 32:21

solemnly 6:12
somewhat 29:2
sorry 19:13
sort 12:25 19:20
  23:21 28:2,3
  34:5 42:7,8
  46:7,15 54:25
  57:11
speak 15:14
speaking 15:7
specific 32:24
specifically 9:15
  48:4,11
specificity 15:6
  15:15
specified 17:2
  32:24
speculate 38:4
spoke 17:24
spoken 50:13
ST 64:4 65:3
stage 30:21 41:1
stamp 37:13
stance 26:17
  34:6
stand 41:3 45:2
  45:13
standard 40:23
  41:8,20 42:1
  42:14 43:4,13
  43:22
start 6:22
state 5:3,20 6:21
  8:19 15:6
  28:15,20 29:9
  36:11 45:2,11
  45:12 64:3,21
  65:2
stated 30:24
  31:9 44:19,24
  45:8
statement 7:1
  27:22 30:23
  36:7,8 41:4,7
  43:12 48:19
  49:23 53:9,19
  54:4 56:12

60:4,12
states 13:7
stating 31:1
  32:11 41:24,25
statute 20:19
Stenographer
  1:22 64:21
  65:5,21
stenographic
  65:11
stenographica...
  65:7
steps 35:19
stipulated 9:17
Stipulation 4:9
stop 19:13
stopped 62:18
strictly 13:6
strike 22:19 33:8
strong 27:22
stronger 51:11
subject 21:13
  22:2 61:1,18
subjected 49:21
  50:4 53:25
submit 24:17
Subpart 22:22
substantial
  10:10 20:22
substantive
  16:21 18:5,9
  19:24 20:1
  21:4,10 22:15
  22:18,20 23:1
  23:7,21 59:25
successful 55:9
  55:11,17
successfully
  54:14
sued 11:23
  21:22 29:21
  46:2
sues 21:24
suggest 42:9
suit 11:17 49:18
  58:6,8,18,23
  59:8,14

Suite 1:24 2:9
  2:15,20
supporting
  30:17
sure 34:24,25
  44:1
surprise 56:2
swear 6:10,12
  6:16
sweetener 43:16
  43:20
sworn 42:17
  64:10

**T**

T 4:1
take 13:23 23:24
  31:20 35:19
  44:6 45:5
  62:12,17,19
taken 1:14,16,22
  5:2,15 25:25
  25:25 26:10
  37:4 49:1,3
talking 21:7
tecum 4:6 7:21
  7:23
tell 23:6
ten 15:8,9,10
terms 8:24 31:14
terrorism 26:20
  28:4,11
terrorist 26:18
  28:3 31:6 33:7
  38:22 42:8
  60:24
testified 40:12
  43:8 50:18
  51:6 57:14
testifying 17:12
testimony 3:4
  6:13 42:17,18
  45:13,23 50:22
  51:1
Texas 27:8
  28:11
text 15:1

**texts** 44:20,22
45:1
**Thank** 6:9,17
19:16 61:19
**think** 23:16
27:23
**Third** 4:8 8:16
**Thirty-three**
53:14
**thorough** 48:6
**thoroughly** 25:5
30:4
**thought** 38:22
40:8 54:8
**thoughts** 40:14
**thousands** 19:11
**three** 19:18,23
20:6 21:3
23:10 62:23
**throw** 43:1
**throwing** 43:2
**time** 1:17 5:14
18:23 25:2
30:5,14 32:3
40:7 48:9 50:9
53:4 59:19
62:14
**timeline** 34:25
**times** 31:7
**timing** 61:11
**title** 8:14
**today** 7:10 9:24
14:5 45:14,23
61:22
**Today's** 5:14
**told** 26:3,14 43:6
44:21 59:3
60:15,21
**tomorrow** 45:6
**total** 56:11
**totally** 14:4
**Trail** 2:15
**transcript** 62:1
62:3,10,20
63:2 65:9,10
**trial** 28:11
**tried** 15:25 17:3

28:8
**true** 22:18,20
24:18 41:6
43:8,11 54:4
65:11
**truth** 6:14,14,15
**try** 42:25 43:17
**trying** 13:21
42:6
**turn** 16:1,4
46:20
**turned** 47:5
**turning** 24:13
30:2
**twelve** 15:10
**twice** 13:17
**Twitter** 48:22
49:8,14,18
50:5,6 51:25
52:22 60:1
**two** 6:23 7:2
34:18 57:7
61:7,12,15
**typo** 57:2,3,5,15
57:17,20

_____

**U**

**U.S** 30:19
**ultimate** 11:2
**ultimately** 54:18
**UMC** 45:5 61:8
**underlying**
11:17
**undersigned**
16:16 64:7
**understand** 25:1
**understanding**
36:4
**understood**
32:22
**undertook** 22:11
**unethical** 43:24
**unindicted** 27:7
28:10
**unreasonable**
38:12
**up-to-date** 17:1

17:4
**updates** 16:21
**uphill** 26:16
**use** 20:25

_____

**V**

**v** 5:8 9:24 30:18
**vacation** 61:12
61:14
**valid** 8:3 22:13
22:15 27:1,19
28:15,20 29:8
29:17
**verified** 4:14
14:9,23 15:17
45:18,22 46:21
**versus** 57:10
**veto** 10:9 18:3,4
19:2,21,21
20:25 21:4
22:22,25 23:1
23:5,20,23
**video** 5:6 62:15
**videoconference**
1:11,14,19 2:1
5:1 64:9 65:7
**videographer**
2:25 5:5,17 6:9
62:6,14
**Videotaped** 1:11
5:1
**view** 21:18
40:23 41:1
42:11 43:3,21
**viewed** 31:5
**vs** 1:6

