UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ILLOOMINATE MEDIA, INC., a Florida Corporation, and<br><br>LAURA LOOMER, a Florida individual<br><br>Plaintiffs,<br><br>v.<br><br>CAIR FOUNDATION, a District of Columbia corporation, et. al.<br><br>Defendants. | Case No. 19-CV-81179<br><br>Judge Rodolfo A. Ruiz<br>U.S. District Judge<br><br>Judge Bruce E. Reinhart<br>U.S. Magistrate Judge |

**Defendants' Motion for Contempt and to Enforce the Settlement Agreement**

Defendants, CAIR FOUNDATION and CAIR FL Inc. (collectively CAIR or Defendants) move this Court for a new Motion for Contempt and to Enforce Settlement Agreement. In support of this motion, Defendants state as follows:

As the Court may recall, this case was resolved in a So Ordered injunctive settlement, filed at ECF No. 105-1, after a motion for contempt, related to post-judgment matters. Accordingly, that settlement is in form, a consent decree (and is referred to as the "Consent Decree" herein). *See e.g., Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992) (defining a "consent decree" as "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decree"); *accord* ECF No. 106 (entering the order); ECF No. 105-1 ¶ 5. Accordingly, for enforcement, "[e]nforcement of [the Consent Decree] may be by contempt, and any substantive breach [of the Settlement] ***shall*** be contempt of court." ECF No. 105-1 ¶ 5.

Beyond the many issues with Ms. Loomer complying with the "substantive control" provision of the Consent Decree, at issue now is Ms. Loomer's flagrant violation of the Consent Decree's "Non-Disparagement" terms, which require that she "never make any comments, of any kind, about CAIR in

1

the future" and specify that any violation at all is a "substantive breach" (thus automatically triggering contempt). ECF No. 105-1 ¶ 2(a).

Ms. Loomer has spent the past two years violating the "substantive control" provisions, while testing the limits of the "Non-Disparagement" provision. But Ms. Loomer has now decided there is no restriction at all and is attacking CAIR publicly.

The Court should promptly correct this misapprehension, hold Ms. Loomer in contempt, and make clear the Consent Decree is an Order of the Court like any other — and must be obeyed. Likewise, with Ms. Loomer's public violations of the Consent Decree indicating non-public ones as well, the Court should order immediate discovery into whether Ms. Loomer has been violating the Consent Decree more extensively.

## **RELEVANT FACTS**

To start with the Consent Decree itself, it has a four part Non-Disparagement provision.

First, in has an expansive, unlimited substantive bar:

> "**a. Disparagement Bar.** Plaintiffs shall *never make any comments, of any kind*, about CAIR in the future. Violation of this provision shall be a substantive breach of this Settlement."

ECF No. 105-1 ¶ 2(a) (emphasis added). Then it has a waiver of objections to enforceability by Plaintiffs in subpart (b), as well as a commitment to "take any and all voluntary steps that are necessary to avoid creating any issues with enforceability of this agreement," enforceable through "specific performance and in equity, subject to CAIR identifying such step" in subpart (c). Last, it has a narrow exception solely for "responding" to a "specific statement" by Defendants that discusses Plaintiff by name:

> **d. Exceptions for Responses**. Plaintiffs may publicly respond to any specific statement by Defendants or their authorized agents that discuss Plaintiffs by name. Plaintiffs may not use the exception for such responses to begin making general comments about Defendants outside of responding to the specific statement.

ECF No. 105-1 ¶ 2(d). That exception is explicit that Plaintiffs' responses may not include "general

2

comments about Defendants" — only responses to any "specific statement."

As relevant here, in late October, Ms. Loomer engaged in a small storm of posts attacking CAIR. The genesis appears to have been her hatred of a person speaking at a CAIR event — and her self-described "relentless pressure on the State Department and Department of Homeland Security" to get that speaker deported. That "relentless pressure" includes disparaging comments about CAIR made in violation of the Consent Decree's Disparagement Bar.

