# Exhibit 6

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

________________________________

LAURA LOOMER and ILLOOMINATE MEDIA, LLC,

Plaintiffs,

v. Case No. 50-2023-CA-10810-XXXX-MB

RONALD COLEMAN; DHILLON LAW GROUP, INC.; MANDELBAUM BARRETT P.C.; and CRAIG WILLIAM YOUNG,

Defendants.

________________________________

VIDEOTAPED DEPOSITION OF
LAURA LOOMER IN HER INDIVIDUAL CAPACITY AND AS
CORPORATE REPRESENTATIVE FOR ILLOOMINATE MEDIA, LLC

DATE: Monday, March 4, 2024
TIME: 10:42 a.m.
LOCATION: Cole Scott & Kissane, P.A.
222 Lakeview Avenue, Suite 120
West Palm Beach, FL 33401
REPORTED BY: Laura Guimond
JOB NO.: 6433367

NOT A CERTIFIED COPY

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS LAURA LOOMER AND ILLOOMINATE MEDIA, LLC:

LARRY E. KLAYMAN, ESQUIRE
Klayman Law Group, P.A.
7050 West Palmetto Park Road
Boca Raton, FL 33433
leklayman@gmail.com
(561) 558-5336

ON BEHALF OF DEFENDANTS RONALD COLEMAN AND MANDELBAUM BARRETT, P.C.:

BLAKE S. SANDO, ESQUIRE
Cole Scott & Kissane, P.A.
9150 South Dadeland Boulevard, Suite 1400
Miami, FL 33156
blake.sando@csklegal.com
(305) 350-5365

SEBASTIAN AGUIRRE, ESQUIRE
Cole Scott & Kissane, P.A.
9150 South Dadeland Boulevard, Suite 1400
Miami, FL 33156
sebastian.aguirre@csklegal.com
(305) 350-5328

NOT A CERTIFIED COPY

A P P E A R A N C E S (Cont'd)

ON BEHALF OF DEFENDANTS DHILLON LAW GROUP, INC. AND RONALD COLEMAN:

BRETT R. BLOCH, ESQUIRE
Shendell & Pollock, P.L.
2700 North Military Trail, Suite 150
Boca Raton, FL 33431
brett@shendellpollock.com
(561) 241-2323

JOSH H. LIDA, ESQUIRE
Shendell & Pollock, P.L.
2700 North Military Trail, Suite 150
Boca Raton, FL 33431
josh@shendellpollock.com
(561) 241-2323

ON BEHALF OF DEFENDANT DHILLON LAW GROUP, INC.:

MATTHEW S. SARELSON, ESQUIRE
Dhillon Law Group, Inc.
1601 Forum Place, Suite 403
West Palm Beach, FL 33401
msarelson@dhillonlaw.com
(305) 773-1952

NOT A CERTIFIED COPY

A P P E A R A N C E S (Cont'd)

ALSO PRESENT:

Paul Smith, Videographer, TruVid, LLC

Arthur D. Grossman, Corporate Representative for Mandelbaum Barrett, P.C. (by telephone)

Asher Anderson, Paralegal for Klayman Law Group, P.A. (by telephone)

NOT A CERTIFIED COPY

Orlando, you are not a good person. You are -- you are actively seeking out that client because you sympathize with them, not because you're a public defender and the court assigned you to represent somebody who can't afford a lawyer.

And so I'm trying to explain again, like, why this is such an egregious case of malpractice. Because it's not that we just lost this lawsuit. Like, there's so much humiliation and actual pain, you know. And I'm sorry. I'm going to cry again. But it's like I am an American patriot. And I care about my country.

And I just cannot believe that I am literally having to send $1200 a month of my money to an organization that supports ISIS terrorists and supports Hamas and supports people that have killed innocent Americans. It's really, honestly caused so much psychological distress to me.

Q I'm going to keep going. But if you want me to stop --

A No, you can keep going.

Q -- you let me know. Okay?

A I'm just -- I'm trying to explain to you why, you know --

Q The next one I'd like to show you is a

NOT A CERTIFIED COPY

declaration of Wilfredo Ruiz, Exhibit Number 22. Again, this was filed in the underlying lawsuit.

(Exhibit 22 was marked for identification.)

MR. KLAYMAN: I don't mean to laugh. But the same name as the judge.

BY MR. SANDO:

Q Ms. Loomer, with respect to paragraph number two, Mr. Ruiz attests that CAIR Florida is "a nonprofit organization established in 2001 to challenge stereotypes of Islam and Muslims and defend civil liberties in Florida." Do you see that statement?

A Yeah.

Q Is that a true statement?

A No, it's not.

Q Okay. Is Mr. Ruiz a liar?

A Yes.

Q Okay. Is Mr. Ruiz a predator or any other sort of characterization --

A I think that everybody who works for CAIR is -- is being dishonest in their -- in their description of what CAIR is. Okay? Because CAIR is a nonprofit organization. Yeah, they may be a nonprofit organization. But they say they want to challenge

NOT A CERTIFIED COPY

stereotypes of Islam and Muslims and defend civil liberties in Florida. They do much more than that. Right?

