**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH**

ILLOOMINATE   MEDIA,   INC.,   and
LAURA LOOMER,

      Plaintiffs,                        CASE NO. 19-cv-81179-RAR

v.

CAIR FOUNDATION, et. al.

      Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR CONTEMPT**

Plaintiffs Illoominate Media, Inc.[1] and Laura Loomer (together, "Plaintiffs") respond in opposition to Defendants CAIR Foundation's and CAIR FL Inc.'s (together, "CAIR" or "Defendants") Motion for Contempt and to Enforce the Settlement Agreement (D.E. 175) ("Motion").

**SUMMARY**

For months, Defendants repeatedly and publicly maligned Ms. Loomer. After months of exercising restraint, and as authorized by the parties' settlement agreement, Ms. Loomer responded to Defendants' disparagement. Defendants now seek punitive retribution under the guise of claiming a violation of the settlement agreement.

Ms. Loomer's speech is expressly permitted by the parties' settlement agreement, which provides that Ms. Loomer may publicly respond to any specific statements by Defendants that discuss Ms. Loomer. After Defendants publicly disparaged Ms. Loomer more than a dozen times, e.g., by referring to her as a "notoriously unhinged bigot," "hysterical," "racis[t]," "Islamophobic,"

---

[1]     Plaintiff Illoominate Media is not referenced in the Motion.

and other insults, Ms. Loomer responded by calling CAIR a "Jihadist, pro HAMAS and Muslim Brotherhood" organization. At bottom, the parties engaged in a back-and-forth name-calling that is both authorized by their agreement and wholly unworthy of this Court's time or oversight.

As demonstrated below, Defendants have failed to meet their burden to show a violation of the settlement agreement by clear and convincing evidence. Instead, Defendants seek to punish Ms. Loomer based on terms that are not found in the parties' agreement. Rules of construction require any ambiguities to be construed in favor of Ms. Loomer as the party charged with contempt. Moreover, Defendants improperly seek to punish Ms. Loomer, but punitive relief is not available in a *civil* contempt proceeding. Finally, in the unlikely circumstance that the Court finds Ms. Loomer violated the settlement, she must have an opportunity to purge the conduct before being found in contempt. For these reasons, Defendants' Motion must be denied.

## I.     FACTUAL BACKGROUND

### A.  The Settlement Agreement.

1.     In July 2023, Plaintiffs and Defendants entered into the Stipulation and [Proposed] Order of Settlement ("Settlement Agreement"). *See* D.E. 105-1.

2.     In pertinent part, the Settlement Agreement  provides:

> **Disparagement Bar.** Plaintiffs shall never make any comments, of any kind, about CAIR in the future. Violation of this provision shall be a substantive breach of this Settlement.
> . . .
> **Exceptions for Responses.** Plaintiffs may publicly respond to any specific statement by Defendants or their authorized agents that discuss Plaintiffs by name. Plaintiffs may not use the exception for such responses to begin making general comments about Defendants outside of responding to the specific statement.

*See* D.E. 105-1 at §§ 2.a. & 2.d.

3.    Defendants do not contest, nor could they, that Plaintiffs continue to make all payments obligated under the Settlement Agreement.

**B. Defendants Publicly Disparage Ms. Loomer by Name.**

4.    Between June and October 2025, Defendants maligned Ms. Loomer by name in more than a dozen public statements and press releases on CAIR's website. This figure does not include Defendants' statements on other platforms, such as Facebook,[2] X[3] and YouTube.[4] A sampling of the disparaging remarks follow.

5.    On June 3, 2025, CAIR's Research and Advocacy Director stated, in a public interview, "Americans eat pizza, hot dogs, chicken, trench fries, burgers, sandwiches, chips, tacos, fruit, nachos, cookies, and various other foods with their hands. Those same Americans can see through the **hysterical racism and Islamophobia spewed by the likes of Laura Loomer** and Texas Congressman Gill. Only the Ku Klux Klan could enjoy such bigoted and nonsensical statements." *See* Ex. 1 (emphasis added).

6.    On July 30, 2025, CAIR issued a press release referring to Ms. Loomer as an "notorious and proud Islamophobic figure." *See* Ex. 2.

