UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ILLOOMINATE MEDIA, INC., a Florida Corporation, and LAURA LOOMER, a Florida individual<br><br>    Plaintiffs,<br>v.<br><br>CAIR FOUNDATION, a District of Columbia corporation, et. al.<br><br>    Defendants. | Case No. 19-CV-81179<br><br>Judge Rodolfo A. Ruiz<br>U.S. District Judge<br><br>Judge Bruce E. Reinhart<br>U.S. Magistrate Judge |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
FOR CONTEMPT AND TO ENFORCE THE SETTLEMENT AGREEMENT**

Defendants, CAIR FOUNDATION and CAIR FL Inc. (collectively CAIR or Defendants) submit this Reply in further support of their motion for contempt and to enforce the So-Ordered Settlement Agreement ("Consent Decree"). The core of this motion is the meaning of an exception to the general rule that Plaintiffs bargained away their right to "[]ever make any comments, of any kind, about CAIR." Consent Decree ¶ 2(a). Essentially all of Plaintiffs' arguments are addressed and rejected by specific language in the Consent Decree: In making any response to a statement by CAIR, Plaintiffs are explicitly limited to "responding to the *specific* statement," and may not "begin *making general comments* about" CAIR. Consent Decree ¶ 2(d) (emphasis added). Plaintiffs' only argument otherwise is, quite literally, to read that clause out of the Consent Decree. Outside of accurately quoting it once, Plaintiffs do not discuss the language at all.

If the comments at issue are not such impermissible "*general* comments," as opposed to "respon[ses] to the specific statement[s]," then nothing qualifies. Statements that are pure acontextual attacks, without any hint of an actual response, made weeks and months after the statements of CAIR National must not qualify under the plain language of the Consent Decree. Plaintiffs later fabrication under the guise of a "response" is improper. Plaintiffs' opposition, accurately quoting the "general comments" language as part of the full clause(ECF No. 176, "Opp." at 2), does not mention it again.

1

Despite this pending contempt motion, Plaintiffs continue to make more non-response statements about CAIR. (See **Exhibit 1**). Additionally, this Court has already found substantial breaches of the Consent Decree (ECF Nos. 128, 148, 154, and 157).

## FACTUAL STATEMENT

While the Opposition attempts to portray Plaintiffs as having diligently complied with the Consent Decree, the history here reflects anything but. The Court has already found two contempt-worthy substantive breaches. And indeed, even now, Plaintiffs *still have not signed* the Agreement with DLG as the Court directed, having signed only a version they made unilateral changes to, then said they wanted to make a motion to clarify, then never filing it.[1]

Defendant CAIR National acknowledges that it has made some statements about Plaintiff Loomer. Those happened largely over the Summer — with statements in June, July, several in August, and then a single statement in October on October 13, 2025. But two weeks after the most recent statement, and *months* after the others, Plaintiff Loomer began a flurry of general attacks on CAIR. As Ex. 1 demonstrates, Plaintiffs have set out on a campaign to have CAIR federally designated as a terrorist organization. Ex. 1 is clearly not a response to anything *CAIR* stated about Plaintiffs but is instead a response to an attack on CAIR by the State of Texas.

Despite the rhetoric in the Opposition., Plaintiffs do not even nominally deny, or attempt to refute the moving papers' showing, that "Ms. Loomer has routinely and repeatedly violated the Consent Decree in non-public channels." ECF No. 175 at 10. The only claim in the Opposition is that discovery on that issue would be "punitive." Plaintiffs *do not dispute* they have made extensive private communications advocating for the Federal Government to destroy CAIR, and that failure to offer even a cursory denial is telling.

---

[1] While this detail is begins to get far afield, in the interest of clarity, Plaintiffs — by CAIR's agreement — did make an advance payment on that agreement to CAIR, in order to get CAIR to agree to allow Plaintiffs time to make the motion to clarify. But as of now, without the motion to clarify, Plaintiffs have not held up their end of that agreement either.

2

# ARGUMENT

The arguments in Plaintiffs' Opposition, if adopted, render the protections of the Consent Decree meaningless. The entire point of the Non-Disparagement terms was to prohibit, exactly the kind of "back-and-forth name-calling" Plaintiffs ask the Court to bless. Plaintiffs arguments attempt to write the "general comment" bar out of the Consent Decree and Plaintiffs failure to even discuss it proves the point.[2] As set out below, the motion should be granted.

## I. Plaintiffs' Comments are Precisely the "General Comments" Prohibited by the Consent Decree and are Not Meaningfully Responses.

