**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH**

ILLOOMINATE   MEDIA,   INC.,   and
LAURA LOOMER,

     Plaintiffs,                     CASE NO. 19-cv-81179-RAR

v.

CAIR FOUNDATION, et. al.

     Defendants.

_____/

## PLAINTIFFS' MOTION TO STAY PAYMENT PENDING ADJUDICATION OF DEFENDANTS' FOREIGN TERRORIST ORGANIZATION DESIGNATION

Plaintiffs Illoominate Media, Inc. and Laura Loomer (together, "Plaintiffs"), move to stay compliance with monthly payment obligations owed to Defendants CAIR Foundation and CAIR FL Inc. (together, "CAIR" or "Defendants") pursuant to the Stipulation and [Proposed] Order of Settlement (DE 105-1) (together, the "Settlement Agreement").

### SUMMARY

Since July 2023, Plaintiffs have made their monthly payment obligation to Defendants. However, in December 2025, the Governor of the State of Florida designated Defendant CAIR as a Foreign Terrorist Organization via an Executive Order. Providing material support, such as Plaintiffs' monthly payment obligation, to a Foreign Terrorist Organization bears adverse consequences. In fact, Defendants expressly admitted that the Executive Order reasonably conveys a risk of adverse government action against third parties who support or associate with CAIR.

Plaintiffs seek a stay of their monthly payment obligation pending the outcome of Defendants' challenge too the Executive Order in federal court. A stay is proper because both both the Executive Order and Defendants conceded that third parties, such as Plaintiffs, will face

adverse consequences for providing Defendants with support. And a stay will not prejudice Defendants for several reasons. First, only $3,900 remains due which is not a material amount of money to Defendants; second, Plaintiffs will continue making payment to their law firm's trust account to ensure the availability of the funds at the termination of the stay and not relieving Plaintiffs from their payment obligation; and third, this matter has been settled so there are no deadlines or tactical issues created by the stay.

If the Court denies Plaintiffs' request, however, Plaintiff asks for a stay of enforcement of Plaintiffs' payment obligation to the date of the order denying Plaintiffs' request, because Defendants declared Plaintiffs in breach as of the date of this motion, and provided Plaintiffs with five days to cure. Consequently, Plaintiff requests a brief stay to make payment.

## I.      FACTUAL BACKGROUND

### A. The Settlement Agreement.

1.      In July 2023, Plaintiffs and Defendants entered into the Stipulation and [Proposed] Order of Settlement ("Settlement Agreement"). *See* D.E. 105-1.

2.      In section 1 of the Settlement Agreement, Plaintiffs agreed to pay a total of $73,500.00 to Defendants, payable in an initial payment of $12,000.00, followed by monthly payments of $1,200.00, totaling $61,500.00.

3.      As of January 5, 2026, Plaintiffs' monthly payment obligation of $1,200 was due to Defendants.

4.      Attached as Exhibit 1 is a true and correct copy of a check payable to Plaintiffs' counsel's law firm trust account for the amount due.

5.      On December 30, 2025, Plaintiffs inquired as to the total amount due under section 1 of the Settlement Agreement.

6.     To date, Defendants have not disclosed the total amount due. Upon information and belief, Plaintiffs owe Defendants a total of $3,900.00 under the Settlement Agreement.

**B. CAIR's Designation as a Foreign Terrorist Organization.**

7.     On December 8, 2025, Florida's Governor issued Executive Order 25-244 designating Defendant CAIR as a terrorist organization. *See* Exhibit 2 at §1.

8.     The Executive Order states that the Palestine Committee, "an organization affiliated with the Muslim Brotherhood and created to support Hamas in the United States, expressly sought to 'increase the financial and moral support for Hamas' and oversaw front organizations designed to raise money for Hamas," and "the Palestine Committee founded the Council on American-Islamic Relations (CAIR) in the United States in  1994[.]" *Id*. at p. 2.

9.     In the Executive Order, Florida's Governor directed Florida's law enforcement agencies "to undertake all lawful action to prevent" CAIR "or any person known to have provided material support or resources to such organization . . . from receiving any contract, employment, funds, or other benefit or privilege from such Executive or Cabinet Agency or any entity regulated by such Executive or Cabinet Agency or from any County or Municipality of the State." *Id*. at § 2.

