**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH COUNTY DIVISION**

| | |
|---|---|
| **ILLOOMINATE MEDIA, INC.**, *et al,* ) | **Case No. 9:19-cv-81179-RAR** |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| **CAIR FOUNDATION, INC.**, *et al* ) | |
| ) | |
| ) | |
| Defendant. ) | |

<u>**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**</u>
<u>**MOTION TO STOP PAYMENT**</u>

Defendants, CAIR-FOUNDATION, INC. and CAIR FL Inc. (collectively CAIR or

Defendants), submit their Opposition to Plaintiffs' Motion to Stop Payment and state as follows:

## I.   INTRODUCTION

Plaintiffs' motion seeks an extraordinary remedy: suspension of a court-approved settlement

obligation resolving attorneys' fees and costs ordered by the Eleventh Circuit Court. Plaintiffs do

not point to any binding statute, judicial ruling, or enforcement action that makes compliance

unlawful. Instead, they ask this Court to excuse performance based on speculation derived from an

unadjudicated executive order that does not purport to stay, override, or otherwise affect judicial

orders. That request should be denied.

Plaintiffs voluntarily entered into a settlement to resolve this litigation and to satisfy a court-

ordered fee obligation. They now contend that a gubernatorial executive order, directed at the

administration of state benefits and currently the subject of separate constitutional challenges, can

operate as a de facto stay of a judicially enforced settlement. It cannot. Executive orders do not

1

suspend or override court judgments, and nothing in the Florida Executive Order purports to do so. Only a court may modify, stay, or vacate a court-ordered settlement or fee award.

Nothing in the Executive Order cited by Plaintiffs criminalizes or restricts payment under a court-approved settlement between private litigants. Nor could it. Plaintiffs' attempt to recharacterize routine compliance with a judicial order as "material support"[1] rests on conjecture untethered to the Order's text, any implementing statute, or controlling precedent. Courts do not grant stays to shield parties from hypothetical future risk, particularly where that risk is invoked to justify unilateral nonperformance of a judicial obligation.

Equally telling, Plaintiffs rely on selected allegations from Defendants' constitutional challenge to the Executive Order, particularly allegations describing how a reasonable third party might perceive the Order as conveying a risk of adverse government action, while treating those allegations as if they establish a substantive legal prohibition on private settlement payments. They do not. Allegations pleaded to establish standing and chilling effect do not expand the legal scope of an executive order, create private-party liability, or excuse compliance with court-approved obligations. Plaintiffs' attempt to transform standing allegations into a private-law defense fails as a matter of law.  And unlike some random third-party, Plaintiffs here do not have to rely on what a reasonable, but uncounseled, person might interpret the vague Executive Order as saying:  Plaintiffs

---

[1] Plaintiffs repeatedly misunderstand the basic framework of Florida law on "material support," as distinct from material support under Federal law.  Even the title of Plaintiffs' motion — "MOTION TO STAY PAYMENT PENDING ADJUDICATION OF DEFENDANTS' *FOREIGN* TERRORIST ORGANIZATION DESIGNATION" (ECF No. 179 at 1 (emphasis added)) — equivocates to Federal law.

Under Florida law, the only bar on material support exists for "an organization designated as a terrorist organization under s. 219 of the Immigration and Nationality Act." Sec. 775.32(1)(b).  And the INA only permits designation by the President of the United States.  Meanwhile, the designation by the Florida Governor only purports to "designate [CAIR as a] terrorist organization" (ECF NO. 179-1 at 6), not a "*Foreign* Terrorist Organization."

Accordingly, the opening sentences of Plaintiffs' motion, saying "the Governor of the State of Florida designated Defendant CAIR as a Foreign Terrorist Organization via an Executive Order," are nonsensical:  The Governor of Florida neither has authority to, nor has purported to, designate anything as a "*Foreign* Terrorist Organization."  And the slip between the two appears designed to mislead the Court.

have lawyers who can explain that there **are** no consequences and this Court can and should provide the same assurance, which seems to address any harm Plaintiffs allege.

