UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-CV-81179-RAR

ILLOOMINATE MEDIA, INC., and
LAURA LOOMER,

                Plaintiffs,

vs.

CAIR FLORIDA, INC., and
CAIR FOUNDATION,

                Defendants.

_____/

## REPORT AND RECOMMENDATION ON MOTION FOR CONTEMPT AND TO ENFORCE SETTLEMENT AGREEMENT [ECF No. 175]

Defendants (collectively "CAIR") ask this Court to exercise its contempt power to enforce the non-disparagement term of the parties' settlement agreement. I have reviewed CAIR's Motion with attachments, ECF No. 175, Ms. Loomer's Response with attachments, ECF No. 176, and CAIR's Reply with attachments. ECF No. 178. I held an evidentiary hearing on February 11. ECF No. 197, 198. For the following reasons, it is RECOMMENDED that CAIR's Motion be DENIED.

## I.      BACKGROUND

CAIR is a self-described civil rights and advocacy organization whose mission is to "enhance understanding of Islam, protect civil rights, promote justice, and empower American Muslims." *See* www.cair.com (last visited March 14, 2026).

Plaintiff Laura Loomer is a self-described journalist who regularly posts on social media.

In the underlying litigation, CAIR got a Final Judgment for $124,423.37. ECF No. 84. Post-judgment litigation ensued. The parties resolved their dispute through a written Settlement Agreement. ECF No. 105-1. As part of the settlement, CAIR agreed to forego half of the Final Judgment. *Id.* The Settlement Agreement contained a non-disparagement term that prohibited Ms. Loomer from speaking about CAIR:

> Plaintiffs shall never make any comments, of any kind, about CAIR in the future. Violation of this provision shall be a substantive breach of this Settlement.

ECF No. 105-1 ¶2(a). There was an exception to this "no talking about CAIR" term, however. Ms. Loomer could respond if CAIR spoke about her, but the response had to be limited to :

> Plaintiffs may publicly respond to any specific statement by Defendants or their authorized agents that discuss Plaintiffs by name. Plaintiffs may not use the exception for such responses to begin making general comments about Defendants outside of responding to the specific statement.

*Id.* ¶2(d). The Settlement Agreement does not set a time limit for when Ms. Loomer can respond to specific statements that name her.

The parties agreed that a violation of the non-disparagement provision was a substantive breach of the Settlement Agreement. They further agreed that a substantive breach could be enforced as a contempt of court. The Settlement Agreement called for fee shifting if CAIR had to enforce the agreement. ECF No. 105-1 ¶5(b). At the parties' request, this Court adopted the Settlement Agreement as its

own Order. ECF No. 106 ("Settlement Order"). The Court retained jurisdiction to enforce its order. *Id.*

On June 30, 2025, CAIR began speaking about Ms. Loomer by name. It published "CAIR in the News, June 30, 2025" on its www.cair.com website. The posting included a link to a Newsweek article and quoted CAIR's research and advocacy director accusing Ms. Loomer of "spewing" racist, bigoted, nonsensical, and Islamaphobic ideas:

> **Corey Saylor, research and advocacy director at the Council on American-Islamic Relations** (CAIR), a civil rights organization, said in a statement to *Newsweek*: "Americans eat pizza, hot dogs, chicken, french fries, burgers, sandwiches, chips, tacos, fruit, nachos, cookies, and various other foods with their hands. Those same Americans can see through the hysterical racism and Islamophobia spewed by the likes of Laura Loomer and Texas Congressman Gill. Only the Ku Klux Klan could enjoy such bigoted and nonsensical statements."

ECF No. 176-1 at 2.

On July 30, 2025, CAIR published "CAIR Press Releases" on its website. It referred to Ms. Loomer as "the notorious and proud Islamaphobic figure Laura Loomer" and accused Ms. Loomer of "promot[ing] a false anti-Palestinian racist narrative."

> Maguire by comparison has used his social media platform to uplift Amy Mek, an anti-Muslim activist who has reportedly praised white supremacist groups and encouraged her readers to follow a Holocaust denier. Maguire has also engaged with the notorious and proud Islamophobic figure Laura Loomer to promote a false Islamophobic narrative. This week after a tragic mass shooting in New York during which a Muslim NYPD officer was killed, Loomer promoted a false anti-Palestinian racist narrative about the shooter.

ECF No. 176-1 at 7. Between August 16 and October 13, CAIR made multiple public statements that negatively referenced Ms. Loomer. ECF No. 176 ¶¶7-13.