_____

**W**

**W** 2:19 4:11
**waive** 62:25
63:1
**waived** 30:22
31:2 63:3
**want** 6:22 12:4
21:20 26:17
31:5 38:21
44:20

**wanted** 31:3
32:14,14 33:4
33:14,14 37:11
37:12 38:20
45:1 54:9
**wasn't** 23:4
55:15
**way** 8:22 14:12
**we'll** 8:4 12:3
35:5 61:10,17
62:12
**we're** 62:8,11
**weaken** 34:2,4
**weakened** 33:24
54:11
**website** 61:10
**Wednesday** 1:16
**weeks** 15:25
61:7,13,15
**went** 14:13 15:2
15:4 28:7
**West** 2:4
**whatsoever**
48:17 57:12
**willfully** 47:6
**William** 2:18 4:7
5:10,24 8:15
**willing** 43:1
**witness** 1:22
6:10 25:18
29:8 64:8
**women** 28:24
**word** 20:1
**work** 19:4 45:15
45:19,20
**writing** 34:21
**written** 10:15
18:8 19:11
20:20 43:9
**wrong** 54:23

_____

**X**

**X** 3:1 4:1

_____

**Y**

**Y-o-u-n-g** 6:25
**yeah** 20:20

62:11
**years** 18:16
48:10
**yesterday** 44:14
**Young** 1:12 2:18
2:19 3:4 4:11
4:13 5:2,7,10
5:24,24 6:16
6:25 7:18
52:14 56:5
58:5 61:19,25
62:5,12,24
63:1 64:8 65:8
**Young's** 4:7
8:15

_____

**Z**

**zero** 47:7
**Zoom** 5:16

_____

**0**

_____

**1**

**1** 4:6 7:15 49:18
65:10
**10(11th** 30:19
**10:01** 1:17 5:15
**100** 2:20
**101** 1:24
**11** 30:7 32:23
**11:10** 1:17 62:14
63:4
**12** 15:13
**124,000** 20:8
54:25
**124,423.37**
56:11
**14** 30:13,24 36:3
**140,000** 54:18
**1400** 2:9
**144,000** 54:20
**144,931.87**
38:25
**150** 2:15 54:23
**1500** 1:24
**153,000** 54:24
**15th** 5:11 7:12

**16** 4:9

**2**

**2** 4:7 8:9,10
  35:17 38:14
  49:19
**2,000** 28:22
**20** 37:17 44:14
  54:14,19,24,25
  55:10,13,17
**2013** 18:20
**2016** 18:14
**2021** 24:23 56:5
**2022** 30:19,20
**2024** 1:16 5:14
  7:11 44:14
  64:9,12 65:17
**2027** 64:22
**21** 1:16
**21st** 5:14 7:11
  64:9
**22** 40:22 42:12
  43:9
**22nd** 47:9
**24** 4:11
**25** 46:21 47:1,15
**2500** 2:20
**26th** 64:12 65:17
**27** 48:13,25
**2700** 2:15
**27435** 30:19
**29** 49:16,23
**29th** 24:23 25:20

**3**

**3** 4:9 16:5,5,6
  17:18 24:13
**3(a)** 17:6,21,25
**3(b)** 19:17 22:17
**30** 30:20
**305-350-5365**
  2:10
**305-373-2294**
  2:11
**33** 53:13,20
**33256** 2:10
**33301** 1:25

**33426** 2:20
**33431** 2:15
**33433** 2:4
**34** 53:6,22
**35** 4:12
**37** 58:5
**39** 56:1,20
**3rd** 1:24

**4**

**4** 4:11 24:10
  35:3 36:4 56:5
**43** 59:24 60:19
**44** 4:13
**46** 4:14

**5**

**5** 4:12 35:7,10
  64:22
**5,000** 29:18 36:2
**50** 13:7
**50-2023-CA-0...**
  1:2 5:13
**561-241-2323**
  2:16
**561-241-2330**
  2:16
**561-558-5336**
  2:5
**561-568-1000**
  2:21

**6**

**6** 3:5 4:13 44:13
  44:16
**63** 65:10
**64** 3:6
**65** 3:7

**7**

**7** 4:6,7,14 46:22
  46:23
**7.3(a)** 30:20
  53:8,24
**7050** 2:4
**73,500** 20:8
  21:17 23:15

**7th** 28:22

**8**

**8** 30:2
**8/20/2024** 4:13

**9**

**9150** 2:9



ORIGIN ID:FPRA          (520) 870-9791
LAURA LOOMER

2945 TREASURE COAST PLAZA
SUITE AF136
VERO BEACH, FL 32960
UNITED STATES US

SHIP DATE: 26AUG24
ACTWGT: 2.00 LB
CAD: 105024589/NET4535

TO MS. ANGELA E. NOBLE
CLERK OF THE COURT
UNITED STATES DISTRICT COURT
S.D. FLORIDA
400 NORTH MIAMI AVENUE
MIAMI FL 33128

BILL SENDER

(305) 523-5510

INV:                REF:

PO:                 DEPT:

FedEx
Express

E

27 AUG 10:30A

Part # 156297-435 RRDB EXP 04/25

TUE - 27 AUG AA
PRIORITY OVERNIGHT

33128
MIA

FL-US

651 6270

IPBA

REC'D BY: _____  D.C.

AUG 27 2024

CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

ee how we are connect
onsible and resourceful
m/sustainability
s may vary by location.

Scan to learn how v
help make Eart
iority together