Ms. Loomer published two separate posts attacking CAIR, saying as relevant here:

"It's great to see the @StateDept double down on their arrest of pro-HAMAS & pro-Muslim Brotherhood jihadi Sami Hamdi @SALHACHIMI today…

He was on his way from California to Tampa, FL today to speak at a GALA *hosted by a pro-HAMAS, Muslim Brotherhood 501c3 that still has not had their 501c3 status revoked under the Trump admin, despite their long history of supporting Islamic jihadists (there are court records to back this up).*

*Why are jihadists still operating with 501c3 statuses here in the US?* 🤨"

\* \* \* \* \*

"Sources at DHS @DHSgov have just told me that Muslim Brotherhood official Sami Hamdi @SALHACHIMI was just ARRESTED by ICE @ICEgov agents at San Francisco International Airport as he was traveling to Tampa, Florida *to headline an event for a Jihadist, pro HAMAS and Muslim Brotherhood 501c3 group tonight.* …

After Amy Mek's @AmyMek investigation exposed Sami Hamdi (see report below) — a jihadi foreign national operating inside the United States and abroad with banned Muslim Brotherhood figures who are barred from entering our country — I demanded that federal authorities inside the Trump administration treat Hamdi as the major National security threat that he is and I reported Sami Hamdi to federal immigration authorities over his documented support for Islamic terrorism.

As a direct result of Amy's report and my relentless pressure on the State Department and Department of Homeland Security, U.S. officials have now moved to take action against Hamdi's visa status and his continued presence in this country.

Just a reminder that the *Muslim Brotherhood and HAMAS are on US soil and they are freely operating in America*."

\* \* \* \* \*

"He was flying to FL from CA to give a speech in Tampa tonight at *an Islamic 501c3 tied to HAMAS & MB*."

3

(emphases added). The posts are also attached as **Exhibits 1, 2, and 3.** If there were any ambiguity, one of the posts is quote-tweeting a post identifying the "Islamic 501c3" as "CAIR," and Ms. Loomer herself made a post complaining that CAIR (identified there by name) was hosting Hamdi "at their GALA in Tampa, FL."[1] A true copy of that post is attached as **Exhibit 4.** And in the meet and confer (described below), Ms. Loomer's counsel agreed the posts were about CAIR.

The press release (*see* n. 1 below) referenced in Exhibit 4 appears to be an October 26, 2025 press release saying, essentially: "Anti-Muslim extremist Laura Loomer has publicly taken credit for his abduction, claiming that ICE acted in response to her demands and smearing Hamdi with various anti-Muslim conspiracy theories," and a little more factual detail (that does not appear to be in dispute) about Ms. Loomer's interactions with the Secretary of State. A true copy of that press release is attached as **Exhibit 5.**

Nothing in the press release says anything about CAIR's 501(c)(3) status, Hamas, the Muslim Brotherhood, Jihad, or the like. And CAIR's post was a response to Ms. Loomer's comments about it.

## DISCUSSION

This Court has the power, by statute, by rule, and by common law, to impose sanctions up to and including contempt to address refusal to obey orders. *Serra Chevrolet, Inc. v. General Motors Corp.*, 446F.3d 1137, 1147 (11th Cir. 2006) (*citing Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1446 (11th Cir. 1985)). Civil contempt is coercive, not punitive; it is intended to compel compliance with the underlying order. *United States v. Mine Workers*, 330 U.S. 258 (1947); *see also South Beach Suncare, Inc. v. Sea & Ski Corp.*, No. 98-1114, 1999 U.S. Dist. LEXIS 7902 (S.D. Fla. May 17, 1999). Thus, "[a] judgment of civil contempt is conditional, and may be lifted if the contemnor purges himself of the contempt." *United States v. Rizzo*, 539 F.2d 458, 463 (5th Cir. 1976) (distinguishing civil from criminal contempt).

---

[1] That post also goes far beyond what the Consent Decree permits as a response to the "press release" it purports to respond to, demanding that the "Trump administration, DOJ, and the IRS should take action against CAIR and the organizations continued 501(c)(3) status." However, given that there are free-standing attacks that are not a response to anything, this motion does not address (without conceding) whether that initial response was permitted, aside from the context it provides.

4

Moreover, unlike criminal contempt, specific intent or willfulness need not be shown — though they are easy to show here — to trigger a civil contempt enforcement procedure to obtain compliance with an order. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *see also F.T.C. v. Leshin*, 618 F.3d 1221, 1232-33 (11th Cir. 2010).[2]

As set out above, the Court then "granted final approval of the Settlement Agreement, and adopted the Settlement Agreement as the Order of the Court." *Gumm v Ford*, 2022 US Dist LEXIS 101758, at *2 (MD Ga June 7, 2022) (violation of an order the Court adopted triggered contempt show cause hearing). That makes the settlement agreement a consent decree. *See generally, Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992). *, accord Floyd v. City of New York*, 770 F.3d 1051, 1063 (2d Cir. 2014) (explaining that *Rufo*'s definition means a settlement "not be formally designated as a consent decree" for it to still "operate as such") (cleaned up).