They go out of their way, clearly, to lobby -- to lobby to get people banned, to get them shut down. They launch efforts to go after conservatives. They organize rallies. Like, you'll see all these pro-Palestine rallies that are popping up across the country right now. Those are sponsored by CAIR. They're facilitating those. Right? So they're -- they're doing a lot more than what they say.

And also too, I mean, I think it's worth nothing that they constantly like to portray themselves as victims. But look at some of the people that have come out of CAIR Florida. You know, the former director of CAIR Florida was arrested in an FBI sting for trying to have sex with a 10-year-old boy. He was actually arrested in a pedophile sting in Orlando. And you can look this up. You can verify all of this information.

He was busted for trying to entice a 10-yaer-old child into having sex with him. He was going to rape a 10-year-old boy. And this was a really big scandal for CAIR Florida because this guy

NOT A CERTIFIED COPY

had been in charge of also CAIR outreach to the youth. And they scrubbed their entire website, and then Hassan Shibly became the director.

And so, again, like, they like to present themselves as they're, you know, a cookie-cutter organization that wants to combat stereotypes of Islam, but their employees are literally beating women. They're raping children. They are tied to Hamas. They are talking about killing Jews.

They got in trouble in their Florida office -- this was documented as well -- because they were teaching Muslims on the terror watch list how to avoid the FBI. Like, why would you -- why would you do that? Like, if the FBI thinks that somebody is involved in Islamic terrorism, why are you trying to teach them how to avoid the FBI? Like, why did CAIR Florida give -- help provide legal representation to the wife of the ISIS terrorist who shot and killed people because they're gay?

Like, it's just so awful. These are not good people. And so I don't -- I don't care, like, what they say. They can call themselves, you know, a charity. They could come up with the cure for cancer. I don't really care what these people do. At the end of the day, they're jihadist sympathizers. And they

NOT A CERTIFIED COPY

BY MR. KLAYMAN:

Q He and Mandelbaum did not address each entry?

A No. It wasn't --

MR. SANDO: Form.

THE WITNESS: It was not --

MR. SANDO: Mandelbaum wasn't even in the case at the time.

MR. KLAYMAN: All right. Coleman.

THE WITNESS: It was Coleman, yes.

MR. KLAYMAN: Coleman. That's fine.

THE WITNESS: It was Mr. Coleman. I had already signed a letter withdrawing Mandelbaum at that time.

BY MR. KLAYMAN:

Q Now, with regard to your settlement agreement with CAIR, if you default on any payments, what happens?

A I'll be --

MR. SANDO: Object to form.

THE WITNESS: I will be arrested. I will be found in contempt of court. And it was made very clear to me that -- that I'd be found in contempt, sanctions would be filed against me, and I would be arrested.

NOT A CERTIFIED COPY

BY MR. KLAYMAN:

Q What about the total amount that's owed? Did it have any bearing if you don't make your payment?

A Yes. And if I -- if I fail to make the payments of the $1200 per month, and if violate the settlement agreement by speaking about CAIR -- the only time I'm ever allowed to speak about CAIR is, if one of their employees directly attacks me, I'm allowed to defend myself publicly -- I will be ordered to pay the full amount with interest.

Q Now, with regard to the Dhillon law firm, did anyone ever advise you from the Dhillon law firm, whether it's Mr. Coleman or anyone else, that the rules of professional ethics in Florida required a written agreement?

A No. And I was asked earlier whether or not I had signed an agreement -- a retainer agreement with the Dhillon law firm. And I don't recall signing an agreement because it was never brought to my attention that, ethically speaking and legally speaking, my attorney, after leaving Mandelbaum and switching firms, had to -- had to get me to sign another retainer, which I never signed.

Q I'm showing you Exhibit Number 28 which they

NOT A CERTIFIED COPY

questioned you on. Would you please read that into the record? And who is that from?

A This is my tweet. I said "I see Ron Coleman is being passive aggressive on X" -- which is now Twitter -- "further exposing how unprofessional he is. He just liked this comment on a post in reply to Raheem Kassam's recent article which mentioned to me. If you're a conservative, you need to make sure you stay away from the awful" -- and the tweet's cut off. I mean, it was a longer post. But -

Q Where's that one that was referring to the individual that you didn't know the source?

MR. BLOCH: The one right after that.

BY MR. KLAYMAN:

Q 29. Do you have -- I don't see 29 here.

A I don't have it.

MR. KLAYMAN: Did you give it to the court reporter? I don't see 29. It's what?

MR. SANDO: All the exhibits are here, Mr. Klayman. 1 through 29.

MR. KLAYMAN: All right.

THE WITNESS: That's it.

MR. KLAYMAN: There it is.

BY MR. KLAYMAN:

Q Please read Exhibit 29 into the record,

NOT A CERTIFIED COPY