7.    On August 16, 2025, CAIR republished references to Ms. Loomer, alleging that the "State Department's move to stop visitor visas for people from Gaza comes after **Laura Loomer, a far-right activist and an ally of President Donald Trump,** said on social media on Friday that the Palestinian 'refugees' had entered the U.S. this month" and that **Loomer "took credit for the**

---

[2] CAIR Houston,  https://www.facebook.com/cairhouston/posts/682095924621093 (protected).
[3]     CAIR     National     (@CAIRNational),     X     (Nov.     30,     2025), https://x.com/CAIRNational/status/1957539285353251097.
[4] BreakThrough News, "How Laura Loomer and ICE Teamed Up to Abduct a Pro-Palestine Journalist,"     YouTube     (November     8,     2025),     available     at https://www.youtube.com/watch?v=zZGyLcnPxXw.

**State Department's decision to halt the humanitarian visa program"** and called it "fantastic" news. *See* Ex. 3.

8.      On August 17, 2025, CAIR's San Francisco Bay Area Director criticized Ms. Loomer in an ABC news program for "anti-Palestinian and Islamophobic rhetoric."[5]

9.      On August 17, 2025, CAIR published links to various articles referring to Ms. Loomer, including the following articles on its website: (1) "CAIR: Trump Cuts Off Medical Visas from Gaza After **Laura Loomer Meltdown**"; (2) "CAIR: Did US halt Gaza medical visas based on **far-right activist Laura Loomer's** online posts?"; and (3) "CAIR: US stops issuing visas for sick Gazan children after campaign led by **'proud lslamaphobe' Laura Loomer**." *See* Ex. 4. (emphasis added).

10.     On August 18, 2025, CAIR issued a press release referring to "Critically Injured Palestinian Kids" as "Laura Loomer's Latest Victim." See Ex. 5.

11.     On August 18, 2025, CAIR issued another press release, referring to Ms. Loomer as an "anti-Muslim extremist" and "strongly condemn[ing]" the Secretary of State "for taking direction from Laura Loomer" and "caving to Loomer's pressure." CAIR proceeded to assert that the State Department had "effectively given a **notoriously unhinged bigot and her online mob** veto power of State Department policy." *See* Ex. 6 (emphasis added). The statement also compared Ms. Loomer to David Duke. *Id*.

12.     On August 20, 2025, CAIR republished several articles on its website, further disparaging Ms. Loomer, including articles entitled: (1) The frightening power Laura

---

[5] CAIR – Council on American Islamic Relations, "CAIR-SFBA Director Says Gaza Visa Ban is Result of Anti-Palestinian, Islamophobic Rhetoric," YouTube (Aug. 17, 2025) available at https://www.youtube.com/watch?v=wEhS4QqB52g, at approx. 1:22.

Loomer wields in Trump's America and (2) *Trump Is Blocking Gaza's Children from Medical Care Because Laura Loomer Threw a Tantrum. See* Ex. 7.

13.     On October 13, 2025, CAIR published a press release linking to a quote from CAIR originally published on October 3, 2025, referring to Ms. Loomer as "notoriously unhinged bigot" with "veto power over State Department policy." *See* Ex. 8.

14.     The foregoing examples are not exhaustive, but rather, reflect a cursory compilation of Defendants' discussing Ms. Loomer on CAIR's own website, and do not include Defendants discussing Ms. Loomer on other platforms.

**C.  Ms. Loomer's October 26 Response and CAIR's unlawful retribution.**

15.     After months of restraint, on October 26, 2025 at 11:05 a.m. ET, Ms. Loomer posted on Twitter/X about Sami Hamdi (hereafter, the "Response"). *See* D.E. 175-2.

16.     The Response did not identify CAIR by name.

17.     On October 29, 2025, CAIR's counsel asserted, "Obviously, the 'gala' referred to is CAIR's -- as any reader knew. Indeed, in context, most users would have seen Ms. Loomer's previous post saying as much." *See* Ex. 9.

18.     However, Ms. Loomers' Response did not mention a "gala" notwithstanding CAIR's characterization of the Response. *See* D.E. 175-2.

19.     Rather, Ms. Loomer's Response: (1) alerted her followers that an individual was arrested in San Francisco while attempting to travel to Florida; (2) reported that the federal authorities arrested the individual while he "was traveling to Tampa, Florida to headline an event for a Jihadist, pro HAMAS and Muslim Brotherhood 501c3 group" that evening; (3) reported that the individual was in federal custody; (4) explained that Ms. Loomer had alerted federal authorities

about the individual; (5) disclosed a pressure campaign on federal authorities to take action; and (6) provided additional background about the individual.  *See* D.E. 175-2.