Plaintiffs do not meaningfully grapple with the "general comments" language in Paragraph 2(d) of the Consent Decree. Likewise, Plaintiffs offer no account of how a tweet could be a response when such tweet (1) does not mention statements several months or weeks earlier, (2) does not *respond* to its content, and (3) does not draw any link to the statements. Nor do Plaintiffs explain how such attempts to "bank" statements to respond to with (in their own words) "name-calling" (Opp. at 2) could be consistent with the limitation that any responses must be tied to the "***specific***" statement and cannot be "general comments."  These failures doom the opposition.

### A. Plaintiffs' reading of the Consent Decree impermissibly renders the "general comments" bar and the word "specific" surplusage.

It is a fundamental rule of contract construction that Courts must "avoid treating a word as redundant or mere surplusage if any meaning, reasonable and consistent with other parts, can be given to it." *World of Beer Franchising, Inc. v MWB Dev. I, LLC*, 711 F App'x 561, 566 (11th Cir 2017). That is, "[w]e may not rewrite a contract." *Id.* (alterations adopted). "Contracts should not be interpreted in a manner that renders any term or clause of that contract mere surplusage." *Bayshore Ford Truck Sales, Inc. v Ford Motor Co.*, 380 F3d 1331, 1335 (11th Cir 2004).

---

[2] Plaintiffs also appear confused about the remedies sought  by referencing the meet and confer. *See, e.g.,* Opp. at 17. The meet and confer attempted to resolve issues *without* motion practice. The requested relief in the motion speaks for itself. Second, Plaintiffs also seem confused about the content of footnote 1. *See, e.g.,* Opp. at 11. It is clear that the footnote only says the motion is not addressing whether "the ***initial*** response was permitted." ECF No. 165 at 4 n. 1 (emphasis added).

3

It is telling, then, that Plaintiffs do not discuss or explain the "general comments" language in Paragraph 2(d). The moving papers were clear and explicit about addressing this: *E.g.*, "That exception is explicit that Plaintiffs' responses may not include 'general about Defendants'" (ECF No. 175 at 2-3); and "***Rather, they are exactly the kind of 'general comments about Defendants outside of responding to the specific statement' the Consent Decree anticipated and barred***." (ECF No. 175 at 6) (emphasis added).

While Plaintiffs declare that "Section 2.d. doesn't provide any content restriction" merely because "the word 'content' does not appear in section 2.d" (Opp. at 12), that ignores the "general comments" language in the Consent Decree, as well as the specific argument on this point in the motion. Accordingly, Plaintiffs failure to address the "general comments" language waives any opposition and should be read to concede the "general comments" provision bars the statements at issue. *See, e.g., GolTV, Inc. v. Fox Sports Latin Am. Ltd.,* 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned."). But even without waiver, Plaintiffs could not offer a coherent construction of the "general comments" and "specific statement" limitations in the Consent Decree that allows the statements at issue here.

Paragraph 2(d) anticipated precisely the kind of claims Plaintiffs would make here, and addressed them specifically by barring "general comments" and restricting the content of what Plaintiffs can say to "responding to *the specific* statement." Consent Decree ¶ 2(d) (emphasis added). Plaintiffs' reading otherwise cannot be squared with the "general comments" bar, and Plaintiffs' failure to make any such argument proves the point. Plaintiffs' reading of the Consent Decree necessarily "renders" multiple "term[s] … mere surplusage," and therefore fails. *Bayshore,* 380 F3d at 1335. It makes the exception swallow the rule, which courts routinely forbid. *See, for example, Acheron Capital, Ltd. v Mukamal*, 22 F.4th 979, 990 (11th Cir 2022) (rejecting reading where "the narrow exception … would swallow the general rule") (cleaned up).

4

Without making surplusage of much of Paragraph 2(d), Plaintiffs cannot simply, months and weeks after any statement, start declaring CAIR are terrorists and advocating for their destruction. Many of the statements Plaintiffs claim are "responses" to things CAIR National said come months after CAIR National's statements. But the Consent Decree is clear in using plural and singular: Plaintiffs may "respond," *singular*, to a statement by CAIR. They may not "begin making general comment*s*," *plural*, just because of one statement by CAIR. *Id.* (emphasis added). Plaintiffs' responses, accordingly, cannot be "banked." Thus, Plaintiffs cannot "save up" enough statements by CAIR to "begin making general" attacks. Plaintiffs may only make a (single) "*respons[e]."*

In short, Plaintiffs need to actually respond to a "specific statement" if they want to respond.[3] They cannot sit and "save up" enough responses to get to advocate to the Federal Government that CAIR be destroyed simply because CAIR mentioned them more than once. Responses under the Consent Decree are not tickets at an arcade; they are a narrow exception to a clear, general rule.