**C. CAIR's Lawsuit Challenging the Executive Order.**

10.     On December 15, 2025, Defendants filed a lawsuit for declaratory and injunctive relief, challenging the constitutionality of the Executive Order. *See CAIR-Foundation, Inc., et al. v. Ronald DeSantis, etc.*, Case No. 4:25-cv-516 (N.D. Fla.). *See* Exhibit 3.

**II.     LEGAL STANDARD**

"[A] court may exercise its inherent discretionary authority to stay cases to control its docket and in the interests of justice and efficiency." *Kennedy v. Del Viso, LLC*, 2015 WL

13554981, at *1 (S.D. Fla. Sept. 11, 2015) (quoting *Shell Oil Co. v. Altina Associates, Inc.*, 866 F. Supp. 536, 540 (M.D. Fla. 1994)).

"A stay of proceedings is generally in the court's discretion. It is based on a balancing test in which the movant bears the burden of showing either 'a clear case of hardship or inequity' if the case proceeds, or little possibility the stay will harm others." *Longhini v. Jymd Food Corp.*, 2020 WL 8483846, at *2 (S.D. Fla. Dec. 16, 2020) (quoting *Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1584 (S.D. Fla. 1993)).

"In determining whether to grant a stay, courts examine general factors such as whether a stay will unduly prejudice or tactically disadvantage the non-moving party; simplify the issues and streamline trial; and reduce the burden of litigation on the parties and on the court." *Kennedy v. Del Viso, LLC*, 2015 WL 13554981, at *1 (S.D. Fla. Sept. 11, 2015) (quoting *Brent v. Source Interlink Distribution, LLC*, 2014 WL 4162770, at *2 (M.D. Fla. Aug. 21, 2014)).

## III.   ARGUMENT

An order staying Plaintiffs' obligation to make monthly payments to Defendants is merited during the pendency of the Executive Order.

First, Plaintiffs face hardship and inequity if they continue to pay Defendants directly because the Executive Order provides for penalties for persons who provide Defendants with material support, which includes any amount of money.

Second, Defendants admit in the allegations of their pending federal action challenging the Executive Order that third parties reasonably risk adverse government action if they provide Defendants with support, that the Executive Order targets third parties, and that the injury is immediate and present.

Third, there is no prejudice to Defendants because Plaintiffs' $1,200 payments are immaterial to Defendants' operations or budget. For example, Defendants raised over $1.2 million during a gala recently. Furthermore, Plaintiffs will continue making the payments to its law firm's trust account, meaning that the stay will not relieve Plaintiffs of the payment obligation and the funds will be available to Defendants at the termination of the stay.

1. **Plaintiffs will face hardship and inequity if payments to Defendants are not stayed.**

There is a clear case of hardship or inequity to Plaintiffs if compliance with payment proceeds because, if the payment obligation is not stayed, the Executive Order expressly provides penalties for persons who provide CAIR with material support.

As defined under section 775.33(1)(c). Section 775.33(1)(c) defines "[m]aterial support or resources" as "**any property**, tangible or intangible, or service, **including currency** or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, or transportation. The term does not include medicine or religious materials." (emphasis added).

The undersigned has not found any Florida case law interpreting what constitutes "material support or resources" under Florida law. However, the Executive Order states that Defendants are designated as a foreign terrorist organization, together with any other organization designated by the U.S. Government under section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189).

And interpreting other provisions of the INA, federal Courts have interpreted "material support" to include *any* amount of funds provided to a designated foreign terrorist organization.

In *Hincapie-Zapata v. U.S. Attorney Gen.*, 977 F.3d 1197, 1201 (11th Cir. 2020), the appellant had paid $100 to FARC and argued that the payment was insignificant to be deemed

material support. The Eleventh Circuit held, "Hincapie-Zapata's argument that the amount of 'funds' must be 'significant' fails because the statute unambiguously states that the provision of any 'funds' constitutes "material support." Whatever else "material support" might mean, we are certain that it at least 'includ[es] ... funds.'" 8 U.S.C. §1182(a)(3)(B)(iv)(VI). *See also Alturo v. U.S. Atty. Gen.*, 716 F.3d 1310, 1313 (11th Cir. 2013) ("concluding that Alturo was ineligible for relief under the material support bar" where "the BIA found that he paid an annual $300 'vacuna,' or war tax, to the AUC over a period of six years in exchange for protection from local guerillas," because "the amount of funds provided qualified as 'material support' within the meaning of the INA, and that there was no exception to the statutory bar for payments made under duress.")