Nor do Plaintiffs move in good faith.  Their payment was due on January 5, 2026.  Their counsel emailed, for the first time, ***on January 5, 2026*** to ask for Defendants' position on a stay request.  And Plaintiffs simply proceeded to violate this Court's Order (not for the first time) in simply failing to make payments , even while another contempt motion is pending.  A good faith concern would have surely been marked by efforts to confer and get resolution before the deadline. Instead, Plaintiffs waited until the day their payment was due to even ask for a position,  to say nothing of violating a court order without any stay (or providing the Court time to decide a stay before violating its orders).

Plaintiffs' motion is best understood not as a neutral request for a discretionary stay, but as a renewed attempt to evade a settlement obligation that this Court has repeatedly enforced and that Plaintiffs have repeatedly resisted. The Settlement Agreement expressly contemplates contempt unless noncompliance is "factually impossible," and this Court has already rejected Plaintiffs' prior attempts to characterize compliance as unlawful or impossible. Plaintiffs may not relabel the same theory, now grounded in speculative political developments rather than alleged ethical concerns, and obtain relief that has already been denied. A party subject to a court-approved settlement may not unilaterally suspend performance based on a self-declared impossibility that has neither been adjudicated nor compelled by law. Because Plaintiffs identify no legal prohibition on payment, no binding enforcement action, and no equitable basis for suspending a court-approved settlement, the motion should be denied in its entirety.

## II.    LEGAL STANDARD GOVERNING A STAY

A stay of enforcement of a settlement obligation is an exceptional remedy.  The standards Plaintiffs cite are generally related to **pre-**judgment stays,  not stays of a judgment or an order.  ECF No. 179 at 3-4.

To stay enforcement of a Court Order or judgment,  which is what Plaintiffs seek,  the standard is the familiar standard from *Nken v. Holder*, 556 U.S. 418, 426 (2009).  *Accord also, e.g.,* ECF No. 164 (denying one of Plaintiffs' previous motions to stay enforcement of the Consent Decree at issue here).  And while many such cases are about a stay of an order pending an appeal, in essence, Plaintiffs are arguing that the Court should stay its order because Plaintiffs believe another Court, as would be true on an appeal, will enter an order that calls into question this Court's judgment.

Accordingly, Plaintiffs must show:  "(1) a substantial likelihood that [Florida] will prevail on the merits of the [their attack]" and in such a way that suggests Plaintiffs will be subject to penalties; "(2) a substantial risk of irreparable injury to the [movant] unless the injunction is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest."  *State of Fla. v. Dep't of Health and Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021). Of these four factors, the first two are "the most critical."  *Id.* (quoting *Nken*, 556 U.S. at 434).

Because Plaintiffs cannot meet this standard, their motion should be denied.

## III.    THE EXECUTIVE ORDER DOES NOT PROHIBIT SETTLEMENT PAYMENTS

Plaintiffs' motion fails at the threshold because it identifies no statute, order, or precedent that makes payment under a court-approved private settlement agreement unlawful. Plaintiffs' motion fails before any interpretive exercise begins. The question is not whether an imaginative reading of the Executive Order could be hypothesized to create uncertainty, but whether the Order actually supplies a rule of law that renders compliance with a federal court settlement unlawful. It

does not. Absent an identified statutory command, enforcement provision, or judicial ruling that binds private parties or stays court-ordered obligations, Plaintiffs' interpretive arguments are immaterial. Courts do not stay their own judgments to resolve speculative disputes about how an executive directive might be misunderstood by third parties.

Assuming the Court entertains some interpretative approach, without any showing,  let alone a strong showing, that the Florida Executive Order *in fact* implicates the consent decree here, Plaintiffs cannot meet the *Nken* factors.