On the morning of October 26, 2025, Sami Hamdi was arrested at the San Francisco Airport while on his way to speak at a CAIR event in Tampa, Florida. At 10:05 a.m., Ms. Loomer posted a tweet saying in relevant part:

> Sources at DHS @DHSgov have told me that Muslim Brotherhood official Sami Hamdi @SALHACHIMI was just ARRESTED by ICE @ICEgov agents at San Francisco International Airport as he was traveling to Tampa, Florida to headline an event for a Jihadist, pro-HAMAS and Muslim Brotherhood 501c3 group tonight.

ECF No. 175-2 at 2.

That afternoon, CAIR issued a press release that called Ms. Loomer an "anti-Muslim extremist":

> Anti-Muslim extremist Laura Loomer has publicly taken credit for [Mr. Hamdi's] abduction, claiming that ICE acted in response to her demands and smearing Hamdi with various anti-Muslim conspiracy theories.
>
> CAIR previously called on Secretary of State Marco Rubio to address whether he spoke directly with anti-Muslim extremist Laura Loomer, as she claims, before banning Palestinian children injured by American weapons in Gaza from seeking medical care in the U.S. and condemned his decision.
>
> A day after Loomer posted videos on social media complaining about children from Gaza arriving in the U.S. for medical treatment and questioning how they obtained visas, the State Department said it was halting all visitor visas for people from Gaza pending a review. In a tweet, Loomer thanked Senator Rubio for halting the visas. The New York Times reported that Loomer said she spoke with Secretary of State Marco Rubio on Friday night to alert him to the flights and what she called the threat of an "Islamic invasion."

ECF No. 175-5. Later that day, at 6:27 p.m., Ms. Loomer published a tweet saying in relevant part:

> [Mr. Hamdi] was on his way from California to Tampa, Fl today to speak at a GALA hosted by a pro-HAMAS, Muslim Brotherhood 501c3 that still has not had their 501c3 status revoked under the Trump admin,

4

> despite their long history of supporting Islamic jihadists (there are court records to back this up).
>
> Why are jihadists still operating with 501c3 statuses here in the US?

ECF No. 175-1 at 2. Later that evening, after CAIR made other public statements about Ms. Loomer, including at its event in Tampa, Ms. Loomer posted a tweet that accused CAIR, by name, of having "historical financial and organizational ties to Hamas – a designated Islamic terrorist organization – and the Muslim Brotherhood." She also called for CAIR's tax exempt status to be revoked:



ECF No. 175-4.

CAIR says Ms. Loomer's public statements on October 26 violate the non-disparagement term of the Settlement Order. They ask the Court to (1) award fees and costs incurred in enforcing the Settlement Order, (2) require Ms. Loomer to issue a retraction and to delete the offending posts, (3) require Ms. Loomer to pay the

balance of the Final Judgment, and (4) authorize discovery into whether Ms. Loomer has made other statements that might violate the Settlement Order. ECF No. 175 at 8-10; *id.* at 2 ("[W]ith Ms. Loomer's public violations of the Consent Decree indicating non-public ones as well, the Court should order immediate discovery into whether Ms. Loomer has been violating the Consent Decree more extensively.").

## II.  CIVIL CONTEMPT

Courts have "inherent power to enforce compliance with their lawful orders through civil contempt." *Citronelle–Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1301 (11th Cir. 1991) (*citing Shillitani v. United States,* 384 U.S. 364, 370 (1966)). Civil contempt serves "to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled." *Potter v. District of Columbia,* 126 F.4th 720, 723 (D.C. Cir. 2025) (citations omitted).

A finding of civil contempt must be supported by clear and convincing evidence that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and, (3) the alleged violator had the ability to comply with the order. *F.T.C. v. Leshin,* 618 F.3d 1221, 1232 (11th Cir. 2010). Once a movant establishes by clear and convincing evidence that a court order has been violated, the burden of production shifts to the purported contemnor to produce evidence explaining his noncompliance. *Watkins,* 943 F.2d at 1301. "Parties subject to a court's order demonstrate an inability to comply only by showing that they have made in good faith all reasonable efforts to comply." *Id.*

Once a party is found in contempt, "District courts enjoy 'wide discretion to fashion an equitable remedy for [civil] contempt that is appropriate to the circumstances.'" *United States v. City of Miami,* 195 F.3d 1292, 1298 (11th Cir.1999) (citing *E.E.O.C. v. Guardian Pools, Inc.,* 828 F.2d 1507, 1515 (11th Cir.1987)). A Court has no general discretion to ignore a civil contempt, however. *Potter,* 126 F.4th at 725. "[C]ivil contempt power [may not be used] to impose what amounts to a punitive or criminal contempt sanction." *See United States v. City of Miami,* 195 F.3d 1292, 1298 (11th Cir. 1999). "[S]anctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986) (internal quotation marks omitted).