And indeed, if that were not enough, Plaintiffs specifically agreed to "waive any objections to the Court's jurisdiction over enforcement of [the] Settlement, including the Court's contempt and equity jurisdiction." ECF No. 105-1 ¶ 5(c). As the Supreme Court has explained, "if the parties' obligation to comply with the terms of the settlement agreement [is] made part of the order of dismissal …, a breach of the agreement would be a violation of the order." *Kokkonen v Guardian Life Ins. Co. of Am.*, 511 US 375, 381 (1994). Summing up, as this Court has recently explained in a different case:

> The Eleventh Circuit has held that a private settlement agreement can be enforced through the district court's civil contempt power where the court has retained jurisdiction to enforce its terms. In so holding, the Eleventh Circuit reasoned that by approving a settlement agreement and retaining jurisdiction to enforce its terms, a district court effects precisely the same result as would have been achieved pursuant to a consent decree.

*Adams v Clev. Clinic Florida*, 2022 US Dist LEXIS 16247, at *9 (SD Fla Jan. 31, 2022) (citations and quotation marks omitted, alterations accepted) (Ruiz II. J.) (*citing American Disability Association, Inc. v.*

---

[2] At least at this stage, Defendants take no position on whether criminal contempt would be appropriate. Depending on the content of private messages or future violations of the Consent Decree, Defendants reserve the right to argue criminal contempt has become appropriate.

*Chmielarz*, 289 F.3d 1315, 1321 (11th Cir. 2002)).  Beyond that, "[a] party's failure to comply with *any* order of the court *also* triggers the court's contempt authority" standing alone.  *Id.* (emphasis added).

I.    **The Court Should Hold Plaintiffs in Contempt.**

On contempt, this Court has applied a two-part test, with each side carrying the burden on one part.  "A party is in civil contempt when it is shown by 'clear and convincing evidence that (1) the alleged contemnor has violated an outstanding court order; and (2) the defendant fails to show that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid.'"  *Adams*, 2022 US Dist LEXIS 16247, at *9 (*quoting SEC v. Solow*, 682 F. Supp. 2d 1312, 1326 (S.D. Fla. 2010), aff'd, 396 F. App'x 635 (11th Cir. 2010)).  *Accord*, ECF No. 128 at 3-5.

A.  **Plaintiffs violated ¶ 2(b) of the Consent Decree.**

Defendants have unambiguously "violated an outstanding court order."  The order at issue is clear:

"Plaintiffs shall *never make any comments, of any kind*, about CAIR in the future."

ECF No. 105-1 ¶ 2(a) (emphasis added).  The comments at issue are indisputably "about CAIR."  So the statements are barred by paragraph 2(b), unless they are explicitly permitted by Paragraph 2(d) of the Consent Decree.

B.  **Paragraph 2(d) does not allow these statements.**

None of the statements Defendants are moving on even *reference*, let alone "respond to any specific statement by Defendants."  ECF No. 105-1 ¶ 2(d).  And even if they could be read in some way as a response, the content of the statement has nothing to do with responding to CAIR's statements.  Rather, they are exactly the kind of "general comments about Defendants outside of responding to the specific statement" the Consent Decree anticipated and barred.

The Consent Decree is worthless if it allows Ms. Loomer to advocate for the destruction of CAIR entirely, just because she claims CAIR mentioned her by name.  And that is just what she is doing.  She understands both the concept and why her conduct violates the Consent Decree very well.

6

As she explained in her own deposition in the *Coleman*[3] litigation:

"the only time I'm ever allowed to speak about CAIR is, if one of their employees directly attacks me, *I'm allowed to defend myself* publicly."

2024-03-04 Loomer Dep. Tr. at 377 (emphasis added) (attached as **Exhibit 6** excerpts from the deposition transcript)[4]. And indeed, in attacking CAIR during that deposition, Ms. Loomer explained her own understanding that defending and attacking are different:

Because CAIR is a nonprofit organization. Yeah, they may be a nonprofit organization. But they say they want to challenge stereotypes of Islam and Muslims and *defend civil liberties in Florida. They do much more than that*. Right?

They go out of their way, clearly, to lobby -- to lobby *to get people banned, to get them shut down*.