20.    On October 26, 2025, CAIR representatives repeatedly maligned Ms. Loomer at their conference in Tampa, Florida to galvanize fundraising, such as telling the audience that "we will not back down" to Ms. Loomer.[6]

21.    In addition, on October 26 at 2:34 p.m., CAIR published a press release making several references about Ms. Loomer and confirming that CAIR previously mentioned Ms. Loomer:

> **Anti-Muslim extremist Laura Loomer has publicly taken credit for his abduction**, claiming that ICE acted in response to her demands and smearing Hamdi with various anti-Muslim conspiracy theories.
>
> **CAIR previously called on Secretary of State Marco Rubio to address whether he spoke directly with anti-Muslim extremist Laura Loomer**, as she claims, before banning Palestinian children injured by American weapons in Gaza from seeking medical care in the U.S. and condemned his decision.
>
> **A day after Loomer** posted videos on social media complaining about children from Gaza arriving in the U.S. for medical treatment and questioning how they obtained visas, the State Department said it was halting all visitor visas for people from Gaza pending a review.
>
> **In a tweet, Loomer** thanked Senator Rubio for halting the visas. The New York Times reported that **Loomer** said she spoke with Secretary of State Marco Rubio on Friday night to alert him to the flights and what she called the threat of an 'Islamic invasion.'

*See* D.E. 175-5 (emphasis added).

---

[6]    Hassan    Shibly    (@HassanShibly),    X    (Oct.    6,    2025)
https://x.com/HassanShibly/status/1982599945438806072.

22.     In response to this barrage, Ms. Loomer responded at 7:27 p.m. ET, referring to CAIR as a "pro-HAMAS, Muslim Brotherhood" organization that has a "long history of supporting Islamic jihadists (there are court records to back this up)." *See* D.E. 175-1.

23.     Throughout that day, Defendants continued publishing public statements, press releases, and other media attacking and disparaging Ms. Loomer, such as automated mailers to elected representatives calling for them to "Denounce Laura Loomer" as well as Defendant's west coast representatives publishing statements about Ms. Loomer. *See* Ex. 10.

24.     On October 26 at 11:45 p.m., Ms. Loomer's response, began, "Today, CAIR @CAIRNational sent out a press release attacking me, and at their GALA in Tampa, FL . . . CAIR claimed they raised $1.2 million tonight by opposing me." *See* D.E. 175-4.

**D.   CAIR's Motion seeks punishment and retribution, not civil coercion.**

25.     On October 29, CAIR made a series of increasingly unreasonable demands, revealing an intention far afield of coercing compliance with the Settlement Agreement.

26.     First, CAIR stated that "cure would require at a minimum:

## a. Deleting the posts.
## b. Posting a statement withdrawing them.
## c. A commitment to stop testing this line."

*See* Ex. 9. (emphasis and font size in original).

27.     Second, CAIR threatened additional remedies "possibly including, but not limited to, fees, acceleration and default on the underlying debt . . . limited discovery on other statements 'about CAIR' (given other cutesy attempts to get around the Consent Decree), and serious monetary sanctions." *Id*.

28.     Third, CAIR's demands continued:

a. **Your client immediately preserve all communications possibly relevant to contempt, including any message directly or obliquely referencing CAIR including those with disappearing messages by Signal or the like.**

b. **You provide a statement from your Client confirming, under oath, that there have been no other statements 'about CAIR' of any kind (regardless of whether they mention CAIR by name), whether public or non-public.**

c. **You confirm your client is committing to actually comply with Paragraph 2(a) of the Consent Decree**.

*Id*. (emphasis and font size in original).

29.     Fourth, CAIR made even more demands, to wit, that it could continue to publicly discuss Ms. Loomer by name, and that Ms. Loomer could not respond:

Last, **we want to be clear that when CAIR responds to this statement, there is no basis for Ms. Loomer to claim the exception under Paragraph 2(d) to say more.** Having violated the Consent Decree, she cannot use that violation to manufacture a controversy to comment on it. If you disagree, please say so now, so we can have

> ## the Court resolve this before Ms. Loomer engages in further contempt.

*Id*. (emphasis and font size in original).

30.     CAIR demanded a response within 24 hours. *Id*.   The undersigned counsel complied. *Id*.

## II.     LEGAL STANDARD

Civil contempt is a sanction designed to coerce a defendant into compliance with a lawful court order or to compensate a wronged party. *Adams v. Cleveland Clinic Florida*, 2022 WL 278955, at *3 (S.D. Fla. Jan. 31, 2022) (citing *United States v. Mine Workers*, 330 U.S. 258 (1947)). "A judgment of civil contempt is conditional and may be lifted if the contemnor purges himself of the contempt." *Id*. (citing *United States v. Rizzo*, 539 F.2d 458, 463 (5th Cir. 1976)). "It is thus distinguishable from criminal contempt, which is punitive in its nature and imposed for the purpose of vindicating the authority of the court." *Id*.