### B. Plaintiffs' cannot escape Ms. Loomer's own testimony that she may only "defend [her]self," not attack or try to shut down others.

Plaintiffs also attempt, without actually grappling with the facts or arguments, to escape the significance of Plaintiff Loomers' testimony and invent ambiguity in the Consent Decree. Plaintiff Loomer herself testified her understanding of the Consent Decree was that she is only "allowed to defend [her]self publicly" and not generally attack. (ECF No. 175 at 7, *quoting* 2024-03-04 Loomer Dep. Tr. at 377).[4] Plaintiff also testified about her understanding of the difference between "defend[ing]" one's self and "lobby[ing] to get people banned, to get them shut down." *Id., quoting* 2024-03-04 Loomer Dep. Tr. at 252-253. In her own terms, "lobbying to get" CAIR "shut down" would *not* count as a statement to "defend" herself. And, as emphasized by Ex. 1, lobbying extensively to get CAIR

---

[3] To be sure, that is not to say the Consent Decree "require[s] Ms. Loomer to 'reference' a specific statement." Opp. at 12. Rather, contrary to Plaintiffs' reading of the motion, the point is that commonsense does not disappear when interpreting a contract, and a reference is *relevant* to whether something is fairly read as a response to something specific or a "general comment[]."

[4] And indeed, that is part of Plaintiffs' damages theory — on which they survived a motion for summary judgment and are getting to try their claims — in *Coleman*. Having prevailed in convincing the *Coleman* Court that Plaintiff is damaged because she cannot attack, she can only "defend [her]self publicly," she is likely estopped from changing her tune here.

shut down is exactly what Plaintiffs are doing in the statements at issue here.

In short, *Plaintiff Loomer* is not confused about what the Consent Decree requires and is inventing confusion where there is none. So, while the Opposition merely declares "[t]he Agreement does not permit or restrict responses based on whether they are offensive or defensive," it requires the Court to discredit Ms. Loomer's own, sworn testimony about what the Consent Decree means. Opp. at 13.   Ms. Loomer, as a party to the agreement, is clear that the Consent Decree provides she is only "allowed to *defend* [her]self publicly." ECF No. 175 at 7, *quoting* 2024-03-04 Loomer Dep. Tr. at 377. Plaintiffs tellingly do not offer any sworn statements refuting her clear testimony, and mere attorney assertions in a memorandum cannot undermine testimony. *See, e.g., Feldman v United States*, 2021 US Dist LEXIS 234348, at *38 (SD Fla Dec. 7, 2021). For these reasons, CAIR's motion must prevail.

II.     **Plaintiffs' Implicit Appeals to Equity Fail.**

Another major part of Plaintiffs' argument is essentially an appeal to fair play, seemingly even calling CAIR's public statements "unlawful retribution." Opp. at 5. Plaintiffs argue "the parties engaged in [] back-and-forth name-calling," and since both parties made statements about the other, there is nothing to litigate "[]worthy of this Court's time or oversight." Opp. at 2. But the Consent Decree is not symmetrical. Plaintiffs received substantial benefits in the Consent Decree.[5] And the consideration for Defendants' substantial concessions included  (1) "substantive control" of the *Coleman* litigation and (2) the Non-Disparagement clause. As noted above, the entire point of the Non-Disparagement clause was to *eliminate* Plaintiffs' ability to "engage[] in [] back-and-forth name-calling." Opp. at 2. After numerous filing already, enforcing the "Substantive control" aspect has been a struggle. Regarding the non-disparagement clause, Defendants *did not* give up their right to continue to criticize Plaintiffs' attacks on Muslim-Americans. Indeed, "back-and-forth name-calling" (Opp. at 2)

---

[5] By way of brief examples, Plaintiffs did not have to answer the contempt motion for plainly insufficient asset discovery, Defendants agreed to only seek about half of what Plaintiffs owed through the *Coleman* litigation, and Defendants agreed to a generous payment plan. So, contrary to Plaintiffs' suggestion that timely compliance with the payment plan is a benefit to *Defendants*, at the time the Consent Decree was entered, Plaintiffs already owed what they have been paying over time and Defendants agreed to allow slower payment.

was the status quo the Consent Decree was meant to change. To frame the dispute here as if the parties were on equal footing is to write the Consent Decree out of existence: Plaintiffs are limited in what they can say by the Consent Decree and the Defendants are not.