The Ninth Circuit reached the same conclusion, finding that there is no *de minimus* exception, where the appellant gave approximately $50 to a Maoist organization in *Rayamajhi v. Whitaker*, 912 F.3d 1241, 1245 (9th Cir. 2019). "We hold that the INA's material support bar contains no implied exception for de minimis aid in the form of funds. Petitioner admitted that, in 2009, he gave about $50 to someone whom he knew was a Maoist. Thus, substantial evidence supports the IJ's finding, adopted by the BIA, that Petitioner gave material support to a terrorist organization, rendering him ineligible for asylum and withholding of removal." *Id.*

Thus, any further payments from Plaintiffs to Defendants may constitute "material support" to a designated foreign terrorist organization.

**2. Defendants expressly admit that Plaintiffs' risk of adverse government action by providing Defendants with support and that the Executive Order "targets third parties".**

In its complaint, CAIR expressly – and as if to underscore the point, repeatedly – alleges that the Executive Order creates a risk of "adverse government action" to third parties, such as Plaintiffs, who associate with Defendants.

To begin, CAIR alleges, "Viewed in context, this framework reasonably conveys the risk of adverse government action sufficient to chill protected speech and association." *See* <u>Exhibit #</u> at p.4, ¶12. CAIR further alleges that the Executive Order crates an "exclusionary framework, which alters CAIR National's legal status and reasonably conveys the risk of adverse government action." *Id*. at p. 7, ¶¶ 12, 16.[1]

In clear and plain terms, Defendants alleges that the Executive Order creates a reasonable risk to third parties, like Plaintiffs, of adverse government action who provide Defendants with support:

> Moreover, the Executive Order extends its exclusionary mandate by conditioning access to state and local contracts, employment, funding, benefits, or privileges on whether a person or entity is deemed to have provided "material support or resources" to CAIR. Viewed in context, **this structure reasonably conveys the risk of adverse government action to third parties and operates to deter association with, and support for, CAIR's** protected speech.

*Id*. at ¶19 (emphasis added).

Underscoring the risk to Plaintiffs, Defendants allege that "**a reasonable third party** would understand the Executive Order as conveying a risk of adverse government action associated with engagement with or support for CAIR." *Id*. at ¶ 20 (emphasis added). Defendants further allege that the Executive Order "imposes immediate legal consequences":

> **The Executive Order imposes immediate legal consequences.** By categorically prohibiting CAIR from receiving any state or local contract, employment, funding, benefit, or privilege, the Executive Order alters Plaintiffs' legal status and excludes them from opportunities otherwise available to nonprofit organizations in Florida. These consequences apply automatically upon issuance of the Executive Order and do not depend on any future enforcement activity.
>
> In addition, the Executive Order extends its exclusionary mandate by conditioning access to state and local contracts, employment,

---

[1]    After the first 13 allegations in the complaint, the next allegation restarts at number 1.

> funding, benefits, or privileges on whether a person or entity is deemed to have provided "material support or resources" to CAIR. **Viewed in context, this structure reasonably conveys the risk of adverse government action to third parties and operates to deter association with, and support for, CAIR's protected speech**.

*Id*. at ¶¶ 44-45 (emphasis added). Defendants repeat the risks and consequences to third parties, such as Plaintiffs, who provide support to CAIR.

Defendants also allege that the Executive Order "targets third parties" such as Plaintiffs. *Id*. at ¶ 50 ("Because **the Executive Order also targets third parties**, Plaintiffs reasonably fear that their current and future relationships with third parties will be harmed.") (emphasis added). *Id*. at ¶ 48. (alleging that the Executive Order "detrimentally impacts [Defendants'] ability to engage with non-state parties.").