But as set out below, even on its own terms, the Florida Executive Order only (1) directs government actors how to administer state-controlled contracts, employment, funds, benefits, or privileges; (2) references "material support" only as part of that state-benefits exclusion framework; and (3) does not purport to regulate private settlement payments between private litigants or compliance with judicial orders. Plaintiffs' request accordingly makes no showing that would warrant a stay.

Additionally, the payment obligation at issue arises from a court-ordered settlement resolving attorneys' fees and costs awarded by the Eleventh Circuit Court. Plaintiffs identify no authority for the proposition that a state executive may, by executive order, relieve a private party of compliance with a judicial fee award. Accordingly, regardless of what happens in CAIR's challenge to the Florida Executive Order, the obligation remains enforceable.

## A.  What the Executive Order Does (and Does Not) Do

The Executive Order's operative provisions are limited to directing Florida governmental entities (and entities regulated by them) to "undertake all lawful action" to prevent (i) designated organizations and (ii) "any person known to have provided material support or resources to such organization" from receiving "any contract, employment, funds, or other benefit or privilege" from Florida executive or cabinet agencies, regulated entities, counties, or municipalities. (EO § 2).

5

Critically, nothing in the Executive Order: (a) prohibits private parties from making payments to CAIR, whether under private contracts, court-approved settlements, or otherwise; (b) purports to void private contractual obligations or judicially enforceable settlements; (c) creates a private right to suspend performance; or (d) criminalizes payment or threatens prosecution for satisfying a private settlement.

Plaintiffs' motion treats the Executive Order as though it were a sweeping prohibition on any private transaction that could be characterized as "support" and it does so with the equivocation, noted above, between the designation made and a hypothetical designation by the President.[2] That is not what the text says. The Order is directed at state benefits and privileges. A settlement payment made pursuant to a court-approved agreement between private litigants is not "a contract, employment, funds, or other benefit or privilege" provided by Florida agencies, counties, municipalities, or regulated entities. (EO § 2). Plaintiffs do not even make any argument that it is.

Accordingly, the Executive Order supplies no legal basis to excuse Plaintiffs' continued performance, since Plaintiffs cannot show any probability of success or harm under *Nken*.

**B.  The "Material Support" Clause Does Not Transform Court-Approved Settlement Payments into Prohibited Conduct**

Plaintiffs' core move is to seize on the phrase "any person known to have provided material support or resources" in EO § 2 and then argue that any payment qualifies as "material support," making continued settlement compliance risky. That argument fails for multiple independent reasons.

---

[2] It should not be lost on the Court that advocacy for such a Federal designation, which Plaintiffs reveal they will use to avoid payment here, is ***exactly*** what Plaintiffs have been doing in violation of the Consent Decree and is at issue Defendants' pending contempt motion.  Plaintiffs' filing puts the lie to the claim that such efforts are mere responses to something Defendants said.

First, the Executive Order's "material support" language functions as a trigger for exclusion from state-provided benefits, not as an all-purpose prohibition on private transactions. The clause appears only in the sentence directing agencies and regulated entities to deny state contracts, employment, funds, benefits, or privileges to certain entities or persons. (EO § 2). It does not purport to regulate private contractual performance or create liability for private payments.

Second, Plaintiffs offer no authority that "material support" (as referenced in this Executive Order) extends to court-mandated payments. A settlement payment is not discretionary assistance, endorsement, or collaboration. It is compliance with a judicially enforceable agreement resolving litigation. Plaintiffs' theory would require this Court to treat compliance with a court-approved settlement agreement as prohibited "material support" under the Executive Order, notwithstanding the absence of any text in the Order addressing judicially enforced private obligations. Plaintiffs cite no authority for extending the Executive Order's state-benefits exclusion framework to payments made pursuant to a court order resolving private litigation.

Third, Plaintiffs do not identify any enforcement mechanism in the Executive Order (or any implementing action) that could plausibly reach settlement payments. They cite no agency rule, advisory, guidance, prosecution threat, or enforcement position asserting that court-approved settlement payments are forbidden or actionable. Absent a concrete legal prohibition or an identified enforcement path, Plaintiffs' asserted "risk" is conjecture.