Coercive civil contempt is a remedy to stop ongoing disobedience of a court order and to deter expected future disobedience. It is not a remedy for past non-compliance.[1]

---

[1] In contrast, criminal contempt can be imposed to punish a past willful violation of a court order. Unless the contemptuous conduct occurs in the Court's presence, criminal contempt implicates the Fifth and Sixth Amendment procedural protections. *See* Fed. R. Crim. P. 42. That is, the alleged contemnor is entitled to notice of the charges and has the right to counsel. The charge must be proven beyond a reasonable doubt. Depending on the potential sentence, a jury trial may be required. *In re McLean*, 794 F.3d 1313, (11th Cir. 2015) ("In addition to the protections a court must afford in any contempt proceeding, an alleged contemnor must also be 'presumed innocent, proved guilty beyond a reasonable doubt, ... [and] afforded a jury trial for serious contempts.'").Here, Defendants have not asked the Court to initiate criminal contempt proceedings.

III.   DISCUSSION

It is undisputed that between July 30 and October 26 CAIR made multiple specific statements that discussed Ms. Loomer by name. Under the Settlement Order, Ms. Loomer was permitted to respond to these statements. What the Court now has to decide is whether Ms. Loomer's statements about CAIR on October 26, 2025, were "general comments about [CAIR] outside of responding to [CAIR's] specific statement[s]." CAIR says the statements exceeded a mere response to their specific statements. Ms. Loomer says that her statements go to CAIR's credibility and bias, and therefore are responsive because they undercut the truth of CAIR's specific statements about her.

Before turning to the merits, some context is helpful.

First, civil contempt is more narrow than breach of contract. The Settlement Order is a Court decree. The non-disparagement term of the order is an injunction that limits Ms. Loomer's speech. The Court must "construe any ambiguities in favor of the party charged with contempt." *Peery v. City of Miami,* 977 F.3d 1061, 1077 (11th Cir. 2020). To get contempt sanction, CAIR must prove a violation by clear and convincing evidence. If a violation occurred, the available remedies are limited to coercive sanctions or compensatory ones.

In contrast, the Settlement Agreement is a bilateral contract between the parties. CAIR could enforce a violation of the non-disparagement term of that contract through a civil lawsuit for breach of contract. The Settlement Agreement would be interpreted under ordinary contract interpretation principles. CAIR would

9

have to prove its claim by a preponderance of the evidence. If it won that lawsuit, it would be entitled to contractual remedies. The remedies available for breach of contract may be more extensive than what is available as a contempt sanction.

Second, there is no basis for coercive sanctions, here. Even if Ms. Loomer violated the Settlement Order, there is no ongoing non-compliance, nor has CAIR shown a risk of future non-compliance. Even considering the record evidence in the light most favorable to Defendants, Ms. Loomer violated the Settlement Order on one day – October 26. Since then, she has retained new counsel and there is no evidence that a future violation is likely.

Third, CAIR has not offered any evidence that it suffered compensable monetary damages, so there is no basis for compensatory civil contempt sanctions.

Relatedly, CAIR is not entitled to the balance of the final judgment. As its sole support for this requested remedy, CAIR cites to a single sentence from Ms. Loomer's deposition where she appears to concede that she could be ordered to pay the full judgment if she violated the Settlement Agreement. Compensatory civil contempt sanctions must be individualized to mitigate the specific harm caused by the contemptuous conduct. *E.g., Diamond Resorts Int'l, Inc. v. US Consumer Att'ys, P.A.,* No. 18-80311-CIV, 2021 WL 9596129, at *12 (S.D. Fla. Apr. 9, 2021). There is nothing in the Settlement Order that refers to reinstating the original judgment amount in the event of a breach.  Even if this kind of term existed, it would not be an appropriate contempt sanction because CAIR has not offered evidence of a nexus between the

10

balance of the final judgment and any harm caused by the allegedly contemptuous conduct.[2]

Fourth, Ms. Loomer has not disputed that, if she violated the Settlement Order, the Court could order her to make a retraction and to remove the offending social media posts under its broad equitable powers to fashion an appropriate remedy. She also does not dispute that CAIR should be awarded its attorneys' fees and costs if she is found in contempt.