2024-03-04 Loomer Dep. Tr. at 252-253 (attached as **Exhibit 6** excerpts from the deposition transcript). Just so: Ms. Loomer has done "more than" "defend[ing] [her]self publicly," she has gone on to "to lobby to get [CAIR] banned, to get them shut down" by the Federal Government. Little, if any, of what she said was "defend[ing her]self." And she clearly understands that attacking and trying to get an opponent "shut down" is more than "defend[ing]" oneself. And she is right in her understanding. So, in her own terms, she has violated the Consent Decree.

### C. Plaintiffs cannot meet the burden to vitiate contempt.

Following a finding of violation, the burden shifts to Plaintiffs "to show that [they have] made in good faith all reasonable efforts to meet the terms of the court order [they are] seeking to avoid.'" *Adams*, 2022 US Dist LEXIS 16247, at *9. Here, Plaintiffs are making no efforts — let alone good faith efforts — to comply with the Consent Decree. They are simply choosing not to, because they do not want to.

Finally, speaking about CAIR publicly is, definitionally, a "substantive" breach. And for "any

---

[3] As the Court may recall, part of the Consent Decree gave CAIR certain rights to control substantive settlement authority in Plaintiffs' litigation against their former counsel, in a case the Consent Decree calls "*Coleman*" after its lead defendant (to differentiate it from this case, since they share plaintiffs).

[4] The entire transcript is publicly available through the Palm Beach County court access system, CAIR only includes the relevant excerpts herein. If the Court would like the entire 502 page transcript including the index, CAIR will file same for the Court's review.

substantive beach," the Settlement provides in mandatory terms that the remedy "**shall** be contempt of court." ECF No. 105-1 ¶ 5 (emphasis added). Further, the parties agreed that "an intentional violation of this Settlement shall constitute contempt of court, except that Plaintiffs may raise a defense that compliance is 'factually impossible.'" Id. ¶ 5(a), *citing and incorporating Yimby, Inc. v. Fedak,* 2017 U.S. Dist. LEXIS 96700, at *9-10 (S.D.N.Y. June 22, 2017) *and Ramgoolie v. Ramgoolie*, 2020 U.S. Dist. LEXIS 33145, at *7 (S.D.N.Y. Feb. 25, 2020).

There is no colorable or good faith argument here that compliance is factually impossible — Plaintiffs need only not talk about CAIR. So, the Court should hold Plaintiffs in contempt, as mandated by the plain language of the Settlement, purgeable by deleting the posts and publishing a retraction.

## II. The Remedies Should Include Fees, Acceleration of the Underlying Balance, and Discovery into Private Statements.

Once a party is in contempt, the Court has "wide discretion to fashion an equitable remedy … that is appropriate to the circumstances." *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999) (*citing E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987)). The Court "ha[s] numerous options, among them: a coercive daily fine, a compensatory fine, attorneys' fees and expenses ... and coercive incarceration." *Citronelle-Mobile Gathering, Inc. v Watkins*, 943 F2d 1297, 1304 (11th Cir 1991). And indeed, willful violations of non-disparagement orders have triggered incarceration. *See, e.g., Markham v Auto Cycle Exch. Servs. (In re Markham)*, 2025 Bankr LEXIS 1957, at *10 (10th Cir BAP Aug. 15, 2025).

### A. Attorneys' Fees are mandatory.

Even without contempt, the Settlement provides — in mandatory terms — that Defendants "shall be entitled to [their] reasonable attorneys' fees for any motion to enforce." ECF No. 105-1 ¶ 5(b). *Accord Adams*, 2022 US Dist LEXIS 16247, at *14. So the Court should award fees, with relevant affidavits to be submitted, if the parties cannot work out the amount of such fees. *Id.*

### B. The Court should require retraction and deletion.

8

The remedies for violations of Court Ordered non-disparagement vary. With prior contempt, the 10th Circuit's Bankruptcy Appeal part has approved even incarceration. *Markham,* 2025 Bankr LEXIS 1957, at *10. And while there has been extensive prior contempt here, given that it is the first violation of the non-disparagement provision, that dramatic a remedy is not warranted.