"A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Citronelle–Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1301 (11th Cir.1991). "Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply."

Further, the respondent may "show that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid." *Adams v. Cleveland Clinic Florida*, 2022 WL 278955, at *3 (S.D. Fla. Jan. 31, 2022) (quoting *S.E.C. v. Solow*, 682 F. Supp. 2d 1312, 1326 (S.D. Fla. 2010), *aff'd*, 396 F. App'x 635 (11th Cir. 2010)). "This burden is satisfied by making

"in good faith all reasonable efforts to comply." *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 984 (11th Cir. 1986) (citing *United States v. Rizzo,* 539 F.2d 458, 465 (5th Cir.1976)).

"If the alleged contemnor makes such a sufficient showing, the burden then shifts back to the party seeking to show contempt to prove the ability of the alleged contemnor to comply with the court's prior order." *Adams*, 2022 WL 278955 at *3 (citing *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992)).

## III.    ARGUMENT

Defendants' motion must be denied for several reasons. First, Ms. Loomer did not violate the settlement agreement. Second, Defendants failed to meet their burden of proof to show a violation of an order by clear and convincing evidence. Third, Defendants improperly seek enforcement of language that does not appear in the Settlement Agreement, and regardless, the rules of construction requiring all ambiguities to be interpreted in Ms. Loomer's favor. Fourth, Defendants carelessly seek the drastic remedy of contempt, risking abuse of the Court's contempt powers. Fifth, Defendants improperly seek to *punish* Ms. Loomer, rather than compel compliance with a Court order. Finally, even if the Court finds that CAIR has satisfied its burden, which it did not, Ms. Loomer must be given an opportunity to purge the contempt. For any of these reasons, Defendants Motion must be denied.

### A.  Ms. Loomer did not violate the Settlement Agreement.

Ms. Loomer's response is authorized under the parties' Settlement Agreement. The Settlement Agreement provides, "Plaintiffs may publicly respond to any specific statement made by Defendants or their authorized agents that discuss Plaintiffs by name." *See* 105-1 at §2.d. Here, Defendants discussed Ms. Loomer by name often, repeatedly, and publicly, as evidenced by the

dozens of references to Ms. Loomer on CAIR's website, not to mention the untold number of additional references to Ms. Loomer by Defendants on other platforms.

In response to Defendants' statements, Ms. Loomer criticized Defendants in the Response. Here, Defendants called Ms. Loomer "hysterical," "Islamophobic," and a "notoriously unhinged bigot" and, in the Response, Ms. Loomer called CAIR a "Jihadist, pro HAMAS and Muslim Brotherhood" organization.

In fact, Defendants expressly state that they are not addressing whether Ms. Loomer's Response was authorized. *See* D.E. 175 at 4, n.1 ("However, given that there are free-standing attacks that are not a response to anything, this motion does not address (without conceding) whether that the initial response was permitted, aside from the context it provides."). If Defendants aren't contesting the propriety of Ms. Loomer's Response, then who is? And as the above timeline of statements shows, Ms. Loomer has *only* responded to Defendants statements disparaging her.

At bottom, this back-and-forth name-calling is speech authorized under the Settlement Agreement and is wholly unworthy of this Court's resources or attention.

### B. Defendants failed to meet their burden.

Defendants fail to meet their burden to show, by clear and convincing evidence, that Ms. Loomer violated the Settlement Agreement because, *inter alia*, Defendants claim Ms. Loomer violated terms that do not exist in the Agreement.

Defendants claim that Ms. Loomer violated the Settlement Agreement for three reasons: (1) her Response failed to adhere to an acceptable structure, form, or organizational pattern, (2) the content of her Response violates the Settlement Agreement, and (3) her Response was an impermissible "attack" rather than "defen[sive]" statement. **But none of these restrictions exist in the Settlement Agreement and have been invented by Defendants to silence Ms. Loomer.**

First, Defendants argue that none of Ms. Loomer's statements "*reference*, let alone 'respond to any specific statement by Defendants.'" *See* D.E. 175 at 6. However, section 2.d. does not require Ms. Loomer to "reference" a specific statement. Instead, section 2.d. states, "Plaintiffs may publicly respond to any specific statement by Defendants or their authorized agents that discuss Plaintiffs by name." Defendants apparently argue that an authorized response requires Ms. Loomer to follow a structure where she (1) references or identifies Defendant's specific statement, (2) states that her forthcoming response responds to the specific statement identified, and (3) articulates the nexus between Defendants' statement and Ms. Loomer's response.