Accordingly, Plaintiffs' arguments from fairness are essentially something this Court (and the Eleventh Circuit) have already had to reject several times. See ECF No. 128. So now, by the plain language of the Consent Decree, there *are* content-based restrictions on what Plaintiffs can say: They can "never" again make "general statements" about CAIR. Consent Decree ¶ 2(a) and (d). And that is exactly what they have done here. Nothing in equity bars holding Plaintiffs to their own agreement.

### III. Plaintiffs Attempts to Cite the First Amendment Fail.

Perhaps realizing there *is* a content restriction in the Consent Decree notwithstanding nominal protests otherwise, Plaintiffs characterize the Consent Decree as an "unconstitutional nature of a prior restraint on speech." Opp. at 12. But this and similar passing gestures ignore the basic fact that what is being enforced is fully executed agreement. Plaintiffs "clearly 'voluntarily and knowingly' waived [any] First Amendment rights" by entering into the Consent Decree (*see,* ¶¶ 2(b) and 2(c)). *See, e.g., Malem Med., Ltd. v Theos Med. Sys.*, 761 F App'x 762, 764 (9th Cir 2019). Non-Disparagement agreements are enforced every day without any First Amendment issues, and Plaintiffs cite no cases saying otherwise. Accordingly, this passing argument is inapposite and can be ignored. *See, also, e.g., (Hendershott v Ostuw*, 2022 U.S. App. LEXIS 20287, at *11 (11th Cir July 22, 2022) (lower "court's enforcement of the parties' settlement agreement didn't constitute governmental action, so Ostuw's First Amendment rights weren't violated"); *United Egg Producers v Std. Brands*, 44 F3d 940, 943 (11th Cir 1995) (same).

### IV. Plaintiffs' Arguments on Remedies are Misguided.

Last, Plaintiffs appear confused about what the motion actually seeks.[6] To be clear, Defendants are only seeking what the motion asks for, and those remedies are straightforward, well-

---

[6] Plaintiffs do not (and cannot) assert impossibility. And, as this Court has already observed, "Ms. Loomer does not dispute … the terms of *her own* Settlement Agreement call for contempt for failure to comply." ECF No. 128 at 4 (emphasis in original).

7

supported in the case law and the Consent Decree, and the least dramatic measures to bring Plaintiffs into compliance with the Consent Decree. Plaintiffs gloss over that Defendants are seeking those remedies in a context where Plaintiffs have spent the past two years litigating clear violations of the Consent Decree highlighted by the "nonsensical, frivolous, untimely, and moot" arguments against providing Defendants with the basic benefit of the bargain. (See Order, ECF No. 148.)

### A. Plaintiffs do not dispute fees are due.

Plaintiffs do not dispute fees are mandatory under the Consent Decree and they cannot. (Consent Decree ¶ 5(b); *accord*, Order, ECF No. 128 at 4-5). Accordingly, the parties appear to agree Plaintiffs must pay fees if Defendants prevail on this motion.

### B. Retraction and deletion are warranted either as a remedy or as a purge condition.

As Plaintiffs seem to acknowledge if a party is in contempt, at least one remedy is to permit the party to purge. ECF No. 176 at 2. Contempt sanctions can either be coercive, which includes requiring a purge condition, or they may "be compensatory," and accordingly aimed remedying a wrong. See *FTC v Leshin*, 719 F3d 1227, 1231 (11th Cir 2013). As set out above, Plaintiffs' many statements about CAIR constitute exactly the sort of "general comments" attacking CAIR the Consent Decree forbids, *even* in the context of a response. Plaintiffs do not directly challenge that the appropriate remedy to such statements is for Plaintiffs to delete the posts, and issue a retraction. Indeed, Plaintiffs seem to suggest that's exactly the right remedy when they ask for an "opportunity to purge the contempt." Opp. at 19.

Plaintiffs incorrectly claim they cannot violate the Consent Decree until the Court spells out that a specific statement violates it or that the "reasonable efforts to meet the terms of the court order" come **after** the contempt finding. Opp. at 20. To the contrary, the very case Plaintiffs cite, *Adams v. Cleveland Clinic Florida*, 2022 WL 278955, at *3 (S.D. Fla. Jan. 31, 2022), **does not** involve the sort of second bite at the apple. The contemptor in *Adams* violated the So Ordered Settlement Agreement, and was found in contempt. There was no requirement for an intermediary step where the Court had

to explain that the specific failure by the contemptor to "show[] its employees a 15-minute video" was actually a violation and give the contemptor a chance to comply *before* contempt. *Id.,* 2022 US Dist LEXIS 16247, at *13.