In addition, Defendants allege that the resulting injury from "a state executive action" that "reasonably conveys the risk of adverse government action" is "immediate and present at the moment the action is taken." *Id*. at ¶ 47.. *See also id*. ¶ 49 ("It establishes an ongoing and objective chill by reasonably conveying the risk of adverse government action associated with engagement with CAIR.").

In conclusion, Defendants expressly and repeatedly allege that third parties, such as Plaintiffs, reasonably face a risk of adverse government action for providing Defendants with support, are targeted by the Executive Order, and that the injury is immediate and present. Accordingly, Defendants have expressly conceded that Plaintiffs face hardship and inequity by continuing to make payments in light of the Executive Order.

**3. There is little possibility the stay will harm Defendants.**

There is little possibility that staying compliance with the payment obligation will harm Defendants because the amount remaining on the debt obligation is inconsequential and staying the remaining payments will not prejudice Defendants.

First, the remaining debt obligation is $3,900. This is a relatively small amount of money that will have no impact Defendants' operations. For example, on October 26, 2025, during a fundraising gala, Defendants stated that they do "not back down to Laura Loomer" and raised over $1.2 million. *See* https://x.com/lauraloomer/status/1982654823225807244?s=46. In 2024, CAIR Florida reported approximately $2.9 million in net assets on its IRS Form 990. *See* CAIR Florida (2024), Return of Organization Exempt from Income Tax [Form 990], *retrieved from* https://projects.propublica.org/nonprofits/organizations/651110616. The same year, CAIR Foundation reported approximately $7.61 million in net assets and $9.3 million in revenue. *See* CAIR Foundation (2024), Return of Organization Exempt from Income Tax [Form 990], *retrieved from* https://projects.propublica.org/nonprofits/organizations/770646756. Staying the remaining debt obligation will not impact Defendants' financial wellbeing.

Second, Plaintiffs continue to make the payments, depositing them in the undersigned's law firm's trust account. *See* Exhibit #; *cf. 2 S. Shore Real Estate, LLC v. Century Sur. Co.*, 2024 WL 6953507, at *4 (S.D. Fla. Dec. 20, 2024) ("Compliance with the previous award is stayed until the revised appraisal award is delivered to Respondent."). Consequently, a stay does not relieve Plaintiffs of the burden of making payment. Furthermore, the payments will be available to Defendants for disbursement if they resolve the foreign terrorist organization designation.

 Third, a stay will not result in any other prejudice to Defendants. This matter is in a post-trial posture, resolved by the Settlement Agreement. There are no discovery or trial deadlines impacted. Other than adjudicating this motion, the stay does not create or impact any burden of

litigation on the parties or the Court. And Defendants do not suffer a tactical disadvantage by staying Plaintiffs' compliance with the monthly payment obligation.

## CERTIFICATE OF CONFERRAL

On January 5, 2026, the undersigned counsel emailed counsel for Defendants regarding the relief requested herein. On January 7, 2026, Defendants replied, first, by declaring a payment default and stating, "Cure is required within five business days. We will obviously move quickly on this if she misses that deadline and moves into material breach."

Regarding the relief requested, Defendants responded, "you appear to be incorrect that the 'Florida Executive Order concerning CAIR provides penalties' of any kind. To be sure, it does direct Florida agencies not to provide certain contract-type resources from the government, but that is (1) not a criminal penalty (as, presumably, Florida will argue) and (2) not at all relevant to Loomer or Illoominate anyway, since neither has such contracts. As I'm sure you know, the Florida material support statute only applies to 'an organization designated as a terrorist organization under s. 219 of the Immigration and Nationality Act.' Sec. 775.32(1)(b). But that has not happened (and Ms. Loomer's advocacy for that to happen is obviously the subject of the pending motion). I suspect everyone in CAIR's case about this order is going to agree that the Executive Order does not 'provide[] penalties' of any kind, given the Order's choice to carefully separate what it was directing executive agencies to do and what it refenced under Florida's material support statute. So, in sum, it is hard to see how how it would be *unlawful* for Ms. Loomer to make payments. And that is the only possible basis to try to ignore the Consent Decree. If there is some other provision of law making payments illegal based on a a [sic] designation *by Florida* (as opposed to the federal government) you have in mind, please let me know."