## C. Plaintiffs Misuse Defendants' Standing Allegations to Create a Prive-Law Prohibition Test That Does Not Exist

Plaintiffs' motion relies heavily on allegations from Defendants' pending constitutional challenge to the Executive Order, particularly statements that a "reasonable third party would understand" the Order as conveying a risk of adverse government action. Plaintiffs misapply those allegations.

Those statements were made to establish Article III standing and the existence of a coercive chilling effect arising from state action, an inquiry that turns on perception, context, and risk of governmental enforcement. They do not assert, concede, or imply that the Executive Order lawfully regulates private conduct, prohibits settlement payments, or exposes private litigants to liability for complying with court-approved obligations.

Moreover, what a reasonable person, uncounseled person would understand, and the corresponding chill, does not apply here. Plaintiffs (1) have attorneys who presumably can explain to them what the Executive Order does and does not do and (2) in the event that were not enough, by making this motion and having it denied, Plaintiffs receive all the assurance they need anyway.

To be clear, standing allegations assess whether government action reasonably conveys risk sufficient to establish injury; they do not define the legal scope of an executive order, create private party prohibitions, or excuse compliance with court-approved obligations. Plaintiffs cite no authority holding that a plaintiff's standing allegations in a constitutional challenge may be repurposed to establish a private party's right to suspend contractual performance. And the predictable chill from (seemingly intended) **mis**understanding of the Executive Order can be sufficient for standing without implicating a correct understanding what the Executive Order does.

Nor do Plaintiffs identify any language in the Executive Order itself that converts perceived risk into an actual legal bar on private settlement payments. By its terms, the Executive Order directs Florida agencies and regulated entities to deny *state-provided* contracts, employment, funds, benefits, or privileges. It does not purport to regulate private contractual performance or compliance with judicially approved settlements. Section 2's reference to "material support or resources" appears solely within the Executive Order's directive to state actors about eligibility for *state-provided* benefits. Nothing in the Order converts that reference into a prohibition on private settlement payments or compliance with court orders.

8

Plaintiffs' approach would invert constitutional litigation doctrine. Allegations that government action reasonably conveys risk for standing purposes would become binding admissions that private conduct is unlawful, even where no such prohibition exists. Under that logic, any regulated party seeking to challenge an executive action would simultaneously arm adversaries with a license to suspend contracts, ignore court orders, and claim hardship based on the very chill alleged to establish standing. No court has adopted such a rule, and doing so here would destabilize both settlement enforcement and constitutional adjudication. In short, Plaintiffs confuse allegations made to challenge government coercion with concessions about private illegality. The law recognizes no such transformation, and Plaintiffs' motion fails on that basis as well.

### D.  Plaintiffs' INA "Material Support" Analogies Do Not Supply A Legal Bar Here

Plaintiffs cite immigration and removal cases interpreting federal INA provisions and then attempt to import those interpretations into this posture. ECF No. 179 at 5-6.   But that analogy fails, *because the entire structure is different.*

Those cases concern federal statutory bars applicable to immigration relief determinations in removal proceedings, an entirely different context involving different statutes, different actors, and different consequences. Plaintiffs identify no authority holding that a Florida gubernatorial executive order, directed to Florida agencies about the administration of state benefits, can be construed to prohibit payment under a private, court-approved settlement.  And indeed, Florida law ***does not*** contain the relevant prohibition, because it only criminalizes material support of organizations designated ***under the INA itself, by the President***. Sec. 775.32(1)(b).

More importantly, even if Plaintiffs' analogy were conceptually relevant (it is not), it still would not answer the dispositive question: Where is the legal rule that makes payment under this settlement unlawful? Plaintiffs identify none.