So, the only civil contempt remedies available to CAIR are (1) retraction and deletion, and (2) attorneys' fees.

Turning to the merits, CAIR has not shown by clear and convincing evidence that Ms. Loomer's statements are "general comments about [CAIR] outside of responding to [CAIR's] specific statement[s]." Between June 20 and October 13, CAIR gratuitously made multiple statements accusing Ms. Loomer of, among other things, being a racist, a bigot, an Islamophobe, an anti-Muslim extremist, and the purveyor

---

[2] This purported provision is akin to a liquidated damages provision. Parties can (under appropriate circumstances) agree to a liquidated damages provision that can be enforced by contempt. *See, e.g., ICE Marketing Corp. v. Gapardis Health and Beauty, Inc.,* No. 00-02280-CIV, 2014 WL 10093869, *9 (S.D. Fla. Nov. 13, 2014). "A damages provision is enforceable where the damages consequent to a breach are not readily ascertainable and the sum stipulated to be forfeited is not grossly disproportionate to damages that might be reasonably expected to result from a breach." *Blanco GmbH Co. KG v. Vlanco Industries, LLC*, 992 F. Supp. 2d 1225, 1252 (S.D. Fla. Jan. 21, 2014). Here, given the lack of evidence in the record of any monetary damages incurred by CAIR, requiring Ms. Loomer to pay approximately $62,000 as a contempt sanction would be punitive. The Court takes no position on whether CAIR could be entitled to that remedy in a successful lawsuit for breach of the Settlement Agreement.

of a false anti-Palestinian racist narrative. On October 26, less than two weeks after CAIR's last specific statement naming Ms. Loomer, she publicly commented on Mr. Hamid's arrest and referenced that Mr. Hamid had been "traveling to Tampa, Florida to headline an event for a Jihadist, pro-HAMAS and Muslim Brotherhood 501c3 group tonight." She did not identify CAIR by name, but she concedes her statement was referring to CAIR.  After CAIR made further derogatory statements about her on October 26, Ms. Loomer posted a tweet that accused CAIR, by name, of having "historical financial and organizational ties to Hamas – a designated Islamic terrorist organization – and the Muslim Brotherhood." She also called for CAIR's tax exempt status to be revoked.

A reasonable interpretation of Ms. Loomer's comments on October 26 is that CAIR's criticisms of Ms. Loomer are not credible because CAIR is violating federal tax laws and is affiliated with international terrorist organizations whose policies Ms. Loomer publicly has opposed.[3] Similarly, it is a reasonable interpretation that Ms. Loomer is saying CAIR's specific statements naming her should not be believed because (1) CAIR is not an impartial evaluator of her views, (2) CAIR is biased in claiming that she is anti-Muslim and anti-Palestinian and (3) CAIR is making these accusations to silence her from criticizing CAIR and to raise money from its

---

[3] To be clear, the Court takes no position on Ms. Loomer's characterizations of CAIR, Hamas, or the Muslim Brotherhood. Nor does the Court take a position on CAIR's characterizations of Ms. Loomer.

supporters. CAIR has not shown by clear and convincing evidence that these interpretations are wrong.

There is no basis for discovery. CAIR has failed to meet its initial burden of showing a violation of the Settlement Order. Even if it had, it has not shown why discovery is needed to remedy a past violation of the Settlement Order, or to coerce future compliance.

Finally, CAIR argues that if Ms. Loomer can make these kind of statements, it has been deprived of the benefit of its contractual bargain, which was designed to prevent Ms. Loomer from disparaging CAIR. ECF No. 175 at 9-10. Ms. Loomer contracted away some of her First Amendment rights and CAIR retains the ability to hold her to that bargain. But, Ms. Loomer also retains the ability to speak in ways that do not violate the partes' agreement. All the Court concludes today is that CAIR has not produced clear and convincing evidence that Ms. Loomer's conduct on October 26 exceeded the bounds of that agreement.[4]

For the reasons stated above, CAIR has not shown by clear and convincing evidence that Ms. Loomer violated the Settlement Order.

---

[4] Although not a factor in my recommendation, it is instructive to note that, going forward, CAIR has a simple way to guarantee that Ms. Loomer does not disparage it – if CAIR does not speak about Ms. Loomer, she cannot speak about CAIR.

## REPORT AND RECOMMENDATION

It is **RECOMMENDED** that the District Court **DENY** CAIR's Motion for Contempt.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, II, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 16th day of March 2026.

_____

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

14