However, contempt remedies are meant to both coerce compliance and remedy the contempt. Accordingly, deletion and retraction of the posts is appropriate: Deletion to stop the bleeding, and retraction to make some attempt to cure the previous harm. *Accord, e.g., Fisher v Biozone Pharms., Inc.*, 2017 US Dist LEXIS 42822, at *19-20 (ND Cal Mar. 23, 2017) (ordering "plaintiff to withdraw his FBI and SEC grievances against the defendants, as well as any other such grievances as the plaintiff may have outstanding and which fall within the scope of his commitment under the settlement" as a contempt remedy). The Court should order this as to the public statements, and as to any statement unknown.

### C. The Court should accelerate the underlying balance.

As the Court knows very well, CAIR has been litigating constantly over the past few years — including both here and in the Eleventh Circuit — just to get the benefit of the bargain the Consent Decree represented. Ms. Loomer herself testified she understood that a violation of the non-disparagement clause triggered acceleration of the full amount that had been due prior to the Consent Decree:

> "if [I] violate the settlement agreement by speaking about CAIR ... I will be ordered to pay the full amount with interest."

2024-03-04 Loomer Dep. Tr. at 377. And that makes good sense: CAIR should have received a full and permanent reprieve from Ms. Loomer's attacks in exchange for reducing the principle due if it could not be recovered in *Coleman*, allowing a payment plan, and not digging further into her woefully incomplete judgment discovery responses and related false certifications to the Court (*see, e.g.,* ECF Nos. 92). Indeed, without the non-disparagement provision, Defendants essentially got nothing at all

9

out of the Consent Decree.[5]

### D. The Court should order discovery into private communications, and reserve decision on further contempt sanctions based on the result of that discovery.

Last, but perhaps most crucial, as set out above, there is every indication Ms. Loomer has routinely and repeatedly violated the Consent Decree in non-public channels. Her counsel's refusal to make *any* representation she has complied privately at the meet and confer described below, along with Ms. Loomer's explicit statement the "Trump administration, DOJ, and the IRS should take action against CAIR and the organizations continued 501(c)(3) status" alongside the admission she is privately speaking to exactly those actors makes it implausible anything else is happening.

However, before contempt is appropriate on those statements, the Court must have clear and convincing evidence. Accordingly, the Court should order discovery. Such orders are common and well within the Court's discretion. *See, e.g., Birks v Small Community Specialists, L.L.C.*, 2025 US Dist LEXIS 205672, at *18-19 (D Md Oct. 20, 2025); *BASF Agro B.V. v Makhteshim Agan of N. Am., Inc. (MANA)*, 2015 US Dist LEXIS 97229, at *5 (MDNC July 27, 2015) (finding it "appropriate for the parties to conduct discovery on the appropriate remedies for the violation of the Consent Judgment" alongside normal discovery).

Defendants believe the first step — which the Court can order on its own — is for Plaintiffs to disclose all communications referencing CAIR or CAIR Florida (whether by name or otherwise) with any person other than counsel. From there, Defendants can serve additional requests if necessary, or simply supplement this motion with any violations shown by clear and convincing evidence.

### LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(A)(3), undersigned counsel for Defendants certifies that their office has conferred with counsel for Plaintiffs via email and telephone in a good faith effort to resolve

---

[5] That is, even the substantive control of the right to settle *Coleman* is no more than what CAIR could have gotten through involuntary bankruptcy.

the issues raised in this motion. Plaintiffs' only stated position at the meet and confer was that a "timeline" they would produce would explain the statements. While that meet and confer was some time ago, Plaintiffs still have not provided that "timeline." Otherwise, Plaintiffs indicated they opposed the relief sought herein, and were refusing to cure the contempt through a retraction or other similar measure.

Plaintiffs also refused to confirm they have not made private statements about CAIR, seemingly confirming there have been private violations of the Consent Decree.

Dated: November 13, 2025

Respectfully submitted,

BY: /s/ Darren Spielman
Darren Spielman
THE CONCEPT LAW GROUP, P.A.
6400 North Andrews Avenue
Suite 500
Fort Lauderdale, FL 33309
(754) 300-1500
dspielman@conceptlaw.com

*Counsel for CAIR-Florida, Inc.*

Remy Green (*admitted pro hac vice*)
COHEN&GREEN P.L.L.C
1639 Centre St.
Suite 216
Ridgewood, NY 11385
(929) 888-9480

Thania Diaz Clevenger
Florida Bar Number 97301
CAIR
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 850-9284
t-clevenger@cair.com

*Counsel for CAIR Foundation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 13th day of November, 2025, a true and correct copy of the foregoing was served by the Court to all CM/ECF registered users associated with this matter.

/s/ Darren Spielman
Darren Spielman