None of these requirements are found in section 2.d. Instead, section 2.d. permits Ms. Loomer to respond to any specific statement by Defendants that mention her, without any further caveats or specifiers. It does not require her to reference Defendants' statement, and Defendants' assertion otherwise is an attempt to place further limits on Ms. Loomer's speech.

Second, Defendants claim – without any explanation – that "the content of the statement has nothing to do with responding to CAIR's statements." *Id*. This self-serving conclusion fails to acknowledge the complexities associated with policing the content of speech, let alone, the unconstitutional nature of a prior restraint on speech. *See e.g. Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ("prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."). Regardless, both parties engaged in name-calling, and Defendants' conclusory assertion fails to show by clear and convincing evidence that this exchange of insults are not made in response to one another. Section 2.d. doesn't provide any content restriction—the word "content" does not appear in section 2.d. Rather, it states that Ms. Loomer "may publicly respond to any specific statement" made by Defendants, which Ms. Loomer did; therefore, the content of the Response is immaterial.

Third, Defendants argue that Ms. Loomer knew "just what she is doing" because she testified about her "own understanding that defending and attacking are different." *See* D.E. 175 at 7. Yet, section 2.d. makes no distinction between responses that "defend" or "attack." Again, that section permits Ms. Loomer to "respond" to statements CAIR makes about her. The Agreement does not permit or restrict responses based on whether they are offensive or defensive.

In sum, Defendants failed to meet their burden to show by clear and convincing evidence that Ms. Loomer violated the Agreement because **Defendants' argument rests on invented terms that do not exist**. "[A] district court may not impose obligations on a party that are not unambiguously mandated by the decree itself." *Reynolds v. Roberts*, 207 F.3d 1288, 1300–01 (11th Cir. 2000) (quoting *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995)). "Where they are unambiguous, the court must uphold a decree as written." *Id*.

Here, the Settlement Agreement permits Ms. Loomer to respond to Defendants' specific statements about her. While Defendants allege that Ms. Loomer violated fabricated terms concerning structure, content, and offensive versus defensive responses, Defendants failed to show that the Response was impermissible under the actual language of Settlement Agreement.

**C.  All ambiguities must be construed in favor of Ms. Loomer.**

Since Defendants' interpretation of the Agreement relies on language that is absent, it follows that Defendants believe that the terms of the Settlement Agreement are ambiguous and open to interpretation. Defendants fail to articulate any ambiguity, and fatally, to address the applicable rule of construction. This rule requires the Court to construe all ambiguities in favor of Ms. Loomer and against Defendants. Consequently, Defendants again fail to meet their burden.

To establish contempt, the movant must show that "the [Court] order was *clear and unambiguous*" and with respect to any ambiguities, the Eleventh Circuit "will construe any

ambiguities or uncertainties in such a court order in a light favorable to the person charged with contempt." *Georgia Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007) (emphasis original) (citing *NBA Properties, Inc. v. Gold,* 895 F.2d 30, 32 (1st Cir.1990)).

Here, to the extent Defendants claim ambiguity in the subject provision, Defendants fail to offer an interpretation in favor of Ms. Loomer on at least three issues: (1) structure, (2) content, and (3) timing.

First, the Settlement Agreement does not require Ms. Loomer to preface her response with any specific language or to expressly identify the specific statement to which she is responding. In other words, she does not need to (1) identify the specific statement she is responding to in her response, (2) state in her response that it is responsive to a specific statement made by Defendants, and (3) explain the connection between Defendants' statement and her response, as Defendants claim she must do. Instead, the Settlement Agreement entitles her to respond to Defendants statements without a specific form, organization, or framing.

Second, the provision fails to support Defendants' interpretation of a content-restriction on Ms. Loomer's responses to CAIR's statements. In effect, Defendants argue that if CAIR calls Ms. Loomer "hysterical" or a "notoriously unhinged bigot," then her response is limited to stating, "I am not hysterical," or "I am not a bigot." Here,  Defendants made dozens of disparaging comments about Ms. Loomer over the course of several months. After exercising significant restraint, Ms. Loomer responded by providing important context for understanding Defendants' accusations about her. At bottom, the Settlement Agreement does not articulate – nor could it – what constitutes acceptable responsive content once CAIR opens the door by referring to Ms. Loomer by name.