Nor do Plaintiffs challenge the reasoning in *Fisher v Biozone Pharms., Inc.,* 2017 US Dist LEXIS 42822, at *19-20 (ND Cal Mar. 23, 2017), cited in the moving papers, which required retraction and affirmative withdrawal of statements that violated a non-disparagement provision incorporated in a court order, as a contempt remedy. So, beneath the rhetoric, it appears the parties agree that if there is a violation, the Court should enter contempt, including the violative material being purgeable by deletion and retraction.

### C. Plaintiffs do not dispute Ms. Loomer's understanding that default on any part of the Consent Decree accelerates the balance.

As required in the Consent Decree and as explained by Ms. Loomer herself, "if [Loomer] violate[s] the settlement agreement by speaking about CAIR ... [she] *will be ordered* to pay the full amount with interest." 2024-03-04 Loomer Dep. Tr. at 377. Particularly given the constant violations of the Consent Decree by Plaintiffs, resulting in multiple unsuccessful appeals and multiple motion filings with this Court, acceleration is an equitable remedy to place CAIR in the position it would be if Plaintiffs fully performed Defendants seek to accelerate that balance. With that said, and in the interest of full disclosure, Defendants believe this remedy is the least necessary of the three remedies (plus mandatory fees) sought.

### D. Plaintiffs do not dispute the showing they have likely privately violated the Consent Decree.

Finally, Plaintiffs only offer a brief claim that "there is no evidence about private communications" and an ipse dixit that therefore any discovery "demands are punitive." Opp. at 176. Plaintiffs' argument here cites no law.

As set out in the moving papers, when there is evidence of some violation of a Court order, Courts routinely order limited discovery. *See, e.g., Birks v Small Community Specialists, L.L.C.*, 2025 US

9

Dist LEXIS 205672, at *18-19 (D Md Oct. 20, 2025); *BASF Agro B.V. v Makhteshim Agan of N. Am., Inc. (MANA)*, 2015 US Dist LEXIS 97229, at *5 (MDNC July 27, 2015) (finding it "appropriate for the parties to conduct discovery on the appropriate remedies for the violation of the Consent Judgment" alongside normal discovery).

Plaintiffs do not contest the core facts here either: That they are (1) even as limited by the Consent Decree consistently *publicly* advocating that the federal government designate CAIR a terrorist organization; (2) in constant and frequent communication with government actors with the power to take those steps; and (3) have had hands in actions by the federal government, including the President's removal of various officials.

More, it is extremely striking that ***Plaintiffs do not ever deny that they are violating the agreement privately***. That silence is deafening, and calls for some limited discovery. Given the public comments already made by Plaintiffs and the failure to deny any private comments, Defendants are explicitly seeking discovery on this point, as Courts order routinely on similar showings.[7]

WHEREFORE, Defendants request the Court grant their Motion for Contempt, and Order Plaintiffs to pay Defendants attorneys' fees, acceleration of the underlying balance, deletion and retraction of the prior public statements by Plaintiffs, and limited discovery into any private statements in contravention of the Consent Decree.

.

---

[7] For clarity, Defendants do not intend to seek "all attorney-client privileged communications about CAIR". Opp. at 19. Rather, with limited discovery, Defendants would serve targeted demands, and only if necessary conduct a limited deposition. Such modest measures are both reasonable and necessary given the clear indications that Plaintiffs have perhaps *never* been attempting to comply in good faith with the Consent Decree.

Dated: December 8, 2025                    Respectfully submitted,

BY: /s/ Darren Spielman
Darren Spielman (FBN 010868)
THE CONCEPT LAW GROUP, P.A.
6400 North Andrews Avenue
Suite 500
Fort Lauderdale, FL 33309
(754) 300-1500
dspielman@conceptlaw.com
*Counsel for CAIR Florida, Inc.*


Remy Green (*admitted pro hac vice*)
COHEN&GREEN P.L.L.C
1639 Centre St.
Suite 216
Ridgewood, NY 11385
(929) 888-9480

Thania Diaz Clevenger
Florida Bar Number 97301
CAIR
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 850-9284
t-clevenger@cair.com
*Counsel for CAIR Foundation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 8, 2025, I have filed the foregoing document with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Darren Spielman*

Darren Spielman

11