**CONCLUSION**

Based upon the foregoing, Plaintiffs request entry of an order staying compliance with the monthly payment obligation under Section 1 of the Settlement Agreement, allowing Plaintiffs to make payments to the undersigned law firm's trust account in satisfaction of Plaintiffs' payment obligation, during the stay.

If this Court denies this motion, then Plaintiffs request entry of an order staying enforcement of Defendants' declaration of a breach on January 7, 2026 until the date of entry of such order denying this motion, such that Plaintiffs have the opportunity to timely remit any monthly payment obligations due and owing to Defendants during the five-business-day cure period.

Dated: January 7, 2026                              Respectfully submitted,

**TODD R. FRIEDMAN, P.A.**                Arielle Klepach, Esq.
1101 Brickell Avenue                            **NATIONAL JEWISH ADVOCACY**
Suite S-700                                          **CENTER**
Miami, Florida 33131                            3 Times Square
786-536-7190                                       New York, NY 10036
Todd R. Friedman, Esq.                        Arielle@njaclaw.org
Fla. Bar No. 97919                              N.Y. Bar No. 5591128
todd@toddfriedmanpa.com               Admitted *Pro Hac Vice*

*Counsel for Plaintiffs Illoominate Media*      *Counsel for Plaintiffs  Illoominate Media*
*LLC and Laura Loomer*                        *LLC and Laura Loomer*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on January 7, 2026 a true and correct copy of the foregoing was filed via the Court's CM/ECF filing system and thereby served on counsel of record.

By: <u>/s/ *Todd Friedman*</u>

**SERVICE LIST**

| | |
|---|---|
| **Craig William Young**<br>CWY Legal and Consulting<br>630 S Sapodilla Avenue<br>529<br>West Palm Beach, FL 33401<br>561-568-1000<br>Email: craig@cwylegal.com<br><br>*Counsel for Plaintiffs Illoominate Media LLC and Laura Loomer* | **Ronald D. Coleman**<br>Dhillon Law Group, Inc.<br>8 Hillsdale Avenue<br>Montclair, NJ 07042<br>(973) 298-1723<br>Email: rcoleman@dhillonlaw.com<br><br>*Counsel for Plaintiffs  Illoominate Media LLC and Laura Loomer* |
| **Darren Joel Spielman**<br>Kain Spielman, P.A.<br>900 SE Third Avenue<br>Suite 205<br>Ft. Lauderdale, FL 33316<br>954-768-9002<br>Fax: 954-768-0158<br>Email: dspielman@conceptlaw.com<br><br>*Counsel for Defendant CAIR Florida, Inc.* | **Remy Green**<br>Cohen & Green P.L.L.C.<br>1639 Centre St., Suite 216<br>Ridgewood, NY 11385<br>(929) 888-9480<br>Email: Remy@femmelaw.com<br><br>*Counsel for Defendant CAIR Florida, Inc.* |
| **Yasir Billoo**<br>International Law Partners LLP<br>2122 Hollywood Blvd.<br>Hollywood, FL 33020<br>954-374-7722<br>Fax: 954-212-0170<br>Email: ybilloo@ilp.law<br><br>*Counsel for Defendant CAIR Florida, Inc.* | **C. Danette Zaghari-Mask**<br>Council on American-Islamic Relations<br>453 New Jersey Avenue SE<br>Washington, DC 20003<br>2024888787<br>Email: dzaghari-mask@cair.com<br><br>*Counsel for Defendant CAIR Foundation* |
| **Justin Sadowsky**<br>CAIR Legal Defense Fund<br>453 New Jersey Avenue SE<br>Washington, DC 20003 | **Lena F. Masri**<br>CAIR Legal Defense Fund<br>453 New Jersey Avenue SE<br>Washington, DC 20003 |

202-742-6420
Email: jsadowsky@cair.com

*Counsel for Defendant CAIR Foundation*

**Seth Adam Kolton**
Shendell & Pollock PL
2700 N Military Trail
Suite 218-A
Boca Raton, FL 33431-7392
561-241-2323
Fax: 561-2330
Email: seth@shendellpollock.com

*Counsel for Intervenor Dhillon Law Group, Inc*

202-742-6420
Email: lmasri@cair.com

*Counsel for Defendant CAIR Foundation*