Plaintiffs' own statutory citations underscore the defect in their theory. The Florida material-support statute they invoke applies only to organizations designated under federal law. Plaintiffs do not contend that any such federal designation exists, nor could they. Their hardship argument thus depends entirely on collapsing a state executive directive concerning eligibility for government benefits into a criminal prohibition that Florida law itself does not recognize. Where the very statute Plaintiffs rely upon confirms that no criminal exposure exists, alleged fear of prosecution cannot support extraordinary equitable relief.

### E.  Plaintiffs' Proposed "Workaround" (Paying into Counsel's Trust Account) Confirms the Motion is About Avoiding Payment, Not Avoiding Unlawful Conduct

Plaintiffs assert they will continue making payments to their counsel's trust account while the stay is pending. ECF No. 179 at 9. That proposal underscores the absence of any true legal impediment. If payment were unlawful, rerouting funds but holding them in trust would not cure illegality, because funds held in trust could still be theoretically considered material support; Plaintiffs' proposal therefore underscores the absence of a legal prohibition rather than its existence.

Equitable relief requires legal necessity, i.e., a binding prohibition or enforcement action, not a unilateral risk assessment or strategic preference. Plaintiffs' routing proposal further underscores that the motion seeks to delay performance of a settled obligation in the absence of any identified legal prohibition, relief the stay doctrine is not designed to provide.

### F.  If the Court Has Any Residual Concern, the Proper Narrow Alternative is Registry/Bond, Not a Stay Excusing Performance

Without reaching the merits of Plaintiffs' speculative concerns, any interim protection, if warranted, should take the form of registry deposit or bond, not a stay excusing performance. A narrowly tailored alternative, if one were required, would be to order payment into the Court's registry or require a bond securing full performance pending resolution of any identified legal

10

question. Plaintiffs have not shown grounds for the far broader relief they seek: a stay that effectively rewrites the settlement agreement based on hypothetical future events.

Because Plaintiffs identify no legal prohibition on settlement payment, no credible enforcement pathway, and no authority converting judicially compelled settlement compliance into prohibited "material support," their motion fails as a matter of law and should be denied.

## IV.   PLAINTIFFS' ASSERTED HARDSHIP IS SPECULATIVE AND SELF-CREATED

Even if Plaintiffs could identify a legal basis for concern, which they cannot, their motion would still fail because the alleged hardship is speculative, contingent, and entirely of Plaintiffs' own making. A stay is not warranted where the asserted harm depends on hypothetical future enforcement and where the movant's predicament arises from a unilateral decision to withhold performance.

### A.  Plaintiffs Identify No Concrete Enforcement Risk Tied to Settlement Compliance

Plaintiffs do not allege that any Florida agency has threatened enforcement against them for making settlement payments, that any statute authorizes such enforcement, or that any guidance, advisory, or enforcement action suggests settlement compliance is prohibited. Instead, Plaintiffs posit a chain of contingencies: that the Executive Order might be enforced; that it might be construed, contrary to its text, to reach private settlement payments; and that Plaintiffs might then face adverse consequences because a Florida executive agency decided to prosecute,  of all people in the world, Plaintiffs. Courts do not grant stays based on such layered hypotheticals.

Speculative fear of future enforcement, untethered to statutory text, agency action, or precedent, does not constitute the "clear case of hardship or inequity" required for extraordinary relief. Absent a concrete legal impediment to payment or a credible enforcement threat, Plaintiffs' claimed hardship is insufficient as a matter of law.

**B. Plaintiffs' Claimed Hardship Arises from a Unilateral Risk Assessment, Not from a Binding Legal Constraint**

Plaintiffs' asserted hardship does not flow from any binding legal prohibition or enforcement action requiring them to suspend settlement payments. Rather, it flows from Plaintiffs' unilateral decision to treat an unadjudicated executive order, one that does not by its terms prohibit private settlement compliance, as if it compelled nonpayment.