Third, although it is unclear whether Defendants object to the timing of Ms. Loomer's Response, section 2.d. does not set any time limit on when Ms. Loomer may respond.  For example,

it does not require that Ms. Loomer respond within a certain number of hours, days, or weeks. Consequently, Ms. Loomer's decision to exercise restraint before responding to Defendants' barrage of disparaging statements is authorized under the Settlement Agreement.

Here, Defendants rely on language absent from the Agreement. To the extent they claim an interpretation based on an ambiguity, it must be construed in in favor of Ms. Loomer. Since Defendants fail to address this rule of construction, they have failed to meet their burden.

**D. Defendants carelessly seek a drastic remedy.**

Defendants' Motion exhibits substantial carelessness and calls into question whether Defendants seek legitimate relief or are merely weaponizing litigation.

As a primary example, Defendants state: "[T]his motion does not address (without conceding) whether that the initial **response** was permitted, aside from the context it provides." *See* D.E. 175 at 4 n.1 (emphasis added to show that Defendants use the term "response" in the context of seeking contempt with respect to a provision that allows Plaintiffs to respond).

Yet, Defendants carry the burden to demonstrate contempt on the issue of whether Ms. Loomer's responses to Defendants' statements about her are authorized under the Settlement Agreement. Since Defendants are not addressing whether Ms. Loomer's Response was permitted, it is unclear what exactly they seek to litigate before the Court, let alone, how this fact pattern presents an issue worthy of contempt proceedings.

To relegate to a footnote that Defendants are not challenging whether Ms. Loomer's "initial response" was authorized means that Defendants are ignoring a material element in factual chain of events at issue. Defendants' argument is therefore premised on the absence of a material fact, if not *the* material fact. Ms. Loomer is entitled to respond to statements made by Defendants, but Defendants will not address the propriety of Ms. Loomer's "response"? Ignoring the Response

does not negate its propriety or materiality. If anything, ignoring the "response" reveals that Defendants' Motion is founded upon an absence of material facts, notwithstanding that Defendants bear the burden of proof by clear and convincing evidence.

      As another example, Defendants' argument begins with substantial errors:

> **A. Plaintiffs violated ¶ 2(b) [*sic*] of the Consent Decree.**
> Defendants [*sic*] have unambiguously "violated an outstanding court order."

*See* D.E. 175 at 6.

      In this simple, conclusory assertion, Defendants refer to Ms. Loomer, the plaintiff, as "Defendants," incorrectly cite paragraph 2(b), while discussing section 2.a., and confusingly state that Ms. Loomer "unambiguously" violated an outstanding Court order.

      Civil contempt is a "drastic remedy," and Defendants' elementary errors suggest that Defendants are flippantly seeking contempt without requisite care or deliberation. *See Organizacion Miss Am. Latina, Inc. v. Ramirez Urquidi*, 2018 WL 4778452, at *4 (S.D. Fla. Aug. 27, 2018) ("Civil contempt 'is a drastic remedy.'") (quoting *Branch Banking and Trust Co. v. Hamilton Greens, LLC*, Case No. 11-80S07-CIV, 2014 WL 1603759 at *4 (S.D. Fla. Feb. 26, 2014)). "Courts must be alert to the risks of abuse of contempt powers, for '[u]nlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct.'" *Florida Immigrant Coal. v. Uthmeier*, 787 F. Supp. 3d 1323, 1332–33 (S.D. Fla. 2025) (citation omitted).

      Here, Defendants are flippantly calling for the exercise of contempt powers while carelessly omitting material facts and erroneously referring to others. Given the "risks of abuse of contempt powers," denial of the Motion is appropriate due to the Motion's rudimentary defects.

### E. CAIR improperly seeks to punish Plaintiffs.

Despite claiming to seek **civil** contempt, CAIR wrongfully seeks **punitive** relief.