An "external legal constraint" sufficient to justify equitable relief is not a party's subjective assessment of risk. It is a concrete legal barrier: a statute that applies by its terms, a court order, or an enforcement action that renders compliance unlawful. Plaintiffs identify no statute, agency guidance, enforcement action, or judicial decision holding that payment under a private, court-approved settlement is unlawful. And no enforcement action has been threatened or initiated against Plaintiffs based on settlement compliance.

Absent such compulsion, Plaintiffs' decision to withhold payment reflects a voluntary choice to suspend performance based on anticipated future events, not a legal necessity imposed upon them. Equity does not permit a party to convert precautionary noncompliance into hardship warranting extraordinary relief, particularly where the underlying obligation arises from a court-approved settlement. Plaintiffs' conduct confirms that this motion is a tactical delay, not a response to legal compulsion. Plaintiffs did not seek clarification from the Court before withholding payment, did not request expedited relief in advance of the due date, and did not refrain from violating the Settlement Agreement while their motion was pending. Equity does not reward a party who engineers its own noncompliance and then invokes that noncompliance as the basis for extraordinary relief.

### C. Plaintiffs' Proposed "Trust Account" Arrangement Underscores the Absence of Necessity

Plaintiffs' assertion that they will continue making payments into their counsel's trust account further undermines any claim of necessity. If Plaintiffs genuinely believed that payment under the settlement were prohibited by law, rerouting funds to a private trust account would not alter that legal analysis; it would merely postpone performance while depriving Defendants of the benefit of their bargain.

A stay is appropriate only where relief is necessary to prevent concrete harm, not where a party merely prefers an alternative payment structure or wishes to postpone performance while retaining the benefits of a settled dispute.

### D. The Balance of Equities Does Not Favor Excusing Performance

Finally, excusing Plaintiffs' performance would prejudice Defendants by depriving them of the benefit of a negotiated settlement and undermining the finality of judicially sanctioned agreements. Allowing parties to suspend settlement obligations based on conjecture about political developments would destabilize settlements and invite routine post-hoc renegotiation through motion practice. Plaintiffs' asserted hardship is speculative and contingent, resting on no statute, enforcement action, agency guidance, or judicial determination.

### V.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH AGAINST A STAY

Because Plaintiffs identify no legal prohibition on settlement compliance, the Court should deny the motion at the threshold. Even if the Court were to reach balancing, the equities and public interest would still compel denial.

### A. Excusing Performance Would Prejudice Defendants and Undermine Settlement Finality

Defendants have already provided the consideration contemplated by the settlement and are entitled to the benefit of that bargain. Suspending payment would deprive Defendants of the bargained-for finality and certainty that settlements are designed to secure. Courts routinely recognize that post-settlement nonperformance inflicts concrete prejudice by reopening resolved disputes and eroding reliance on judicially sanctioned agreements. *See, e.g., Sun Microsystems of Cal., Inc. v. Eng'g & Mfg. Sys., C.A.*, 682 So.2d 219, 220 (Fla. 3d DCA 1996) ("The public policy of the State of Florida, as articulated in numerous court decisions, highly favors settlement agreements among parties and will seek to enforce them whenever possible."), *cited with approval in McNamara v Govt. Empls. Ins. Co.*, 30 F.4th 1055, 1062-1063 (11th Cir 2022).

Allowing a stay on this record would invite parties to relitigate settled obligations whenever some hypothetical other action can be invoked to justify nonperformance.

### B. Plaintiffs Face No Comparable Equitable Harm from Continued Compliance

Plaintiffs identify no concrete harm from continuing to perform in the absence of any binding legal prohibition or enforcement action. Plaintiffs point to no enforcement action, no legal prohibition, and no binding directive requiring nonpayment. Continued compliance preserves the status quo contemplated by the settlement; a stay would alter it.

Equity does not favor shifting the risk of political uncertainty onto the party that prevailed in the settlement, particularly where the movant's asserted concern rests on conjecture rather than compulsion.