Civil contempt serves to coerce a party "into compliance with a lawful court order or to compensate a wronged party." *Adams*, 2022 WL 278955, at *3. "A judgment of civil contempt is conditional, and may be lifted if the contemnor purges himself of the contempt." *Id*. Civil contempt is "distinguishable from criminal contempt, which is punitive in its nature and imposed for the purpose of vindicating the authority of the court. *Id.*

Rather than seek to coerce compliance with a Court order, e.g., requiring Ms. Loomer to delete the Response (had it violated the Settlement Agreement, which it did not), Defendants seek unlawful retribution and punishment. As evidenced by their correspondence and Motion, Defendants demanded the following, increasingly punitive relief:

1. Deletion of the response;

2. Post a withdrawal statement;

3. A "commitment to stop testing this line";

4. Fees;

5. Acceleration and default on the underlying debt;

6. Limited discovery on other statements 'about CAIR' (given other cutesy attempts to get around the Consent Decree);

7. Serious monetary sanctions;

8. Preservation of all communications possibly relevant to contempt, including any message directly or obliquely referencing CAIR including those with disappearing messages by Signal or the like;

9. A statement "confirming, under oath, that there have been no other statements 'about CAIR' of any kind (regardless of whether they mention CAIR by name), whether public or non-public." (Defendants wrote, "Plaintiffs also refused to confirm that they have not made private statements about CAIR seemingly confirming that there have been private violations of the Consent Decree.") *See* D.E. 175 at 11.

10. Confirmation that Ms. Loomer is committing to actually comply with Paragraph 2(a) of the Consent Decree;

11. Confirmation that when CAIR responds to this statement, there is no basis for Ms. Loomer to claim the exception under Paragraph 2(d) to say more; and

12. Responses within 24 hours.

Even assuming that Ms. Loomer's response was violative of the Settlement Agreement (which it was not), Defendants failed to show by clear and convincing evidence how the increasingly onerous and vindictive demands coerce compliance with the Agreement, other than the demand that Ms. Loomer delete the response. *See Chiquita Brands Int'l, S.a.r.l. v. Zamhern S.a.*, 2024 WL 5485780, at *1 (S.D. Fla. Nov. 8, 2024) ("While Respondent Zamhern has certainly failed to adhere to any of the Court's orders at the hearings, and, indeed, continues to ignore its orders, Chiquita must show by clear and convincing evidence that a writ of bodily attachment against Zambrano is appropriate.").

For example, what relation or proportionality is there between Ms. Loomer's response and accelerating the debt? Defendants do not claim that Ms. Loomer has failed to timely make all payments due under the Settlement Agreement. *See e.g. Mesa v. Luis Garcia Land Serv., Co.*, 218 F. Supp. 3d 1375, 1380 (S.D. Fla. 2016) ("Accordingly, sanctions imposed for civil contempt to coerce compliance "cannot be any greater than necessary to ensure such compliance" and may not be so excessive as to be punitive in nature.") (quoting *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991)). CAIR seeks to financially punish Ms. Loomer despite her compliance with those obligations.

How does Ms. Loomer make a "commitment to stop testing this line"? If authorized speech that Defendants believe comes close to the "line," is she "testing this line"? Does this commitment

mean that authorized speech is effectively no longer authorized because it comes close to "this line"? Ms. Loomer cannot reasonably meet such a vague demand from Defendants.

And why should Defendants be able to discover Ms. Loomer's private communications? Defendants' demand for all private communications includes all attorney-client privileged communications about CAIR. There is no evidence about private communications. CAIR's intrusive demands are punitive, not required by the parties' Settlement Agreement, and an attempt to expand the scope of the Settlement Agreement in favor of Defendants so that they can continue to exercise control over Ms. Loomer.

And for the sake of the argument, if a post on X constituted a violation, Defendants' demands are still highly disproportionate to the violation and constitute a severe and unfair overcorrection that will inevitably embolden Defendants to litigate for further encroachments and violations. Plaintiffs rightfully refused these punitive and unreasonable demands. Given that Defendants wrongfully seek punitive relief, the Motion should be denied.

**F. Civil contempt requires an opportunity to purge.**

Finally, in the improbable event that contempt is found, Ms. Loomer must be given the opportunity to purge the contempt.

"Civil contempt serves to coerce compliance, not punish for non-compliance, with court orders. *United States v. Stephens*, 2025 WL 2270032, at *1 (S.D. Fla. May 22, 2025) (citing *Turner v. Rogers*, 564 U.S. 431, 441-42 (2011) (noting that "once a civil contemnor complies with the underlying order, he is purged of the contempt and is free"). *See also Mesa v. Luis Garcia Land Serv., Co.*, 218 F. Supp. 3d 1375, 1380 (S.D. Fla. 2016) ("With civil contempt, 'the contemnor is able to purge the contempt and obtain his release by committing an affirmative act.'") (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 844 (1994)).