**C.  The Public Interest Favors Enforcing Court-Approved Settlements**

The public interest strongly favors the enforceability of settlements and the predictability of judicial outcomes. As noted above, courts depend on parties honoring negotiated resolutions to conserve judicial resources and promote finality. Granting a stay on this record would signal that private litigants may suspend court-approved obligations based on hypothetical risk tied to unadjudicated executive action, an outcome inconsistent with orderly administration of justice.

Because the requested stay would prejudice Defendants, confer no offsetting equitable benefit, and undermine confidence in settlement enforcement, the balance of equities and the public interest weigh decisively against relief.

## VI.     THE PROPER COURSE IS NARROW SECURITY, NOT EXCUSING A STAY OF PERFORMANCE

Should the Court nevertheless conclude that some interim protection is warranted, the appropriate remedy is not a stay excusing Plaintiffs' performance, but a narrowly tailored measure that preserves Defendants' rights while addressing Plaintiffs' asserted uncertainty.

Here, if the Court perceives any need to mitigate Plaintiffs' claimed risk pending further proceedings, it may order Plaintiffs to (1) deposit the full amount due into the Court's registry, or (2) post a bond securing their payment obligation. Either option would ensure full performance of the settlement while avoiding the extraordinary step of suspending compliance altogether.

By contrast, Plaintiffs seek relief that would effectively rewrite the settlement agreement, deprive Defendants of the benefit of their bargain, and reward unilateral nonperformance based on speculation. Equity does not support such relief where narrower alternatives can fully protect all interests at stake.

Accordingly, even if the Court is inclined to grant limited interim relief, it should deny Plaintiffs' request for a stay and instead require security sufficient to guarantee full payment.

15

## VII.    CONCLUSION[3]

Plaintiffs seek extraordinary relief without identifying any legal prohibition on settlement compliance, any concrete enforcement action, or any binding authority excusing performance. Their motion rests on speculation, misapplication of standing allegations, and an attempt to convert alleged regulatory risk into a private-law defense to a court-approved obligation. The law does not permit that result. Granting Plaintiffs' motion would signal that compliance with a Federal Court settlement is optional whenever a party asserts speculative regulatory anxiety untethered to law. That result would erode the enforceability of settlements, invite strategic noncompliance, and undermine the Court's retained jurisdiction to ensure finality.

Because the Executive Order does not prohibit settlement payments, because Plaintiffs' asserted hardship is speculative and self-imposed, and because the balance of equities and public interest favor enforcement of negotiated settlements, Plaintiffs' Motion to Stay Payment should be denied in its entirety. Alternatively, if the Court determines that any interim protection is warranted, it should require security sufficient to guarantee full performance rather than excuse compliance.

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion.

Dated: January 21, 2026

> Respectfully submitted,
>
> BY: /s/ Remy Green
>  Remy Green (*admitted pro hac vice*)
> COHEN&GREEN P.L.L.C
> 1639 Centre St.
> Suite 216
> Ridgewood, NY 11385
> (929) 888-9480
>
> Thania Diaz Clevenger

---

[3] Defendants are also entitled to attorneys' fees for opposing this motion, as well as a likely forthcoming contempt motion given Plaintiffs violation of the Court order before seeking any stay. *See generally*, ECF No. 105-1 ¶¶ 5(b).  Given the many pending fee issues, along with Plaintiffs' utter failure to respond to demands, Defendants will likely brief all fee issues together to save time and Court resources.

Florida Bar Number 97301
CAIR
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 850-9284
t-clevenger@cair.com

*Counsel for CAIR Foundation*

Darren Spielman
THE CONCEPT LAW GROUP, P.A.
6400 North Andrews Avenue
Suite 500
Fort Lauderdale, FL 33309
(754) 300-1500
dspielman@conceptlaw.com

*Counsel for CAIR-Florida, Inc.*

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 21st day of January, 2026, a true and correct copy of the foregoing was served by the Court to all CM/ECF registered users associated with this matter.

<u>/s/ Thania Diaz Clevenger</u>

Thania Diaz Clevenger