Defendants complain that one post on Twitter violates the Settlement Agreement, and Plaintiffs disagree. If the Court finds that the post violated the Agreement, Ms. Loomer should be provided the opportunity to make "all reasonable efforts to meet the terms of the court order he is seeking to avoid." *Adams v. Cleveland Clinic Florida*, 2022 WL 278955, at *3 (S.D. Fla. Jan. 31, 2022) (quoting *S.E.C. v. Solow*, 682 F. Supp. 2d 1312, 1326 (S.D. Fla. 2010), *aff'd*, 396 F. App'x 635 (11th Cir. 2010)).

In other words, Ms. Loomer must have the opportunity to delete the response within a reasonably prompt period. As shown above, Ms. Loomer acted on a good faith belief that her actions were authorized under the Settlement Agreement. In contrast, Defendants' position relies on language absent from the Settlement Agreement, interpretations that flout the applicable rules of construction, exhibits clear signs of carelessness indicative of an abuse of contempt proceedings, and improperly seeks punitive relief. Consequently, there is ample basis to conclude Ms. Loomer proceeded in good faith.

Accordingly, she should have the opportunity to delete the post in the unlikely event that it is determined to be a violation of the Settlement Agreement.

## CONCLUSION

Based upon the foregoing, Plaintiffs request entry of an order denying Defendants' Motion.

Dated: December 1, 2025                  Respectfully submitted,

**TODD R. FRIEDMAN, P.A.**             Arielle Klepach, Esq.
1101 Brickell Avenue                   **NATIONAL JEWISH ADVOCACY**
Suite S-700                            **CENTER**
Miami, Florida 33131                   3 Times Square
786-536-7190                           New York, NY 10036
                                       Arielle@njaclaw.org
By: /s/ *Todd Friedman*                N.Y. Bar No. 5591128
Todd R. Friedman, Esq.                 Admitted *Pro Hac Vice*
Fla. Bar No. 97919
todd@toddfriedmanpa.com

*Counsel for Plaintiffs Illoominate Media LLC and Laura Loomer*

*Counsel for Plaintiffs  Illoominate Media LLC and Laura Loomer*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 1, 2025 a true and correct copy of the foregoing was filed via the Court's CM/ECF filing system and thereby served on counsel of record.

By: /s/ *Todd Friedman*

### SERVICE LIST

**Craig William Young**
CWY Legal and Consulting
630 S Sapodilla Avenue
529
West Palm Beach, FL 33401
561-568-1000
Email: craig@cwylegal.com

*Counsel for Plaintiffs Illoominate Media LLC and Laura Loomer*

**Ronald D. Coleman**
Dhillon Law Group, Inc.
8 Hillsdale Avenue
Montclair, NJ 07042
(973) 298-1723
Email: rcoleman@dhillonlaw.com

*Counsel for Plaintiffs  Illoominate Media LLC and Laura Loomer*

**Darren Joel Spielman**
Kain Spielman, P.A.
900 SE Third Avenue
Suite 205
Ft. Lauderdale, FL 33316
954-768-9002
Fax: 954-768-0158
Email: dspielman@conceptlaw.com

*Counsel for Defendant CAIR Florida, Inc.*

**Remy Green**
Cohen & Green P.L.L.C.
1639 Centre St., Suite 216
Ridgewood, NY 11385
(929) 888-9480
Email: Remy@femmelaw.com

*Counsel for Defendant CAIR Florida, Inc.*

**Yasir Billoo**
International Law Partners LLP
2122 Hollywood Blvd.
Hollywood, FL 33020
954-374-7722
Fax: 954-212-0170
Email: ybilloo@ilp.law

*Counsel for Defendant CAIR Florida, Inc.*

**C. Danette Zaghari-Mask**
Council on American-Islamic Relations
453 New Jersey Avenue SE
Washington, DC 20003
2024888787
Email: dzaghari-mask@cair.com

*Counsel for Defendant CAIR Foundation*

**Justin Sadowsky**
CAIR Legal Defense Fund
453 New Jersey Avenue SE
Washington, DC 20003

**Lena F. Masri**
CAIR Legal Defense Fund
453 New Jersey Avenue SE
Washington, DC 20003

202-742-6420
Email: jsadowsky@cair.com

*Counsel for Defendant CAIR Foundation*

**Seth Adam Kolton**
Shendell & Pollock PL
2700 N Military Trail
Suite 218-A
Boca Raton, FL 33431-7392
561-241-2323
Fax: 561-2330
Email: seth@shendellpollock.com

*Counsel for Intervenor Dhillon Law Group,
Inc*

202-742-6420
Email: lmasri@cair.com

*Counsel for Defendant CAIR Foundation*